# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# Tallahassee Division

AUGUST DEKKER, et al.,

    *Plaintiffs*,

v.

SIMONE MARSTILLER, et al.,

    *Defendants*.

Case No. 4:22-cv-00325-RH-MAF

## PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs reply to Defendants' Response in Opposition to Motion for Preliminary Injunction ("Response"), and state as follows:

## INTRODUCTION

Resorting to rhetoric comparing gender-affirming care to eugenics, Defendants ask this Court to ignore decades of medical and clinical research supporting the provision of gender-affirming care, along with the prevailing opinion of every major medical organization in the country.

Defendants do not dispute—they cannot—that (1) Plaintiffs are transgender people with gender dysphoria—a serious medical condition—and that (2) Florida Medicaid has covered the medical treatment for their gender dysphoria. Instead, Defendants ask the Court to disregard the prevailing medical opinion and their

previous longstanding practice of providing coverage so that the State can disrupt the status quo and upend access to medically necessary care for transgender Medicaid beneficiaries like Plaintiffs.

Doing so is a violation, *inter alia*, of the Fourteenth Amendment and Section 1557, and would cause irreparable harm to transgender Medicaid beneficiaries across Florida, including Plaintiffs, without offering any benefit to the public.

## ARGUMENT

**A. The Challenged Exclusion is not Based in Science.**

The Challenged Exclusion prohibits coverage for "medical treatment that conforms with the recognized standard of care for ... gender dysphoria," even though such care is "supported by medical evidence that has been subject to rigorous study." *Brandt by & through Brandt v. Rutledge*, 47 F.4th 661, 670 (8th Cir. 2022) (cleaned up). Its purpose "is not to ban a treatment but to ban an outcome that the State deems undesirable." *Id.* (cleaned up).

To reach their desired conclusion, Defendants replaced scientifically supported and prevailing standards of care by cherry-picking five consultants, all of whom disagree with the generally accepted medical standards for treating gender dysphoria. *See, e.g.*, Schechter Supp. Dec. ¶4. Even the GAPMS Memo and Defendants' experts acknowledge that their views are outliers, far outside the medical mainstream. The GAPMS Memo concedes that 300 Florida health care

professionals with expertise in the treatment of gender dysphoria support use of the treatments. Def. App. 033. And the American Medical Association, American Psychiatric Association, Endocrine Society, and American Academy of Pediatrics, among others, uniformly support the use of these gender-affirming treatments. Courts have adopted the generally accepted views of these national medical organizations as well. *Kadel v. Folwell*, 2022 WL 3226731, at *32 (M.D.N.C. Aug. 10, 2022); *see also Eknes-Tucker v. Marshall*, 2022 WL 1521889, at *8 (M.D. Ala. May 13, 2022). But with the Challenged Exclusion, Defendants seek to simply push these standards aside.

### B. Plaintiffs Remain Likely to Succeed on the Merits.

Defendants' Response avoids any meaningful confrontation with the reasoning of *Bostock v. Clayton Cnty., Georgia*, 140 S.Ct. 1731 (2020): "it is impossible to discriminate against a person for being … transgender without discriminating against that individual based on sex." *Id.* at 1741. While *Bostock* was decided under Title VII, it is beyond peradventure that sex discrimination is barred by the Fourteenth Amendment; Defendants cite nothing supporting the notion that transgender people are strangers to its protections.[1] Instead, Defendants rely on *Geduldig v. Aiello*, 417 U.S. 484 (1974), and *Dobbs v. Jackson Women's Health*

---

[1] Federal courts' analysis of disparate treatment sex discrimination claims under the Equal Protection Clause often mirrors the Title VII analysis. *See*, *e.g.*, *Naumovski v. Norris*, 934 F.3d 200, 212 (2d Cir. 2019).

*Org.*, 142 S.Ct. 2228 (2022).[2] But neither support Defendants' conclusions. Plaintiffs already explained why *Geduldig* does not affect the requisite scrutiny here, and Defendants arguments do not respond in any meaningful way. (ECF 11, at 29 n.25.)

Defendants admit the Challenged Exclusion distinguishes based on a diagnosis of gender dysphoria (ECF 53, at 17), and "[d]iscrimination against individuals suffering from gender dysphoria is also discrimination based on sex and transgender status." *Kadel*, 2022 WL 3226731, at *20; *Brandt v. Rutledge*, 551 F.Supp.3d 882, 889 (E.D. Ark. 2021), *aff'd*, 47 F.4th 661.

The classification in *Geduldig* was not premised on a sex stereotype like the one presented here. *See Knussman v. Maryland*, 272 F.3d 625, 638 (4th Cir. 2001) (distinguishing *Geduldig*). Indeed, "[t]he very acts that define transgender people as transgender are those that contradict stereotypes of gender-appropriate appearance and behavior." *Glenn v. Brumby*, 663 F.3d 1312, 1317 (11th Cir. 2011); *see also Boyden v. Conlin*, 341 F.Supp.3d 979, 997 (W.D. Wis. 2018); (ECF 11, at 23).

Moreover, the plain language of *Geduldig* and *Dobbs* call for the application of heightened scrutiny and hold that rational basis scrutiny is inappropriate when the regulation is a mere pretext meant to effect invidious discrimination. *Dobbs*, 142 S.Ct. at 2245-46; *Geduldig*, 417 U.S. at 496 n.20.

---

[2] *Dobbs* merely repeats *Geduldig*'s holding. *Dobbs*, 142 S.Ct. at 2235.

4

The Challenged Exclusion is a pretext for discrimination, not borne out of concern for persons experiencing gender dysphoria. To determine whether treatment is experimental, Defendants' must undertake a balanced, scientific inquiry, seeking out reliable, unbiased evidence and opinions and then assigning proper weight to that information. Here, Defendants ignored that process and instead employed a sham rulemaking process, amplifying the voices of unqualified and unreliable purported "experts."[3] This occurred at the same time Florida's government sought to degrade the rights of transgender people on multiple fronts. (ECF 1, ¶126; ECF 11, at 14.) This context underscores the Challenged Exclusion's discriminatory pretext. Facts like these, that demonstrate discriminatory animus, were missing in *Geduldig* and *Dobbs*.[4]

---

[3] Defendants' proposed experts are unqualified and unreliable. "Expertise in one field does not qualify a witness to testify about others." *Lebron v. Sec'y of Fla. Dep't of Child. & Fams.*, 772 F.3d 1352, 1368 (11th Cir. 2014). And *none* of Defendants' experts have experience providing gender-affirming care or treating gender dysphoria. A court has given Dr. Cantor very little weight based on his lack of experience with gender-affirming care, *Eknes-Tucker*, 2022 WL 1521889, at *5, and his qualifications were recently challenged in another case. *See B.P.J. v. West Virginia State Bd. of Ed.*, 21-cv-00316, ECF 320 (S.D.W.V. May 12, 2022) (Altman Ex. M). Likewise, Dr. Lappert was disqualified from testifying in a case about virtually anything beyond surgical risks and having encountered "de-transitioning" persons. *Kadel*, 2022 WL 2106270, at *15; Altman Ex. N. And Dr. Laidlaw has no experience providing or studying gender-affirming care. *See infra*; Altman Ex. O. By selecting "experts" that do not possess the requisite knowledge, Defendants failed to comply with the necessary process to analyze the efficacy of the care they have irresponsibly banned.

[4] *Arlington Heights* does not help Defendants, as the Complaint and Motion are

At bottom, the authorities cited by Defendants do not change the fact that the Challenged Exclusion is subject to heightened scrutiny.

**C. The Balance of the Equities Favors Plaintiffs.**

Defendants do not dispute that transgender Medicaid beneficiaries like Plaintiffs will lose access to health care as result of the Challenged Exclusion and that such loss constitutes irreparable harm. (*See* ECF 11, at 32-34.) Rather, Defendants attempt to balance Plaintiffs' irreparable harm with perceived harms to the public. But Defendants do not address how the preliminary injunction will harm the public—as the standard requires. *See Scott v. Roberts*, 612 F.3d 1279, 1290 (11th Cir. 2010). Rather, they disingenuously argue, in contravention to the prevailing medical consensus of health care providers and major medical organizations, that the treatments themselves are potentially harmful.

    1. <u>An Injunction Would Not Harm the Public.</u>

Defendants misquote Justice Roberts' opinion in *Maryland v. King*, 567 U.S. 1301 (2012), when they say, "the State is irreparably harmed 'when it cannot effectuate its laws.'" (ECF 53, at 26-27.) The decision says: "[A]ny time a State is enjoined by a court from effectuating *statutes enacted by representatives of its people*, it suffers a form of irreparable harm." *Maryland*, 567 U.S. at 1303 (emphasis added). The Challenged Exclusion is not a "statute enacted by representatives of the

---

replete with facts regarding each factor of its test.

people" but rather an administrative rule adopted over objections from the public and a legion of health care professionals with actual expertise. (ECF 11, at 13-14); *see also Eknes-Tucker*, 2022 WL 1521889, at *6. The public had little, if any, say in it.[5]

Defendants summarily conclude the Challenged Exclusion "serves the public interest" without explaining why. (ECF 53, at 32.) Plaintiffs assume their reasoning is captured in the bullet points immediately above, which summarize their "expert" declarations. *See id.* at 30-32. However, none of those declarations—save one—talk about how the treatments will harm the public, much less how the preliminary injunction, which preserves the status quo and allows Medicaid beneficiaries to continue care Florida Medicaid previously covered, will harm the public.

Nor is the fact that medical treatments have risks and side effects a sufficient reason to *disrupt* already established care. *See Flack v. Wisconsin Dep't of Health Servs.*, 331 F.R.D. 361, 374 (W.D. Wis. 2019).[6] That rationale would eliminate virtually all medical care, as none are without risk.

---

[5] The Challenged Exclusion was adopted in circumvention of the legislature after it refused to adopt similar bills. *See* HB 1365 (2021); SB 1864 (2020); HB 935 (2021).

[6] Defendants express concern that gender-affirming treatments will cause infertility. This showcases their lack of understanding. Puberty blockers do not cause infertility. (ECF 11-2, ¶101.) Hormones do not necessarily either. (*Id.* ¶107.) Indeed, one of defendants' witnesses, who was purportedly on testosterone for four years, is now expecting a child. Def. App. 913. Most surgeries (like top surgery) do not cause infertility either. (ECF 11-2, ¶45.)

The Florida Medicaid program has covered these treatments for years. (ECF 11, at 36.) Defendants do not argue otherwise. And, over the years, the research and clinical evidence in support of these treatments has only grown. Only in the past several months have Defendants changed their stance on gender-affirming treatments, not coincidentally, amidst a wave of other actions by Florida's government attacking the rights of transgender persons.

2. <u>Defendants Do Not Rebut the Irreparable Harm Caused by the Challenged Exclusion.</u>

a. *Treating physicians are not required to show irreparable harm.*

Defendants take issue with the lack of medical records and testimony from Plaintiffs' treating physicians. But they do not explain why that is relevant or dispositive. Plaintiffs aver as to the harms they will suffer, and this testimony is consistent with Plaintiffs' expert testimony. Moreover, it is well-established that, *as a matter of law*, the loss of coverage or access to care constitutes an irreparable harm. (ECF 11, at 32.) Several decisions—cited in Plaintiffs' Motion—found irreparable harm based on evidentiary records like this one. In *Brandt*, the district court relied on the plaintiffs' testimony and expert testimony to conclude that a ban on hormone treatments would cause "physical and psychological harms to the Patient Plaintiffs by terminating their access to necessary medical treatment." 551 F.Supp.3d at 892. Likewise, in *Eknes-Tucker*, the district court relied on witness and expert testimony to conclude that "without transitioning medications, Minor Plaintiffs will suffer

severe medical harm, including anxiety, depression, eating disorders, substance abuse, self-harm, and suicidality." 2022 WL 1521889, at *12. Moreover, putting the question of records aside, Defendants do not dispute, nor could they, that the gender-affirming care Plaintiffs received prior to Defendants' adoption of the Challenged Exclusion was determined medically necessary *by Defendants* under Florida's Medicaid program as well as by their treating physicians or they would not have received such care.

Defendants do not address these decisions, nor any other decision cited in the Motion where Plaintiffs established irreparable harm. *See* (ECF 11, at 33.) Instead, Defendants rely on a single case, *Doe v. Snyder*, 28 F.4th 103 (9th Cir. 2022), to imply that medical records and physician testimony are always necessary to establish irreparable harm. But *Doe*, an outlier decision, is easily distinguishable and does not establish a bright-line evidentiary standard for purposes of this injunction.

In *Doe*, the plaintiff requested a "mandatory injunction" that would have forced Arizona's Medicaid agency, which had excluded coverage of gender-affirming care for over 30 years, to "take an affirmative action" and go "well beyond the status quo." 28 F.4th at 108. The district court subjected that request to "heightened scrutiny" and would only grant it upon a showing of "extreme or very serious damage" to the plaintiff. *Id*. The district court ultimately found that this "heightened burden" was not met. *Id*. at 11; *see also Hennessy-Waller v. Snyder*, 529

F.Supp.3d 1031, 1045-46 (D. Az. 2021). The Ninth Circuit narrowly affirmed, finding that the district court's decision was not "illogical, implausible, or unsupported by the record," but faulted the district court for its failure to apply heightened scrutiny to Plaintiffs' Equal Protection claim and for its "erroneous" reading of *Bostock*. 28 F.4th at 113.

Here, by contrast, Plaintiffs seek a "prohibitory injunction," intended to preserve the status quo. Plaintiffs are not asking Defendants to take any affirmative action but instead to refrain from action until the court decides the merits. *See, e.g., K.G. ex re. Garrido v. Dudek*, 839 F.Supp.2d 1254, 1260 (S.D. Fla. 2011). Their request is not subject to the heightened scrutiny applicable to mandatory injunctions like the one in *Doe*. And unlike in *Doe*, Defendants here have previously covered the gender-affirming care Plaintiffs seek. Having done so, they cannot now claim that Plaintiffs have not provided sufficient evidence that those services are necessary. *See Eknes-Tucker*, 2022 WL 1521889, at *12 ("The risk of suffering severe medical harm constitutes irreparable harm.")

b. *The Court should disregard Dr. Laidlaw's opinions.*

Defendants rely on Dr. Laidlaw's report to argue Plaintiffs will not suffer irreparable harm if the Motion is denied. But Dr. Laidlaw never reaches that conclusion; nor does he opine on the irreparable harms discussed in Plaintiffs' declarations. *See* (ECF 11, at 33-34.) Rather he speculates as to the "increased risks"

10

Plaintiffs could hypothetically face if their treatments continue based on his review of a partial set of medical records. He does not address the central issue: what harm will result if the treatments are *dis*continued. And he never opines on how to treat Plaintiffs' gender dysphoria.

Nor could he. Dr. Laidlaw has never treated any of the Plaintiffs, nor does he treat any transgender patients for gender dysphoria. *See* Altman Ex. O. His report is based on his general experience as an endocrinologist, his "evaluation" of a "detransition," and his review of an incomplete portion of the Plaintiffs' medical records. Def. App. 771. He simply does not—and cannot—opine on the harm Plaintiffs or any other transgender Medicaid recipient will face as a result treatment coverage loss. Olson-Kennedy Supp. Decl., ¶¶25-28; Karasic Supp. Decl., 23.

In any event, his opinions are outweighed by the collective decisions made by each Plaintiff's health care team. *See* (ECF 11, at 15-19); *see also Flack*, 331 F.R.D. at 374 ("While all medical treatment has risks, an individual patient and their doctor would seem substantially better able to weigh those risks than the state, much less this court, and so the risk of a negative outcome does not weigh in defendants' favor either.").

    c. *The declarations of out-of-state opponents to gender-affirming care are irrelevant.*

Defendants submitted multiple declarations from lay persons, all of whom are

out-of-state opponents[7] of gender-affirming care who purportedly had individual experiences with gender-affirming care or are parents who do not support their adult children's transgender identification.[8] None of them are transgender Medicaid beneficiaries in Florida nor do they have any medical expertise relating to the issue at hand; none of them address the irreparable harms caused by the Challenged Exclusion; and none identify any public harm stemming from the preliminary injunction. Defendants offer no basis as to why these individuals have any bearing on the issues before the Court.

The fact that a particular treatment was ineffective for a single individual does not mean it is not medically necessary for others or experimental. *See Flack*, 331 F.R.D. at 374. Medical decisions are made on a case-by-case basis by those who are qualified to make those determination, not random lay persons with no direct or personal knowledge or physicians with no relevant expertise.

**D. The Preliminary Injunction Should Apply Statewide.**

There is no rule that a statewide preliminary injunction is improper absent class certification as alleged by Defendants. "Once invoked, the scope of a district court's equitable powers ... is broad, for breadth and flexibility are inherent in

---

[7] Some joined an *amicus* in *Brandt* supporting defendants. 47 F.4th at 661.

[8] The declarations are irrelevant and inadmissible under Federal Rules of Evidence 401 and 403, and to the extent they offer opinions, inadmissible under Rule 701.

equitable remedies." *Brown v. Plata*, 563 U.S. 493, 538 (2011) (cleaned up); *see also City of Chicago v. Barr*, 961 F.3d 882, 917 (7th Cir. 2020) ("[A] court that in its discretion determines that the equities of the case and the substance of the legal issues justifies an injunction, should not be limited to imposing that relief only as to those few persons who could obtain attorneys or present themselves in court. Nor is the presence of the vehicle of a class action a realistic alternative in such a case. The difficulties, expense and delay inherent in pursuing a class action would render it inadequate for the type of situation presented …."). Plaintiffs facially challenge a newly adopted rule of general applicability. The proper remedy is to enjoin the rule *facially* to preserve the status quo. *See Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 485 F.Supp.3d 1, 64 (D.D.C. 2020) ("[U]nlawful agency regulations are ordinarily vacated universally, not simply enjoined in application solely to the individual plaintiffs.").

Defendants rely on a cherry-picked quote from a vacated decision from the Eleventh Circuit to suggest that a statewide injunction is inappropriate. (ECF 53, at 27.) Defendants fail to acknowledge that, "in the case of a constitutional violation, injunctive relief must be tailored to fit the nature and extent" of the violation. *Georgia Advoc. Off. v. Jackson*, 4 F.4th 1200, 1209 (11th Cir. 2021), *vacated on mootness grounds*, 33 F.4th 1325 (11th Cir. 2022). Indeed, the "scope of injunctive relief is dictated by the extent of the violation established." *Califano v. Yamasaki*,

442 U.S. 682, 702 (1979). A statewide injunction is appropriate here because the Challenged Exclusion violates the constitutional rights of transgender Medicaid beneficiaries statewide. *See Flack*, 331 F.R.D. at 374; *Planned Parenthood of Southwest and Central Florida v. Philip*, 194 F.Supp.3d 1213, 1224 (N.D. Fla. 2016) (enjoining Secretary of AHCA and others from enforcing certain statutes statewide).

"[B]ecause the burdens that would fall on the plaintiffs upon the Final Rule's implementation would also fall on those similarly situated, a [state]wide preliminary injunction of the Final Rule is justified." *D.C. v. U.S. Dep't of Agric.*, 444 F.Supp.3d 1, 51 (D.D.C. 2020).[9]

## CONCLUSION

Plaintiffs respectfully request the Court preliminarily enjoin the Challenged Exclusion.

Respectfully submitted this 7th day of October 2022.

---

[9] Defendants suggest a preliminary injunction is inappropriate with a pending en banc decision in *Adams v. Sch. Bd. of St. Johns Cnty., Fla.*, 9 F.4th 1369, 1372 (11th Cir. 2021). But Defendants chose to alter the status quo notwithstanding the pending en banc review. They cannot now suggest the proper course is to wait. The Court should follow the court in *Eknes-Tucker* and preliminarily enjoin the Exclusion.

**PILLSBURY WINTHROP SHAW PITTMAN, LLP**

By: */s/ Jennifer Altman*
**Jennifer Altman** (Fl. Bar No. 881384)
**Shani Rivaux** (Fl. Bar No. 42095)
600 Brickell Avenue, Suite 3100
Miami, FL 33131
(786) 913-4900
jennifer.altman@pillsbury.com
shani.rivaux@pillsbury.com

**William C. Miller***
**Gary J. Shaw***
1200 17th Street N.W.
Washington, D.C. 20036
(202) 663-8000
william.c.miller@pillsburylaw.com
gary.shaw@pillsburylaw.com

**Joe Little***
500 Capitol Mall, Suite 1800
Sacramento, CA 95814
(916) 329-4700
joe.little@pillsburylaw.com

**NATIONAL HEALTH LAW PROGRAM**

By: */s/ Abigail Coursolle*
**Abigail Coursolle***
3701 Wilshire Boulevard, Suite 315
Los Angeles, CA 90010
(310) 736-1652
coursolle@healthlaw.org

**Catherine McKee***
1512 E. Franklin Street, Suite 110
Chapel Hill, NC 27541
(919) 968-6308
mckee@healthlaw.org

**LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.**

By: */s/ Omar Gonzalez-Pagan*
**Omar Gonzalez-Pagan***
120 Wall Street, 19th Floor
New York, NY 10005
(212) 809-8585
ogonzalez-pagan@lambdalegal.org

**Carl S. Charles***
1 West Court Square, Suite 105
Decatur, GA 30030
(404) 897-1880
ccharles@lambdalegal.org

**SOUTHERN LEGAL COUNSEL, INC.**

By: */s/ Simone Chriss*
**Simone Chriss** (Fl. Bar No. 124062)
**Chelsea Dunn** (Fl. Bar No. 1013541)
1229 NW 12th Avenue
Gainesville, FL 32601
(352) 271-8890
Simone.Chriss@southernlegal.org
Chelsea.Dunn@southernlegal.org

**FLORIDA HEALTH JUSTICE PROJECT**

By: */s/ Katy DeBriere*
**Katy DeBriere** (Fl. Bar No. 58506)
3900 Richmond Street
Jacksonville, FL 32205
(352) 278-6059
debriere@floridahealthjustice.org

* *Admitted pro hac vice.*

**CERTIFICATE OF WORD COUNT**

According to Microsoft Word, the word-processing system used to prepare this Reply, there are 3191 words contained within the Reply.

*/s/ Jennifer Altman*
Jennifer Altman

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 7, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

*/s/ Jennifer Altman*
Jennifer Altman
