UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

AUGUST DEKKER, et al.,

    Plaintiffs,

v.                                          Case No. 4:22-cv-00325-RH-MAF

JASON WEIDA, et al.,

    Defendants.
_____/

### DEFENDANTS' MOTION FOR RULE 35 EXAMINATIONS OF PLAINTIFFS, SUSAN DOE AND K.F., AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Rule 35(a) of the Federal Rules of Civil Procedure, Defendants, INTERIM SECRETARY WEIDA and FLORIDA AGENCY FOR HEALTH CARE ADMINISTRATION, by and through undersigned counsel, hereby move for an order directing Plaintiffs, SUSAN DOE and K.F., to submit to mental examinations before Defendants' expert, Geeta Nangia, M.D. The examinations would take place remotely at a mutually agreed upon time. Defendants would bear the cost of the examination and otherwise comply with Rule 35.

**DISCUSSION**

I.  **Defendants are entitled to a Rule 35 order because the Plaintiffs have placed their mental health "in controversy" and Defendants' have "good cause" to examine their mental health.**

Rule 35(a)(1) vests district courts with authority to "order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). "The purpose of a Rule 35 examination is to put both parties on equal footing with respect to the plaintiff's condition." *La Shanta Hacking v. United States*, 2021 U.S. Dist. LEXIS 71275, *7 (S.D. Fla. Feb. 15, 2021) (citing *Lerer v. Ferno-Washington, Inc.*, 2007 U.S. Dist. LEXIS 84347, 2007 WL 3513189, at *1 (S.D. Fla. Nov. 14, 2007)). Compulsory medical examinations "are often necessary, even when the plaintiff's medical records are available, because there are few, if any, acceptable substitutes for a personal physical examination." *Funez v. Wal-Mart Stores E., LP*, 2013 U.S. Dist. LEXIS 3196, 2013 WL 123566, at *7 (N.D. Ga. Jan. 9, 2013) (citation omitted).

To obtain an order under Rule 35, a party must make a motion and show "good cause." Fed. R. Civ. P. 35(a)(2)(A).  This requires an affirmative showing that the mental or physical condition is "really and genuinely" in controversy and that good cause exists for each particular examination. *Robinson v. Jacksonville Shipyards, Inc.*, 118 F.R.D. 525, 527 (M.D. Fla. 1988) (citing *Schlagenhauf v.*

2

*Holder,* 379 U.S. 104, 118 (1964))). "Rule 35(a) is to be construed liberally in favor of granting discovery." *Cody v. Marriott Corp.*, 103 F.R.D. 421, 422 (D. Mass. 1984). *See also, Eckman v. Univ. of Rhode Island,* 160 F.R.D. 431, 433 (D.R.I. 1995) (recognizing same and ordering mental examination); *Schlagenhauf*, 379 U.S. at 114 (construing Rule 35 under "the basic premise that the deposition-discovery rules are to be accorded a broad and liberal treatment to effectuate their purpose that civil trials in the federal courts no longer need be carried on in the dark") (internal quotation marks and citations omitted); *London v. C.R. England, Inc.*, 2006 U.S. Dist. LEXIS 103339, *2 (N.D. Ga. 2006) ("To facilitate discovery Rule 35(a) should be liberally construed in favor of granting discovery.").

Courts routinely order mental examinations in a wide variety of cases. *E.g.*, *Bovey v. Mitsubishi Motor Mfg. of Am., Inc.*, No. 00-402, 2002 U.S. Dist. LEXIS 5701 (C.D. Ill. Apr. 3, 2002) (ordering mental examination because the plaintiff-employee's alleged emotional distress damages from employment discrimination were a component of her asserted damages, even though employee and employee's treating mental health care providers had previously been deposed); *Jackson v. Entergy Operations, Inc.*, U.S. Dist. LEXIS 752, *1 (E.D. La. Jan. 27, 1998) (ordering mental examination even though the plaintiff-employee offered her own treating physicians' records as an alternative source of evidence); *Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 609 (C.D. Cal. 1995) ("Because the

3

mental examination provides one of the few opportunities for a defendant to have access to a plaintiff, and the only opportunity for a defendant to have a plaintiff examined by defendant's expert, some preference should be given to allowing the examiner to exercise discretion in the manner and means by which the examination is conducted.").

Here, as in the above cases, Rule 35(a)'s criteria are satisfied. Both Plaintiffs have placed their mental health in controversy. Plaintiffs allege that Susan Doe, the 12-year-old daughter of Jane and John Doe, has been diagnosed with gender dysphoria (ECF-1, ¶¶ 191, 200), that the Does "worry about the … mental health consequences" of the challenged rule (*id*. at ¶203) and that Susan "might engage in self-harm." *Id.* at ¶ 205. Similarly, Plaintiffs allege that K.F., the 12-year-old son of Jade Ladue and stepson of Josh Ladue, has been diagnosed with gender dysphoria (*id*. at ¶ 225), "has always dealt with anxiety," (*id*. at ¶ 240), that Jade and Joshua "are incredibly worried about the … mental health consequences" of the challenged rule (*id.* at ¶ 243), and that they worry about the "unthinkable happening" if K.F.'s hormone treatment is stopped. *Id*. at ¶ 244. Defendants also have good cause to conduct the mental examinations. Defendants are entitled to confirm whether or not Plaintiffs suffer from gender dysphoria. Defendants also are entitled to explore whether Plaintiffs have undergone appropriate mental health treatment. And Defendants are entitled to explore

4

whether comorbidities, such as depression and anxiety, may be the root cause of Plaintiffs' emotional distress, and whether reversal of their gender affirming treatment will negatively impact their mental health as alleged. As Dr. Laidlaw discussed in his report of October 2, 2022 (ECF-53-20), disentangling other conditions from gender dysphoria can help establish whether these Plaintiffs would benefit from or potentially be harmed by the excluded treatments—in this case, puberty blockers and cross-sex hormones. Likewise, the mental examinations would assess whether the Plaintiffs would be harmed by the excluded coverage, such as the potential for suicidality, as alleged in the Complaint.

**II.     Proposed Examination**

Defendants propose the following as to the mental health examinations which are necessary given the allegations at issue:

- Time: to be determined based on mutual agreement between the parties, but not later than February 7, 2023.
- Manner: The examinations would take place remotely in a manner consistent with generally accepted psychological methods of evaluation and testing. The process will consist of an initial interview that will last approximately 2 hours.
- Scope:  A comprehensive psychiatric evaluation to address gender dysphoria and desire to transition medically or surgically would include a full history of when gender dysphoria began, past and present symptoms (clinical scales may

5

be used that are appropriate measures for GD), psychiatric history, developmental history, medical history, family history, social history including but not limited to history of trauma, substance use, and discussion about peer groups and review of stressors, discussion of familial stability as it pertains to patient's support system, past psychiatric care and treatment, as well as mental status examination, and discussion surrounding understanding of consent for medical gender transition.

## II.  Dr. Nangia's qualifications

The examinations would be performed Geeta Nangia, M.D. Dr. Nangia is a Child and Adolescent Psychiatrist in Greenville, S.C., and has over 20 years of experience in the medical field.  She is a Board-Certified Child and Adolescent Psychiatrist and Adult Psychiatrist. She obtained her B.A. in Biochemistry and Molecular Biology from Boston University and her M.D. from Boston University School of Medicine. Her training in Psychiatry and Child and Adolescent Psychiatry was at The Medical University of South Carolina, where she completed fellowship training in 2007.  She has been active in teaching medical students and residents throughout her career.

Dr. Nangia has worked in the field of Child and Adolescent Psychiatry as a community psychiatrist in a wide range of settings over the last fifteen years, providing comprehensive psychiatric services for children and families. She chose

to work as a community psychiatrist because she desired to evaluate and treat a wide range of mental health disorders, and wanted to see young people in the context of their families and their community systems (i.e. schools, extracurriculars, local supports). She has worked in both rural, urban, and suburban areas, in outpatient and inpatient settings, as well as in residential care.  She has been very active in school consultations and advocating on a community level for mental health accommodations for youth in school.  She has worked toward providing access to mental health care for youth who are underfunded, and who lack services due to barriers of access and cost. She has always provided psychiatric evaluations and psychotherapy and medication management for children and youth, as well as providing family therapy.

Dr. Nangia's curriculum vitae is attached as Exhibit A to this motion.

## **CONCLUSION**

For all of the foregoing reasons, Defendant respectfully requests that the Court grant this Motion and order Plaintiffs, Susan Doe and K.F., to submit to an mental examination before Dr. Nangia  at a mutually agreeable date and time.

7

        Respectfully submitted by:

        */s/ Mohammad O. Jazil*
        Mohammad O. Jazil (FBN: 72556)
        Gary V. Perko (FBN: 855898)
        Michael Beato (FBN: 1017715)
        Holtzman Vogel Baran Torchinsky
         & Josefiak PLLC
        119 S. Monroe St. Suite 500
        Tallahassee, FL 32301
        mjazil@holtzmanvogel.com
        Phone No.: (850) 274-1690
        Fax No.: (540) 341-8809

Dated: January 17, 2023    *Counsel for Defendants Secretary Weida and Florida Agency for Healthcare Administration*

## LOCAL RULE 7.1(B) CERTIFICATION

Pursuant to Local Rule 7.1(B), the undersigned certifies that he conferred with counsel for the parties on September 13, 2022. Plaintiffs oppose the motion.

/s/ *Mohammad O. Jazil*
Mohammad O. Jazil

## LOCAL RULE 7.1(F) CERTIFICATION

The undersigned certifies that this memorandum contains 1,401 words, excluding the case style and certifications; and it complies with the size and font requirements in the local rules.

/s/ *Mohammad O. Jazil*
Mohammad O. Jazil

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2023, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

/s/ *Mohammad O. Jazil*
Mohammad O. Jazil.