IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| AUGUST DEKKER, *et al.*,<br><br>     *Plaintiffs*,<br><br>  v.<br><br>JASON WEIDA, *et al.*,<br><br>     *Defendants*. | Case No. 4:22-cv-00325-RH-MAF |

**PLAINTIFFS' MOTION TO COMPEL PRODUCTION
OF DOCUMENTS AND FOR EXPEDITED BRIEFING AND RULING**

Pursuant to Fed. R. Civ. P. 37(a)(3)(b) and N.D. Local Rs. 7.1(L) and 26.1, Plaintiffs move this Court for an order compelling Defendants to produce documents in response to Plaintiffs' Requests for Production, and for an expedited briefing schedule and ruling on this Motion. As grounds, Plaintiffs state:

1. This lawsuit challenges Defendants' adoption of Fla. Admin. Code R. 59G-1.050(7) (the "Challenged Exclusion"), which prohibits Medicaid coverage for medically necessary treatments for gender dysphoria.

2. Plaintiffs are transgender Medicaid recipients diagnosed with gender dysphoria who for years received Medicaid coverage of medically necessary treatment for their respective gender dysphoria diagnoses. The Challenged

1

Exclusion took away that coverage, resulting in the denial of access to necessary medical care, and causing significant physical and emotional harm to Plaintiffs and other transgender Medicaid recipients across Florida.

3.     As the Court is aware, there is a very tight discovery schedule in this case given the impact the Challenged Rule has on the Plaintiffs' well-being. Plaintiffs have proceeded diligently with discovery, serving Requests for Production on Defendants on November 17, 2022.   Defendants' responses were due on December 22.  Defendants moved for additional time to respond to these requests but the Court denied that request.  (ECF 75.)  Defendants served their written responses on December 22.

4.     Defendants first produced documents on January 6, 2023, nearly three weeks after the response deadline.  Their initial production was wholly deficient, and additional documents produced on January 13 did not cure the existing deficiencies.

5.     As outlined below, Defendants' now-complete production unilaterally narrows many of the requests and/or the time periods and lodges many baseless boilerplate and general objections.  Moreover, Defendants failed to provide a privilege log until January 13, 2023, preventing Plaintiffs from filing the instant motion sooner.  This privilege log contains 583 withheld documents and is rife with

deficiencies. (Ex. 3.)

6.      Plaintiffs' counsel have attempted to confer with Defendants' counsel on these issues but to no avail.  Specifically, counsel met on December 30, 2022, January 5, 2023, and January 10, 2023 to confer about Defendants' deficient discovery responses. Plaintiffs' counsel also sent correspondence specifying the above-noted insufficiencies on December 22, 2022 and January 4, 5 and 9, 2023. (*See* Ex. 1.)  The parties exchanged additional emails and letters on January 10, 11 and 12, 2023. (*See* Ex. 2.)

7.      Pursuant to this Court's Amended Scheduling Order (ECF 71), fact-discovery ends on February 7, 2023.  The deadline for dispositive motions is April 7, 2023.  It is improper for Defendants to continue to delay the production of documents that are both relevant and proportional to the needs of the case.  Notably, Defendants fail to articulate how the specific requests are not relevant or proportional to the needs of the case. Nor do they establish any undue burden in producing the information requested.

8.      This motion addresses the following deficiencies: (1) Defendants' unilateral limitation on the timeframe for Plaintiffs' requests to a single year, from January 1, 2022 to present; (2) Defendants' refusal to search agency communications using Plaintiff's search terms, which were set forth clearly in a single request; (3)

Defendants' insufficient response to a request for documents evidencing AHCA's criteria for coverage for gender dysphoria treatments prior to the Challenged Exclusion; (4) Defendants' refusal to produce documents evidencing their assessment of these treatments prior to adopting the Challenged Exclusion; and (5) Defendants' incorrect interpretation of the work product privilege to withhold numerous discoverable and non-privileged documents.

9.     Plaintiffs are prejudiced by each of these deficiencies in Defendants' production.  Plaintiffs have been forced to prepare for depositions without access to necessary, discoverable information.  This is particularly problematic for the Rule 30(b)(6) deposition of AHCA's agency representative, presently scheduled for February 2, 2023.

10.     Because time is of the essence, Plaintiffs seek an expedited briefing schedule and ruling from the Court, and note that further delay in the production may necessitate a motion to extend the deadline for fact discovery currently set for February 7, 2023 so that it is coextensive with expert discovery.

**WHEREFORE**, Plaintiffs Request that the Court grant their motion to compel the production of documents, impose an expedited briefing schedule, and issue a ruling in an expedited manner.

## MEMORANDUM OF LAW

### I.   LEGAL STANDARD

Rule 26 entitles Plaintiffs to reasonable discovery of materials and evidence relevant to the issues raised in their Complaint.  *See* Fed. R. Civ. P. 26(b)(1) (2015); *see GHMC Holding Co., Inc. v. Sickle*, No. 3:14cv614, 2016 WL 7757522, at *2 (N.D. Fla., Feb. 23, 2016).  As a general matter, the purpose of discovery under the Federal Rules of Civil Procedure "is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore[,] embody a fair and just result."  *Pitts v. Francis*, No. 5:07cv169, 2008 WL 2229524, at *1 (N.D. Fla. May 28, 2008).  Its purpose is also to allow each party to obtain information to best prepare for their respective cases.  *DeepGulf, Inc. v. Moszkowski*, 330 F.R.D. 600, 605 (N.D. Fla. 2019).  The information "need not be admissible in evidence" to be discoverable.  *See* Fed. R. Civ. P. 26(b)(1); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351-52 (1978).  Taken together, Rules 26(g)(1)(A) and 34(1)(1), "place a burden on a party and the party's counsel to ensure that a reasonable and complete search is conducted and that *all* responsive material is either produced or withheld under a proper objection."  *Waddell v. HW3 Inv. Grp., LLC*, No. 5:21cv55, 2021 WL 9781801, at *2 (N.D. Fla. Dec. 23, 2021) (internal

citation and quotations marks omitted) (emphasis added).

Motions to compel discovery brought pursuant to Rule 37 are committed to the sound discretion of the trial court. *Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984). Boilerplate, shotgun-style general objections are not allowed. *Covington v. Sailormen Inc*., 274 F.R.D. 692, 693 (N.D. Fla. 2011); *see* N.D. Local Rule 26.1(c). "[T]he party who seeks to exclude discovery as irrelevant bears the burden of demonstrating that it is indeed irrelevant." *Bartram, LLC v. Landmark Am. Ins. Co.*, No. 1:10cv00028, 2011 WL 528206, at *3 (N.D. Fla. Feb. 4, 2011). Moreover, "where a party objects that the burden of the request for production is disproportionate to the needs of the case, the objecting party bears the burden of demonstrating that the request is unreasonable or unduly burdensome." *Vision Constr. Ent., Inc. v. Argos Ready Mix, LLC*, No. 3:15cv534, 2017 WL 10084359, at *2 (N.D. Fla. June 28, 2017) (cleaned up); *see* Fed. R. Civ. P. 33(b)(4) and 34(b)(2)(B); *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985) (citing *Josephs v. Harris Corp*., 677 F.2d 985, 992 (3d Cir. 1982)) ("the party resisting discovery 'must show specifically how…each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive.'").

## II.    REQUESTS AT ISSUE

Pursuant to Local Rule 26.1(d), Plaintiffs set forth the requests and responses

at issue verbatim.  Where the response is identical for multiple requests, Plaintiffs

quote it once.  The quoted responses are from Defendants' Amended Responses to

Plaintiffs' Requests for Production served on January 6, 2023.

As shown below, Defendants present the same boilerplate objections to nearly

all of Plaintiffs' requests despite such objections being wholly improper.  *See*

*F.D.I.C. v. Brudnicki*, 291 F.R.D. 669, 674 n.4 (N.D. Fla. 2013) ("to raise boilerplate

objections and then produce documents subject to the objection" is prohibited by the

local rules).  The burden is on Defendants to demonstrate with specificity how the

objected-to requests are unreasonable, but despite multiple conferences between the

parties, they have not done so, instead merely standing on their objections.  *See, e.g.*,

*Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 695 (S.D. Fla. 2007); *Dunkin'*

*Donuts Inc. v. Mary's Donuts, Inc.*, No. 01cv392, 2001 WL 34079319, at \*3 (S.D.

Fla. Nov. 1, 2001); *Rossbach v. Rundle*, 128 F.Supp. 2d 1348, 1354 (S.D. Fla. 2000).

## Plaintiffs' Request Nos. 3-5, 8, 10, 11, 13-15, 17, 25-26, 41-43, 52, 54-55

**3:** All Communications between Defendants and the Florida Department of Health, including Surgeon General Joseph Ladapo, related to the guidance titled "Treatment of Gender Dysphoria for Children and Adolescents" released on April 20, 2022[.]

**4:** All Communications between Defendants and the office of Governor Ron DeSantis related to the guidance referenced in Request No. 3 above, a copy of which is attached hereto as Exhibit 1.

**5:** All Communications related to the letter from Secretary Simone Marstiller to AHCA Deputy Secretary for Medicaid Tom Wallace

requesting that the AHCA determine whether the treatments addressed in the Florida Department of Health's Guidance were "consistent with the generally accepted professional medical standards and or experimental or investigational." A copy of the letter attached hereto as Exhibit 2.

**8:** All Documents relating to any steps that Defendants undertook to ensure that Medicaid recipients diagnosed with Gender Dysphoria continued to receive treatment for Gender Dysphoria at the time the Challenged Exclusion became effective.

**10:** All draft and final correspondence from Defendants to Medicaid recipients relating to the Challenged Exclusion.

**11:** All draft and final notices to Medicaid recipients, including but not limited to Notices of Adverse Benefit Determination, Notices of Plan Appeal Resolution, and Notices of Outcome, relating to the services identified in the Challenged Exclusion.

**13:** All Communications between Defendants and any Person who participated in promulgating the GAPMS Memo by advising Defendants, conducting research, or drafting, editing, or reviewing the GAPMS Memo.

**14:** All Communications between Defendants and each GAPMS Memo attachment author, including Romina Brignardello-Petersen; Wojtek Wiercioch; James Cantor; Quentin Van Meter; Patrick Lappert; and G. Kevin Donovan.

**15:** All Documents related to testimony given to, considered by, or relied upon by Defendants in connection with the promulgation of the Challenged Exclusion.

**17:** All Documents relating to Defendants' contacting or consulting any Person for guidance, recommendations, or assessments relevant to the development of the Challenged Exclusion.

**25:** All Documents reflecting policies, procedures, or practices related to the implementation, application, or enforcement of the Challenged Exclusion.

**26:** All Communications relating to the implementation, enforcement, and/or impact of the Challenged Exclusion.

**41:** All Documents related to the planning, coordination, and content of the July 8 Hearing.

**42:** All Documents related to attendance, participation in and/or public comments regarding the Proposed Rule with, or regarding, the Christian Family Coalition, the Florida Citizens Alliance, Warriors of Faith, Protect our Children Project, and individuals Chloe Cole, Sophia Galvin, and Anthony Verdugo.

**43:** All Documents related to the creation, purpose, and/or distribution of materials reflecting the "Let Kids Be Kids" slogan and graphics. (Examples attached hereto as Exhibit 3.)

**52:** All Communications between Defendants and any of the individuals identified in Defendants' Initial Disclosures as individuals likely to have discoverable information supporting Defendants' Claims or Defenses.

**54:** All Documents which Defendants considered, relied upon, or intend to rely upon, in support of their admissions and/or denials of any of the allegations contained in the Complaint.

**55:** All Documents which Defendants considered, relied upon, or intend to rely upon, in answering each Interrogatory and each Request for Admission in this Action.

## **Defendants' Response to Request Nos. 3-5, 8, 10, 11, 13-15, 17, 25-26, 41-43, 52, 54-55:**

Defendants object to this request. The requested documents may be subject to the attorney-client privilege, the work product doctrine, and prohibitions on disclosing healthcare information. The time period of the request, between January 1, 2015 to present, is overly broad, in that

Rule 59G-1.050(7) was promulgated[1] in 2022.

Defendants will produce all non-privileged responsive documents on January 6, 2023. The time period of these documents is between January 1, 2022 to present.

**Plaintiffs' Request Nos. 6-7, 16:**

**6:** All reports and data collected or gathered, regardless of whether prepared by or on behalf of Defendants, and regardless of whether presented, reviewed, considered, or relied upon by Defendants, in connection with the development and promulgation of the GAPMS Memo.

**7:** All reports and data collected or gathered, regardless of whether prepared by or on behalf of Defendants, and regardless of whether presented, reviewed, considered, or relied upon by Defendants, in connection with the development and promulgation of the Challenged Exclusion.

**16:** All Documents and information relied upon by Defendants in considering whether the services identified in the Challenged Exclusion were consistent with generally accepted professional medical standards, including, the information identified in Fla. Admin. Code R. 59G-1.035(4).

**Defendants' Response to Request Nos. 6-7, 16:**

Defendants object to this request as overbroad and unduly burdensome. "All reports" and "all" "data," "presented, reviewed," and "considered" by Defendants related to gender dysphoria (the subject of the GAPMS Memo) presents too expansive of a list of documents. That said, Defendants made a concerted effort to review scientific studies concerning the issue. The GAPMS Memo itself endeavors to collect a list of the material reviewed as part of the process. That information is

---

[1] For Request Nos. 3-5, the response references the DOH guidance titled "Treatment of Gender Dysphoria for Children and Adolescents" instead of Rule 59G-1050(7); for Request. No. 43, the response references the "Let Kids be Kids" slogan materials instead of Rule 59G-1050(7).

publicly available: https://ahca.myflorida.com/letkidsbekids/docs/
AHCA_GAPMS_June_2022_Report.pdf.

## Plaintiffs' Request No. 19

**19:** All Communications between Defendants and Florida Medicaid
managed care plans and other utilization review entities relating to
Medicaid coverage of Gender Dysphoria.

## Defendants' Response to Request No. 19:

Defendants object to this request. The requested documents may be
subject to the attorney-client privilege, the work product doctrine, and
otherwise contain confidential information. The time period of the
request, between January 1, 2015 to present, is overly broad, in that
Rule 59G-1.050(7) was promulgated in 2022.

Defendants will produce all non-privileged responsive documents on
January 6, 2023. Consistent with the meet-and-confer discussions on
January 5, 2023 and December 30, 2022, Defendants will further
investigate this request and will produce any other responsive
documents, if any, by January 13, 2023. The time period of these
documents is between January 1, 2022 to present.

## Plaintiffs' Requests Nos. 21 and 24:

**21:** All instructions, scripts, trainings, policies, procedures, or other
guidance concerning the application of the medical necessity standard
to the coverage of Gender Dysphoria treatment for Medicaid recipients.

**24:** All Documents reflecting Defendants' criteria existing prior to
August 21, 2022, for Medicaid authorization and coverage for
treatments and services for Gender Dysphoria, including but not limited
to: puberty blockers, hormones and hormone antagonists, sex
reassignment surgeries, and any other procedures that alter primary or
secondary sexual characteristics.

## Defendants' Response to Request Nos. 21 and 24:

The information that this request seeks is publicly available:
https://ahca.myflorida.com/Medicaid/review/General/59G_1010_Defi

nitions.pdf.

**Plaintiffs' Request No. 33**

All Communications containing the term "transgender," "Gender Dysphoria," "gender reassignment," "sexual reassignment," gender-affirming," "gender affirming," "gender transition," "medical transition," "social transition," transsexual," or "sex change" in the subject, the body, or any attachments, to or from (including ccs and bccs) current or then-current AHCA employees.

**Defendants' Response to Request No. 33:**

Defendants object to this request. The requested documents may be subject to the attorney-client privilege and the work product doctrine. The time period of the request, between January 1, 2015 to present, is overly broad, in that Rule 59G-1.050(7) was promulgated in 2022. Defendants further object to this request as overly broad and unduly burdensome because it would require electronic searches of all emails for the occurrence of specific words or phrases which are commonly used. Defendant AHCA is a large state agency that maintains a massive number of emails. Defendants' system cannot process collections which generate an excessive number of results. For instance, the terms "gender-affirming" and "gender affirming" alone generated collections of 17.613 GB and 18.895 GB, respectively, for the year 2022.

Defendants will produce all non-privileged responsive documents on January 6, 2023. The time period of these documents is between January 1, 2022 to September 7, 2022, the date Plaintiffs' complaint was filed. Defendants will use the search term "gender dysphoria" over this time period.

**Plaintiffs' Requests Nos. 35- 39**

**35:** All Documents regarding any report, research, or analysis by or on behalf of Defendants and/or the State of Florida on whether the Challenged Exclusion complies with the Medicaid Act's Comparability requirements (42 U.S.C. § 1396a(a)(10)(B)(i); 42 C.F.R. § 440.230(b), (c)).

**36:** All Documents regarding any report, research, or analysis by or on behalf of Defendants and/or the State of Florida on whether the Challenged Exclusion complies with the Medicaid Act's Early and Periodic Screening, Diagnostic and Treatment Services requirements (42 U.S.C. §§ 1396a(a)(10)(A), 1396a(a)(10)(43), 1396d(a)(4)(B), 1396d(4)).

**37:** All Documents regarding any report, research, or analysis by or on behalf of Defendants and/or the State of Florida on whether the Challenged Exclusion complies with Section 1557 of the Affordable Care Act's prohibition on unlawful discrimination on the basis of sex (42 U.S.C. § 18116).

**38:** All Documents regarding any report, research, or analysis by or on behalf of Defendants and/or the State of Florida on whether the Challenged Exclusion might violate the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution.

**39:** All Documents regarding any report, research, or analysis by or on behalf of Defendants and/or the State of Florida on whether the Challenged Exclusion might violate any state or federal anti-discrimination laws.

## Defendants' Response to Requests Nos. 35-39:

Defendants object to this request. The time period of the request, between January 1, 2015 to present, is overly broad, in that Rule 59G-1.050(7) was promulgated in 2022. In addition, the request seeks documents from Defendants concerning Defendants' analysis of whether it has complied with federal law. Any such analysis would have been within the purview of the Defendants' General Counsel and is therefore, by its very nature, is subject to the attorney-client privilege and the work product doctrine. Any such documents—should they exist—would be listed on Defendants' privilege log, which they will provide during the week of January 9, 2023. The time frame would be from January 1, 2022 to September 7, 2022, the date Plaintiffs' complaint was filed.

## Plaintiffs Request No. 40:

All Documents demonstrating the medical efficacy of the treatments identified in the Challenged Exclusion including any analysis, research, interviews, studies or other materials that Defendants reviewed or relied upon before implementing the Challenged Exclusion.

**Defendants' Response to Request No. 40**:

Please refer to the response to Request No. 6. This will be further supplemented with Defendants' expert disclosures, which are due consistent with the Court's scheduling order.

**Plaintiffs' Request No. 47**:

All Documents reviewed, considered, or relied upon by expert witnesses retained by Defendants or witness(es)/Person(s) who provided a declaration on Defendants' behalf in connection with this action.

**Defendants' Response to Request No. 47**:

Defendants object to this request. The phrase "[a]ll Documents reviewed, considered, or relied upon" is overly broad. The documents used to formulate expert opinions were previously disclosed to Plaintiffs as part of the reports. See ECF No. 49. The experts were also provided the GAPMS Memo, which itself references many studies and scientific papers that are equally accessible to Plaintiffs, and the materials Plaintiffs provided with their motion for preliminary injunctions. There are no documents responsive to the lay witnesses who provided declarations on Defendants' behalf.

## III. DEFENDANTS FAIL TO MEET THEIR DISCOVERY OBLIGATIONS

### A. Imposition of Unreasonable Time Limitations (Request Nos. 3-5, 8, 10, 11, 13-15, 17, 19, 25-26, 33, 41-43, 52, 54-55)

For many of Plaintiffs' requests, Defendants refuse to even search for responsive documents that existed before January 1, 2022. Defendants' reasoning

14

is that the Challenged Exclusion and related guidance issued by various Florida agencies were promulgated in 2022 and thus no relevant documents could possibly have existed any time before January 1, 2022.

The fact that the Challenged Exclusion was implemented in 2022 is not a basis to limit the production to that year alone. Plaintiffs are entitled to discover when discussions or diligence regarding the Challenged Exclusion began and the nature of those discussions. Defendants' own privilege log strongly suggests that such diligence was underway before 2022. (*See* Ex. 3, rows 2-5.) And, as noted above, ACHA has covered gender-affirming care for Medicaid recipients long before 2022. Prior to issuing coverage, AHCA presumably would have (and appears to have) reviewed and documented the experimental or investigational nature of gender-affirming care. Defendants' stated objection bears no relevance to the discoverability of documents; they have failed to articulate any reasonable basis for narrowing the scope in such an unreasonable manner. *Cf. F.D.I.C.*, 291 F.R.D. at 678 (approving a ten-year period for discovery).[2]

---

[2] During the parties' meet-and-confer discussions, Defendants' counsel reasoned that Defendants had already completed their document searches and that it would be too burdensome for Defendants to replicate those searches as to earlier years. This burden is entirely self-imposed, as counsel could have looked for documents from earlier years during their initial searches rather than gamble that the Court would agree that this case is only about AHCA in 2022.

Similarly, Defendants' internal communications, communications with its Managed Care Plans,[3] and communications with Medicaid recipients about the services and treatments at issue before 2022 are directly relevant to whether the care at issue is, indeed, medically necessary or otherwise experimental.  (Request Nos. 10, 11, 33, *supra*, at 9-11, 13.)   Emails or other information in Defendants' possession created prior to 2022 that indicate that the now-excluded treatments are safe, effective, and medically necessary to treat gender dysphoria would certainly be relevant and persuasive.

Defendants even object to producing documents that they rely upon in support of their admissions, denials, and responses to interrogatories that were generated before 2022.  (Request Nos. 54, 55, *supra*, at 10-11.)  But certainly, this information is directly relevant given they themselves rely on it.  The "requested information is relevant to Plaintiff[s'] claims, and its production is not unduly burdensome." *Sec. Pest Control, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 339 F.R.D. 303, 311 (M.D. Ala. 2020) (requiring production of documents supporting Defendant's denials of Plaintiff's Requests for Admission).

Defendants narrow time limit is particularly unreasonable given the nature of

---

[3] Managed care plans are entities that contract with AHCA to provide covered services to people enrolled in Medicaid. See Fla. Stat. 409.962(10).

the agency determinations at issue in this case.  The GAPMS process that Defendants

relied on to assess and issue the Challenged Exclusion can take as much as two years,

(Ex. 4, at 2), meaning the process could have started as early as 2020.  Additionally,

in 2016, AHCA engaged in an earlier GAPMS process related to the coverage of

"Puberty Suppression Therapy," which is one of the services subject to the

Challenged Exclusion (Ex. 5.)  And in the 2016 GAPMS memo, AHCA concluded

that "the Agency cannot categorically exclude this treatment."  (*Id.*)  At a minimum,

a timeline beginning in 2015 is reasonable in light of AHCA's own actions.

Defendants further argue that this time frame is overly burdensome.  But they

have failed to provide any specific explanation, let alone an affidavit, as to why it is

unreasonable or unduly burdensome to produce documents related to and

communications with third parties involved in the GAPMS process and rule

promulgation process outside of this one year time period.  (Requests 3-5, 8, 13-15,

17, 25, 26, 41-43, 52, *supra* at 8-11.)  *See Kennedy v. McKnight*, No. 17cv14041,

2017 WL 4654446, at *1 (S.D. Fla. Oct. 17, 2017 (requiring an explanation "with

particular and specific demonstration of fact and cannot rely on simply conclusory

assertions about the difficulty of complying with a discovery request"); *Premier*

*Anesthesia, LLC v. Bethesda Mem'l Hosp., Inc.*, No. 08cv80498, 2009 WL

10667475, at *1 (S.D. Fla. Feb. 4, 2009) (requiring proof through an affidavit);

*Coker v. Duke & Co.*, 177 F.R.D. 682, 686 (M.D. Ala. 1998) ("A mere showing of burden and expense is not enough."). Defendants' conclusory objection is insufficient.

**B. Refusal to Search Plaintiffs' Terms (Request No. 33)**

While Request No. 33 sets forth several search terms to be applied to Defendants' communications, Defendants only agree to search one of those terms: "gender dysphoria." Defendants refuse to search "transgender," "gender reassignment," "sexual reassignment," "gender-affirming," "gender affirming," "gender transition," "medical transition," "social transition," transsexual," or "sex change." (*Supra* at 13.) Defendants justify their unilateral gutting of Request No. 33 by reasoning that the terms "transgender," "gender-affirming," and "gender affirming," and those terms alone, yield an excessive number of results in their systems. Defendants remain steadfast in this position despite multiple attempts by Plaintiffs to assist Defendants in making this search manageable, including Plaintiffs' concessions to narrow the search to a specific list of custodians and Plaintiffs' attempts to schedule a meeting between the parties' respective IT representatives. (Ex. 1, at 5-6).[4]

---

[4] Defendants' correspondence dated January 12, 2023 indicates that they will conduct a terms and connector search if Plaintiffs provide search terms and custodians. The letter overlooks the fact that Plaintiffs did narrow their request for

Defendants' position as to Request No. 33 plainly violates not only the letter of the federal discovery rules but their spirit as well.  As an initial matter, for each search term Defendants believe is overly burdensome, they must point to evidence supporting their objection.  *L–3 Commc'ns Corp. v. Sparton Corp.*, 313 F.R.D. 661, 670 (M.D. Fla. 2015).  And, "if asked, Defendants must offer specific suggestions for narrowing the offending search terms in a way that addresses their concerns while still retrieving as many of the relevant documents targeted by the disputed search terms as possible." *Id.*

Despite Plaintiffs' efforts to find ways to make the search for their terms manageable, Defendants have failed "to confer in good faith with opposing counsel in an effort to resolve or at least narrow the scope of a discovery dispute" and have instead unilaterally refused to conduct a search.  *Id.*  Defendants have provided *no evidence* that performing these searches is unreasonable or that they yield an unduly burdensome volume of material, and Defendants have failed to otherwise articulate any legitimate basis in refusing the requested search.

### C. Inadequate Explanation for Nonproduction of Gender Dysphoria Coverage Criteria (Request Nos. 21 and 24)

---

the search terms to a list of custodians (Ex. 1, at 5-6) and Defendants have not amended their Response or agreed to conduct a search using those custodians and search terms.

Documents demonstrating Medicaid's policies, procedures, and criteria regarding the services and treatments at issue in this case prior to the promulgation of the Challenged Exclusion are directly relevant to whether the care at issue is medically necessary or otherwise experimental. However, in response to Plaintiffs' request for all guidance on the medically necessary standard and its application to gender dysphoria, Defendants merely hyperlink Plaintiffs to the Florida Medicaid Definitions Policy, which sets forth a general definition for medically necessary. (Request No. 21, *supra* at 12-13 ["The information that this request seeks is publicly available."].) Defendants point to this same document in response to Plaintiffs' request for AHCA's criteria for coverage of treatments and services for Gender Dysphoria prior to the Challenged Exclusion. (Request No. 24, *supra* at 12-13.)

Defendants' response fails to explicitly state that no other responsive documents exist besides the Definitions Policy. Fortunately for Plaintiffs, there exists at least one relevant 2016 AHCA pharmacy coverage policy that provides the criteria for coverage of puberty suppression therapy, a copy of which was sent as an exemplar to AHCA's general counsel after the December 30, 2022, meet and confer. (Ex. 1, at 5.) This policy was included in the most recent production, but based on Defendant's evasive answer, Plaintiffs cannot be assured that all such policies have been searched for or produced.

Defendants' position here turns this case into "a game of blind man's bluff" instead of "a fair contest with the basic issues and facts disclosed to the fullest practicable." *See Odom v. Roberts*, 337 F.R.D. 359, 362 (N.D. Fla. 2020) (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682, 78 S. Ct. 983, 986–87 (1958)); *see also Pitts*, 2008 WL 2229524, at *2 ("An evasive or incomplete answer to a request for production is to be treated as a failure to answer.").

Defendants' failure to conduct a diligent search of AHCA's records falls short of the standard set by the Federal Rules of Civil Procedure. *See Waddell*, 2021 WL 9781801, at *2. Defendants have presented no objections to these Requests and thus any objections are waived. *See Pitts*, 2008 WL 2229524, at *2. Defendants must make a reasonable and complete search for the requested documents and produce all responsive materials.

### D. Refusal to Produce Documents Evidencing Defendants' Scientific Inquiry (Request Nos. 6-7, 16, 40, 47).

Through the GAPMS process and the Challenged Exclusion, Defendants have concluded that gender-affirming care is experimental and investigational. Plaintiffs seek the documents that Defendants reviewed that result in their reaching that conclusion, and Defendants respond by directing Plaintiffs to the GAPMS Memo, which "endeavors" to contain all such responsive information. (Request Nos. 6 and 7, *supra* at 11-12) (documents considered in promulgating the GAPMS Memo and

the Challenged Exclusion); No. 16, *supra* at 11-12 (documents relied upon in considering if gender-affirming care is consistent with generally accepted professional medical standards); No. 40, *supra* at 15 (documents demonstrating the medical efficacy of gender-affirming care); No. 47, *supra* at 15 (documents considered by the GAPMS Memo attachment authors).

Defendants' responses are problematic for two reasons.  First, the GAPMS Memo does not contain the actual sources upon which it relied; it only contains descriptions of some of those sources and a Works Cited page, in addition to the sham assessments included as attachments.  Defendants force Plaintiffs to undertake Defendants' discovery duties without an adequate explanation of why Defendants cannot produce these documents themselves.  Defendants' position here amounts to an "equally available" objection, which is not well taken in this Court.  *All. of Auto. Manufacturers, Inc. v. Jones*, No. 4:08cv555, 2014 WL 12848659, at *9 (N.D. Fla. Jan. 7, 2014) ("[C]ourts have unambiguously stated that this exact objection is insufficient to resist a discovery request.").  Defendants must produce these sources or explain why they cannot.[5]

Second, Defendants' position that the GAPMS Memo "endeavors" to reflect

---

[5] Defendants' position calls into question whether Defendants ever had copies of each document cited in the GAPMS Memo's Works Cited section before relying on the purported content of those documents.

all responsive information is a concession that the GAPMS Memo does not reflect the entire universe of medical information that Defendants and their experts considered regarding the efficacy of gender-affirming care.  Meanwhile, Defendants refuse to produce or identify this information and have not agreed to stipulate that no other responsive documents exist beyond those identified in the GAPMS Memo.[6] Plaintiffs' case here is that Defendants' process was wrong and reached the wrong scientific conclusion.  Thus, Plaintiffs are entitled to discover the details about how Defendants reached this conclusion, information which is very relevant to this case and should not be an undue burden to produce.  *See Sec. Pest Control, Inc.*, 339 F.R.D. at 311.

### E.  Improper Assertion of Privilege

#### 1)  Adequacy of Privilege Log

Defendants have produced a privilege log that is comprised of 583 entries that in most cases fail to provide sufficient information to allow Plaintiffs to assess the applicability of any privilege.  A privilege log is the starting point for asserting a claim of privilege, but this log should also "be supported by affidavit or other evidence identifying each document or communication claimed to be protected by

---

[6] Plaintiffs' Second Interrogatory Nos. 5 and 8 demanded that Defendants identify these same documents but Defendants again solely referred to the GAPMS Memo.

the privilege and setting forth sufficient facts to allow a judicial determination as to whether the particular communication or document is, in fact, privileged." *Purdee v. Pilot Travel Centers, LLC*, No. 4:07cv028, 2008 WL 11350099, at *1 (S.D. Ga. Feb. 21, 2008). The standard for testing the adequacy of the privilege log is "whether the descriptive portion of the log" establishes each element of the privilege or immunity that is claimed. *LeBlanc v. Coastal Mech. Servs., LLC*, No. 04cv80611, 2005 WL 8156080, at *7 (S.D. Fla. Mar. 22, 2005) ("the burden of the party withholding documents cannot be "discharged by mere conclusory or *ipse dixit* assertions").

For the vast majority of entries, Defendants support the applicability of privilege by providing a three-to-four-word summary of the contents in addition to the identities of the participants. (*See, e.g.*, Ex. 3, line 345 ["Email between General Counsel's office staff regarding board proposal."].) This is insufficient. *See Lincoln Nat'l Life Ins. Co. v. Biviano*, No. 09cv82447, 2011 WL 13108073, at *4 (S.D. Fla. Apr. 13, 2011) (rejecting privilege log that contained entries like "e-mail regarding claims process" and "letter regarding complaint and litigation"). Moreover, in most cases Defendants fail to provide identify or describe the attachments to the various emails, simply noting that an attachment to an email exists while repeating the verbatim description of the email's contents. Next, Defendants' log contains

numerous entries with placeholder or plainly inaccurate dates.  (*See, e.g.*, Ex. 3, line 584 [May 16, 2023 "Text message between Jason Weida and EOG General Counsel's Office regarding expert reports for ongoing litigation"].)  And there are four entries in the log where no privilege is asserted at all. (Ex. 3, rows 143-146.)

As such, Defendants fail to provide adequate information to as to each element of their privilege assertions, which prevents Plaintiffs from effectively challenging those assertions.   The Court should require that Defendants supplement their privilege log to address these deficiencies.

2)  Attorney-Client Privilege

The attorney-client privilege exists to protect confidential communications between client and lawyer made for the purpose of securing legal advice.  *In re Grand Jury Matter No. 91-01386*, 969 F.2d 995, 997 (11th Cir. 1992).  In order to claim attorney-client privilege, the proponent of the privilege must prove that what is sought to be protected is (1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.  *Diamond Resorts U.S. Collection Dev., LLC v. US Consumer Att'ys, P.A.,* 519 F. Supp. 3d 1184, 1197 (S.D. Fla. 2021).  No privilege attaches to a communication made in the presence of a third party, unless the agency exception applies.  *Id.* at 1198-99.  For the agency exception to apply, "the third

party's involvement must be reasonably necessary for the effective representation of the client." *Id.* at 1199 (internal quotations and citations omitted).

Defendants cite attorney-client privilege in many instances where it is inapplicable, such as emails between AHCA personnel, AHCA general counsel, and third parties, including individuals retained to serve as experts or professional witnesses in the rule promulgation process, and their attachments, which is distinct from any experts retained for the purposes of litigation.  (Ex. 3, rows 33, 38-39, 42, 45-50, 59-60, 63-64, 79, 94, 360-377, 380-382, 392, 398, 406.)  These third parties were used by AHCA to support the promulgation of the Challenged Exclusion, not to further the attorney-client relationship or for the purpose of giving legal advice. Put simply, the attorney-client privilege protects confidential communications related to the provision of legal advice; it does not protect communications with outside consultants who services are being rendered not to provide legal advice but rather their medical advice pertaining to gender dysphoria.  *See Andritz Sprout-Bauer, Inc. v. Beazer E., Inc.*, 174 F.R.D. 609, 633 (M.D. Pa. 1997) ("Only communications made for the express purpose of obtaining or giving legal advice are protected. The contents of the communication determine whether the privilege applies."); *see also In re Int'l Oil Trading Co., LLC*, 548 B.R. 825, 834 (Bankr. S.D. Fla. 2016).

AHCA further asserts the attorney-client privilege as to emails between AHCA Deputy Secretary and the Governor's office. (Ex. 3, rows 161-164, 167-168, 173-174, 213-214, 396, 493, 536). Communications between a state agency official and general counsel for a different state agency, or between attorneys for two different state agencies, are not covered by the attorney-client privilege. *See Lincoln Nat'l Life Ins. Co. v. Biviano*, No. 09cv82447, 2011 WL 13108073, at *4 (S.D. Fla. Apr. 13, 2011) (finding fault in privilege proponent's failure to explain how a privilege could exist between an attorney at one entity and a lay person at another entity); *Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 693 (M.D. Fla. 2005) (no attorney client privilege in communications between two outside attorneys regarding litigation strategy to employ on the client's behalf).

Similarly, AHCA cites the attorney-client privilege to withhold communications and documents circulated among AHCA general counsel or with the Department of Health General Counsel regarding a Department of Health proposal/petition for rulemaking. (Ex. 3, rows 343-357, 414-415, 491-492.) Like the communications with the Governor's office above, the Department of Health is not AHCA's client, and there can be no attorney-client privilege where there is no client involved. *See Universal City Dev. Partners*, 230 F.R.D. at 693. And where these communications were between general counsel for each agency, no attorney-client

27

privilege exists either. *Lincoln Nat'l Life,* 2011 WL 13108073, at *4.

3)   <u>Work Product Privilege</u>

The proponent of the work product privilege must prove that the document was "prepared with the primary motivating purpose of aiding in possible litigation." *Wyndham Vacation Ownership, Inc. v. Reed Hein & Assocs., LLC*, No. 6:18cv2171, 2019 WL 9091666, at *15 (M.D. Fla. Dec. 9, 2019).  It is not enough that future litigation was "certainly possible," that the document "may also be helpful in the event of litigation," or that it was prepared "with an eye toward litigation."  *Id.* at *14-15.   Here, Defendants bears the burden of establishing protection by a preponderance of the evidence, and they must "provide the Court with underlying facts demonstrating the existence of the privilege."  *Diamond Resorts,* 519 F. Supp. 3d at 1200.   In this case, rule promulgation is ordinary agency business, and documents prepared in the ordinary course of business or other non-litigation purposes are not protected as work product.  *See U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.*, 630 F. Supp. 2d 1332, 1336 (M.D. Fla. 2007).

Defendants cite the work product privilege to withhold January and March 2022 emails circulated among AHCA General Counsel staff and the attached "Medicare and Medicaid Decision Memo for Gender Dysphoria."  (Ex. 3, rows 2-12.)  The fact that "an agency document was written by a lawyer does not necessarily

28

make it 'work product.'" *Kent Corp. v. N.L.R.B.*, 530 F.2d 612, 623 (5th Cir. 1976). The work product privilege does not extend to attorneys acting in primarily political or policy roles on behalf of a government agency. *Texas v. United States*, 279 F.R.D. 24, 33 (D.D.C. 2012) ("Texas has failed to show that [its attorneys] were acting in a primarily legal role as map-drawers instead of in political or policy roles, as to which no work-product doctrine would apply in any event."). These emails were exchanged months prior to the rule promulgation, and Defendants do not provide a sufficient basis to determine whether the communications and attached memo were prepared in anticipation of litigation or in anticipation of the rule promulgation. *See Diamond Resorts*, 519 F. Supp. 3d at 1213 (finding party failed to meet its burden to establish work product privilege where it stated that the document was prepared "in anticipation of litigation" but did not provide why the communication was in furtherance of a litigation effort).

Defendants also attempt to withhold communications and document drafts circulated with and about "experts," but the timing of these communications and the identities of these persons suggests that these "experts" were the individuals who submitted attachments to the June 2022 GAPMS Memo (ECF 49-1, at 5-183, ECF 49-2, at 1-61), and who appeared as panelists at the rule hearing held on July 8, 2022 (ECF 1, at ¶ 107), not experts retained for the purposes of litigation. (*See* Ex. 3,

rows 27-146, 175-176, 279, 283-286, 289, 340, 342.)   These communications all occurred from April 2022 through July 2022, prior to the effective date of the Challenged Exclusion, *see* Fla. Admin. Code R. 59G-1.050, and involved Romina Brignardello-Petersen, James Cantor, Quentin Van Meter, Patrick Lappert, Kevin Donovan, Andre Van Mol, and Miriam Grossman.

Defendants also seek to assert privilege with respect to communications and documents involving a "consultant regarding GAPMS Report" (Ex. 3, rows 217-218), draft scripts for the July 8, 2022 hearing (*id.*, rows 219-252), and emails, both internal and with the above-mentioned outside experts, regarding public comments to the proposed rule (*id.*, rows 321-339, 360-376, 377, 380-382, 392, 398, 406). Defendants further assert work-product privilege as to a series of internal communications and correspondence with experts about an "AAP White Paper." (Ex. 3, rows 253-278.)   Defendants fail to make the proper showing that these communications and documents were made in anticipation of litigation rather than as a part of the rule promulgation process.  *See P. & B. Marina, Ltd. P'ship v. Logrande*, 136 F.R.D. 50, 58 (E.D.N.Y. 1991), *aff'd sub nom. P&B Marina Ltd. v. LoGrande,* 983 F.2d 1047 (2d Cir. 1992) (refusing to extend the work product privilege to letters and memoranda related to administrative actions).

Notably, while some of these communications had AHCA general counsel or

outside counsel as a recipient or cc'd, very few of these emails were written by an attorney.  Instead, the vast majority were between AHCA non-attorney staff and the "experts," at times without an attorney included in the correspondence at all. Clearly, these communications do not reflect an attorney's mental impressions, conclusions, opinions, or legal theories, which are entitled to heightened protection. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir. 1994).

AHCA further asserts the work product privilege as to emails between and AHCA Deputy Secretary and the Governor's Office.  (Ex. 3, rows 161-164, 167-168, 173-174, 213-214, 396, 493, 536).   The mere fact that an email is titled "Privileged & Confidential" or that it discusses case law, legal developments, similar litigation, an amicus brief does not make it privileged.  To be work product, the document or communication must be prepared in anticipation of litigation, and Defendants fail to specify how the primary purpose of these documents was to further a litigation effort.  *See Diamond Resorts*, 519 F. Supp. 3d at 1213.

Similarly, AHCA cites the attorney-client privilege to withhold communications and documents circulated among AHCA general counsel or with the Department of Health General Counsel regarding a Department of Health proposal/petition for rulemaking. (Ex. 3, rows 343-357, 410-412, 491-492.) These communications involve rulemaking, normal business of the Agencies, and not

litigation, and thus the work product privilege would not apply. *See P. & B. Marina, Ltd. P'ship v. Logrande*, 136 F.R.D. at 58. And to the extent that the entries purport to be "in anticipation of litigation," Defendants fail to adequately support a claim of privilege by demonstrating that the purpose of the communication was to further a litigation effort. *See Diamond Resorts*, 519 F.Supp.3d at 1213.

## IV.   PLAINTIFFS' MOTION REQUIRES A PROMPT RULING

Due to Defendants insufficient production of documents and improper assertions of privilege, Plaintiffs are and will continue to be prejudiced in their ability to complete fact discovery in a timely manner.  Due to the impending discovery deadline of February 7, 2023, and Rule 30(b)(6) deposition scheduled for February 1, 2023, Plaintiffs seek "a ruling more promptly than would occur in the ordinary course of business." *See* N.D. Fla. Local Rule 7.01(L). Though this Motion is not labeled as an "Emergency," Plaintiffs will orally advise the Clerk's office that the motion seeking an expedited briefing schedule and ruling has been filed. *Id.* Even with an expedited ruling, a motion to extend the February 7, 2023, deadline for fact discovery so that it is coextensive with expert discovery may be needed.

## V.   CONCLUSION

Defendants fail to produce documents that are both relevant and proportional to the needs of the case and, in many instances, even refuse to conduct an appropriate

search to identify responsive documents and materials. They improperly cite attorney-client and work product privileges to withhold non-privileged, discoverable documents. By evading their discovery obligations, they delay and impede plaintiffs' ability to prosecute their case. For the foregoing reasons, Plaintiffs respectfully request that this Court grant their Emergency Motion to Compel and order an expedited briefing and ruling schedule.

## Certificate of Conferral

Counsel for Plaintiffs conferred with Defendants counsel during telephone conferences on December 30, 2022, and January 5, 2023, and through correspondence on December 22, 27, 2022, and January 4, 5, 9, 10, 11, and 13, 2023, but were unable to resolve the issues addressed in this Motion.

Dated: January 20, 2023

Respectfully Submitted,

*/s/ Chelsea Dunn*

**PILLSBURY WINTHROP SHAW PITTMAN, LLP**

**Jennifer Altman** (Fl. Bar No. 881384)
**Shani Rivaux** (Fl. Bar No. 42095)
600 Brickell Avenue, Suite 3100
Miami, FL 33131
(786) 913-4900
jennifer.altman@pillsbury.com
shani.rivaux@pillsbury.com

**LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.**

**Omar Gonzalez-Pagan**\*
120 Wall Street, 19th Floor
New York, NY 10005
(212) 809-8585
ogonzalez-pagan@lambdalegal.org

**William C. Miller***
**Gary J. Shaw***
1200 17th Street N.W.
Washington, D.C. 20036
(202) 663-8000
william.c.miller@pillsburylaw.com

**Joe Little***
500 Capitol Mall, Suite 1800
Sacramento, CA 95814
(916) 329-4700
joe.little@pillsburylaw.com

**NATIONAL HEALTH LAW PROGRAM**

**Abigail Coursolle***
3701 Wilshire Boulevard, Suite 315
Los Angeles, CA 90010
(310) 736-1652
coursolle@healthlaw.org

**Catherine McKee***
1512 E. Franklin Street, Suite 110
Chapel Hill, NC 27541
(919) 968-6308
mckee@healthlaw.org

**Carl S. Charles***
1 West Court Square, Suite 105
Decatur, GA 30030
(404) 897-1880
ccharles@lambdalegal.org

**SOUTHERN LEGAL COUNSEL, INC.**

**Simone Chriss** (Fl. Bar No. 124062)
**Chelsea Dunn** (Fl. Bar No. 1013541)
1229 NW 12th Avenue
Gainesville, FL 32601
(352) 271-8890
Simone.Chriss@southernlegal.org
Chelsea.Dunn@southernlegal.org

**FLORIDA HEALTH JUSTICE PROJECT**

**Katy DeBriere** (Fl. Bar No. 58506)
3900 Richmond Street
Jacksonville, FL 32205
(352) 278-6059
debriere@floridahealthjustice.org

* *Admitted pro hac vice*
*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of January, 2023, a true copy of the foregoing has been filed with the Court utilizing its CM/ECF system, which will transmit a notice of electronic filing to counsel of record for all parties in this matter registered with the Court for this purpose.

## **CERTIFICATE OF WORD COUNT**

As required by Local Rule 7.1(F), I certify that this Motion contains 7,103 words.

*/s/ Chelsea Dunn*
Attorney for Plaintiffs