# Holtzman Vogel
### HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK PLLC

January 12, 2023

**Via E-Mail**

Counsel for Plaintiffs:
Jennifer Altman, Jennifer.altman@pillsbury.com
Shani Rivaux, Shani.rivaux@pillsbury.com
William C. Miller, William.c.miller@pillsburylaw.com
Gary J. Shaw, Gary.shaw@pillsburylaw.com
Joe Little, Joe.little@pillsburylaw.com
Simone Chriss, Simone.Chriss@southernlegal.org
Chelsea Dunn, Chelsea.Dunn@southernlegal.org
Omar Gonzalez-Pagan, OGonzalez-Pagan@lambdalegal.org
Carl S. Charles, CCharles@lamndalegal.org
Abigail Coursolle, Coursolle@healthlaw.org
Catherine McKee, Mckee@healthlaw.org
Katy DeBriere, Debriere@floridahealthjustice.org

    Re: Defendants' Response to Plaintiffs', *Dekker, et al., v Jason Weida, et al.*,
       4:22-cv-00325-RH-MAF

Dear Counsel,

In this letter, I attempt to respond to your three separate emails and letters sent on January 10, 2022, and other concerns. If I have missed an issue, that is inadvertent.

1. AHCA recently received material from various health plans. My colleagues and I have not had a chance to review the material; however, I would like to produce the materials to you as soon as Monday, January 16, 2022, with "Confidential" and "Attorney Eyes Only" stamped on the pages consistent with the protective order in this case. *See* Doc.77 at pg. 5-6. To me, this ensures that AHCA does not inadvertently disclose material that it should not *and* that you have the material that you have requested. If you intend to publish some of the material at trial, or even to use it at the summary judgment stage, we can confer in good faith to remove the "Confidential" and "Attorney Eyes Only" designations. *Id.* at pg. 7. Please let me know if this approach works for you.

2. As I understand it, you are also asking for us to reproduce in native format the documents previously provided to you in PDF format. Your request for production states that "[w]henever possible, Documents created or stored in electronic format should be produced in the original, native electronic format," "[o]therwise, the Documents should be produced in a portable Document format (PDF)." First RFP at 10, ¶ 14. AHCA's team collected material in PDF format for my firm's review and for production to you with the understanding that PDF-based collection was a limitation of the agency's system. Though AHCA now has the capability of collecting documents in native format—an approach that my colleagues and I

**HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK** PLLC

would have also preferred—I have been informed that recollecting the documents in native format and reproducing them would be impractical; it would require AHCA to redo the work at substantial cost. Under the circumstances, the PDF production complies with Rule 34 and the instructions in your requests for production. *See, e.g.*, *United States v. O'Keefe*, 537 F. Supp. 2d 14, 23 (D.D.C. 2008) ("production of the electronically stored information in PDF or TIFF format would suffice, unless defendants can show that those formats are not 'reasonably usable' and that the native format, with the accompanying metadata, meet the criteria of 'reasonably usable' whereas the PDF or TIFF formats do not"); *In re Seroquel Prods. Liab. Litg.*, 244 F.R.D. 650, 655 (M.D. Fla. 2007) (citing fourth edition of the manual for complex litigation). That said, if there are specific emails for which you believe the conversion to PDF format has made the material something other than "reasonably usable," please let me know and, if there is a manageable number, AHCA will provide the emails in native format.

3. As previously stated, AHCA's organizational chart is available at https://ahca.myflorida.com/Inside_AHCA/org_chart.shtml. Amd. Response RFP at pg. 37. If AHCA turns up some other organizational chart or directory, it will provide that chart or directory by January 13, 2023. *Id.* If AHCA creates a new organizational chart, it will post that chart on its website and notify you of the posting. As you know, however, AHCA does not have an obligation to create a new organizational chart for purposes of this litigation.

4. As counsel for the Plaintiffs, you are obviously more familiar with the Plaintiffs' medical records. If you have seen any gaps in the Medicaid files AHCA previously provided, please let me know. No one is trying to hide the ball here. Some of the Plaintiffs may have changed residences and some may not have been on Medicaid until a certain year. AHCA is also double-checking its files and will supplement its response no later than January 20, 2023, if it finds any additional material.

5. For the temporal limitations applied in our amended response and the production, I note that the "question" "controlling here" is "whether, based on current medical knowledge, the state's determination that [the excluded] treatments are experimental is reasonable," which is an issue requiring expert testimony. Doc.64 at 4. That said, AHCA has now produced to you 7,453 documents totaling 289,214 pages of material. The material includes GAPMS-related reports other than the report central to this case, going as far back as 2015, when AHCA adopted its GAPMS rule. If you have a terms-and-connectors search you would like for AHCA to run outside of the temporal limitations detailed in response, for specific custodians, please provide that to AHCA. AHCA can let you know how many potentially responsive documents are returned and, if the list if manageable, AHCA can produce those documents to you.

6. Concerning the experts, AHCA intends to serve ten expert reports. The experts to whom you have served third-party subpoenas (and for whom my firm accepted the subpoenas) remain under contract with AHCA have been retained for this litigation. I share that information in the hope that it can streamline our discussions concerning objections, i.e., if they submit reports then you will have much of their relevant information and have an opportunity to depose them.

**HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK** PLLC

7. For the AHCA depositions, my colleague, Gary Perko, understood the last meet-and-confer discussion on January 10, 2023 to have resulted in an understanding that you would depose Matt Brackett in his individual and 30(b)(6) capacity on February 1 and 2 respectively. Yet, later on January 10, 2023, Ms. Altman's office noticed Mr. Brackett's deposition for January 17, 2023 because no one had specifically said that the January 17, 2023 date does not work. While Robert Bolt's Thomas More may have said that "silence gives consent," in this instance, it does not. I ask that you withdraw the deposition for two reasons. First, Mr. Brackett is a key witness in the case and I would like to attend that deposition; however, I will be in an out-of-town mediation from January 17-20. Second, as noted above, in the last meet-and-confer, it is my understanding that there was general agreement that Mr. Brackett would have to carve out only two consecutive days for his depositions and those days would be February 1 and 2. The unilateral scheduling of one of those two depositions for a different date is burdensome for a high-level public servant's schedule.

8. For the Executive Office of the Governor, we can produce material within 14 days of you stipulating that you will not seek any depositions of personnel from the office. As discussed on December 30 and January 5, this is a precondition rooted in the fear of waiving certain institutional privileges noted with case citations in the Governor's responses and objections.

9. For the Surgeon General and the Department of Health, as noted in their responses and objections, the document requests are extremely broad and would require a great deal of time and effort for these third parties to sort through potentially responsive documents. This burden is unreasonable and disproportionate when, again, the "question" "controlling here" is "whether, based on current medical knowledge, the state's determination that [the excluded] treatments are experimental is reasonable." Doc.64 at 4. More fundamentally, if you would like for the Surgeon General and the Department of Health to conduct a limited, terms-and-connectors search, that is one thing. If you would like for them to provide discovery for a subsequent lawsuit that has not yet been filed, then that is inappropriate.

Finally, if the goal of the modern discovery rules is to ensure that "civil trials in the federal courts no longer need be carried on in the dark," *Hickman v. Taylor*, 329 U.S. 495, 501 (1947), then you will see from AHCA's material that you are not in the dark. The materials include documents that, perhaps, do not cast the challenged exclusions in the most favorable light. You will also have an opportunity to ask multiple AHCA employees about the materials and to then take expert depositions in a case that, per the Court's distillation of the issues, will turn on expert testimony.

As always, AHCA is happy to discuss the issues further.

Sincerely,

Mohammad O. Jazil

*Counsel for Secretary Weida and
the Agency for Health Care
Administration*