UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

AUGUST DEKKER, et al.,

    Plaintiffs,

v.                                                            Case No. 4:22-cv-00325-RH-MAF

JASON WEIDA, et al.,

    Defendants.

_____/


**DEFENDANTS' RENEWED MOTION FOR RULE 35 EXAMINATIONS
OF PLAINTIFFS, SUSAN DOE AND K.F., AND
<u>INCORPORATED MEMORANDUM OF LAW</u>**


Pursuant to Rule 35(a) of the Federal Rules of Civil Procedure, Defendants, SECRETARY WEIDA and FLORIDA AGENCY FOR HEALTH CARE ADMINISTRATION, by and through undersigned counsel, hereby move for an order directing Plaintiffs, SUSAN DOE and K.F., to submit to mental examinations before Defendants' expert, Joshua Sanderson, M.D.  The examinations would take place remotely at a mutually agreed upon time and location.  Defendants would bear the cost of the examination and otherwise comply with Rule 35.

## DISCUSSION

**I.**     **Defendants are entitled to a Rule 35 order because the Plaintiffs have placed their mental health "in controversy" and Defendants have "good cause" to examine their mental health.**

Rule 35(a)(1) vests district courts with authority to "order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). "The purpose of a Rule 35 examination is to put both parties on equal footing with respect to the plaintiff's condition." *La Shanta Hacking v. United States*, 2021 U.S. Dist. LEXIS 71275, *7 (S.D. Fla. Feb. 15, 2021) (citing *Lerer v. Ferno-Washington, Inc.*, 2007 U.S. Dist. LEXIS 84347, 2007 WL 3513189, at *1 (S.D. Fla. Nov. 14, 2007)). Compulsory medical examinations "are often necessary, even when the plaintiff's medical records are available, because there are few, if any, acceptable substitutes for a personal physical examination." *Funez v. Wal-Mart Stores E., LP*, 2013 U.S. Dist. LEXIS 3196, 2013 WL 123566, at *7 (N.D. Ga. Jan. 9, 2013) (citation omitted).

To obtain an order under Rule 35, a party must make a motion and show "good cause." Fed. R. Civ. P. 35(a)(2)(A).  This requires an affirmative showing that the mental or physical condition is "really and genuinely" in controversy and that good cause exists for each particular examination.  *Robinson v. Jacksonville Shipyards, Inc.,* 118 F.R.D. 525, 527 (M.D. Fla. 1988) (citing *Schlagenhauf v. Holder,* 379 U.S.

104, 118 (1964))). "Rule 35(a) is to be construed liberally in favor of granting

discovery." *Cody v. Marriott Corp.*, 103 F.R.D. 421, 422 (D. Mass. 1984). *See also*

*Eckman v. Univ. of Rhode Island,* 160 F.R.D. 431, 433 (D.R.I. 1995) (recognizing

same and ordering mental examination); *Schlagenhauf*, 379 U.S. at 114 (construing

Rule 35 under "the basic premise that the deposition-discovery rules are to be

accorded a broad and liberal treatment to effectuate their purpose that civil trials in

the federal courts no longer need be carried on in the dark") (internal quotation marks

and citations omitted)); *London v. C.R. England, Inc.*, 2006 U.S. Dist. LEXIS

103339, *2 (N.D. Ga. 2006) ("To facilitate discovery Rule 35(a) should be liberally

construed in favor of granting discovery.").

Courts routinely order mental examinations in a wide variety of cases. *E.g.*,

*Bovey v. Mitsubishi Motor Mfg. of Am., Inc.*, 2002 U.S. Dist. LEXIS 5701 (C.D. Ill.

Apr. 3, 2002) (ordering mental examination because the plaintiff-employee's alleged

emotional distress damages from employment discrimination were a component of

her asserted damages, even though employee and employee's treating mental health

care providers had previously been deposed); *Jackson v. Entergy Operations, Inc.*,

U.S. Dist. LEXIS 752, at *1 (E.D. La. Jan. 27, 1998) (ordering mental examination

even though the plaintiff-employee offered her own treating physicians' records as

an alternative source of evidence); *Ragge v. MCA/Universal Studios*, 165 F.R.D.

605, 609 (C.D. Cal. 1995) ("Because the mental examination provides one of the

few opportunities for a defendant to have access to a plaintiff, and the only opportunity for a defendant to have a plaintiff examined by defendant's expert, some preference should be given to allowing the examiner to exercise discretion in the manner and means by which the examination is conducted.").

Here, as in the above cases, Rule 35(a)'s criteria are satisfied.  Both Plaintiffs have placed their mental health in controversy.   Plaintiffs allege that Susan Doe, the 12-year-old daughter of Jane and John Doe, has been diagnosed with gender dysphoria (ECF-1, ¶¶ 191, 200), that the Does "worry about the … mental health consequences" of the challenged rule (*id*. at ¶203) and that Susan "might engage in self-harm."  *Id*. at ¶ 205.  Similarly, Plaintiffs allege that K.F., the 12-year-old son of Jade Ladue and stepson of Josh Ladue, has been diagnosed with gender dysphoria (*id*. at  ¶ 225), "has always dealt with anxiety," (*id*. at ¶ 240), that Jade and Joshua "are incredibly worried about the … mental health consequences" of the challenged rule (*id*. at ¶ 243), and that they worry about the "unthinkable happening" if K.F.'s hormone treatment is stopped. *Id*. at ¶ 244.

Defendants also have good cause to conduct the mental examinations. Defendants are entitled to confirm whether or not Plaintiffs suffer from gender dysphoria and whether Plaintiffs have undergone appropriate mental health treatment. Defendants are entitled to further explore whether existing conditions, such as PTSD, depression and anxiety, may be the root cause of Plaintiffs' emotional

distress, and whether reversal of their gender affirming treatment will negatively impact their mental health as alleged. As Dr. Laidlaw discussed in his report of October 2, 2022 (ECF-53-20), disentangling other conditions from gender dysphoria can help establish whether these Plaintiffs would benefit from or potentially be harmed by the excluded treatments—in this case, puberty blockers and cross-sex hormones. Likewise, the mental examinations would assess whether the Plaintiffs would be harmed by the excluded coverage, such as the potential for suicidality, as alleged in the Complaint.

More broadly, these examinations can provide specific examples concerning the unnecessary and experimental nature of the excluded treatments. If the examinations show that other, covered medical treatments can help resolve Plaintiffs' emotional distress, then the excluded treatments become unnecessary as to these Plaintiffs. If the examination shows that, given Plaintiffs specific medical histories, the excluded treatments might have unknown side effects or questionable efficacy, then the excluded treatments become experimental as to these Plaintiffs. Accordingly, the proposed examinations should be allowed.

## II.    Proposed Examination

Defendants propose the following as to the mental health examinations which are necessary given the allegations at issue:

- Time: to be determined based on mutual agreement between the parties.

- Manner: The examinations would take place remotely in a manner consistent with generally accepted psychiatric methods of evaluation and testing. The process will consist of an initial interview of the youth, collateral information from multiple sources, and a review of medical records if applicable that will last approximately 2 hours.

- Scope:  A comprehensive psychiatric evaluation to address gender dysphoria and desire to transition medically or surgically would include a full history of when gender dysphoria began, past and present symptoms (clinical scales may be used that are appropriate measures for gender dysphoria), psychiatric history, developmental history, medical history, family history, educational history, social history including but not limited to history of trauma, substance use, and discussion about peer groups and review of stressors, discussion of familial stability as it pertains to patient's support system, past psychiatric care and treatment, as well as mental status examination, and discussion surrounding understanding of consent for medical gender transition.

## II.    Dr. Sanderson's qualifications

The examinations would be performed Joshua Sanderson, M.D. Dr. Sanderson has been a licensed child and adolescent psychiatrist for 6.5 years.  He is a Clinical Assistant Professor and Director of the Forensic Psychiatry Program at the

Louisiana State University Health Sciences Center – New Orleans. He is board certified in adolescent psychiatry, forensic psychiatry, and adult psychiatry. He obtained his B.S. in biology, with a minor in chemistry, from Louisiana State University and his M.D. from the Louisiana State University Health Sciences Center – New Orleans.

Dr. Sanderson provides medical direction and clinical services to adolescents at a long-term residential facility.  As explained in his declaration attached as Exhibit "A,"  Dr. Sanderson is not a gender dysphoria "denier or skeptic." He has extensive experience treating children and adolescents with gender dysphoria and children and adolescents who identify as transgender. Over the past decade, including his medical school training, adult residency, child and adolescent fellowship, forensic fellowship, and tenure as the program director of forensic psychiatry, he has examined and treated thousands of patients (of all ages) who either experience gender dysphoria or identify as something other than their gender assigned at birth. He has supported all of those patients in their identified gender.

Dr. Sanderson's curriculum vitae is attached to his declaration.

## CONCLUSION

For all of the foregoing reasons, Defendant respectfully requests that the Court grant this Motion and order Plaintiffs, Susan Doe and K.F., to submit to a mental examination before Dr. Sanderson at a mutually agreeable time and location.

Respectfully submitted by:


*/s/ Gary V. Perko*
Mohammad O. Jazil (FBN: 72556)
Gary V. Perko (FBN: 855898)
Michael Beato (FBN: 1017715)
HOLTZMAN VOGEL BARAN
TORCHINSKY  & JOSEFIAK PLLC
119 S. Monroe St. Suite 500
Tallahassee, FL 32301
mjazil@holtzmanvogel.com
gperko@holtzmanvogel.com
mbeato@holtzmanvogel.com
Phone No.: (850) 274-1690
Fax No.: (540) 341-8809


Dated: January 30, 2023          *Counsel for Defendants Secretary Weida*
*and Florida Agency for Healthcare Administration*

## LOCAL RULE 7.1(B) CERTIFICATION

Pursuant to Local Rule 7.1(B), the undersigned certifies that he  conferred with counsel for the parties on January 13, 2022. Plaintiffs oppose the motion.

/s/ *Gary V. Perko*
Gary V. Perko

## LOCAL RULE 7.1(F) CERTIFICATION

The undersigned certifies that this memorandum contains 1,422 words, excluding the case style and certifications; and it complies with the size and font requirements in the local rules.

/s/ *Gary V. Perko*
Gary V. Perko

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2023, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

/s/ *Gary V. Perko*
Gary V. Perko