IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

AUGUST DEKKER, *et al.*,

          *Plaintiffs,*

v.

JASON WEIDA, *et al.*,

          *Defendants*.

Case No.: 4:22-cv-00325-RH-MAF

## MOTION TO QUASH SUBPOENA ISSUED TO DR. MIRIAM GROSSMAN AND SUPPORTING MEMORANDUM OF LAW

Miriam Grossman, MD, through her counsel, moves to quash the subpoena directed to her in the above-captioned case because the information sought by the subpoena is irrelevant and not proportional to the needs of any party to the case, and because complying with it would be unreasonable, oppressive, and unduly burdensome.

This case is not about Dr. Grossman or her personal beliefs or opinions. This case involves the proper construction of the Medicaid Act and the reasonableness of the State of Florida's determination that certain treatments are experimental. Order Den. Prelim. Inj. at 4, ECF No. 64 (the "Court's Order").

The Plaintiffs allege that Dr. Grossman participated on a panel of doctors during a public hearing held by the Florida Agency for Health Care and Administration ("AHCA") about its proposed rule to prohibit Florida Medicaid from covering "services for the treatment of gender dysphoria" (the "Proposed Rule"). *See* Compl. ¶¶ 103, 106-07.

On January 18, 2023, the Plaintiffs' counsel subpoenaed Dr. Grossman. Ex. 1. The subpoena requested that she produce, by January 20, 2023, twenty-five separate categories of documents and information, broadly ranging from documents available in the public domain, to information about Dr. Grossman's charitable and political contributions, to her participation in "rall[ies]" and "gathering[s]," to her private communications with persons at various organizations, and, in almost every category, covering a period of time stretching over eight years. *E.g.*, Ex. 1, Reqs. Produc. ¶¶ 23-24, On January 31, 2023, Plaintiffs' counsel served Dr. Grossman again with another copy of the same subpoena. Ex. 2.

Facially, the subpoena is unduly burdensome and oppressive, seemingly designed to punish Dr. Grossman, a practicing psychiatrist, author, and public speaker, for daring to speak in a manner with which the Plaintiffs disagree.

For the reasons set forth below and in Dr. Grossman's accompanying Declaration, the subpoena should be quashed.

SUPPORTING MEMORANDUM OF LAW

## I.   Background

This case has nothing to do with Dr. Grossman. Instead, it involves the proper construction of the Medicaid Act and the reasonableness of a state agency's determination that certain medical treatments are experimental. Court's Order at 4-5.

Florida has long barred payments for physician services that are "clinically unproven [or] experimental." Fla. Stat. § 409.905(9). According to the Court, this statute is "unquestionably valid, at least on its face." Court's Order at 2. Under the Court's Order, the controlling question in this litigation is "whether applying the provision to the gender-dysphoria treatments at issue violates the United States Constitution or federal law." *Id.*

Dr. Grossman is a practicing psychiatrist, author, and public speaker. Ex. 3 ¶¶ 3, 7-8. On July 8, 2022, AHCA held a public hearing on the Proposed Rule with a panel of doctors available to respond to comments from the audience. Compl. ¶¶ 106-07. Dr. Grossman attended virtually, but she did not speak or answer any questions from the audience during the hearing. Ex. 3 ¶ 9. Without explaining its relevance, the Plaintiffs further allege that Dr. Grossman has, at some other time, stated that "conditioning children into believing that a lifetime of impersonating

someone of the opposite sex, achievable only through chemical and surgical interventions, is harmful to youths." Compl. ¶ 110.

On January 5, 2023, Dr. Grossman received an e-mail from Soraya Garcia, a Practice Support Specialist at Pillsbury Winthrop Shaw Pittman LLP. Ex. 4. The email attached a subpoena signed by Jennifer Altman, an attorney, and was addressed to "Mirian [sic] Grossman MD, 1917 Benecia Ave., Los Angeles, CA 90025" listing "Veritext Legal Solutions, 707 Wilshire Boulevard, Suite 3500, Los Angeles, CA 90017" as the place of production. Ex. 5. After seeing the e-mail, Dr. Grossman called Pillsbury that same day and told Ms. Garcia and Joe Little, an attorney, that she no longer lived in California, and that she had never lived at the address on the face of the subpoena attached to the e-mail. Ex. 3 ¶ 13. This conversation was memorialized by Mr. Little in another e-mail to Dr. Grossman. Ex. 6.

Almost two weeks later, on the evening of January 18, 2023, Dr. Grossman was served at her residence in New York with a printed copy of the subpoena. Ex. 3 ¶ 14. This subpoena, signed by Jennifer Altman, was still addressed to "Mirian [sic] Grossman MD, 1917 Benecia Ave., Los Angeles, CA 90025," and it still listed "Veritext Legal Solutions, 707 Wilshire Boulevard, Suite 3500, Los Angeles, CA 90017" as the place of production. Ex. 1. On January 31, 2023, Dr. Grossman was

served again at her residence with yet another copy of the subpoena, along with all its defects. Ex. 3 ¶ 16.

The subpoena demands Dr. Grossman produce twenty-five categories of documents, communications, and other information. These include: "All Documents evidencing organizations, associations, and political action committees to which You have contributed money or services and that promote anti-transgender ideas."[1] Ex. 1, Reqs. Produc. ¶ 23. And "All Documents sufficient to identify your affiliation with any of the following organizations: Alliance Defending Freedom; American College of Pediatricians; Catholic Medical Associations; Christian Medical & Dental Associations; Ethics and Public Policy Center; GENSPECT; Heritage Foundation; Liberty Counsel; Moral Revolution; Person and Identity Project; Real Impact; and Society for Evidence-based Gender Medicine." Id. ¶ 11. And "All communications You have had with any person at any of the following organizations [listed above]." Id. ¶ 25. It even demands "All Documents evidencing Your participation in any protest, rally, or other gathering promoting anti-transgender ideas". Id. ¶ 24.

The subpoena's demands are as overly broad as they are intrusive. It defines "You" and "Your" as: "you individually, as well as your present or former attorneys,

---

[1] The subpoena defines "Anti-transgender ideas" as "any view advocating for the curtailing of any medical treatment of gender dysphoria by private or public medical organizations." Ex. 1, Definitions ¶ 1.

agents, employees, officers, representatives, successors, predecessors, assigns, beneficiaries, executors, administrators, successors [sic], partners, heirs, affiliates, and legal representatives, and any other person who is in possession, or who has obtained, information on your behalf." Ex. 1, Definitions ¶ 8. Furthermore, it instructs Dr. Grossman that, except for the two categories which cover a period of five years, all the categories cover a period spanning over eight years. *See* Ex. 1, Instrs. ¶ 3. The subpoena affirms that "all terms shall be given their most expansive and inclusive interpretation." Ex. 1, Instrs. ¶ 11.

## II. Standard of Review

Parties to litigation, and their counsel, must comply with the limitations on discovery imposed by Rule 26(b)(1) of the Federal Rules of Civil Procedure. *See*, *e.g.*, *AFSCME Council 79 v. Scott*, 277 F.R.D. 474, 476 (S.D. Fla. 2011) (citing *Chamberlain v. Farmington Sav. Bank*, No. 3:06CV01437 CFD, 2007 WL 2786421, at *1 (D. Conn. Sept. 25, 2007); *Stewart v. Mitchell Transp.*, No. 0CIV.A. 01-2546-JWL, 2002 WL 1558210, at *3 (D. Kan. July 11, 2002)). Most pertinent to this Motion are Rule 26's requirements that any discovery be "relevant to any party's claim or defense and proportional to the needs of the case … and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1).

As to relevancy, "the language of Rule 26 [indicates that] the relevance of information sought in discovery depends on the claims asserted in the underlying action and the legal standards that govern those claims." *Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020). As to burden:

> The undue burden analysis requires the court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it. Several factors have been identified as pertinent to the analysis, including the relevance of the information requested to the underlying litigation and the burden that would be imposed by producing it. The status of the subpoena recipient as a non-party is also a factor that can weigh against disclosure in the undue burden inquiry.

*Id.* at 1337 (cleaned up).

In weighing the burden, district courts consider whether the subpoena invades privacy or confidentiality interests and whether it seeks information beyond what the requesting party reasonably requires. *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189-90 (4th Cir. 2019). In weighing the likely benefit, courts consider the requesting party's need for the information sought—a de minimis benefit will not suffice—and what information is available to the requesting party from other sources. *Id.* at 189. Because non-parties "have no dog in [the] fight," and they have "a different set of expectations from the parties themselves," the scope of discovery sought from non-parties "must be limited even more." *Id.* (citing *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)) (internal quotations omitted).

Furthermore, "when relevancy is not apparent, the burden is on the party seeking discovery to show the relevancy of the discovery request." *AFSCME*, 277 F.R.D. at 477 (quoting *Dean v. Anderson*, 2002 WL 1377729, at *2 (D. Kan. June 6, 2002).

Rule 45 of the Federal Rules of Civil Procedure commands that a court "must quash or modify a subpoena" that "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c) or, (iv) subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A) (cleaned up). In considering a non-party's obligation to respond to a subpoena, courts consider relevance, the requesting party's need for documents, the breadth of the document request, and the time covered by the request. *American Airlines v. In Charge Marketing*, 2012 WL 2116349, *2 (M.D. Fla. June 11, 2012).

"While Rule 45 does not specifically identify irrelevance as a reason to quash a subpoena, it is generally accepted that the scope of discovery allowed under Rule 45 is limited by the relevancy requirement of the federal discovery rules." *Jordan*, 947 F.3d at 1329 (11th Cir. 2020). "Thus, a subpoena issued under Rule 45 should be quashed to the extent it seeks irrelevant information." *Id.*

Finally, Rule 45 also mandates that the attorney issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." FED. R. CIV. P. 45(d)(1). *See Jordan*, 947 F.3d at 1329. A court "must enforce this duty and impose an appropriate

sanction—which may include lost earnings and reasonable attorneys' fees—on a party or attorney who fails to comply." FED. R. CIV. P. 45(d)(1).

## III.   Argument

This Court must quash the subpoena the Plaintiffs issued to Dr. Grossman. The information the subpoena seeks is irrelevant and not proportional to the needs of any party to the case. Further, complying with the subpoena would be unreasonable, oppressive, and unduly burdensome.

Dr. Grossman is not a Florida state official. She did not decide whether the medical procedures at issue in this case are "experimental" or not. She merely appeared virtually before a state agency engaged in public fact-finding. Ex. 3 ¶ 9.

In an attempt to punish her for participating in a public process, and to deter others from participating in similar public proceedings and expressing similar opinions, the Plaintiffs have targeted her with a subpoena that appears to be designed to harass and intimidate Dr. Grossman—making outrageously broad and oppressive demands for twenty-five separate categories of information, such as documents relating to her charitable donations and political contributions. *See* Ex. 1, Reqs. Produc. ¶ 23.

This Court has already determined that the controlling issue in this case is whether applying a facially valid state statute to the treatments at issue violates the United States Constitution or federal law. Court's Order at 2. Documents reflecting

Dr. Grossman's personal beliefs, communications, charitable or political contributions, participation in a "rally" or "gathering"—and anything else for that matter—are not only disproportional to the needs of this case—they are entirely irrelevant.

**A.    The Court Must Quash the Subpoena Because the Likely Benefit of the Requested Information is De Minimis.**

Plaintiffs allege that a rule adopted by the Defendants violates the Equal Protection Clause of the Fourteenth Amendment, Section 1557 of the Patient Protection and Affordable Care Act, and the Medicaid Act's Early and Periodic Screening, Diagnostic, and Treatment provisions. Compl. ¶ 9-11. This Court determined that the controlling question in this case is whether the Defendants made a reasonable determination that the treatments at issue are experimental. Court's Order at 4. Thus, the relevance of any information sought by the Plaintiffs and their counsel must relate to those issues. *Jordan*, 947 F.3d at 1329 (11th Cir. 2020).

Although the Plaintiffs have not shown a need for the requested information needed to answer the Court's question, the subpoena demands Dr. Grossman produce, among other things, the following:

"A list of all matters in which, during the previous 5 years, You have testified as an expert including, without limitation, at an administrative hearing, court hearing, trial, or deposition" irrespective of the subject matter on which she testified Ex. 1, Reqs. Produc. ¶ 1.

"All transcripts from any testimony You have given, whether at a deposition, hearing, trial, or any other proceeding identified in response to Request No. 1 above that relate to transgender issues, gender identity, or Gender Dysphoria" irrespective of whether that testimony was relied upon by the Defendants. *Id.* ¶ 2.

"All expert reports[2] or declarations You have submitted in any matter relating to transgender issues, gender identity, or Gender Dysphoria" irrespective of whether those reports or declarations were ever submitted to the Defendants or relied upon by the Defendants. *Id.* ¶ 3.

Additionally, the subpoena not only demands Dr. Grossman produce her list of matters, her transcripts, and her expert reports and declarations, but it also demands that she produce the responsive lists of matters, transcripts, and expert reports and declarations for all her "present or former attorneys, agents, employees, officers, representatives, successors, predecessors, assigns, beneficiaries, executors, administrators, successors [sic], partners, heirs, affiliates, and legal representatives, and any other person who is in possession, or who has obtained, information on [her] behalf." <u>Ex. 1</u>, Definitions ¶ 8. Moreover, the subpoena instructs that, for requests

---

[2] If Plaintiffs' subpoena seeks information to bolster its evidence that the treatments at issue are medically necessary and not experimental, the Court should quash the subpoena for seeking to obtain Dr. Grossman's "trade secret[s] or other confidential research, development, or commercial information" or "an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." FED. R. CIV. P. 45(d)(3)(B).

which do not specify a time period, "the time period covered by these Requests is January 1, 2015 to the present." Ex. 1, Instrs. ¶ 3.

Neither this information, nor any other category of information requested by the subpoena, have any bearing on the controlling question in this case. To prevail, the Plaintiffs must prove that the state was unreasonable in determining that the treatments at issue are experimental. *See* Court's Order at 4. For the information requested by the subpoena to be relevant, Dr. Grossman's testimonies, reports, and declarations from the past five to eight years would need to bear on the reasonableness of the state in making its determination in the year 2022. Because the requested information does not, it is irrelevant. *See Jordan*, 947 F.3d at 1334.

### B. The Court Must Quash the Subpoena Because it Fails to Allow a Reasonable Time to Comply.

Upon service of the subpoena on January 18, 2023, the subpoena demanded that Dr. Grossman—a nonparty to the case—produce within *two days*, among other things, the following:

"All Your social media posts, including those on Twitter, Facebook, Instagram, LinkedIn, and YouTube, relating to transgender issues, gender identity, or Gender Dysphoria." Ex. 1, Reqs. Produc. ¶ 13.

"All presentations, speeches, or other speaking engagements You have given relating to transgender issues, gender identity, or Gender Dysphoria." *Id.* ¶ 14.

"All notes, outlines, presentation slides, or documents related to the presentations, speeches, or other speaking engagements relating to transgender issues, gender identity, or Gender Dysphoria identified in response to Request No. 14 above." *Id.* ¶ 15.

Additionally, the subpoena not only demands that Dr. Grossman produce her own social media posts; her own presentations, speeches, and other speaking engagements; and her own notes, outlines, presentation slides, and documents related to the presentations, speeches, and other speaking engagements; but it also demands that she produce the social media posts; the presentations, speeches, and other speaking engagements; and the notes, outlines, presentation slides and documents related to the presentations, speeches, and other speaking engagements of Dr. Grossman's "present or former attorneys, agents, employees, officers, representatives, successors, predecessors, assigns, beneficiaries, executors, administrators, successors [sic], partners, heirs, affiliates, and legal representatives, and any other person who is in possession, or who has obtained, information on [her] behalf." <u>Ex. 1</u>, Definitions ¶ 8. Moreover, the subpoena instructs that "the time period covered by these Requests is January 1, 2015 to the present." <u>Ex. 1</u>, Instrs. ¶ 3.

*None* of these things have any bearing on the question presented in this case. Court's Order at 4 (the question controlling here is whether the state's determination

that these treatments are experimental is reasonable). But even if they were relevant, demanding that Dr. Grossman produce such a massive amount of information in such a short period of time is facially unreasonable. FED. R. CIV. P. 45(d)(3)(A)(i). *See also Minor I Doe through Parent I Doe v. Sch. Bd. for Santa Rosa Cnty.*, Fla., No. 3:08CV361/MCR/EMT, 2009 WL 10674249, at \*2 (N.D. Fla. Nov. 23, 2009) ("Ordinarily, the rule would require the court to quash a subpoena involving a voluminous records request which provides only four days within which to comply."). Here, Dr. Grossman was given half that time. *See also*, *Progressive Emu Inc. v. Nutrition & Fitness Inc.*, 785 F. App'x 622, 627 (11th Cir. 2019) (when a non-party was only provided two or three days to comply, it was deemed a "quintessential example of the directive that a lawyer should not serve a subpoena that would impose undue burden or expense on the person subject to the subpoena").

### C. The Court Must Quash the Subpoena Because it Fails to Comply with Rule 45(c).

Rule 45 permits a subpoena to command the production of documents "at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person[.]" FED. R. CIV. P. 45(c)(2)(A).

The Plaintiffs' subpoena commanded the production of documents at a location in Los Angeles, California—which is more than 2,000 miles away from where Dr. Grossman resides, is employed, or regularly transacts business in person. *See* <u>Ex. 3</u> ¶ 2. Even after notifying Plaintiffs' counsel that she does not reside at the

14

location on the face of the Subpoena, Plaintiffs' counsel reissued the subpoena twice to the same address with the same demand for production at the same location more than 2,000 miles away from where the Subpoena was served. Accordingly, it is facially defective and ineffective. *See Progressive Emu Inc*., 785 F. App'x at 628 (upholding the district court's determination to quash a non-party subpoena because it, among other things, required compliance "beyond the 100-mile geographical limit of Rule 45(c)")*; Cincinnati Ins. Co. v. Cochran*, 198 F. App'x 831 (11th Cir. 2006) (upholding the district court's determination to quash a non-party subpoena and impose sanctions against the issuing attorney "because the subpoena failed to comply in many respects with the requirements of Rule 45."); *see also Rifkin/Miami Mgmt. Corp. v. Metro. Dade Cnty.*, No. 4:98MC24, 1998 WL 344368 (N.D. Fla. Apr. 24, 1998) (Hinkle, J.) (Order quashing subpoena issued because the subpoena required a non-party corporation to produce documents and present a representative to testify at a location more than 100 miles where the non-party resided or conducted business).

**D.   The Court Must Quash the Subpoena Because It Is Unreasonable, Oppressive, and Unduly Burdensome.**

The subpoena subjects Dr. Grossman, a non-party, to the undue burden of gathering and reviewing twenty-five broadly described categories of documents and information, almost all of which cover a period of time of over eight years, and none

of which has any bearing on the issues in this case, in two days.[3] "The undue burden analysis requires the court to 'balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it.'" *Jordan*, 947 F.3d 1322; *See also Cytodyne Tech. v. Biogenic Tech.*, 216 F.R.D. 533, 535 (M.D. Fla. 2003) ("case law in this area reveals a case-specific balancing test wherein the court must weigh such factors such as relevance, the need of the party for the documents, the breadth of the document request, and the time period covered by the request against the burden imposed on the person ordered to produce the desired information.").

"[T]o determine whether [a] subpoena subjects the subpoena recipient to an undue burden … a subpoena recipient's status as a non-party to the litigation is also a factor that can weigh against disclosure." *Jordan*, 947 F.3d at 1342. The subpoena would be unreasonable and burdensome even if Dr. Grossman were a party.  But Dr. Grossman is not a party. Instead, she is a private citizen who has been subjected to oppressive legal process simply for exercising her First Amendment right to testify in a public proceeding. As a matter of law, she is entitled to be protected from "significant expense resulting from compliance." FED. R. CIV. P. 45(d)(2)(B)(ii).

---

[3] Because an assertion of privilege would require the case-by-case review of such a voluminous set of records, Dr. Grossman also requests the Court to quash the subpoena insofar as it would require the "disclosure of privileged or other protected matter." Fed. R. Civ. P. 45(d)(3)(A)(iii).

"A court may find that a subpoena presents an undue burden when the subpoena is facially overbroad." *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, 295 F.R.D. 517, 527 (N.D. Fla.), *objections overruled*, 981 F. Supp. 2d 1207 (N.D. Fla. 2013) (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004)). Here, the burden of demonstrating reasonableness rests on the Plaintiffs. *See In re Subpoena Duces Tecum*, 1997 WL 10919 at *2; *Concord Boat Corp.*, 1996 WL 705260 at *2. They must show why Dr. Grossman, for the apparent offense of virtually appearing at a public hearing, must turn over almost a decade of private information.

The Plaintiffs have alleged that Dr. Grossman participated on a panel of doctors during a public hearing held by the AHCA about its Proposed Rule. *See* Compl. ¶¶ 103, 106-07. They do not allege she is a state or federal official. Their subpoena is vast, covering "All Documents" and "All Communications" relating to Dr. Grossman's medical practice and work "relating to transgender issues, gender identity or Gender Dysphoria" as well as her affiliations and communications with unnamed individuals who are mentioned nowhere in the complaint. Ex. 1, Reqs. Produc. ¶¶ 4-7, 9, 11, 21-25. The Plaintiffs demand that Dr. Grossman produce "All Communications" between herself and "any other person who has provided a declaration in the above-referenced matter" and "any other person who has provided a declaration or affidavit in any other action relating to transgender issues, gender

identity, or Gender Dysphoria" even though Dr. Grossman has no reason to know who has or has not provided declarations or affidavits in unnamed cases to which she is not a party. *See* <u>Ex. 1</u>, Reqs. Produc. ¶¶ 8-9.

The Plaintiffs have no good faith basis for their demands. *See Diamond State Ins. Co. v. His House, Inc.*, 2011 WL 147008, *4 (S.D. Fla. Jan. 18, 2011) (quashing subpoena insofar as it requested "communications [that] have no relation to the events that gave rise" to the plaintiff's claim). Even seeking communications from the year 2015, notwithstanding that the requests are unrelated to the above captioned case about a state regulation finally issued on August 20, 2022, is unduly burdensome. Compl. ¶ 120; *see Jordan*, 947 F.3d 1342 ("to determine whether the subpoena subjects the subpoena recipient to an undue burden … the relevance of the requested information to the underlying litigation, or the lack thereof, is important."); *Diamond State Ins. Co.* at *5 (noting that party "has failed to provide any limitations on the temporal scope of its requests" and quashing subpoena insofar as it sought production of documents outside "the time frame directly related to the events surrounding" the claims).

Additionally, the Subpoena defined "You" and "Your" as: "you individually, as well as your present or former attorneys, agents, employees, officers, representatives, successors, predecessors, assigns, beneficiaries, executors, administrators, successors [sic], partners, heirs, affiliates, and legal representatives,

and any other person who is in possession, or who has obtained, information on your behalf." <u>Ex. 1</u>, Definitions ¶ 8. Consequently, the subpoena requests, among other things, "All documents evidencing organizations, associations, and political action committees to which [Dr. Grossman, her present or former attorneys, her agents, her employees, her representatives, and her legal representatives] have contributed money or services and that promote anti-transgender ideas." <u>Ex. 1</u>, Reqs. Produc. ¶ 23. Such an overly broad scope for nearly every demand in the subpoena is facially absurd. *Cf. Progressive Emu Inc.*, 785 F. App'x at 628 ("the subpoena was grossly overbroad and unduly burdensome, requiring the production of 'any and all documents' that 'refer to, relate to, or evidence' 10 categories of documents over a ten-year period.").

Other categories of documents requested from Dr. Grossman in the subpoena can be obtained from parties to the case, or from public records requests, such as Dr. Grossman's communications with various Florida government agencies. Subpoena Reqs. Produc. ¶¶ 17, 20-22. Given that the information is obtainable from less burdensome sources, the Plaintiffs should seek to obtain the information from the parties before seeking it from a non-party.[4] *Virginia Dep't of Corr.*, 921 F.3d at 189

---

[4] Even if certain categories of information requested by the subpoena were somehow relevant because the Defendants relied on Dr. Grossman in its determination that the treatments at issue were experimental—which the Plaintiffs have not alleged—the Plaintiffs should seek to obtain that information from the Defendants.

("the requesting party should be able to explain why it cannot obtain the same information, or comparable information that would also satisfy its needs, from one of the parties to the litigation—or, in appropriate cases, from other third parties that would be more logical targets for the subpoena.").

## IV.   The Court Should Award Dr. Grossman Her Costs and Attorneys' Fees

The Plaintiffs may not like what Dr. Grossman has to say about the medical issues in this case. But that does not give them leave to abuse their subpoena authority to harass, oppress, vex, and attempt to silence her, and others who have similar views. Ex. 3 ¶¶ 17-20.

If the Court grants Dr. Grossman her requested relief, then she respectfully requests that the Court also award appropriate costs and attorneys' fees under Rule 45(d)(1) against the Plaintiffs and their counsel. *See, e.g.*, *Cincinnati Ins. Co. v. Cochran*, 2005 WL 5277205, *1-2 (N.D. Fla. Mar. 10, 2005) (ordering party's attorney to pay attorneys' fees to non-party after court issued a protective order in favor of the non-party).

The subpoena power of this Court should not be used so carelessly. Plaintiffs' counsel, Ms. Altman,[5] after being notified of errors on the face of the subpoena,

---

[5] Ms. Altman is the Managing Partner of the Pillsbury Miami office and should know better than to repeatedly serve a non-party with such burdensome requests in a subpoena that is facially invalid under Rule 45 for violating the Rule's geographic limits. Even after a process server was hired to serve Dr. Grossman at her residence

failed to correct them and reissued the same defective subpoena and served it upon Dr. Grossman twice. Additionally, Plaintiffs' counsel has an affirmative duty under Rule 45(d)(1) to take reasonable steps to avoid undue burden and expense on a person subject to the subpoena. Plaintiffs' counsel clearly disregarded their obligations under Rule 45 and issued a subpoena to a non-party that would not even have passed muster as a discovery request directed to a party. The Court should sanction such behavior and award Dr. Grossman her lost earnings and reasonable attorneys' fees for having to file this Motion.

## CONCLUSION

This Court should quash Plaintiffs' subpoena to Dr. Grossman.

### LOCAL RULES CERTIFICATIONS

Counsel for the movants conferred with counsel for all adverse parties and thus complied with the attorney-conference requirement of Local Rule 7.1(B). Plaintiffs oppose this motion.

This motion contains 4,715 words and therefore complies with the word-count requirement of Local Rule 7.1(F).

[signature page follows]

---

in New York, the subpoena continued to list an invalid California address for Dr. Grossman.

Dated: February 6, 2023                    Respectfully submitted,


                                                  /s/ Daniel E. Nordby
                                           Daniel E. Nordby (FBN 14588)
                                           SHUTTS & BOWEN LLP
                                           215 South Monroe Street, Suite 804
                                           Tallahassee, Florida 32301
                                           Telephone: (850) 241-1717
                                           DNordby@shutts.com
                                           CHill@shutts.com

                                           Michael Ding*
                                           D.C. Bar No. 1027252
                                           AMERICA FIRST LEGAL FOUNDATION
                                           611 Pennsylvania Ave SE #231
                                           Washington, D.C. 20003
                                           Tel.: (202) 964-3721
                                           E-mail: michael.ding@aflegal.org


                                             *Pro hac vice motion forthcoming


                                           *Counsel for Miriam Grossman, MD*