IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

AUGUST DEKKER, *et al.*,

     *Plaintiffs*,

  v.

JASON WEIDA, *et al.*,

     *Defendants*.

Case No. 4:22-cv-00325-RH-MAF

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DR. MIRIAM GROSSMAN'S MOTION TO QUASH SUBPOENA

Dr. Miriam Grossman's Motion to Quash Subpoena ("Motion") is rife with mischaracterizations, outright falsities, and procedural defects. Most striking among these are Dr. Grossman's misrepresentations about the nature of the subpoenas served. In the sole conference between counsel related to the subpoenas, Dr. Grossman's counsel represented that only one subpoena had been served, and that it was defective both as to the place of production and the time for compliance. Plaintiffs' counsel immediately corrected this, clarifying that two nonidentical subpoenas were served, one of which had both a proper place and time for production. Now, without conferring further with Plaintiffs, Dr. Grossman has filed this unnecessary Motion, newly alleging that while two subpoenas were served on Dr. Grossman, they were identical and thus had identical flaws. This is patently

untrue, and counsel should have raised this issue before filing the instant Motion. Moreover, and as discussed below, Plaintiffs agree to withdraw and limit several requests, which Plaintiffs had already promised to do to some extent by the very next business day following counsel's sole conference. Counsel's race to the courthouse to preserve rights that were not even close to expiring negates any possibility that counsel has satisfied Local Rule 7.1(B)'s good faith conference requirement prior to filing this Motion.

Moreover, Dr. Grossman attempts to downplay her role in the GAPMS Process.[1] Dr. Grossman was a paid consultant for Defendant Agency for Healthcare Administration ("AHCA") for the purposes of facilitating its determination as to whether gender-affirming care was experimental. Whether AHCA's determination was reasonable is the central issue in this litigation. Dr. Grossman's participation was not just limited to a single hearing (where Defendants held her out as an expert who supported their actions) but spanned the entirety GAPMS review process, with Dr. Grossman being consulted at the outset of the GAPMS process and participating in communications with Defendants' outside counsel in late July 2022, weeks before this lawsuit's filing. Plaintiffs' requests seek to elicit information about whether it was reasonable for Defendants to rely on Dr. Grossman in this capacity, and Dr.

---

[1] "GAPMS Process" refers to Defendants' process for determining if a treatment is consistent with "Generally Accepted Professional Medical Standards" (GAPMS) pursuant to Fla. Admin. Code R. 59G-1.035.

Grossman has failed to articulate with any specificity the burden associated with complying with these requests.

Finally, Dr. Grossman has filed her Motion in the wrong court: only the United States District Court for the Southern District of New York may decide this Motion at this time under Rule 45(d).  For these reasons, Plaintiffs respectfully request that this Court deny the Motion.

## CORRECTIVE FACTS

Dr. Grossman's Motion is entirely misleading, rendering it necessary to correct the record here regarding both subpoenas that Plaintiffs' counsel issued in this matter and caused to be served on Dr. Grossman.

The first subpoena, which is not at issue here.  On December 20, 2022, Plaintiffs' counsel issued a first subpoena to be served on Dr. Grossman, with compliance due by January 20, 2023 in Los Angeles. (ECF 93.1.) Plaintiffs' counsel conducted public records searches which indicated that Dr. Grossman most recently resided in Los Angeles.  After service at the Los Angeles address failed over the course of the next several weeks, Plaintiffs' counsel contacted Dr. Grossman (ECF 93.4), who explained to Plaintiffs' counsel on January 5th that she now lived in New York and that her attorney would be in touch soon.  Following this call, Plaintiffs' counsel immediately caused the subpoena to be routed for service in New York, effecting service of process on January 18, 2023, two days before Dr. Grossman's

response was due.  (ECF 93, p. 4.)  This delay was made possible by Dr. Grossman's ignoring Plaintiffs' counsel's request that Dr. Grossman accept service electronically.  (ECF 93.6.)[2]  The January 20 compliance deadline came and went.

The second, and operative, subpoena.  On January 26th, Plaintiffs' counsel identified authority suggesting the need to reissue the subpoena due to geographical limitations on the place for production.   So, Plaintiffs' counsel issued a second subpoena the next day and caused it to be served on Dr. Grossman on January 31. The second subpoena demanded compliance by February 14, the date that fact discovery was then set to close in this matter, and a date that complies with the 14-day lead time envisioned by Rule 45(d)(2)(B).  (Ex. A [second subpoena]; ECF 89, at 6.)  The second subpoena's place of production is New York City, which is within 100 miles of Dr. Grossman's residence in Rockland County, New York.   Dr. Grossman was served with both the first and second subpoenas at this residence. (Ex. B [proof of service]; ECF 93, at 4-5.)  Though the two subpoenas have different faces, they seek the same documents.[3]

Counsel Confer on One Occasion.  On Friday, February 3, 2023, the first mutually agreeable time for counsel to meet, Plaintiffs' counsel Joe Little and Dr.

---

[2] Dr. Grossman also ignored Plaintiffs' counsel's offer to extend the production deadline (*Id.*)

[3] Admittedly, the face of each subpoena contains a typographical error, referring to Dr. Grossman as "Mirian," not "Miriam."

Grossman's counsel Daniel Nordby conferred telephonically.  Early in the call, Mr. Little corrected Mr. Nordby's stated misconception that only one subpoena had been issued and served in this matter.  Following Mr. Little's correction and Mr. Nordby's apparent acceptance of this correction, neither attorney broached the issue again prior to Mr. Nordby's filing of this Motion.  Mr. Little expected that Mr. Nordby would inquire further with his client regarding the existence of a second subpoena, the service of which moots both the jurisdictional and timing concerns raised in the Motion.

For the rest of this twelve-minute Friday afternoon call, counsel discussed the remaining objections to the subpoena, with Mr. Little offering to relay the discussion to his co-counsel and to respond in writing by the coming Monday.  Mr. Little clarified that it was unlikely that he could achieve his co-counsel's consensus and formalize such consensus before Monday, though he would try.  Mr. Nordby responded that this was acceptable.  Strangely, the call ended with Mr. Nordby stating that he had been and was still contemplating filing a motion to quash in the unspecified near future solely to "preserve [Dr. Grossman's] rights."  Plaintiffs' counsel appreciated the warning but did not anticipate that Mr. Nordby would file this Motion the morning of the very next business day, especially in light of Mr. Little's promise to narrow the requests sometime that day.

Now, Dr. Grossman newly contends in her Motion that she did receive service of two subpoenas but that they were 100% identical, both calling for production on January 20, 2023 in Los Angeles. (ECF 93, at 14-15.) Dr. Grossman is mistaken, as the subpoenas have different dates for compliance and places for production. Regardless, Dr. Grossman's counsel never raised this issue prior to filing the Motion.

Hours before this Opposition was filed in advance of tomorrow's hearing, Plaintiffs' counsel finally received the proof of service demonstrating that two nonidentical subpoenas were indeed served on Dr. Grossman. (Ex. B.) Mr. Little emailed Mr. Nordby the second subpoena, the proof of service, and the various concessions contained herein. (Ex. C.) Mr. Little then requested that Mr. Nordby withdraw the Motion in light of the email's contents and attachments. (*Id.*) After receiving no response from Mr. Nordby, Plaintiffs' counsel preceded to file this Opposition.

Dr. Grossman's Participation in the GAPMS Process. Dr. Grossman was one of at least eight consultants hired by Defendants in this matter in relation to the GAPMS Process. Here, the relevant GAPMS Process resulted in the promulgation of Fla. Admin. Code R. 59G-1.035(7)(a) (the "Challenged Exclusion"), which categorically excludes Medicaid coverage of gender-affirming care. According to the purchase order for her services, Dr. Grossman was engaged to provide:

Technical assistance in the form of research, interpretation, and consultation to staff members of the Agency for the purpose of assisting in the identification, analysis, and summarization of the relevant published reports and articles in the authoritative medical and scientific literature (published in peer-reviewed scientific literature generally recognized by the relevant medical community or practitioner specialty associations) related to health services being considered for coverage under the Florida Medicaid Program.

(Ex. D [public details regarding Dr. Grossman's purchase order].)

Moreover, Dr. Grossman was part of a panel of experts that presided over Defendants' July 8, 2022 hearing regarding the Challenged Exclusion, where the experts sought to vehemently rebut any discussion that challenged the GAPMS Memorandum's findings.  (Ex. E [Dr. Grossman writes to colleague the day before the hearing: "Can't wait to watch you take them apart"].)[4]

In fact, Dr. Grossman expressed in a July 9th email that she was disappointed when no opportunity arose for her to speak at the meeting, which appears to be somewhat attributable to her experiencing audio issues during the hearing.  (*See* Ex. F [concluding her email: "To which state do we go next?  I'm ready."].)  Throughout

---

[4] The GAPMS Memorandum refers to Defendant AHCA's June 2022 document entitled "Generally Accepted Professional Medical Standards Determination on the Treatment of Gender Dysphoria."  (ECF 11.1, Ex. E.)

that July, Dr. Grossman appears to have provided consulting services to Defendants prior to the promulgation of the Challenged Exclusion.  (ECF 91.1.) (Defendants' amended privilege log states that Dr. Grossman communicated with AHCA's outside litigation counsel on July 25 regarding public comments); Ex. G [reviewing public comment and raising concerns about an opinion another of Defendants' experts expressed]; Ex. H [solicited by Defendants on July 19 to advise on public comments nearly two weeks after the July 8 hearing].)

Finally, the Rule 30(b)(6) deposition, which is ongoing as of the time of this filing, has already revealed that AHCA undertook its GAPMS review in response to a direct request of the Governor and not in response to the FDOH's April 20, 2022 guidance, and that Dr. Grossman was involved throughout much of the GAPMS Process.

Plaintiffs withdraw several requests.  As represented by Plaintiffs' counsel in the sole conference before this Motion's filing, Plaintiffs intended to narrow the scope of the document requests, starting with trimming the definition of "You" to just Dr. Grossman.  Now, and as counsel planned to do in writing on Monday prior to the Motion's filing, Plaintiffs withdraw the following requests:

*Request Nos. 4-7 and 18-19.*[5]  Seeking documents relied upon by Dr. Grossman in rendering opinions to Defendants or in prior testimony.

*Request No. 9.*  Seeking Dr. Grossman's communications with others who have given legal testimony on gender dysphoria matters.

*Request Nos. 11 and 25.*  Seeking evidence of Dr. Grossman's affiliation with various transgender skeptical organizations communications with such organizations.

*Request No. 13.*  Seeking Dr. Grossman's social media posts related to gender dysphoria.

*Request No. 16.*  Seeking evidence of compensation that Dr. Grossman has received for testifying on issues regarding gender dysphoria.

*Request No. 21.*  Seeking Dr. Grossman's communications with the Florida Department of Health.

*Request Nos. 23-24.*  Seeking evidence of Dr. Grossman's donations to and attendance at rallies of transgender-skeptical causes.

Accordingly, a number of the issues raised by Dr. Grossman's motion to quash are moot.

---

[5] The verbatim text of each request is located in the attachment to the subpoena included as Exhibit A to the Declaration of Joe Little submitted concurrently with this Opposition.

## ARGUMENT

### I.    The Motion is Premature.

Local Rule 7.1(B) requires that a movant's counsel confer with the subject of its motion in good faith prior to filing.  Here, three days before the Motion's filing, Plaintiffs' counsel informed Dr. Grossman's counsel that two subpoenas existed and were served, the second of which extended the compliance date and shifted the place of production to New York City.  The discussion on this issue ended there, and counsel reached no agree-to-disagree consensus, as it was clear that Mr. Nordby needed to follow up with his client as to the existence of a second subpoena before the discussion could proceed further.

Now, Dr. Grossman's position has morphed: she argues that two subpoenas were in fact served, but that they are 100% identical.  Dr. Grossman has chosen motion practice to litigate her factual misconception rather than raising this incorrect position with Plaintiffs' counsel.  This conduct negates any possible inference of good faith, especially given that if Dr. Grossman were correct, the proper course of action would have been to ignore both subpoenas. *See Lebarr v. Lay*, No. 3:20-CV-88-HLA-JBT, 2022 WL 2275172, at *2 (M.D. Fla. June 23, 2022) ("the subpoena violates Rule 45(c)(2)(A)'s 100-mile limit. A person or entity cannot be sanctioned for failing to comply with a defective subpoena.").  Moreover, if good faith existed

here, Dr. Grossman's counsel would have waited for Mr. Little's promised follow-up the next business day.

Under Local Rule 7.1(B), the Motion must be rejected as premature, requiring that this Court endure trivial matters and that Plaintiffs divert precious resources to motion practice despite desirable and available alternatives.

## II.   The Second Subpoena Provides a Reasonable Date and Proper Location for Production.

Although Rule 45 of the Federal Rules of Civil Procedure "does not specify what constitutes reasonable time to comply, common sense dictates that reasonableness is determined in relation to the extent of the materials requested and other underlying circumstances in the case." In this case, the date of production of the second subpoena is reasonable. Dr. Grossman was served with the first subpoena on January 18, 2023, and thus has had actual knowledge of the requested documents since that time. Moreover, she was served with the second subpoena on January 31, 2023, two weeks before the compliance deadline. Under these circumstances, the time given to comply was reasonable. *See Minor I Doe through Parent I Doe v. Sch. Bd. for Santa Rosa Cnty., Fla.,* No. 3:08CV361/MCR/EMT, 2009 WL 10674249, at *2 (N.D. Fla. Nov. 23, 2009) (at least ten days is customarily expected).

Further, once Plaintiffs became aware of Dr. Grossman's current address, the subpoena was amended and reissued with a location for production within 100 miles

of the location of Dr. Grossman's residence.   Accordingly, the second subpoena complies with the geographic limitations of Rule 45(c).

## III.   The Second Subpoena's Requests Are Relevant.

Dr. Grossman's motion to quash claims that none of the requested documents "have any bearing on the question presented in this case." (ECF 93, at 13.)  This is decidedly untrue.   The controlling question here is "whether, based on current medical knowledge, the state's determination that these treatments are experimental is reasonable."  (ECF 64, at 4.)  Plaintiffs' requests seek to discover whether it was reasonable for Defendants to rely on Dr. Grossman and whether any other irregularities existed in the GAPMS Process.

As discussed above, Plaintiffs have learned that Dr. Grossman was a paid consultant in the GAPMS Process who assisted Defendants in rebutting public comments regarding the Challenged Exclusion.  She both attended the July 8 hearing and advised Defendants before and after the hearing.  Moreover, her serving on this panel constituted an endorsement of Defendants' positions by a licensed medical doctor.  Because of these circumstances, Plaintiffs' requests seek to investigate the complete circumstances of Dr. Grossman's participation,[6] her connections with the

---

[6] (*See* Ex. A, Request No. 9 [communications with Defendants' declarants]; Nos 17, 20 [communications with Defendants]; Nos. 22 [communications with the Governor's Office].)

other GAPMS Process consultants,[7] and her qualifications and background as a transgender skeptic.[8]  These requests seek information that is directly relevant to the question of whether this GAPMS Process was a conclusion in search of an argument, i.e., whether Dr. Grossman was chosen as a consultant because of her qualifications and credibility or because of her public stance regarding the relevant treatments.

## IV.   The Subpoena's Requests Are Not Unduly Burdensome.

Rule 45 recognizes that discovery is inherently burdensome, and that non-parties subject to discovery may only protest undue burdens.  "The undue burden analysis requires the court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it." *Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322, 1337 (11th Cir. 2020) (cleaned up); *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, 295 F.R.D. 517, 527 (N.D. Fla.), *objections overruled*, 981 F. Supp. 2d 1207 (N.D. Fla. 2013) ("This duty reflects a balancing between the litigants' need to obtain information from non-parties and the need to protect outsiders to the litigation from having to incur undue burden and expense.").  "In determining whether the non-party has shown that the subpoena will impose an undue burden, a court should consider the party's need for the documents,

---

[7] (*See id.*, Request No. 9 [communications with Defendants' witnesses and experts].)
[8] (*See id.*, Request Nos. 1-3 [previous relevant testimony]; Nos. 14-15 [non-testimonial speaking engagements]; Nos. 10, 12 [publications on gender dysphoria].)

the time and expense required to comply with the subpoena, the particularity with which the documents are described, and the importance of the issues at stake in the litigation." *Am. Online, Inc. v. Bagley*, No. 05-22399-CIV, 2005 WL 8155872, at *2 (S.D. Fla. Nov. 1, 2005).  A non-party moving to quash a subpoena has "a heavy burden of showing extraordinary circumstances based on specific facts that would justify such an order." *Id.* (quoting *Alexander v. FBI*, 186 F.R.D. 60, 64 (D.D.C. 1998)).

Here, Dr. Grossman asserts two interests: (1) avoiding the work associated with collecting responsive documents and (2) avoiding disclosure of "deeply personal information."  (ECF 93.5, ¶ 18.)  However, Plaintiffs have withdrawn the requests that arguably seek personal (although still relevant) information, and Plaintiffs are willing to enter into a protective order with Dr. Grossman governing the use in both this litigation and elsewhere of any documents she produces.  Thus, the only apparent burden here is that which is inherent to virtually all non-party subpoena recipients.  As set forth below, on balance, the relevancy of each request outweighs this burden:[9]

---

[9] In the event that this Court determines that any of the above requests are overly broad or unduly burdensome, this Court should modify the subpoena rather than quash it outright. *See Fadalla v. Life Auto. Prod., Inc.*, 258 F.R.D. 501, 507 (M.D. Fla. 2007) ("Generally, modification of a subpoena is preferable to quashing it outright.") (internal quotation marks omitted).

Expert Witness Materials (Nos. 1-3). These requests respectively seek a list of legal proceedings in which Dr. Grossman has testified, transcripts of such testimony, and Dr. Grossman's expert reports and declarations.  Dr. Grossman has not articulated with any specificity why it would be unduly burdensome to comply with these requests.  If the responsive documents exist and are in her possession or control, she should have to explain why it is burdensome to retrieve them (e.g., how and where they are stored, how many exist, what would have to be done to produce them).  *See Club Exploria, LLC v. Aaronson, Austin, P.A.*, No. 618CV576ORL28DCI, 2019 WL 13150470, at *4 (M.D. Fla. Aug. 26, 2019) (denying motion to quash because, in part, movant failed to "provide the Court with any context" including "the actual number of documents involved" or "the burden of producing those documents, etc." from which the court could "determine whether the requests were … unduly burdensome.").

According to her own website, "Dr. Grossman's expert psychiatric opinion is sought for witness testimony and court reports."  (Ex. I.)  As a practicing expert witness, there is little reason why these requests should impose an undue burden on Dr. Grossman when she would be required to comply with similar requests in her regular practice.

Meanwhile, these documents are incredibly relevant.  Dr. Grossman was explicitly hired by Defendants to serve as an "expert" consultant and to advise

15

Defendants as to authoritative medical and science literature on gender dysphoria. (Ex. D.)   On balance, Plaintiffs are entitled to know what Dr. Grossman's qualifications were as a professional consultant.  Her qualifications or lack thereof are an important piece of the overall reasonableness in Defendants hiring and relying on Dr. Grossman to reach Defendants' determinations.[10]

Publications on Gender Dysphoria (Nos. 10 & 12) and Speaking Engagement Materials (Nos. 14-15).   Nowhere in Dr. Grossman's declaration does she substantiate the burden involved in complying with these specific requests, which generally seek the production of materials and recordings from Dr. Grossman's publications, speaking engagements, and presentations regarding gender dysphoria. Nonetheless, Plaintiffs agree to limit the time period for these requests to the two-year period preceding the July 8, 2022 hearing.

As for Plaintiffs' need to discover this information within this two-year period, the central question in this case is whether Defendants reasonably determined that gender-affirming care is experimental.   Dr. Grossman's writings and professional engagements from this period will evidence her background,

---

[10] At the hearing for Plaintiffs' Motion to Compel in this matter, Defendants' counsel represented that the GAPMS Process subject matter experts including Dr. Grossman were hired in a dual capacity with an eye towards litigation.   Assuming this representation is accurate, it seems likely that when Dr. Grossman chose to advise Defendants for pay, she was aware of the likelihood of imminent litigation should the Challenged Exclusion be enacted.

experience, and reputation, all of which are relevant to the question of whether it was reasonable for Defendants to rely on her services in promulgating the Challenged Exclusion.

Communications with Defendants' Declarants (No. 8).  This request seeks Dr. Grossman's communications with Defendants' declarants in this matter, of which there are twenty.   Plaintiffs agree to limit this request to only seek those communications with five GAPMS Process consultants: Dr. James Cantor, Dr. Quentin Van Meter, Dr. Andre Van Mol, Dr. Patrick Lappert, and Dr. G. Kevin Donovan.  Moreover, Plaintiffs further agree to limit the time period for this request, beginning with the two-year period preceding the July 8, 2022 hearing and continuing through August 20, 2022.

Plaintiffs are entitled to this narrowed universe of documents because they are likely to evidence how the GAPMS Process experts were selected and how they collaborated throughout the Process, which are issues central to the question of whether Defendants acted reasonably here.

Finally, this request seeks just over two years of emails with only five persons, some of whom Dr. Grossman may not have communicated with at all.  The obvious relevance of these communications substantially outweighs Dr. Grossman's vague assertions of burden.

Communications with Defendant AHCA (Nos. 17, 20).  Although Defendants agreed to produce all their communications with Dr. Grossman, Defendants' document collection efforts so far have yielded few documents featuring Dr. Grossman.  However, not only was a motion to compel necessary for Plaintiffs to get relevant documents from Defendant AHCA, but the production of documents pursuant to agreed-upon search terms remains pending.  Indeed, Defendants have represented that their document collection efforts have been subject to error, with Defendants citing corrupted documents, missing custodian records, and the like. Defendants continue to experience significant trouble exporting emails from their system.  Thus, it is entirely possible that Dr. Grossman is in possession of AHCA communications that AHCA could never produce or has not yet produced in this matter.  Given Dr. Grossman's representations about the limited scope of her participation in the GAPMS process, it should be a minimal burden to produce these documents.

Communications with the Florida Governor's Office (No. 22).  These requests seek communications related to gender dysphoria between Dr. Grossman, a New York resident, and the Florida Governor's Office.  As Plaintiffs' Complaint alleges, various Florida governmental offices have recently sought to punish transgender persons within the state.  (ECF 1, ¶ 126.)  The close proximity in time between these events and the GAPMS Process suggests the existence of a coordinated effort, with

all roads leading back to the Governor's Office.  Moreover, the Governor's Office appears to have collaborated with Defendants in promulgating the Challenged Exclusion.   (ECF 91.1 [AHCA amended privilege log featuring numerous communications with counsel for the Governor's Office].)  Finally, Dr. Grossman is associated with at least one organization, the Alliance Defending Freedom, which has close ties to the Governor's Office.  (*See* Ex. J [Dr. Grossman's amicus brief submitted by the Alliance Defending Freedom to the 11th Circuit regarding transgender student bathroom access]; Ex. K [Gov. DeSantis appoints Alliance Defending Freedom counsel to advisory board].)[11]  Given these circumstances, if responsive documents exist within Dr. Grossman's possession or control, such documents would likely evidence the Governor's Office's role in directing or facilitating the promulgation of the Challenged Exclusion and the ideological – as opposed to medical – basis for the rule.  Indeed, the Rule 30(b)(6) deposition, which is ongoing as of the time of this filing, has already revealed that AHCA undertook its GAPMS review in response to a direct request of the Governor and not in response to the FDOH's April 20, 2022 guidance, and that Dr. Grossman's involvement was not just limited to her July 2022 services described herein.  Unless

---

[11] *See also* https://www.facebook.com/watch/live/?ref=watch_permalink&v=178455767664682 (Gov. DeSantis speaks at Alliance Defending Freedom event).

Dr. Grossman can articulate why this request is unduly burdensome in and of itself, compliance must be required.

In sum, Plaintiffs have tailored their existing requests to seek a narrower universe of documents.  To avoid compliance, Dr. Grossman must articulate a greater burden than she has already done.

## V.      The S.D.N.Y. Must Decide the Motion.

Under Rule 45(d), motions pertaining to the enforcement of subpoenas must be brought in the district court presiding over the place of production called for in the subpoena. *Fla. State Conf. of Branches v. Lee*, No. 4:21CV187-MW/MAF, 2021 WL 5014156, at *1 (N.D. Fla. Sept. 24, 2021) ("the Southern District of Florida is the district where compliance is required, and Plaintiffs must move to compel production there.").  As one court has stated:

> The 2013 amendment [to Rule 45] divested the Issuing Court of its authority to address motions to quash unless: (1) it is also the Compliance Court; (2) the Compliance Court transfers the motion to the Issuing Court with the consent of the subpoenaed person; or (3) the Compliance Court finds that exceptional circumstances warrant transfer.

*First Korean Baptist Church of Dallas v. Amtrust N. Am.*, No. 4:20-CV-423-SDJ-KPJ, 2021 WL 2339198, at *2 (E.D. Tex. June 8, 2021).

Even in Dr. Grossman's manufactured reality, where the subpoenas are identical and both call for production in Los Angeles, this Court respectfully may not grant the Motion over Plaintiffs' objection, as the compliance court in that inapplicable scenario would be the U.S. District Court for the Central District of California. 28 U.S.C.A. § 84(c)(2). Truthfully, though, the second subpoena calls for production in New York City, rendering the proper court to rule on this Motion the U.S. District Court for the Southern District of New York. *Id.* at § 112(b). Dr. Grossman cannot move to quash here and must be required to refile elsewhere should there actually exist any dispute following further meet and confer efforts.

## **CONCLUSION**

For all the aforementioned reasons, Plaintiffs respectfully request that the Court deny Dr. Grossman's Motion.

Dated this 8th day of February 2023.

Respectfully Submitted.

*/s/ Joe Little*

**PILLSBURY WINTHROP SHAW PITTMAN, LLP**

**Jennifer Altman** (Fl. Bar No. 881384)
**Shani Rivaux** (Fl. Bar No. 42095)
600 Brickell Avenue, Suite 3100
Miami, FL 33131
(786) 913-4900
jennifer.altman@pillsburylaw.com
shani.rivaux@pillsburylaw.com

**William C. Miller***
**Gary J. Shaw***
1200 17th Street N.W.
Washington, D.C. 20036
(202) 663-8000
william.c.miller@pillsburylaw.com

**Joe Little***
500 Capitol Mall, Suite 1800
Sacramento, CA 95814
(916) 329-4700
joe.little@pillsburylaw.com

**NATIONAL HEALTH LAW PROGRAM**

**Abigail Coursolle***
3701 Wilshire Boulevard, Suite 315
Los Angeles, CA 90010
(310) 736-1652
coursolle@healthlaw.org

**Catherine McKee***
1512 E. Franklin Street, Suite 110
Chapel Hill, NC 27514
(919) 968-6308
mckee@healthlaw.org

**LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.**

**Omar Gonzalez-Pagan***
120 Wall Street, 19th Floor
New York, NY 10005
(212) 809-8585
ogonzalez-pagan@lambdalegal.org

**Carl S. Charles***
1 West Court Square, Suite 105
Decatur, GA 30030
(404) 897-1880
ccharles@lambdalegal.org

**SOUTHERN LEGAL COUNSEL, INC.**

**Simone Chriss** (Fl. Bar No. 124062)
**Chelsea Dunn** (Fl. Bar No. 1013541)
1229 NW 12th Avenue
Gainesville, FL 32601
(352) 271-8890
Simone.Chriss@southernlegal.org
Chelsea.Dunn@southernlegal.org

**FLORIDA HEALTH JUSTICE PROJECT**

**Katy DeBriere** (Fl. Bar No. 58506)
3900 Richmond Street
Jacksonville, FL 32205
(352) 278-6059
debriere@floridahealthjustice.org

* *Admitted pro hac vice*

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 8th day of February 2023, a true copy of the foregoing has been filed with the Court utilizing its CM/ECF system, which will transmit a notice of electronic filing to counsel of record for all parties in this matter registered with the Court for this purpose.

## <u>CERTIFICATE OF WORD COUNT</u>

As required by Local Rule 7.1(F), I certify that this Motion contains 4,742 words.

<div align="center" style="text-align:right">

*/s/ Joe Little*
Joe Little

Counsel for Plaintiffs

</div>