IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

AUGUST DEKKER, *et al.*,

        *Plaintiffs*,

v.

JASON WEIDA, *et al.*,

        *Defendants*.

Case No. 4:22-cv-00325-RH-MAF

**PLAINTIFFS' SECOND MOTION TO COMPEL PRODUCTION
OF DOCUMENTS AND FOR EXPEDITED BRIEFING AND RULING**

Pursuant to Fed. R. Civ. P. 37(a)(3)(b) and N.D. Local Rs. 7.1(L) and 26.1, Plaintiffs move this Court for an order compelling Defendants Jason Weida, in his official capacity as Secretary of the Agency for Health Care Administration (AHCA), and AHCA to produce documents in response to Plaintiffs' Requests for Production, and for an expedited briefing schedule and ruling on this Motion. As grounds, Plaintiffs state:

1.     This lawsuit challenges Defendants' adoption of Fla. Admin. Code R. 59G-1.050(7) (the "Challenged Exclusion"), which prohibits Medicaid coverage of medically necessary treatments for gender dysphoria.

1

2. On January 30, 2023, in response to Plaintiffs' Motion to Compel, this Court entered an Order overruling Defendants' claims of attorney-client and work product privileges for certain documents prepared as part of Defendants' formal adoption of the Challenged Exclusion, which it modified on January 31, 2023. (Dkt. Nos. 86, 89). Specifically, the Court found that Defendants were required to produce those documents Defendants created and relied on prior to August 21, 2022 as part of the rule adoption process. (Dkt. No. 89, at 4 ¶3).

3. After the Court entered its Order, counsel for Defendants have, for the most part, responded diligently and timely to Plaintiffs' requests. However, the Parties have reached an impasse regarding Defendants' obligation to produce two specific sets of documents: (1) a 17-page memo created on or around July 19, 2022 summarizing AHCA's analysis of and response to public comments receiving during the rule comment period (hereinafter, "17-page memo"), and any drafts thereof,[1] and (2) draft scripts of the July 8th, 2022 public hearing for the Challenged Exclusion (hereinafter, "July 8th script drafts") and e-mail communications between AHCA employees regarding the July 8th script drafts. The July 8th script drafts themselves

---

[1] *See also* Ex. A which is an email dated July 19, 2022 from Secretary Weida to Defendants' consultants stating that "you will each be overnighted a binder that contain a handful of the substantive comments (e.g., Yale, APP, Endocrine Society) that will be appended to a 17-page document summarizing the Agency's responses/positions with respect to the points raised in those substantive [public] comments.").

contains track-change edits and comments made by AHCA staff, including AHCA counsel.

4. Plaintiffs' counsel has conferred with Defendants' counsel regarding Plaintiffs' entitlement to these documents. (*See* Exs. C, D). On February 28, 2023, Defendants responded with their position that the 17-page memo is covered by attorney-client and work-product privilege because Defendant is not required, under Chapter 120, Fla. Stat., to respond to public comments during the rule-making process and, additionally, the document was "created at the direction of counsel, under the threat of litigation." (*See* Ex. B). Counsel for Defendants suggested that, to resolve the Parties' disagreement, the 17-page memo be submitted "for in camera review in order to get additional guidance [from the Court]."

5. As set forth in the Memorandum of Law below, Plaintiffs' position is that, based on the Court's previous ruling, this document is not shielded by privilege because it was created as part of Defendants' rulemaking process, *i.e.*, the process undertaken to adopt the Challenged Exclusion, and not for the purpose of giving legal advice or to assist future Defendants in litigation. Moreover, the 17-page memo, by Defendants' *own words,* concerns AHCA's views on the controlling question in this case, i.e., AHCA's views on the evidence base for gender-affirming care. Indeed, Defendant Weida described the document as "summarizing the

Agency's responses/positions with respect to the points raised in" "a handful of the substantive comments (e.g., Yale, APP, Endocrine Society)." (*See* Ex. A).

6.  With respect to the second set of documents at issue – the July 8th script drafts and related AHCA employee email communications – Defendants initially only claimed work product privilege to withhold these documents. (*See* Ex. D.) They now state that they intend to amend their privilege log and assert that the documents are also subject to the attorney-client privilege. (*See* Ex. B). As is the case for the 17-page memo, Plaintiffs contend that this document is not afforded privileged status simply because it includes comments made by an agency attorney, particularly because the comments were made in the development of agency policy and not for the primary purpose of providing legal advice.

7.  Due, in part, to Defendants' past delays in responding to discovery, the Parties jointly sought, and the Court granted, an Order to Extend Discovery and 26(a)(2) Deadlines, which extended the fact discovery deadline to March 10, 2023. (Dkt. No. 107).

8.  In line with that deadline, Plaintiffs have scheduled a final re-convening of their Rule 30(b)(6) deposition for March 8, 2023. Plaintiffs will, once again, be prejudiced in preparation for this Rule 30(b)(6) deposition because Defendants have, once again, delayed Plaintiffs ability to review documents pertinent to a controlling issue in this case: whether the process Defendants used and the conclusion they drew

in adopting the Challenged Exclusion was reasonable. *See Rush v. Parham*, 625 F.2d 1150 (5th Cir. 1980); *KG ex rel. Garrido v. Dudek*, 864 F. Supp. 2d 1314, 1321 (S.D. Fla. 2012).

9. Plaintiffs therefore seek an expedited briefing schedule and ruling from the Court.

**WHEREFORE**, Plaintiffs Request that the Court grant their motion to compel the production of documents, impose an expedited briefing schedule, and issue a ruling in an expedited manner.

## MEMORANDUM OF LAW

### I. LEGAL STANDARD GOVERNING DISCOVERY OBLIGATIONS UNDER RULE 26.

Rule 26 entitles Plaintiffs to reasonable discovery of materials and evidence relevant to the issues raised in their Complaint. *See* Fed. R. Civ. P. 26(b)(1) (2015); *see GHMC Holding Co., Inc. v. Sickle*, No. 3:14cv614, 2016 WL 7757522, at *2 (N.D. Fla. Feb. 23, 2016). As a general matter, the purpose of discovery under the Federal Rules of Civil Procedure "is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore[,] embody a fair and just result." *Pitts v. Francis*, No. 5:07cv169, 2008 WL 2229524, at *1 (N.D. Fla. May 28, 2008). Indeed, discovery is intended to allow each party to obtain information to best prepare for their respective cases. *DeepGulf, Inc. v.*

*Moszkowski*, 330 F.R.D. 600, 605 (N.D. Fla. 2019). The information sought "need not be admissible in evidence" to be discoverable. *See* Fed. R. Civ. P. 26(b)(1); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351-52 (1978). Taken together, Rules 26(g)(1)(A) and 34(1)(1), "place a burden on a party and the party's counsel to ensure that a reasonable and complete search is conducted and that *all* responsive material is either produced or withheld under a proper objection." *Waddell v. HW3 Inv. Grp., LLC*, No. 5:21cv55, 2021 WL 9781801, at *2 (N.D. Fla. Dec. 23, 2021) (internal citation and quotations marks omitted) (emphasis added). Motions to compel discovery brought pursuant to Rule 37 are committed to the sound discretion of the trial court. *Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984).

## II.     REQUESTS AT ISSUE

Pursuant to Local Rule 26.1(d), Plaintiffs set forth their Requests for Production that the requested documents fall under as well as Defendants' responses to Plaintiffs' Requests. The relevant row numbers for Defendants' amended privilege log are additionally cited in footnote 2, *infra*.

**Plaintiffs' Requests Nos.**

**13:** All Communications between Defendants and any Person who participated in promulgating the GAPMS Memo by advising Defendants, conducting research, or drafting, editing, or reviewing the GAPMS Memo.

6

**17:** All Documents relating to Defendants' contacting or consulting any Person for guidance, recommendations, or assessments relevant to the development of the Challenged Exclusion.

**25:** All Documents reflecting policies, procedures, or practices related to the implementation, application, or enforcement of the Challenged Exclusion.

**26:** All Communications relating to the implementation, enforcement, and/or impact of the Challenged Exclusion.

**41:** All Documents related to the planning, coordination, and content of the July 8th Hearing.

**Defendants' Response to Request Nos. 13, 17, 25, 26, 41:**[2]

Defendants object to this request. The requested documents may be subject to the attorney-client privilege, the work product doctrine, and prohibitions on disclosing healthcare information. The time period of the request, between January 1, 2015 to present, is overly broad, in that Rule 59G-1.050(7) was promulgated in 2022.

Defendants will produce all non-privileged responsive documents on January 6, 2023. The time period of these documents is between January 1, 2022 to present.

### III. NEITHER SET OF DOCUMENTS IS SUBJECT TO ATTORNEY-CLIENT OR WORK PRODUCT PRIVILEGES.

#### A. The documents are not entitled to attorney-client privilege.

The attorney-client privilege exists to protect confidential communications between client and lawyer made for the purpose of securing legal advice. *In re Grand Jury Matter No. 91-01386*, 969 F.2d 995, 997 (11th Cir. 1992). To claim

---

[2] Defendants' asserted privileges for the 17-page memo can be found at Ex. D, Row 143. Additionally, Defendants' asserted privileges for the draft July 8th script and corresponding email communications can be found at Ex. D, Rows 98-107, 112-125.

7

attorney-client privilege, the proponent of the privilege must prove that what is sought to be protected is (1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client. *Diamond Resorts U.S. Collection Dev., LLC v. US Consumer Att'ys, P.A.*, 519 F. Supp. 3d 1184, 1197 (S.D. Fla. 2021). No privilege attaches to a communication made in the presence of a third party unless the agency exception applies. *Id.* at 1198-99. For the agency exception to apply, "the third party's involvement must be reasonably necessary for the effective representation of the client." *Id.* at 1199 (internal quotations and citations omitted).

Defendants cite attorney-client privilege with respect to both the 17-page memo as well as the July 8th script drafts and related e-mail communications. But no such privilege is attached to either set of documents.

*First*, the 17-page memo contains summaries and analysis made by Defendants about substantive public comments from medical organizations collected during the adoption process of the Challenged Exclusion. Under Florida law, Defendants were required to collect and consider public comment prior to adopting the Challenged Exclusion as a final rule.[3] *See* Fla. Stat. §120.54(c)(1) ("any

---

[3] Defendants suggest in their email to Plaintiffs asserting attorney-client privilege for the 17-page memo that there is no obligation for state agencies to consider public comment under Florida's Administrative Procedures Act. This is not only contrary to the Florida statutory language but would also render the submission of public comment as part of state rule adoption meaningless.

8

material pertinent to the issues under consideration submitted to the agency within 21 days after the date of the public of notice or submitted to the agency between the date of publication…and the final public hearing *shall be considered by the agency and made a part of the record*….").

Here, Defendants wrote a substantive response to comments submitted by medical organizations—organizations from whom Defendants have sought discovery surrounding the underlying rationales for their positions. *See*, *e.g.*, Order, *In re subpoenas served on American Academy of Pediatrics, et al.*, Case No. 23-MC-00004 (CJN) (D.D.C. Feb. 28, 2023) (ECF No. 26). Not only is the memo "part of the record" in this rulemaking by Florida law, but it is an undoubtedly relevant document that sets forth Defendants' views on the scientific and medical basis supporting the provision and coverage of gender-affirming medical care. In other words, it is the clearest contemporaneous representation of Defendants' views of the substantive rationale for the Challenged Exclusion beyond the publicly released GAPMS memo. There is no indication the 17-page memo contains any legal advice, which in any event could be redacted. Nor have Defendants represented that it does. So, it simply is not protected by attorney-client privilege. What is more, Defendants mailed the 17-page memo to its outside consultants, whom Defendants retained to draft the GAPMS report and to participate in the July 8th public hearing on the Challenged Exclusion. (*See* Ex. A).

The attorney-client privilege protects confidential communications related to the provision of legal advice; it does not protect communications between agency counsel and employees when counsel is participating in the ordinary business of the agency. *See Andritz Sprout-Bauer, Inc. v. Beazer E., Inc.*, 174 F.R.D. 609, 633 (M.D. Pa. 1997) ("Only communications made for the express purpose of obtaining or giving legal advice are protected."); *see also In re Int'l Oil Trading Co., LLC*, 548 B.R. 825, 834 (Bankr. S.D. Fla. 2016). In-house legal counsel often "participates in and renders decisions about business, technical, scientific, public relations, and advertising issues, as well as purely legal issues," and such advice is not cloaked in privilege merely because it is given by an attorney. *In re Vioxx Prod. Liab. Litig.*, 501 F. Supp. 2d 789, 797 (E.D. La. 2007); *see also U.S. ex rel. Baklid-Kunz v. Halifax Hosp. Med. Ctr.*, No. 6:09-CV-1002-ORL-31, 2012 WL 5415108, at *3 (M.D. Fla. Nov. 6, 2012) ("simply funneling non-privileged information through an attorney does not automatically encase the document in the privilege"). Defendants cannot avoid disclosure of a document they created in the course of performing their obligations under Chapter 120 of the Florida Statutes simply because Defendants decided to involve an attorney in the document's creation. *See Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550–51 (10th Cir. 1995) ("the mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege").

Defendants' argument that these documents are shrouded in privilege merely because an attorney was consulted in their creation "goes way too far." *See In re Seroquel Prod. Liab. Litig.*, No. 606MD1769-ORL-22DAB, 2008 WL 1995058, at *7 (M.D. Fla. May 7, 2008). Agency action often "carries the potential for running afoul of some law or regulation or giving rise to a civil action," but such consultations do "not make the everyday business activities legally privileged from discovery." *See id.* Defendants have not met their burden of showing that the attorneys' involvement in the documents and communications at issue was more than "simply grammatical, editorial, technological, scientific, public relations, or marketing suggestions, and are specifically in the nature of legal advice." *See id.* (*See also* Ex. B.)

Furthermore, the fact that Defendants provided the 17-page memo to third parties, namely the outside consultants Defendants paid to assist with adoption of the Challenged Exclusion (*see* Ex. A), waives any attorney-client privilege that Defendants may have been able to assert. *Diamond Resorts U.S. Collection Dev.*, 519 F. Supp. 3d at 1198-99; *see also In re Seroquel Prod. Liab. Litig.*, 2008 WL 1995058, at *3 ("Documents prepared for dissemination to third parties are not protected from discovery by either the attorney-client or the work product privilege.").

11

*Second*, Defendants have not asserted why any of the comments contained as part of the July 8th script drafts – which were written, in part, by counsel for AHCA - were intended "for the express purpose of obtaining or giving legal advice." *See Andritz Sprout-Bauer, Inc.*, 174 F.R.D. at 633. Given that these drafts were presumably used as an outline for the substance of what AHCA employees and its consultants would say during the July 8th public hearing about the Challenged Exclusion, it is difficult to envision in what capacity legal advice was necessary. Instead, the comments contained on the July 8th script drafts (and the e-mail communications surrounding them) should be considered part of the Defendants' standard course of operations in organizing a public hearing in furtherance of adopting an agency rule. *See Andritz Sprout-Bauer*, 174 F.R.D. at 633; *In re Seroquel Prod. Liab. Litig.*, 2008 WL 1995058, at *7 ("Routine inclusion of attorneys in the corporate effort of creating marketing and scientific documents does not support the inference that the underlying communications were created and transmitted primarily to obtain legal advice as is required to justify a privilege.").

### B. The documents are not entitled to the work product privilege.

The work product privilege only applies if the "primary motivating purpose behind the creation of the document was to aid in possible future litigation." (Dkt. No. 89 (citing *United States v. Davis*, 636 F.2d 1028 (5th Cir. 1981))). It is not enough that future litigation was "certainly possible," that the document "may also

12

be helpful in the event of litigation," or that it was prepared "with an eye toward litigation." *Wyndham Vacation Ownership, Inc. v. Reed Hein & Assocs., LLC*, No. 6:18cv2171, 2019 WL 9091666, at *14-15 (M.D. Fla. Dec. 9, 2019). Here, Defendants bear the burden of establishing protection by a preponderance of the evidence, and they must "provide the Court with underlying facts demonstrating the existence of the privilege." *Diamond Resorts,* 519 F. Supp. 3d at 1200. In this case, rule promulgation is ordinary agency business, and documents prepared in the ordinary course of business or other non-litigation purposes are not protected as work product. *See U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.*, 630 F. Supp. 2d 1332, 1336 (M.D. Fla. 2007); *see also* Dkt. No. 89, at 2-3.

The fact that "an agency document was written by a lawyer does not necessarily make it 'work product.'" *Kent Corp. v. N.L.R.B.*, 530 F.2d 612, 623 (5th Cir. 1976). The work product privilege does not extend to attorneys acting in primarily political or policy roles on behalf of a government agency. *Texas v. United States*, 279 F.R.D. 24, 33 (D.D.C. 2012) ("Texas has failed to show that [its attorneys] were acting in a primarily legal role as map-drawers instead of in political or policy roles, as to which no work-product doctrine would apply in any event.").

*First*, regarding the 17-page memo, by Defendants' own admission the document was created not by counsel, but at most at counsel's direction. The document was created to "summarize[] AHCA's responses to comments received

during the rulemaking process," (Ex. B), *prior to the finalization of the rule at issue*. Indeed, it was shared with Defendants' outside consultants to assist in advising Defendants about the final development and adoption of the Challenged Exclusion. (*See* Ex. A). And the Court already found that "[t]he experts provided opinions ostensibly relied on as a basis for the rule that was later adopted and that the plaintiffs now challenge." (Dkt. No. 89, at 1-2). As a result, the Court already held and ordered in the clearest of terms that: "The defendants' claim of attorney-client privilege or work-product protection for communications with or documents prepared by or provided to experts prior to August 21, 2022 is overruled; the requested documents must be produced." (Dkt. No. 89, at 4 ¶ 3).[4] Given the Court's Order, Defendants cannot withhold the 17-page memo.

*Second*, Defendants assert the work-product privilege with respect to communications in drafts of the script for the July 8th, 2022 hearing and the emails exchanging the script drafts (*See* fn. 2, *supra*). Like the 17-page memo, Defendants fail to make the proper showing that these communications and documents were made in anticipation of litigation rather than as a part of the rule promulgation

---

[4] In ordering that Defendants produce documents similar to the ones at issue in this Motion, the Court observed "Either the experts were retained to assist in an honest evaluative process—in which event their communications were not within work-product protection—or the rulemaking process was a sham and the real goal was to prevail in the anticipated litigation—a possibility the defendants could embrace to win the discovery battle only by acknowledging that the rulemaking process was fatally flawed, or nearly so." (Dkt. No. 89, at 2-3).

process. *See P. & B. Marina, Ltd. P'ship v. Logrande*, 136 F.R.D. 50, 58 (E.D.N.Y. 1991), *aff'd sub nom. P&B Marina Ltd. v. LoGrande,* 983 F.2d 1047 (2d Cir. 1992) (refusing to extend the work product privilege to letters and memoranda related to administrative actions). Thus, as with previous documents created to aid in the adoption of the Challenged Exclusion, Defendants' "claim of attorney-client privilege or work-product protection for … documents … provided to experts prior to August 21, 2022," (Dkt. No. 89, at 4 ¶3), were "an essential part of the mandated rulemaking process" and should be overruled. (*Id.*).

### IV.   PLAINTIFFS' MOTION REQUIRES A PROMPT RULING.

Due to Defendants refusal to produce the 17-page memo and the July 8th script drafts (including the AHCA employee email exchanges regarding the July 8th script drafts), Plaintiffs are and will continue to be prejudiced in their ability to complete fact discovery in a timely manner. Due to the impending discovery deadline of March 10, 2023, and the Rule 30(b)(6) deposition scheduled for March 8, 2023, Plaintiffs seek "a ruling more promptly than would occur in the ordinary course of business." *See* N.D. Fla. Local Rule 7.01(L). Though this Motion is not labeled as an "Emergency," Plaintiffs will orally advise the Clerk's office that the motion seeking an expedited briefing schedule and ruling has been filed. *Id.*

## V. CONCLUSION

Defendants once again assert attorney-client and work product privileges for documents that should have produced in accordance with this Court's January 30, 2023 Order, as modified (Dkt. Nos. 86, 89), and which, for all intents and purposes, Defendants created as part of what *should* have been Defendants' regular course of agency business in formally adopting Medicaid policy. These documents are important to Plaintiffs' case as they provide insight into why Defendants reached the conclusion that adopting the Challenged Exclusion was or was not reasonable. As such, Plaintiffs respectfully request that this Court grant their Motion to Compel and order an expedited briefing and ruling schedule.

## **Certificate of Conferral**

Counsel for Plaintiffs conferred with Defendants counsel during telephone conferences on February 21 and 28, 2023 and March 1, 2023, and through email correspondence on February 16, 27, and 28, 2023 and March 2, 2023, but were unable to resolve the issues addressed in this Motion.

On March 2, 2023, after being notified of Plaintiffs' intent to file the instant motion, Defendants wrote: "If you could wait to file until Monday [March 6, 2023], we would appreciate that.  Andrew Sheeran [AHCA General Counsel] will be back in the office then and I'd like to discuss this issue with him in greater detail." Given the existing timeline and deadlines (with the remainder of the Rule 30(b)(6)

deposition scheduled for March 8 and the close of fact discovery scheduled for March 10), and the multiple meets and confers that have already taken place, Plaintiffs' counsel informed Defendants' counsel they could not accommodate the request but would include it in the instant motion.

Dated: March 2, 2023

Respectfully Submitted,

*/s/ Omar Gonzalez-Pagan*

**PILLSBURY WINTHROP SHAW PITTMAN, LLP**

**LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.**

**Jennifer Altman** (Fl. Bar No. 881384)
**Shani Rivaux** (Fl. Bar No. 42095)
600 Brickell Avenue, Suite 3100
Miami, FL 33131
(786) 913-4900
jennifer.altman@pillsbury.com
shani.rivaux@pillsbury.com

**Omar Gonzalez-Pagan**\*
120 Wall Street, 19th Floor
New York, NY 10005
(212) 809-8585
ogonzalez-pagan@lambdalegal.org

**Carl S. Charles**\*
1 West Court Square, Suite 105
Decatur, GA 30030
(404) 897-1880
ccharles@lambdalegal.org

**William C. Miller**\*
**Gary J. Shaw**\*
1200 17th Street N.W.
Washington, D.C. 20036
(202) 663-8000
william.c.miller@pillsburylaw.com

**SOUTHERN LEGAL COUNSEL, INC.**

**Simone Chriss** (Fl. Bar No. 124062)
**Chelsea Dunn** (Fl. Bar No. 1013541)
1229 NW 12th Avenue
Gainesville, FL 32601
(352) 271-8890
Simone.Chriss@southernlegal.org
Chelsea.Dunn@southernlegal.org

**Joe Little**\*
500 Capitol Mall, Suite 1800
Sacramento, CA 95814
(916) 329-4700
joe.little@pillsburylaw.com

**FLORIDA HEALTH JUSTICE PROJECT**

**NATIONAL HEALTH LAW PROGRAM**

**Katy DeBriere** (Fl. Bar No. 58506)
3900 Richmond Street

**Abigail Coursolle**\*
3701 Wilshire Boulevard, Suite 315
Los Angeles, CA 90010

(310) 736-1652
coursolle@healthlaw.org

**Catherine McKee**\*
1512 E. Franklin Street, Suite 110
Chapel Hill, NC 27541
(919) 968-6308
mckee@healthlaw.org

Jacksonville, FL 32205
(352) 278-6059
debriere@floridahealthjustice.org

\* *Admitted pro hac vice*

*Counsel for Plaintiffs*

18

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of March, 2023, a true copy of the foregoing has been filed with the Court utilizing its CM/ECF system, which will transmit a notice of electronic filing to counsel of record for all parties in this matter registered with the Court for this purpose.

## **CERTIFICATE OF WORD COUNT**

As required by Local Rule 7.1(F), I certify that this Motion contains 3,752 words.

*/s/ Omar Gonzalez-Pagan*
Counsel for Plaintiffs