IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

AUGUST DEKKER, et al.,

    Plaintiffs,

v.                                            Case No. 4:22-cv-00325-RH-MAF

JASON WEIDA, et al.,

    Defendants.
_____/

## MOTION FOR PROTECTIVE ORDER

Defendants Secretary Weida and the Florida Agency for Health Care Administration (the "Agency") move this Court to issue a protective order and prevent the deposition of Secretary Weida. The accompanying memorandum explains the bases for the motion.

Dated: March 15, 2023                      Respectfully submitted by:

/s/ Mohammad O. Jazil
Mohammad O. Jazil (FBN 72556)
mjazil@holtzmanvogel.com
Gary V. Perko (FBN 855898)
gperko@holtzmanvogel.com
Michael Beato (FBN 1017715)
mbeato@holtzmanvogel.com
zbennington@holtzmanvogel.com
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK
119 S. Monroe St. Suite 500
Tallahassee, FL 32301
(850) 270-5938
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2023, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

/s/ Mohammad O. Jazil
Mohammad O. Jazil

## MEMORANDUM

At 5:21pm, on March 8, 2023, Plaintiffs served Defendants with a notice to depose Secretary Weida. *See* Exhibit A at 7-8. The fact-discovery cutoff in the case was March 10, 2023. *See* Doc. 107 at 1. Plaintiffs had never before mentioned the need to depose Secretary Weida, though they had previously sought the deposition of Andrew Sheeran, the Agency's General Counsel, *see* Exhibit B at 1-2, and suggested that the Agency's outside counsel also sit for a deposition. *See* Exhibit C at 1-3. The apex doctrine bars Plaintiffs from taking Secretary Weida's deposition and, under the circumstances, the deposition notice's timing is unreasonable.

## BACKGROUND

To date, Plaintiffs have deposed three agency employees: Jeffrey English, Ann Dalton, and Matt Brackett. Plaintiffs deposed Mr. English on January 23, 2023. The next day, on January 24, 2023, Plaintiffs deposed Ms. Dalton, the Bureau Chief of Medicaid Policy. Then Plaintiffs deposed Mr. Brackett, the author of the Agency's GAPMS Report and the Agency's 30(b)(6) designee. Mr. Brackett's first deposition was on February 8, 2023, and his second deposition was on March 8, 2023. Among other things, these employees provided Plaintiffs with information concerning the GAPMS process, as well as the rulemaking process for Rule 59G-1.050(7). Other employees that Plaintiffs could have *attempted* to depose were Cody Farrill (who was then the Agency's Chief of Staff), Tom Wallace (who was and continues to be a Deputy Secretary for the Agency), Devona Pickle (a Program Director who assisted in the rulemaking process),

2

and Nai Chen (a Pharmacist who assisted in the rulemaking process and who, at one point, Plaintiffs suggested they would depose).

Plaintiffs also set for deposition of Andrew Sheeran, the Agency's General Counsel, though attorney depositions are highly disfavored. *See* Exhibit B; *see also Covington v. Walgreen Co.,* 2012 WL 2120776, at *3 (S.D. Fla. June 11, 2012). The parties reached an agreement where Plaintiffs would provide Mr. Sheeran with written questions in lieu of being deposed. *See* Exhibit B. Defendants sent no questions.

Plaintiffs intimated that they would depose outside counsel of record for Defendants as fact witnesses if they "wrote the initial rule and/or had any role in the drafting of the rule at issue in this case." *See* Exhibit C. Outside counsel did not, and so those depositions did not happen. *Id.*

Now Plaintiffs attempt to depose Secretary Weida. When the Agency began the GAPMS and rulemaking processes, Secretary Weida served as the Assistant Deputy Secretary for Medicaid Policy and Medicaid Quality. *See* Exhibit D at ¶ 6. As the process proceeded, on September 12, 2022, he assumed the role of Chief of Staff. *Id.* at ¶ 7. In January, he became the Agency's Interim Secretary and then Secretary. *Id.* at ¶ 3. As the current agency head, Secretary Weida is responsible for running the Agency, leading its personnel, securing its budget, and overseeing over 1,500 employees. *Id.* at ¶ 4. A deposition would be highly disruptive to Secretary Weida, not only as an agency head, but also with the Florida Legislature in session. *Id.* at ¶¶ 13-14.

3

Regarding Secretary Weida's deposition, Plaintiffs and Defendants have reached an impasse on whether the deposition is appropriate. *See* Exhibit A at 1. It is not. The apex doctrine and the fact-discovery cutoff serve as independent bars.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) limits discovery to "nonprivileged matter[s] that [are] relevant" "and proportional to the needs of the case," balancing, among other things, "whether the burden" "of the proposed discovery outweighs its likely benefit." Rule 26(c)(1)(B) provides that a court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including" "specifying terms, including time and place, for the" "discovery." *Id.* A court may also "prescribe[] a discovery method other than the one selected by the party seeking discovery." Fed. R. Civ. P. 26(c)(1)(C).

## DISCUSSION

### I.   The apex doctrine bars Secretary Weida's deposition.

**A.** It is well settled that, under the apex doctrine or "*Morgan*" doctrine, involuntary depositions of high-ranking government officials are presumptively barred absent "extraordinary circumstances or a 'special need' for compelling the appearance of a high-ranking officer in a judicial proceeding." *In re United States* ("*EPA Adm'r*"), 624 F.3d 1368, 1373 (11th Cir. 2010); *see also United States v. Morgan*, 313 U.S. 409, 422 (1941) (observing that the Secretary of Agriculture "should never have been subjected to [a deposition]"); *In re United States* ("*Att'y Gen.*"), 197 F.3d 310, 312-13 (8th Cir. 1999)

4

(barring testimony of the Attorney General and the Deputy Attorney General); *In re Paxton*, 53 F.4th 303, 309-10 (5th Cir. 2022) (staying attorney general's deposition).

The reason for imposing a high bar to deposing high-ranking officials is "obvious." *In re United States* ("*FDA Comm'r*"), 985 F.2d 510, 512 (11th Cir. 1993). "High ranking government officials have greater duties and time constraints than other witnesses." *Id.* If high-ranking officials must "testify in every case," then their "time would be monopolized by preparing and testifying in such cases." *Id.*

High-ranking officials include executive agency leaders, like agency secretaries and senior-level officials. *E.g.*, *In re U.S. Dep't of Educ.*, 25 F.4th 692, 706 (9th Cir. 2022) (barring deposition of the former Secretary of Education); *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013) (affirming order barring deposition of the New York City Mayor and the former Deputy Mayor); *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008) (barring depositions of the Chief of Staff to the Vice President); *Bogan v. City of Boston*, 489 F.3d 417, 424 (1st Cir. 2007) (affirming order barring deposition of the Boston Mayor); *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995) (barring deposition of FDIC directors); *In re Murthy*, No. 22-30697 (5th Cir. Jan. 5, 2023) (staying press secretary's deposition); *Coleman v. Schwarzenegger*, 2008 WL 43300437, at *4 (E.D. Cal. Sept. 15, 2008) (barring deposition of Chief of Staff of California Governor).

To overcome the apex doctrine's burden, Plaintiffs must make a strong showing of "extraordinary circumstances" and "special need" based on the "record" evidence. *EPA Adm'r*, 624 F.3d at 1372; *EEOC v. Exxon Corp.*, 1998 WL 50464, at *1 (N.D. Tex.

5

Jan. 20, 1998) (requiring a "strong showing"). That requires two things: first, Plaintiffs must "identify with particularity the information they need[ ]." *Lederman*, 731 F.3d at 203. Such information cannot be merely relevant; it must be "essential to the claims alleged by plaintiffs" and "absolutely needed for [the] case." *In re U.S. Dep't of Educ.*, 25 F.4th at 703-04; *see also DOJ*, 197 F.3d at 312-13 (requiring the same showing). Second, Plaintiffs must proffer evidence that the high-ranking official "ha[s] first-hand knowledge" of that essential information that "[can]not be obtained elsewhere." *Lederman*, 731 F.3d at 203. Under Eleventh Circuit caselaw, the availability of "'alternate witnesses'" bars discovery of the high-ranking official. *EPA Adm'r*, 624 F.3d at 1373 (quoting *FDA Adm'r*, 985 F.2d at 512).

**B.** To begin, the apex doctrine applies to and protects Secretary Weida. Right now, he is the Secretary for the Agency, and the apex doctrine protects him in his current role.

Plaintiffs rely on non-binding authority to suggest that the doctrine "may be invoked only when the deponent has been noticed for deposition because of his corporate position," and that the doctrine exists to prevent "unwarranted inquiries into the decision-making process." Exhibit A at 2 (quoting *Simon v. Bridewell*, 905 S.W. 2d 439, 442 (Tex. App. 1997); *City of Fort Lauderdale v. Scott*, 2012 WL 760743, at *2 (S.D. Fla. Mar. 7, 2012)). But Plaintiffs neglect that the doctrine is largely predicated on high-ranking officials' *current* inability to participate in judicial proceedings: "[h]igh ranking

6

government officials have greater duties and time constraints than other witnesses"; their "time is very valuable." *FDA Adm'r*, 985 F.2d at 512.

Even if the apex doctrine comes with some relationship-back concept to the moment when the Agency was formulating its action, and the Agency maintains that it does not, Secretary Weida was still protected as Chief of Staff Weida and Assistant Deputy Secretary Weida. In both those roles, he was still a high-ranking, senior-level official in the Agency who assisted in promulgating the at-issue rule. Exhibit D at ¶¶ 6-8. The apex doctrine applies to such officials. *See e.g.*, *Coleman*, 2008 WL 43300437, at *4 (barring deposition of Chief of Staff of California Governor); *id.* at *24 (citing cases that senior government officials are protected by the apex doctrine).

**C.** Because the doctrine applies to Secretary Weida, and applied to him in his roles as Chief of Staff and Assistant Deputy Secretary, Plaintiffs must show that the information they seek from him is "essential" to their case. "'Without establishing this foundation, exceptional circumstances cannot be shown'"; otherwise, courts would "risk distracting [high-ranking officials] from their essential duties with an inundation of compulsory, unnecessary depositions." *In re U.S. Dep't of Educ.*, 25 F.4th at 703 (cleaned up) (quoting *Att'y Gen.*, 197 F.3d at 312-13).

To be sure, Secretary Weida cannot be deposed for generalized "facts relevant to Defendants' adoption of the Challenged Exclusion." Exhibit A at 2. It is not enough for Plaintiffs to assert that Secretary Weida's testimony is "merely relevant" to their claims. *McNamee*, 2012 WL 1665873, at *1. Plaintiffs need to show more.

7

At most, in this case, Plaintiffs state that a deposition is needed because Secretary Weida worked with outside consultants during the rulemaking process. Exhibit A at 2. Yet communications with outside consultants are not essential to the case. As this Court has stressed many times over, the central issue here is whether, *based on current medical knowledge*, the State reasonably determined that certain treatments for gender dysphoria are experimental. Doc.64 at 4. Discussions with outside consultants during the rulemaking process shed no light on that question. *See Rush v. Parham*, 625 F.2d 1150, 1157 n.13 (5th Cir. 1980) ("We think it a simple matter of logic that the district court's determination should be based *on current medical opinion, regardless of the prevailing knowledge at the time of plaintiff's application*." (emphasis added)).

Though it has been suggested that the Eleventh Circuit's decision in *Garrido v. Dudek*, 731 F.3d 1152 (11th Cir. 2013), broadens the scope of the *Rush* analysis, with respect, *Garrido* neither adds to nor subtracts from *Rush*. This is for two reasons.

First, the Eleventh Circuit never mentioned or cited *Rush* when deciding the narrow issue in *Garrido* that concerned the *scope* of the district court's permanent injunction and declaratory judgment. The *bases* of the injunction and judgment were not appealed, *id.* at 1158, and the Eleventh Circuit never opined on those issues. *See generally Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1202 (11th Cir. 2021) (declining to opine on an issue not briefed by the parties).

Second, *Garrido*'s *purported* holding—that agency actions should undergo an arbitrary, capricious, and unreasonable "administrative review"—would overrule the

8

earlier decision. *Rush* is a pragmatic opinion that acknowledges a State's role in shaping healthcare and welfare policy, 625 F.2d at 1154, and focuses the judicial inquiry on the decision reached, not the decisionmaking process. *Id.* at 1157 n.13. A less-than-perfect process that reached a reasonable decision would satisfy *Rush* because the inquiry focuses on *current* medical opinion, not *prevailing knowledge at the time of an application. Id.* But, under *Garrido*'s purported holding, a less-than-perfect process that reached the right, reasonable decision would not satisfy an arbitrary, capricious, or unreasonable "administrative review." This backward-looking, process-oriented approach would effectively overrule *Rush*, even though a three-judge appellate panel cannot overrule prior panel decisions. *See United States v. Brown*, 342 F.3d 1245, 1246 (11th Cir. 2003).

All of this is to say that *Garrido* does not—and cannot—affect the controlling *Rush* analysis in this case. Communications with outside consultants—the principal reason for deposing Secretary Weida—are not essential to the central issue in this case. And so, Plaintiffs fail to show an entitlement to depose Secretary Weida.

**C.** What is more, Plaintiffs cannot show that the information they seek from Secretary Weida cannot be, or has not been, discovered through less burdensome means. Plaintiffs must do more than generally assert that they are "unable to obtain the information" through other means. *FDIC*, 58 F.3d at 1061. "Exhaustion of all reasonable alternative sources is required." *In re U.S. Dep't of Educ.*, 25 F.4th at 704. "'[I]f other persons can provide the information sought, discovery will not be permitted against [a high-ranking] official.'" *In re U.S. Dep't of Educ.*, 25 F.4th at 704 (quoting *Att'y*

9

*Gen.*, 197 F.3d at 312-14). The Eleventh Circuit has also said that the availability of "alternate witnesses" "weigh[s] against" compelling the high-ranking official's deposition. *FDA Comm'r*, 985 F.2d at 512; *see also EPA Adm'r*, 624 F.3d at 1373 (holding that the district court abused its discretion in ordering the EPA Administrator to appear at a hearing and then denying the request to allow a lower-ranking EPA official to appear as a substitute).

Again, Plaintiffs mainly focus on Secretary Weida's communications with outside consultants and reference two emails between Secretary Weida and the outside consultants to support this contention. *See* Exhibit A at 2 (referencing DEF_000291486 / AHCA0122318 (Exhibit E) and DEF_000291186 / AHCA0119657 (Exhibit F)). Even a cursory look at those emails shows that Secretary Weida kept other agency employees in the loop on his conversations: Mr. Brackett, Mr. Sheeran, Mr. Chen, and Ms. Pickle. It follows that information about the Agency and the outside consultants' relationship is not purely known to Secretary Weida. That information could have been "obtained elsewhere." *Lederman*, 731 F.3d at 203.

Plaintiffs failed to exhaust the many sources of alternative information. In addition to other agency deponents, Plaintiffs could have sought depositions of the outside consultants themselves (some of whom are experts in the litigation and already set for deposition). They could have submitted written questions to Mr. Sheeran consistent with the parties' prior agreement, but never did. *See* Exhibit B. At the very least, Plaintiffs could have used all twenty-five interrogatories (as opposed to just

10

nineteen) and asked Secretary Weida and the Agency their questions about the outside-consultant conversations or more specific questions about the at-issue rule. *See In re U.S. Dep't of Educ.*, 25 F.4th at 704 (holding that "Plaintiffs did not exhaust their alternatives here" because, in part, "they did not use all of their interrogatories").

In sum, the apex doctrine applies to Secretary Weida. Plaintiffs have failed to make the necessary showing to overcome the doctrine.

## II. Secretary Weida's deposition is untimely.

Separately, Plaintiffs were late in seeking Secretary Weida's deposition. This Court set this case on an accelerated schedule and, as later modified, set March 10, 2023 as the discovery cutoff. *See* Doc. 107 at 1. Plaintiffs served a deposition notice one business day before that cutoff. This notice was unreasonable for purposes of Federal Rule of Civil Procedure 30(b). *See, e.g., In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 320, 327-28 (N.D. Ill. 2005) (ten days' notice for a deposition near the discovery deadline was unreasonable); *Middlebrooks v. Equifax, Inc.*, 2021 U.S. Dist. LEXIS 257512, at *1 (N.D. Ga. Dec. 14, 2021) (four days' notice for a deposition on the last day of an extended discovery period was unreasonable).

All told, Plaintiffs were aware that Secretary Weida was involved in the rulemaking process as early as July 8, 2022. *See* Exhibit D at ¶ 9-11 (noting that Secretary Weida was a panelist during the July 8 rule hearing); Doc. 84-1 at 3-4 (Brackett declaration noting that Plaintiffs counsel were present at that hearing). Plaintiffs nevertheless waited until the very end of extended fact discovery, after obtaining

11

thousands of agency documents, and after conducting several agency-employee depositions, to try to depose him on non-essential issues.

## CONCLUSION

Secretary Weida's deposition should not take place.

Dated: March 15, 2023 　　　　　　　　　Respectfully submitted by:

/s/ Mohammad O. Jazil
Mohammad O. Jazil (FBN 72556)
mjazil@holtzmanvogel.com
Gary V. Perko (FBN 855898)
gperko@holtzmanvogel.com
Michael Beato (FBN 1017715)
mbeato@holtzmanvogel.com
zbennington@holtzmanvogel.com
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK
119 S. Monroe St. Suite 500
Tallahassee, FL 32301
(850) 270-5938

*Counsel for Defendants*

## LOCAL RULE 7.1(B) CERTIFICATION

The undersigned certifies that he attempted in good faith to resolve the issues raised in this motion through a meaningful conference with Plaintiffs' counsel.

/s/ Mohammad O. Jazil
Mohammad O. Jazil

## LOCAL RULE 7.1(F) CERTIFICATION

The undersigned certifies that this memorandum contains 2,629 words, excluding the case style and certifications.

/s/ Mohammad O. Jazil
Mohammad O. Jazil

## CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2023, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

/s/ Mohammad O. Jazil
Mohammad O. Jazil