**21-2875**

IN THE

# United States Court of Appeals

### FOR THE EIGHTH CIRCUIT

◆◆

DYLAN BRANDT, et al.,

*Plaintiffs-Appellees,*

—v.—

LESLIE RUTLEDGE,
in her official capacity as the Arkansas Attorney General, et al.,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

## BRIEF FOR *AMICI CURIAE* STONEWALL UK, ET AL. IN SUPPORT OF PLAINTIFFS-APPELLEES

ANDREW RHYS DAVIES
  *Counsel of Record*
JUSTIN L. ORMAND
STEVEN W. SHULDMAN
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile:  (212) 610-6399
andrewrhys.davies@allenovery.com

*Counsel for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 29(c), *amici curiae* (1) Stonewall UK, (2) the Swedish Federation for Lesbian, Gay, Bisexual, Transgender, Queer and Intersex Rights, (3) the Australian Professional Association for Trans Health, (4) the Professional Association for Transgender Health Aotearoa New Zealand, (5) LGBT+ Denmark, (6) Bundesverband Trans* e.V., (7) the Federación Estatal de Lesbianas, Gais, Trans, Bisexuales, Intersexuales y más, (8) Fundación Colectivo Hombres XX, AC, and (9) the Norwegian Organization for Sexual and Gender Diversity each state that they have no parent corporation and that no publicly-held corporation owns 10% or more of their stock.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

IDENTITY OF AMICI CURIAE AND STATEMENT OF INTEREST ................1

PRELIMINARY STATEMENT ..........................................................2

ARGUMENT ...............................................................................3

    I.    Adolescents Have Access to Appropriate Gender-Affirming Healthcare in the United Kingdom, Sweden, Finland, Australia, and New Zealand ...........3

        A. United Kingdom ................................................................4

        B. Sweden ..........................................................................8

        C. Finland ..........................................................................11

        D. Australia & New Zealand ....................................................12

    II.    Gender-Affirming Healthcare Is Available to Adolescents in Other Developed Countries As Well .............................................16

        A. Denmark .......................................................................17

        B. Germany .......................................................................17

        C. Spain ...........................................................................18

        D. Mexico .........................................................................19

        E. Norway .........................................................................20

CONCLUSION ..........................................................................22

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Bell v. Tavistock & Portman NHS Found. Tr.*,
 [2020] EWHC 3274 (Admin.)......................................................................4, 7

*Bell v. Tavistock & Portman NHS Found. Tr.*,
 [2021] EWCA 1363 (Civ) ..........................................................................7, 8

*Gillick v. West Norfolk & Wisbech Health Authority*,
 [1986] 1 AC 112 (HL) ..........................................................................6, 7, 13

*Re Imogen (No. 6)*,
 [2020] FamCA 761 (Austl.)...................................................................14, 15

*Re J (An Infant): B and B v Director-General of Social Welfare*,
 [1996] 2 NZLR 134 (N.Z.) ...........................................................................15

*Secretary, Department of Health and Community Services v.*
*JWB & SMB ("Marion's case")*,
 (1992) 175 CLR 218 (Austl.) ......................................................................13

**Statutes and Rules**

2021 Ark. Acts 626 ........................................................................*passim*

Fed. R. App. P. 29(a)(4)(E)..............................................................................1

ii

## Other Authorities

Access to Transgender Hormone Therapy, European Union Agency for Fundamental Rights, https://fra.europa.eu/en/content/access-transgender-hormone-therapy (last visited Jan. 18, 2022)...........................................................18

Australian Standards of Care and Treatment Guidelines for Trans and Gender Diverse Children and Adolescents, AusPATH, https://auspath.org.au/2018/02/01/australian-standards-of-care-and-treatment-guidelines-for-trans-and-gender-diverse-children-and-adolescents/ (last visited Jan. 14, 2022) ......................................................................14

Background Memorandum and Recommendations, COHERE Finland, https://palveluvalikoima.fi/sukupuolidysforia-alaikaiset (last visited Jan. 5, 2022) ................................................................................11, 12

Care of Children Act 2004, Public Act 2004 No. 90, https://legislation.govt.nz/act/public/2004/0090/latest/DLM317233.html..............15

*Convention on the Rights of the Child will become Swedish law*, Government Offices of Sweden, Ministry of Health and Social Affairs (June 14, 2018), https://www.government.se/articles/2018/03/new-legislative-proposal-on-the-convention-on-the-rights-of-the-child/ ...............................................................9

God vård av barn och ungdomar med könsdysfori (Good care of children with gender dysphoria) (April 2015), https://www.socialstyrelsen.se/globalassets/sharepoint-dokument/artikelkatalog/kunskapsstod/2015-4-6.pdf .............................................10

Guidelines on healthcare concerning gender identity matters, part 9 (2018), https://www.retsinformation.dk/eli/retsinfo/2019/9060 .........................................17

Hälso- och sjukvårdslag (Health and Medical Services Act (2017)) [SFS] 2017:30 (Swed.), https://www.riksdagen.se/sv/dokument-lagar/dokument/svensk-forfattningssamling/halso--och-sjukvardslag-201730_sfs-2017-30..................................................................................................9

Helsedirektoratet, https://www.helsedirektoratet.no/retningslinjer/kjonnsinkongruens (last visited Jan. 14, 2022) .......................................................................................20

Appellate Case: 21-2875   Page: 5   Date Filed: 01/19/2022 Entry ID: 5118587   RESTRICTED

The Independent Review of Gender Identity Services for Children and Young People (The Cass Review), Terms of Reference, https://cass.independent-review.uk/about-the-review/terms-of-reference/ (last visited Jan. 14, 2022)............6

J. Oliphant et al., *Guidelines for gender affirming healthcare for gender diverse and transgender children, young people and adults in Aotearoa, New Zealand*, Transgender Health Research Lab, University of Waikato (2018), https://researchcommons.waikato.ac.nz/handle/10289/12160 ...............................16

Law 2/2016 (July 1, 2016) (Community of Madrid, Spain)....................................18

Law 8/2016 (May 27, 2016) (Region of Murcia, Spain).........................................19

NHS Standard Contract for Gender Identity Service for Children and Adolescents (Dec. 30, 2019), https://www.england.nhs.uk/wp-content/uploads/2017/04/gender-development-service-children-adolescents.pdf, as amended, Amendments to Service Specification for Gender Identity Development Service for Children and Adolescents (Oct. 6, 2021), https://www.england.nhs.uk/wp-content/uploads/2020/12/amendment-to-cyp-gender-dysphoria-service-specification.pdf.........................................................................................................6

NICE, *Evidence review: Gonadotrophin releasing hormone analogues for children and adolescents with gender dysphoria* (Mar. 11, 2021), https://www.evidence.nhs.uk/document?id=2334888&returnUrl=search%3Fq%3Dtransgender%26s%3DDate .......................................................................5, 6

Oslo kommune, https://www.oslo.kommune.no/helse-og-omsorg/helsetjenester/helsestasjon-og-vaksine/helsestasjon-for-ungdom-hfu/helsestasjon-for-kjonn-og-seksualitet-hks/#gref (last visited Jan. 14, 2022) .........................................................................................................................21

Oslo universitetssykehus, https://oslo-universitetssykehus.no/behandlinger/kjonnsinkongruens-utredning-og-behandling-av-barn-og-unge-under-18-ar (last visited Jan. 14, 2022)....................21

Press Release, German Ethics Council, *Ethics Council publishes ad hoc recommendation on transgender identity in children and adolescents* (Feb. 2020), https://www.ethikrat.org/mitteilungen/mitteilungen/2020/deutscher-ethikrat-veroeffentlicht-ad-hoc-empfehlung-zu-trans-identitaet-bei-kindern-und-jugendlichen.................................................................................................17, 18

iv

Appellate Case: 21-2875    Page: 6    Date Filed: 01/19/2022 Entry ID: 5118587  RESTRICTED

Protocolo para el Acceso sin Discriminación a la Prestación de Servicios de Atención Médica de las Personas Lésbico, Gay, Bisexual, Transexual, Travesti, Transgénero e Intersexual y Guías de Atención Específicas, Government of Mexico, Secretary of Health (2020), https://www.gob.mx/cms/uploads/attachment/file/558167/ Versi_n_15_DE_JUNIO_2020_Protocolo_Comunidad_LGBTTI_DT_Versi _n_V_20.pdf ...................................................................................................19

Royal Australian & New Zealand College of Psychiatrists, Recognising and addressing the mental health needs of people experiencing Gender Dysphoria / Gender Incongruence (Aug. 2021), https://www.ranzcp.org/news-policy/policy-and-advocacy/position-statements/gender-dysphoria ......................13

Simone Mahfouda et al., Puberty suppression in transgender children and adolescents, 5 The Lancet Diabetes & Endocrinology 816 (2017), https://www.sciencedirect.com/science/article/pii/S2213858717300992?via %3Dihub#! ...........................................................................................................14

v

# IDENTITY OF AMICI CURIAE AND STATEMENT OF INTEREST[1]

*Amici curiae* (1) Stonewall UK, (2) the Swedish Federation for Lesbian, Gay, Bisexual, Transgender, Queer and Intersex Rights, (3) the Australian Professional Association for Trans Health, (4) the Professional Association for Transgender Health Aotearoa New Zealand, (5) LGBT+ Denmark, (6) Bundesverband Trans* e.V., (7) the Federación Estatal de Lesbianas, Gais, Trans, Bisexuales, Intersexuales y más, (8) Fundación Colectivo Hombres XX, AC, and (9) the Norwegian Organization for Sexual and Gender Diversity (together, the "*Amici* Organizations") are non-profit organizations dedicated in whole or in part to securing and protecting the rights of transgender people. The *Amici* Organizations respectfully submit this *amicus curiae* brief to assist the Court in understanding the availability of gender-affirming healthcare for adolescents in each of the *Amici* Organizations' respective home countries.

A more detailed statement of interest for each of the *Amici* Organizations is included in Appendix A.

---

[1]     All parties consented to the filing of this brief. Pursuant to Fed. R. App. P. 29(a)(4)(E), *amici* state that no party's counsel authored this brief in whole or in part, and that no party or person other than *amici*, their members, and their counsel contributed money towards the preparation or filing of this brief.

## PRELIMINARY STATEMENT

Arkansas law, 2021 Ark. Acts 626 (the "Arkansas Healthcare Ban"), prohibits gender-affirming healthcare for adolescents in the State of Arkansas. This Court should affirm the district court's order preliminarily enjoining this damaging act of legislative overreach.

Arkansas seeks to defend the Arkansas Healthcare Ban as an appropriate reaction to what it describes as a "worldwide controversy surrounding gender-transition procedures." Brief for Appellant ("Appellant's Br.") at 16–17, 46. Arkansas and its *Amici* States[2] even suggest that the Arkansas Healthcare Ban is consistent with and supported by the approach adopted by developed nations, including the United Kingdom, Sweden, Finland, Australia, and New Zealand. *Id.* at 16–17, 46*;* Br. of *Amici Curiae* State of Alabama, *et al.* ("*Amici* States Br.") at 3–5, 10–15, 19–22. It assuredly is not.

The *Amici* Organizations submit this brief to correct the record, so that this Court has the benefit of accurate information about the gender-affirming healthcare that is available to adolescents in the five countries that Arkansas and its *Amici* States have referenced. This brief also provides information about the availability of

---

[2]     The term "*Amici* States" refers to the States of Alabama, Alaska, Arizona, Georgia, Idaho, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Montana, Nebraska, South Carolina, South Dakota, Tennessee, Texas, Utah and West Virginia, each of which joined an *amicus curiae* brief filed on November 23, 2021, in support of the State of Arkansas.

gender-affirming healthcare to adolescents in several other developed countries: Denmark, Germany, Spain, Mexico, and Norway.

As shown in this brief, the Arkansas Healthcare Ban is an outlier. In all of the countries surveyed, adolescent patients, together with their physicians and parents and/or legal guardians, make decisions about what gender-affirming healthcare is appropriate. In all of those countries, when it is deemed medically appropriate, adolescent patients have access to treatment that is prohibited under the Arkansas Healthcare Ban. Unlike Arkansas, these sovereigns leave these important decisions principally to the medical community. The district court's order preliminarily enjoining the Arkansas Healthcare Ban should be affirmed.

## ARGUMENT

### I. Adolescents Have Access to Appropriate Gender-Affirming Healthcare in the United Kingdom, Sweden, Finland, Australia, and New Zealand

Arkansas and its *Amici* States cite to materials referencing the United Kingdom, Sweden, Finland, Australia, and New Zealand, in support of the argument that there is an international controversy surrounding the issue of allowing adolescents to access critical gender-affirming healthcare. Appellant's Br. at 11–15, 46; *Amici* States Br. at 4–5, 10–16, 20–21. What Arkansas and its *Amici* States neglect to say, however, is that whatever debates may exist over how best to care for transgender adolescents, the governments in these countries—unlike the State of Arkansas—have not sought to prohibit clinicians from treating their patients.

3

Therefore, in all of those countries, adolescents have access to appropriate gender-affirming healthcare, including forms of care that the Arkansas Healthcare Ban prohibits.

### A. United Kingdom

Arkansas and the *Amici* States create a misleading impression of adolescents' access to gender-affirming healthcare in the United Kingdom with citations to publications from the United Kingdom that they characterize as "skeptical of gender-transition procedures" or "not inspir[ing] much confidence in the procedures." Appellant's Br. at 12–14; *Amici* States Br. at 10–12. The State of Arkansas equally misplaces its reliance on a decision from a trial court in the United Kingdom that has since been reversed, in which the court concluded that judicial approval was required prior to the use of puberty blockers to treat gender dysphoria in individuals under the age of sixteen. Appellant's Br. at 16–17 (discussing *Bell v. Tavistock & Portman NHS Found. Tr.*, [2020] EWHC 3274 (Admin.)). Arkansas emphasizes the trial court's statements about uncertainties and complexities associated with gender-affirming healthcare, *id.*, which is what Arkansas claims motivated its enactment of the Arkansas Healthcare Ban. Arkansas, however, ignores the fact that, notwithstanding the publications and decision it cites, where medically indicated, gender-affirming healthcare is available to adolescents in the United Kingdom.

First, Arkansas and its *Amici* States misconstrue the review by the U.K. National Institute for Health and Care Excellence ("NICE"), from which they selectively quote. Appellant's Br. at 13; *Amici* States Br. at 10-12. Although NICE concluded that the evidence of the effectiveness of treatment with puberty blockers was of "very low certainty,"[3] it nevertheless recommended that gender dysphoria should be treated with "management plans [that] are tailored to the individual."[4] According to NICE, treatment plans may include "psychological support and exploration and, for some individuals, the use of GnRH analogues [*i.e.*, puberty blockers] in adolescence to suppress puberty; this may be followed later with gender-affirming hormones of the desired sex."[5] In any event, NICE's review is just one of many inputs that will be considered as part of an ongoing study commissioned by

---

[3]    NICE, *Evidence review: Gonadotrophin releasing hormone analogues for children and adolescents with gender dysphoria* (Mar. 11, 2021) at 4-6 (2021), https://www.evidence.nhs.uk/document?id=2334888&returnUrl=search%3Fq%3D transgender%26s%3DDate (follow link to review) ("NICE Evidence Review").

[4]    *Id.* at 3.

[5]    *Id.*

5

the publicly-funded National Health Service,[6] which, notably, provides gender-affirming healthcare free of charge to adolescents.[7]

Second, contrary to what Arkansas and the *Amici* States imply, the *Bell* case in the United Kingdom was not about whether gender-affirming healthcare should be available to minors; it was about whether minors can independently consent to such care without their parents or guardians. In the United Kingdom, minors can validly consent to a medical procedure, provided they have so-called *Gillick* competence.[8] Under *Gillick*, a minor's capacity to make medical decisions depends on their having sufficient intelligence and understanding to make a decision regarding medical treatment, without regard to a judicially-fixed age limit.[9] It is not

---

[6]   NICE Evidence Review at 1; *see also* The Independent Review of Gender Identity Services for Children and Young People (The Cass Review), Terms of Reference, https://cass.independent-review.uk/about-the-review/terms-of-reference/ (last visited Jan. 14, 2022).

[7]   *See generally* NHS Standard Contract for Gender Identity Service for Children and Adolescents (Dec. 30, 2019), https://www.england.nhs.uk/wp-content/uploads/2017/04/gender-development-service-children-adolescents.pdf, as amended, Amendments to Service Specification for Gender Identity Development Service for Children and Adolescents (Oct. 6, 2021), https://www.england.nhs.uk/wp-content/uploads/2020/12/amendment-to-cyp-gender-dysphoria-service-specification.pdf.

[8]   *See Gillick v. West Norfolk & Wisbech Health Authority* [1986] 1 AC 112 (HL).

[9]   *Id.* ¶ 188B ("[A] minor's capacity to make his or her own decision depends upon the minor having sufficient understanding and intelligence to make the decision and is not to be determined by reference to any judicially fixed age limit.").

the role of the court to intercede into the authority of a clinician in determining whether to recommend treatment, or of a competent minor in determining whether to undergo such treatment.[10]

Applying these principles, the Court of Appeal for England and Wales reversed the trial court decision that Arkansas references, establishing that an adolescent's ability to consent to gender-affirming healthcare—like other healthcare—is a matter for adolescents and their clinicians and parents/legal guardians, not the government.[11] To clarify what Arkansas does not, the trial court's decision was never about the *availability* of gender-affirming healthcare; the "sole legal issue" in the case was the circumstances in which an adolescent could *consent* to such care.[12]

The Court of Appeal roundly rejected the trial court's conclusion that adolescents under the age of sixteen were generally incapable of providing such consent, and that judicial involvement in the medical decision-making process was therefore needed.[13] The Court of Appeal acknowledged that the provision of gender-

---

[10]   *Id.*

[11]   *Bell v. Tavistock & Portman NHS Found. Tr.*, [2021] EWCA 1363 (Civ) ¶¶ 86-87.

[12]   *Bell v. Tavistock & Portman NHS Found Tr.*, [2020] EWHC 3274 (Admin.) ¶ 9.

[13]   *Id.* ¶¶ 147, 151.

affirming healthcare is a complex topic, noting that clinicians should take "great care" before recommending gender-affirming treatment to an adolescent,[14] but concluded that, as far as a minor's *Gillick* competence to consent to such care is concerned, "[n]othing about the nature or implications of the treatment with puberty blockers allows for a real distinction to be made" between that and any other medical treatment.[15] In the Court of Appeal's judgment, "the [trial] court was not in a position to generalise about the capability of persons of different ages to understand what is necessary for them to be competent to consent to the administration of puberty blockers."[16] The State of Arkansas is likewise in no such position.

In short, despite the picture Arkansas attempts to paint, gender-affirming healthcare is available to any adolescent in the United Kingdom whose clinician recommends it, as long as the required clinical, patient, and parental consents are obtained.

## B.    Sweden

Arkansas and its *Amici* States also cite to a review article from Sweden and a Swedish hospital's decision to stop providing gender-affirming healthcare to adolescents under the age of sixteen outside of the clinical trial setting. Appellant's

---

[14]    *Bell v. Tavistock & Portman NHS Found. Tr.*, [2021] EWCA 1363 (Civ) ¶ 92.

[15]    *Id.* ¶ 76.

[16]    *Id.* ¶ 85.

8

Br. at 11–12; *Amici* States Br. at 13–14. In the *Amici* States' view, these events in Sweden support the Arkansas Healthcare Ban by showing that there is not enough evidence regarding the outcomes of gender-affirming healthcare. Arkansas and the *Amici* States again fail to inform the Court that gender-affirming healthcare is available to adolescents in Sweden, and that the Swedish government has not inserted itself into this medical decision-making in the way that the State of Arkansas has done through the Arkansas Healthcare Ban.

In Sweden, access to healthcare is governed by the Health and Medical Services Act.[17] Under the framework of that law, medical treatment is valid so long as it comprises treatment that can relieve or alleviate pain or illness. Gender-affirming healthcare, as with all medical practice, needs to be performed within the framework of the law, based on medical evidence and well-known practice. Sweden also follows the United Nations Convention of the Rights of the Child, which recognizes a child's right to have a say in their medical treatment, and that this right increases with age.[18]

---

[17]   Hälso- och sjukvårdslag (Health and Medical Services Act (2017)) [SFS] 2017:30 (Swed.), https://www.riksdagen.se/sv/dokument-lagar/dokument/svensk-forfattningssamling/halso--och-sjukvardslag-201730_sfs-2017-30.

[18]   *Convention on the Rights of the Child will become Swedish law*, Government Offices of Sweden, Ministry of Health and Social Affairs (June 14, 2018), https://www.government.se/articles/2018/03/new-legislative-proposal-on-the-convention-on-the-rights-of-the-child/.

Appellate Case: 21-2875   Page: 16   Date Filed: 01/19/2022 Entry ID: 5118587   RESTRICTED

For over twenty years, adolescent patients in Sweden have had access to gender-affirming healthcare. The Swedish National Board of Health and Welfare promulgates national guidelines to support clinicians in making decisions concerning the healthcare needs of their patients.[19] Since 2015, the guidelines have addressed hormone treatment for gender dysphoria. The guidelines state that if adolescent patients suffer due to their gender dysphoria, clinicians may prescribe both puberty blockers and gender-affirming hormones.

Ultimately, in Sweden, a clinician's professional judgment provides the basis on which treatment is or is not recommended. In Sweden, the decision to undergo gender-affirming healthcare is made between patients, their parents, and their clinicians. For example, some medical providers in Sweden have recently reconsidered the decision to administer hormones or hormone blockers to patients that have not already started them, but other medical providers continue to provide gender-affirming treatment based on the national guidelines and their own professional judgment. Critically, any decision regarding whether to prescribe gender-affirming treatment remains between clinicians and their patients. The government is not involved in that decision-making process.

---

[19]     God vård av barn och ungdomar med könsdysfori (Good care of children with gender                       dysphoria)                 (April                     2015), https://www.socialstyrelsen.se/globalassets/sharepoint-dokument/artikelkatalog/kunskapsstod/2015-4-6.pdf.

C.      Finland[20]

Arkansas and the *Amici* States cite to recommendations promulgated by the Council for Choices in Health Care in Finland ("COHERE Finland") in support of their position that uncertainty regarding treatment outcomes justifies Arkansas' actions here. Appellant's Br. at 12; *Amici* States Br. at 14-15. But Arkansas seeks to do something Finland has never done—ban treatment—and Arkansas and its *Amici* States misconstrue the contours of the COHERE Finland recommendations they cite.

COHERE Finland is a permanent body appointed by the Finnish government that works in conjunction with Finland's Ministry of Social Affairs and Health.[21] In 2011, Finland created an avenue for adolescents to seek treatment for trauma caused by gender dysphoria. Although adolescents cannot access surgical treatment for gender dysphoria until age eighteen, they can begin the diagnostic process at age thirteen.[22] COHERE Finland's recommendations recognize a treatment protocol for transgender adolescents as part of the Finnish healthcare system.

Patients whose puberty has not started and who experience long term or severe gender dysphoria-related anxiety can be sent for consultation at the university

---

[20]     The *Amici* Organizations thank Seta ry / Seta rf /Seta Lgbtiq Rights in Finland for its assistance with this section.

[21]      *See* Background Memorandum and Recommendations, COHERE Finland, https://palveluvalikoima.fi/sukupuolidysforia-alaikaiset (last visited Jan. 5, 2022).

[22]     *See id.*

hospitals in Helsinki or Tampere.[23] There, after conducting diagnostics to confirm medical necessity with no contraindications, clinicians can treat a patient with puberty blockers upon the onset of puberty.[24] It is also possible to access medication to block menstruation.[25]

COHERE Finland's recommendations also state that an adolescent who has already begun puberty can be referred to a university hospital for gender-identity examinations and treatment if the patient's gender identity variation and related dysphoria appear stable over the long term.[26] Gender-affirming hormonal interventions can be prescribed for patients commencing at age sixteen, absent contraindications, if the patient's gender dysphoria is considered permanent and severe and the patient has the capacity to understand the impact of the non-reversible aspects of treatment and the pros and cons of hormonal treatment.[27]

### D.   Australia & New Zealand

The *Amici* States briefly reference a statement by the Royal Australian & New Zealand College of Psychiatrists in support of their assertion that there is a lack of evidence regarding the outcomes of gender-affirming healthcare. *Amici* States Br. at

---

[23]   *Id.*

[24]   *Id.*

[25]   *Id.*

[26]   *Id.*

[27]   *Id.*

12

5. But nowhere does the statement say that gender-affirming healthcare should not be made available to adolescents, as Arkansas seeks to do here. In fact, the statement makes recommendations on how to "support the mental health needs of people experiencing Gender Dysphoria/Gender Incongruence," including assessment and treatment "based on the best available evidence."[28] In any event, both Australia and New Zealand allow adolescents to access gender-affirming healthcare, where medically appropriate.

In Australia, a parent generally has power to consent to medical treatment, but the parental power to consent diminishes as the patient's capacities and maturities grow.[29] The Australian High Court has adopted *Gillick* competence, *supra* at 6, holding that a minor is capable of giving informed consent, and a parent is no longer capable of consenting on the minor's behalf, when the minor achieves *Gillick* competence—a sufficient understanding and intelligence to enable them to understand fully what treatment is proposed.[30]

---

[28]  Royal Australian & New Zealand College of Psychiatrists, Recognising and addressing the mental health needs of people experiencing Gender Dysphoria / Gender Incongruence (Aug. 2021), https://www.ranzcp.org/news-policy/policy-and-advocacy/position-statements/gender-dysphoria.

[29]  *Secretary, Department of Health and Community Services v. JWB & SMB* ("*Marion's case*"), (1992) 175 CLR 218 (Austl.).

[30]  *Id.* at 237 (Mason CJ, Dawson, Toohey and Gaudron JJ) (citing *Gillick v West Norfolk & Wisbech Area Health Authority*, [1986] AC 112).

13

The Australian Standards of Care and Treatment Guidelines for Trans and Gender Diverse Children and Adolescents ("ASOCT Guidelines"), promulgated by AusPATH, recommend that clinicians prescribe puberty blockers, hormone treatment, and psychological support where, following a diagnosis of adolescent gender dysphoria and a medical assessment, the patient agrees that hormone therapy or puberty blockers is in their best interest.[31] The ASOCT Guidelines rely on empirical evidence and clinical consensus, and were developed in consultation with professionals working with transgender and gender diverse communities across Australia and New Zealand.[32]

Legal access to gender-affirming healthcare for patients under eighteen was most recently clarified in 2020 by the Australian Family Court in *Re Imogen*.[33]

---

[31]    *Australian Standards of Care and Treatment Guidelines for Trans and Gender Diverse Children and Adolescents*, AusPATH, https://auspath.org.au/2018/02/01/australian-standards-of-care-and-treatment-guidelines-for-trans-and-gender-diverse-children-and-adolescents/ (last visited Jan. 14, 2022).

[32]    *Id.* Australia is also home to clinical research affirming the medical benefit of puberty blockers for transgender youth. One published Australian study identified that, although limited, available evidence points to the safety of puberty blockers and the psychological benefits of suppressing puberty before the possible future commencement of hormone therapy. *See* Simone Mahfouda et al., *Puberty suppression in transgender children and adolescents*, 5 The Lancet Diabetes & Endocrinology 816 (2017), https://www.sciencedirect.com/science/article/pii/S2213858717300992?via%3Dihub#!.

[33]    *Re Imogen (No. 6)*, [2020] FamCA 761 (Austl.).

14

Adolescent patients can legally receive hormone treatment, but there must be no dispute between parents (or those with parental responsibility), the medical practitioner, and the patient with regard to the patient's *Gillick* competence, diagnosis of gender dysphoria, or the proposed treatment for alleviating the suffering caused by the gender dysphoria.[34] Any dispute requires an application to the Family Court.[35] But where the adolescent, their parents, and their clinician are all in agreement about the need for treatment, care is available and there are no governmental barriers.

In New Zealand, the Care of Children Act 2004 empowers adolescents aged sixteen and older to consent to medical care.[36] With respect to medical care generally, including gender-affirming care, adolescents under sixteen years of age may consent to treatment on their own provided they meet the standard for competence in *Gillick*, *supra* at 6, which the New Zealand Court of Appeal has cited with approval.[37] Family support is however considered an important aspect of

---

[34]     *Id.*

[35]     *Id.*

[36]     Care of Children Act 2004, Public Act 2004 No. 90, https://legislation.govt.nz/act/public/2004/0090/latest/DLM317233.html.

[37]     *Re J (An Infant): B and B v Director-General of Social Welfare*, [1996] 2 NZLR 134 (N.Z.).

gender-affirming care for all adolescents in New Zealand, with families involved in care wherever possible.

New Zealand has provided gender-affirming healthcare to adolescents for over fourteen years. Clinicians in New Zealand also consider the ASOCT Guidelines, the promulgation of which, as noted, involved a review by New Zealand adolescent health clinicians. In addition, in 2018, the University of Waikato published guidelines for gender-affirming healthcare for gender diverse and transgender patients.[38] These guidelines allow for puberty blockers to be prescribed depending on the stage of puberty, and also allow for hormone treatment.[39]

## II.   Gender-Affirming Healthcare Is Available to Adolescents in Other Developed Countries As Well

A review of the status of gender-affirming healthcare access in other countries reveals a common thread. With appropriate consultation and diagnoses, adolescents can access various forms of gender-affirming care, including treatment that the Arkansas Healthcare Ban prohibits.

---

[38]     J. Oliphant et al., *Guidelines for gender affirming healthcare for gender diverse and transgender children, young people and adults in Aotearoa, New Zealand*, Transgender Health Research Lab, University of Waikato (2018), https://researchcommons.waikato.ac.nz/handle/10289/12160.

[39]     *Id.* at 29–31.

Appellate Case: 21-2875     Page: 23     Date Filed: 01/19/2022 Entry ID: 5118587  RESTRICTED

## A.    Denmark

In Denmark, hormone therapy for adolescents is available through the Danish public healthcare system, after consultation with a multidisciplinary team of doctors including pediatric, psychiatric, and endocrinology specialists.[40] For patients under the age of fifteen, parental consent is required for treatment in the Danish healthcare system.

## B.    Germany

Gender-affirming healthcare for patients under the age eighteen is available in various forms throughout Germany. Medical associations in Germany are in the process of developing guidelines for gender-affirming healthcare relating to teenage patients.

In February 2020, the German Ethics Council addressed healthcare for transgender teenagers.[41] The Council's statement acknowledged the tension created by the potentially irreversible consequences of both administering treatment and withholding treatment.[42] The Council's statement declared that it is not an option to

---

[40]    *See* Guidelines on healthcare concerning gender identity matters, part 9 (2018), https://www.retsinformation.dk/eli/retsinfo/2019/9060.

[41]    Press Release, German Ethics Council, *Ethics Council publishes ad hoc recommendation on transgender identity in children and adolescents* (Feb. 2020), https://www.ethikrat.org/mitteilungen/mitteilungen/2020/deutscher-ethikrat-veroeffentlicht-ad-hoc-empfehlung-zu-trans-identitaet-bei-kindern-und-jugendlichen/.

[42]    *Id.*

limit access to gender-affirming healthcare for adolescents who understand the consequences of their decision to undergo treatment.[43] The Council noted that where "the child is sufficiently capable of insight and judgement to understand the scope and significance of the planned treatment, to form his own judgement and to decide accordingly, his will must be decisively taken into account."[44]

### C.   Spain

In Spain, patients over the age of sixteen can validly consent to medical care, including gender-affirming healthcare.[45] Access to gender-affirming healthcare is generally available throughout the country for patients under the age of sixteen, and specific laws governing availability vary among the seventeen autonomous regions in the country. For example, in the Community of Madrid, adolescent patients have the right to treatment by pediatric physicians and to receive puberty blockers and hormone therapy upon the onset of puberty.[46] In the Region of Murcia, patients over twelve can access gender-affirming healthcare with consent of the minor's legal

---

[43]     *Id.*

[44]     *Id.*

[45]     Access to Transgender Hormone Therapy, European Union Agency for Fundamental Rights, https://fra.europa.eu/en/content/access-transgender-hormone-therapy (last visited Jan. 18, 2022).

[46]     Law 2/2016 (July 1, 2016) (Community of Madrid, Spain).

representative.[47] Throughout Spain, gender-reassignment surgery is prohibited before the age of majority.

### D.    Mexico

Transgender healthcare in Mexico is guided by the Protocol for Access without Discrimination to Health Care Services for Lesbian, Gay, Bisexual, Transsexual, Transvestite, Transgender and Intersex Persons and Specific Care Guidelines.[48] The Protocol is observed in healthcare facilities administered by the Mexican federal government. The Protocol acknowledges that the process of defining one's sexual orientation, gender identity and/or expression may occur at early ages.[49] The Protocol therefore advises that medical facilities err in favor of providing medical care,[50] and recommends that the use of puberty blockers and hormone treatment be considered.[51]

---

[47]    Law 8/2016 (May 27, 2016) (Region of Murcia, Spain).

[48]    Protocolo para el Acceso sin Discriminación a la Prestación de Servicios de Atención Médica de las Personas Lésbico, Gay, Bisexual, Transexual, Travesti, Transgénero e Intersexual y Guías de Atención Específicas, Government of Mexico, Secretary of Health (2020), https://www.gob.mx/cms/uploads/attachment/file/558167/Versi_n_15_DE_JUNIO_2020_Protocolo_Comunidad_LGBTTI_DT_Versi_n_V_20.pdf.

[49]    *Id.* at 35.

[50]    *Id.* at 36.

[51]    *Id.*

19

In addition to the Protocol, various Mexican states have reformed their civil codes to recognize the right to gender-affirming healthcare for patients under eighteen.

### E.    Norway

In Norway, both puberty blockers and hormone therapy are available to adolescent patients, although surgical treatment is generally not available before the age of majority. Access to gender-affirming healthcare, including hormone therapy and mental health support, for adolescent patients is defined in the National Guidelines on the Treatment of Gender Incongruence, promulgated by the Norwegian Directorate of Health.[52] Puberty blockers are administered to patients based on their pubertal development stage. Any patient over the age of sixteen may access puberty blockers and hormone therapy upon prescription by a clinician; parental consent is not required.

For adolescents under sixteen, puberty blockers are available with parental consent on a case-by-case basis after an evaluation by medical experts, either through the clinician specialist team at Oslo University Hospital or via a health

---

[52]    Helsedirektoratet, https://www.helsedirektoratet.no/retningslinjer/kjonnsinkongruens (last visited Jan. 14, 2022).

service organized under the Municipality of Oslo which specializes in services for gender non-confirming and LGBTQI youth.[53]

*     *     *

The Arkansas Healthcare Ban finds no support in the practices of other developed nations—either those identified by the State of Arkansas and its *Amici* States, or the additional developed nations whose practices are described above. In all of those jurisdictions, adolescents have access to gender-affirming healthcare, when medically indicated. As with many forms of medicine, debate exists over how to improve the quality of care and over the need for more evidence of long-term efficacy and impact. That debate has prompted other developed nations to study the care and improve conditions for its delivery, not to ban it.

---

[53]     Oslo universitetssykehus, https://oslo-universitetssykehus.no/behandlinger/kjonnsinkongruens-utredning-og-behandling-av-barn-og-unge-under-18-ar (last visited Jan. 14, 2022); Oslo kommune, https://www.oslo.kommune.no/helse-og-omsorg/helsetjenester/helsestasjon-og-vaksine/helsestasjon-for-ungdom-hfu/helsestasjon-for-kjonn-og-seksualitet-hks/#gref (last visited Jan. 14, 2022).

## CONCLUSION

For all of these reasons, the district court's order preliminarily enjoining the Arkansas Healthcare Ban should be affirmed.

Dated: January 19, 2022                 Respectfully submitted,

                                        */s/ Andrew Rhys Davies*
                                        Andrew Rhys Davies
                                          *Counsel of Record*
                                        Justin L. Ormand
                                        Steven W. Shuldman
                                        ALLEN & OVERY LLP
                                        1221 Avenue of the Americas
                                        New York, New York 10020
                                        Telephone: (212) 610-6300
                                        Facsimile: (212) 610-6399
                                        andrewrhys.davies@allenovery.com

                                        *Counsel for Amici Curiae*

22

## APPENDIX A

**Stonewall UK** has fought since 1989 to create transformative change in the lives of LGBTQ+ people across communities in the United Kingdom and around the world. Stonewall UK seeks to drive positive change in public attitudes and public policy, and to ensure that LGBTQ+ people can thrive throughout their lives by building deep, sustained change programs with the institutions that have the biggest impact on them. Stonewall UK's work includes supporting legal efforts to ensure that trans young people have access to gender-affirming medical treatment.

**The Swedish Federation for Lesbian, Gay, Bisexual, Transgender, Queer and Intersex Rights** ("RFSL") is a non-profit community organization that has been advocating for the rights of LGBTQIA persons in Sweden and internationally since its founding in 1950. RFSL engages support and educational services, political advocacy, lobbying initiatives, and community space in furtherance of its mission supporting LGBTQIA persons. Since 2001, RFSL has formally included transgender people within the communities it serves. RFSL's key initiatives today include transgender rights advocacy, asylum rights, and family law.

**The Australian Professional Association for Trans Health** ("AusPATH") is Australia's principal body representing, supporting, and connecting those working to strengthen the health, rights, and wellbeing of all transgender people—binary and non-binary.

The AusPATH membership comprises over 350 experienced professionals working across Australia. AusPATH firmly believes that all young people who desire puberty suppression should be able to access such care in a timely manner under appropriate supervision and assessment by a multidisciplinary team. AusPATH advocates for access to timely, culturally-safe and person-centered gender-affirming healthcare as critical to protect transgender children, adolescents, and adults from negative health and well-being implications.

**The Professional Association for Transgender Health Aotearoa New Zealand** ("PATHA NZ") is an incorporated society established in May 2019 to be an interdisciplinary professional organization working to promote the health, well-being, and rights of transgender people. PATHA NZ comprises over 200 members who work professionally for transgender health in clinical, academic, community, legal, and other settings.

As a society committed to supporting gender-affirming care, PATHA NZ's role includes advocacy both within New Zealand and internationally. PATHA NZ views gender-affirming care for children and adolescents as an essential part of healthcare and views the denial of access to care until the age of eighteen in any country or state as a violation of human rights.

**LGBT+ Denmark** is Denmark's largest and oldest political organization for LGBT+ people in Denmark. LGBT+ Denmark fights for everyone to be able to live

A-2

their life in full compliance with their own identity through rights, safe communities, and social change—locally, nationally and globally.

**Bundesverband Trans\* e.V.** (BVT\*) is the largest transgender association in Germany. The association's common endeavor is the commitment to gender diversity and self-determination. BVT\* is committed to human rights and to the respect, recognition, equality, social participation and health of transgender and non-binary people.

**The Federación Estatal de Lesbianas, Gais, Trans, Bisexuales, Intersexuales y más** ("FELGBTI+") is the largest LGBTI+ organization in Spain and one of the largest in Europe, with fifty-seven nongovernmental organizations and associations collaborating as member entities. It is one of only eight LGBTI+ organizations in the world that has consultative status with the United Nations. With thirty years of history, FELGBTI+ is one of the reference organizations in the promotion and defense of rights for LGBTI+ people.

FELGBTI+'s mission is to defend and promote human rights and equality for lesbian, gay, transgender, bisexual, and intersex people and their families in all areas of life (social, health, work, educational, cultural, etc.). In addition, FELGBTI+ works to strengthen and unify the LGBTI associative movement in the Spanish territory from a networking approach and a secular, feminist, nonpartisan, and non-unionist perspective.

A-3

**Fundación Colectivo Hombres XX, AC** (the "Fundación") is a non-profit community LGBTI organization with a particular focus on men in Mexico who were assigned a female gender at birth. The Fundación has operated since 2012 as a collective and since 2018 as a Civil Association, and has extensive lobbying experience. The Fundación participated in the drafting of the Protocol for Access without Discrimination to Health Care Services for Lesbian, Gay, Bisexual, Transsexual, Transvestite, Transgender and Intersex Persons and Specific Care Guidelines, which provides guidance for the administration of healthcare to transgender individuals in Mexico.

**The Norwegian Organization for Sexual and Gender Diversity** ("FRI") is a membership-based nongovernmental organization with local chapters throughout Norway. FRI's vision is a society free from harassment and discrimination based on sexual orientation, gender identity, and/or gender expression. FRI's key activities include national-level advocacy for the rights of LGBTI people, building competency of government institutions and employees within different sectors (education, health, social welfare, justice) to include LGBTI people in a non-discriminatory way, and engaging in international solidarity by partnering with LGBTI organizations in Europe, Asia and Africa.

As a membership and community-based organization, FRI has firsthand experience of the impact that gender-affirming healthcare—or the lack thereof—has

A-4

on transgender people. FRI is deeply concerned that a law seeking to restrict access to gender-affirming care will be detrimental to the lives of transgender people in Arkansas.

A-5

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of Fed. R. App. P.

        29(a)(5) because, excluding the parts of the document exempted by Fed. R.

        App. P. 32(f), this brief contains 4,920 words.

2.      This document complies with the typeface requirements of Fed. R. App. P.

        32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because

        this document has been prepared in a proportionally spaced typeface using

        Microsoft Word 2016 in 14-Point Times New Roman font.

3.      This document has been scanned for viruses and is virus-free.


Dated: January 19, 2022

                                        */s/ Andrew Rhys Davies*
                                        Andrew Rhys Davies

## CERTIFICATE OF SERVICE

I hereby certify that on this day the foregoing brief was served electronically

on all parties via CM/ECF.

Dated: January 19, 2022

/s/ Andrew Rhys Davies
Andrew Rhys Davies