IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

AUGUST DEKKER, et al.,

            *Plaintiffs*,

v.

JASON WEIDA[1], et al.,

            *Defendants*.

Case No. 4:22-cv-00325-RH-MAF

## DEFENDANTS' RESPONSE TO PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION

Pursuant to Federal Rule of Civil Procedure 36, Defendants Secretary Weida and the Agency for Health Care Administration ("Defendants") submit their response to Plaintiffs' First Set of Requests for Admission.

## GENERAL OBJECTIONS

Defendants make the following general objections to Plaintiffs' Requests for Admission, which apply to each request regardless of whether the general objections are expressly incorporated into the specific objections below:

---

[1] Jason Weida has succeeded Simone Marstiller as Secretary of the Agency for Health Care Administration, as reflected in ECF 78.

Pl. Trial Ex. 001

PLAINTIFFS002191

1. Defendants object to the Requests for Admission to the extent they are overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case.

2. Defendants object to the Requests for Admission to the extent they seek to elicit information or evidence otherwise protected by the attorney-client privilege, the work-product privilege, the First Amendment associational privilege, the legislative privilege, or any other applicable privilege recognized under federal or Florida law.

3. Defendants object to the Requests for Admission to the extent they seek to elicit information that is in the public domain or already in Plaintiffs' possession, and therefore of no greater burden for Plaintiffs than for the Secretary to obtain.

4. Defendants object to the Requests for Admission to the extent they seek publicly available information, statements, or documents that speak for themselves and require neither an admission nor a denial from any party.

5. Only to the extent that Federal Rule of Civil Procedure 36(a)(4) would be construed as requiring an admission or denial and that an objection alone is not sufficient, the Secretary deny each Request for Admission. Otherwise, Defendants stand on the foregoing General Objections

PLAINTIFFS002192

and the below-stated specific objections without expressly admitting or denying any Request for Admission.

## RESPONSES TO REQUESTS FOR ADMISSION

1. Admit that gender-affirming care can be medically necessary.

    **RESPONSE: Defendants object to the definition of gender-affirming care because it is contrary to the term's ordinary use. Subject to and without waiving such objection, Defendants admit that certain types of behavioral health services to treat gender dysphoria can be medically necessary, but other types of treatment are not.**

2. Admit that the Challenged Exclusion prohibits Florida Medicaid coverage of gender affirming care that can be medically necessary for the treatment of Gender Dysphoria.

    **RESPONSE: Denied insofar as the Challenged Exclusion does not preclude the coverage of behavioral health services for gender dysphoria, and the services for which coverage is precluded are not medically necessary.**

3. Admit that each of the Various Services can be medically necessary for the treatment of Gender Dysphoria.

    **RESPONSE: Denied.**

4. Admit that each Plaintiff identifies as transgender.

    **RESPONSE: Defendants are without sufficient knowledge to admit or deny; therefore denied.**

5. Admit that each Plaintiff has been diagnosed with Gender Dysphoria.

    **RESPONSE: Admitted that each Plaintiff has been diagnosed with**

3

> **Gender Dysphoria, but Defendants reserve the right to challenge such diagnoses.**

6. Admit that each Plaintiff receives health care coverage through Florida's Medicaid program.

> **RESPONSE: Admitted.**

7. Admit that, prior to the enactment of the Challenged Exclusion, Florida Medicaid covered "services for the treatment of gender dysphoria," as that term is defined in the Challenged Exclusion, for each Plaintiff.

> **RESPONSE: Admitted that the Agency did not have a policy excluding coverage for such treatments prior to the adoption of the Challenged Exclusion.**

8. Admit that Florida Medicaid covers each of the Various Services when necessary to treat at least one condition other than Gender Dysphoria.

> **RESPONSE: Admitted. However, these services not medically necessary for the treatment of gender dysphoria.**

9. Admit that Florida Medicaid covers mastectomy, reduction mammoplasty, and breast reconstruction surgery when necessary to treat at least one condition other than Gender Dysphoria.

> **RESPONSE: Admitted. However, these services not medically necessary for the treatment of gender dysphoria.**

10. Admit that Florida Medicaid covers hysterectomy and oophorectomy procedures when necessary to treat at least one condition other than Gender

PLAINTIFFS002194

Dysphoria.

> **RESPONSE: Admitted. However, these services not medically necessary for the treatment of gender dysphoria.**

11. Admit that Florida Medicaid covers vaginoplasty procedures when necessary to treat at least one condition other than Gender Dysphoria.

> **RESPONSE: Admitted. However, these services not medically necessary for the treatment of gender dysphoria.**

12. Admit that Florida Medicaid covers orchiectomy, penectomy, and/or phalloplasty procedures when medically necessary to treat at least one condition other than Gender Dysphoria.

> **RESPONSE: Admitted. However, these services not medically necessary for the treatment of gender dysphoria.**

13. Admit that, prior to the enactment of the Challenged Exclusion, Florida Medicaid did not exclude coverage of prescribed hormones for the treatment of Gender Dysphoria.

> **RESPONSE: Admitted that the Agency did not have a policy categorically excluding coverage for such treatments prior to the adoption of the Challenged Exclusion.**

14. Admit that, prior to the enactment of the Challenged Exclusion, Plaintiff August Dekker received coverage under Florida Medicaid for hormone therapy as treatment for his Gender Dysphoria.

> **RESPONSE: Defendants are without sufficient knowledge to admit or deny; therefore denied.**

PLAINTIFFS002195

15. Admit that, prior to the enactment of the Challenged Exclusion, Plaintiff August Dekker received coverage under Florida Medicaid for a double mastectomy as treatment for his Gender Dysphoria.

> **RESPONSE: Defendants are without sufficient knowledge to admit or deny; therefore denied.**

16. Admit that, prior to the enactment of the Challenged Exclusion, Plaintiff Brit Rothstein received coverage under Florida Medicaid for hormone therapy as treatment for his Gender Dysphoria.

> **RESPONSE: Defendants are without sufficient knowledge to admit or deny; therefore denied.**

17. Admit that, prior to the enactment of the Challenged Exclusion, Plaintiff Susan Doe received coverage under Florida Medicaid for a GnRH antagonist as treatment for her Gender Dysphoria.

> **RESPONSE: Defendants are without sufficient knowledge to admit or deny; therefore denied.**

18. Admit that, prior to the enactment of the Challenged Exclusion, Plaintiff K.F. received coverage under Florida Medicaid for a GnRH antagonist as treatment for his Gender Dysphoria.

> **RESPONSE: Defendants are without sufficient knowledge to admit or deny; therefore denied.**

19. Admit that, prior to the enactment of the Challenged Exclusion,

PLAINTIFFS002196

Florida Medicaid gave Plaintiff Brit Rothstein prior authorization for double mastectomy as treatment for his Gender Dysphoria.

> **RESPONSE: Admitted that such authorization was given by the relevant Health Plan, but was not given by the Agency.**

20. Admit that, following the enactment of Challenged Exclusion, Plaintiffs have not received coverage under Florida Medicaid for the services described in Requests 14 to 19 above.

> **RESPONSE: Defendants are without sufficient knowledge to admit or deny; therefore denied.**

21. Admit that if Plaintiff August Dekker does not continue to receive hormone therapy, he may undergo physical changes.

> **RESPONSE: Defendants are without sufficient knowledge to admit or deny; therefore denied.**

22. Admit that if Plaintiff Brit Rothstein does not continue to receive hormone therapy, he may undergo physical changes.

> **RESPONSE: Defendants are without sufficient knowledge to admit or deny; therefore denied.**

23. Admit that if Plaintiff Brit Rothstein does not receive the double mastectomy previously authorized by Defendants, he may experience exacerbated distress and chest dysphoria.

> **RESPONSE: Defendants are without sufficient knowledge to admit or deny; therefore denied.**

PLAINTIFFS002197

24. Admit that if Plaintiff Susan Doe does not continue to receive a GnRH antagonist, she will undergo endogenous puberty.

**RESPONSE: Defendants are without sufficient knowledge to admit or deny; therefore denied.**

25. Admit that if Plaintiff K.F. does not continue to receive a GnRH antagonist, he will undergo endogenous puberty.

**RESPONSE: Defendants are without sufficient knowledge to admit or deny; therefore denied.**

26. Admit that undergoing endogenous puberty causes development of secondary sex characteristics.

**RESPONSE: Admitted.**

27. Admit that undergoing endogenous puberty causes irreversible physical changes.

**RESPONSE: Admitted.**

28. Admit that you did not prepare any criteria for determining whether to grant a variance under Florida Statutes § 120.542 to permit Florida Medicaid coverage of any of the Various Services when used to treat Gender Dysphoria.

**RESPONSE: Admitted that the Agency did not prepare any such criteria, but the Florida Legislature did as set forth in the cited statute.**

29. Admit that you have no existing criteria for determining whether to grant a variance under Florida Statute § 120.542 to permit Florida Medicaid

8

PLAINTIFFS002198

coverage of any of the services excluded by the Challenged Exclusion.

> **RESPONSE: Denied.**

30. Admit that you are not currently preparing any criteria for determining whether to grant a variance under Florida Statute § 120.542 to permit Florida Medicaid coverage of any of the services excluded by the Challenged Exclusion.

> **RESPONSE: Admitted. The criteria are set forth in the cited statute.**

31. Admit that none of the Various Services are experimental when used to treat Gender Dysphoria.

> **RESPONSE: Denied.**

32. Admit that none of the Various Services are investigational when used to treat Gender Dysphoria.

> **RESPONSE: Denied.**

33. Admit that licensed medical professionals with experience treating Gender Dysphoria are in the best position to make medical determinations regarding the diagnosis and treatment of patients with Gender Dysphoria.

> **RESPONSE: Objection. The request is vague insofar as the term "best position" is not defined and could be interpreted in a number of ways.**

34. Admit that, as recently as 2016, you did not consider puberty

9

suppression therapy for the treatment of Gender Dysphoria to be experimental.

**RESPONSE: Denied.**

35. Admit that, as recently as 2016, you did not consider puberty suppression therapy for the treatment of Gender Dysphoria to be investigational.

**RESPONSE: Denied.**

36. Admit that the individuals involved in the process of creating and implementing the Challenged Exclusion were not the same individuals who are typically involved in this process on your behalf.

**RESPONSE: Denied.**

37. Admit that, as recently as 2016, you did not consider any of the Various Services to be experimental.

**RESPONSE: Denied.**

38. Admit that, as recently as 2016, you did not consider any of the Various Services to be investigational.

**RESPONSE: Denied.**

39. Admit that you have criteria for determining whether to grant a variance under Florida Statutes § 120.542 for any service used to treat a healthcare condition besides Gender Dysphoria.

**RESPONSE: Denied.**

PLAINTIFFS002200

40. Admit that the Challenged Exclusion restricts coverage for gender-affirming care that has been the subject of decades of scholarly research.

> **RESPONSE: Objection. This request is vague insofar as the term "scholarly research" is not defined and could be interpreted in a number of ways.**

41. Admit that no major medical organization recommends or supports prohibiting coverage of the Various Services when used to treat Gender Dysphoria.

> **RESPONSE: Defendants are without sufficient knowledge to admit or deny; therefore denied.**

42. Admit that transgender people have historically been subject to discrimination.

> **RESPONSE: Objection. This request is not relevant to any party's claim or defense and is not proportional to the needs of the case.**

43. Admit that, prior to the enactment of the Challenged Exclusion, you were aware that transgender people have historically been subject to discrimination.

> **RESPONSE: Objection. This request is not relevant to any party's claim or defense and is not proportional to the needs of the case.**

44. Admit that being transgender is immutable.

> **RESPONSE: Denied.**

11

PLAINTIFFS002201

45. Admit that being transgender bears no relation to one's ability to contribute to society.

> **RESPONSE: Objection. This request calls for an opinion, not a matter of fact. Furthermore, the request is not relevant to any party's claim or defense and is not proportional to the needs of this case.**

46. Admit that you provide Florida Medicaid coverage for some health care services that have not been studied through randomized clinical trials.

> **RESPONSE: Objection. This request is vague and overly burdensome. Each health service is unique, and such a broad statement does not apply. To fully answer, the Agency would incur an undue burden of having to assess thousands of individual health services and determine whether they lack randomized clinical trials.**

47. Admit that you provide Florida Medicaid coverage for some health care services that have not been studied through long-term longitudinal studies.

> **RESPONSE: Objection. This request is vague and overly burdensome. Each health service is unique, and such a broad statement should not apply. To fully answer, the Agency would incur an undue burden of having to assess thousands of individual health services and determine whether they lack long-term longitudinal studies.**

48. Admit that you provide Florida Medicaid coverage for some health care services that have a risk of producing unintended, irreversible consequences.

> **RESPONSE: Objection. This request is vague insofar as the terms "unintended" and "consequences" are undefined and could be interpreted in a number of ways.**

PLAINTIFFS002202

49. Admit that the well-established medical consensus is that gender-affirming care should be provided to transgender people with Gender Dysphoria.

**RESPONSE: Denied.**

50. Admit that the WPATH Standards of Care are the most widely used standards in the United States for treating Gender Dysphoria.

**RESPONSE: Denied.**

51. Admit that the WPATH Standards of Care are the leading standards of care for the treatment of Gender Dysphoria.

**RESPONSE: Denied.**

52. Admit that the WPATH Standards of Care are authoritative standards of care for the treatment of Gender Dysphoria.

**RESPONSE: Denied.**

53. Admit that the WPATH Standards of Care are widely accepted as the leading standards of care for the treatment of Gender Dysphoria.

**RESPONSE: Denied.**

54. Admit that the WPATH Standards of Care are widely accepted as authoritative standards of care for the treatment of Gender Dysphoria.

**RESPONSE: Denied.**

PLAINTIFFS002203

55. Admit that the Endocrine Society's Clinical Practice Guidelines are widely accepted as authoritative standards of care for the treatment of Gender Dysphoria.

**RESPOSNE: Denied.**

56. Admit that the Endocrine Society's Clinical Practice Guidelines are authoritative standards of care for the treatment of Gender Dysphoria.

**RESPOSNE: Denied.**

57. Admit that Defendants are not aware of any other widely used standards of care to treat Gender Dysphoria other than the WPATH Standards of Care or the Endocrine Society's Clinical Practice Guidelines.

**RESPONSE: Denied.**

58. Admit that your coverage of medical care should be made pursuant to the standards of care for a particular condition.

> **RESPONSE: Objection. This request calls for an opinion not a matter of fact. Furthermore, it is overly broad and lacks specificity.**

59. Admit that the treatment of a medical condition should be made pursuant to the standards of care for a particular condition.

> **RESPONSE: Objection. This request calls for an opinion not a matter of fact. Furthermore, it is overly broad and lacks specificity.**

14

PLAINTIFFS002204

60. Admit that persons from the Office of the Governor Ronald DeSantis were involved in your decision to promulgate the Challenged Exclusion.

**RESPONSE: Denied.**

61. Admit that persons from the Florida Department of Health were involved in your decision to promulgate the Challenged Exclusion.

**RESPONSE: Denied.**

62. Admit that you caused Chloe Cole to be invited to the July 8 Hearing.

**RESPONSE: Denied.**

63. Admit that you caused Sophia Galvin to be invited to the July 8 Hearing.

**RESPONSE: Denied.**

64. Admit that you caused Anthony Verdugo to be invited to the July 8 Hearing.

**RESPONSE: Denied.**

65. Admit that you caused to be invited to the July 8 Hearing any persons affiliated with the Christian Family Coalition.

**RESPONSE: Denied.**

66. Admit that you caused to be invited to the July 8 Hearing any persons

PLAINTIFFS002205

affiliated with the Florida Citizens Alliance.

**RESPONSE: Denied.**

67. Admit that you caused to be invited to the July 8 Hearing any persons affiliated with the Warriors of Faith.

**RESPONSE: Denied.**

68. Admit that you caused to be invited to the July 8 Hearing any persons affiliated with the Protect our Children Project.

**RESPONSE: Denied.**

69. Admit that, in promulgating the Challenged Exclusion, you did not consult "evidence-based clinical practice guidelines", as that term is used in 59G-1.035.

**RESPONSE: Denied.**

70. Admit that, in promulgating the Challenged Exclusion, you did not consult articles "published in peer-reviewed scientific literature generally recognized by the relevant medical community or practitioner specialty association", as that term is used in 59G-1.035.

**RESPONSE: Denied.**

71. Admit that, in promulgating the Challenged Exclusion, you did not consult "coverage policies by other creditable insurance payor sources", as that term is used in 59G-1.035.

PLAINTIFFS002206

**RESPONSE: Denied.**

72. Admit that only Dr. Andre Van Mol, Dr. Quentin Van Meter, and Dr. Miriam Grossman were included on the July 8 Hearing panel.

**RESPONSE: Denied.**

73. Admit that Dr. Andre Van Mol, Dr. Quentin Van Meter, and Dr. Miriam Grossman have all taken positions that support Defendants' promulgation of exclusions for coverage of treatment of Gender Dysphoria.

> **RESPONSE: Objection.  This request is vague insofar as the term "positions" is not defined and could be interpreted in a number of ways.**

74. Admit that you did not include anyone on the July 8 Hearing panel who has taken a position that opposes Defendants' promulgation of exclusions for coverage of Gender Dysphoria.

> **RESPONSE: Objection.  This request is vague insofar as the term "positions" is not defined and could be interpreted in a number of ways.**

75. Admit that you selected the authors of the GAPMS Memo reports because of their opposition to gender-affirming care.

**RESPONSE: Denied.**

76. Admit that each of the authors of the GAPMS Memo have publicly taken positions in opposition to gender-affirming care.

17

PLAINTIFFS002207

**RESPONSE: Denied.**

77. Admit that you selected the panel members for the July 8 Hearing because of their opposition to gender-affirming care.

**RESPONSE: Denied.**

78. Admit that, prior to the GAPMS Memo's drafting and promulgation, you determined that gender-affirming care was experimental or investigational.

**RESPONSE: Defendants object to the definition of gender-affirming care because it is contrary to the term's ordinary use. Subject to and without waiving such objection, Defendants deny.**

79. Admit that, regardless of what information was available to you, you intended to reach the conclusion in the GAPMS Memo that gender-affirming care was experimental or investigational.

**RESPONSE: Defendants object to the definition of gender-affirming care because it is contrary to the term's ordinary use. Subject to and without waiving such objection, Defendants deny.**

\* \* \*

Dated: January 12, 2023

/s/ Gary V. Perko
Mohammad O. Jazil (FBN 72556)
Gary V. Perko (FBN 855898)
Michael Beato (FBN 1017715)
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 S. Monroe St., Suite 500
Tallahassee, FL 32301
mjazil@holtzmanvogel.com
gperko@holtzmanvogel.com
mbeato@holtzmanvogel.com

PLAINTIFFS002208

Phone No.: (850) 270-5938
Fax No.: (850) 341-8809

*Counsel for Secretary Weida and the Agency for Health Care Administration*

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2023, a true and correct copy of the foregoing document was served upon all counsel of record via email, as follows:

PLAINTIFFS002209

**PILLSBURY WINTHROP SHAW PITTMAN, LLP**

Jennifer Altman
Shani Rivaux
600 Brickell Avenue, Suite 3100
Miami, FL 33131
jennifer.altman@pillsbury.com
shani.rivaux@pillsbury.com
(786) 913-4900

William C. Miller
Gary J. Shaw
PILLSBURY WINTHROP SHAW PITTMAN, LLP
1200 17th Street N.W.
Washington, D.C. 20036
william.c.miller@pillsburylaw.com
gary.shaw@pillsburylaw.com
(202) 663-8000

Joe Little
500 Capitol Mall, Suite 1800
Sacramento, CA 95814
joe.little@pillsburylaw.com
(916) 329-4700

**NATIONAL HEALTH LAW PROGRAM**

Abigail Coursolle
3701 Wilshire Boulevard, Suite 315
Los Angeles, CA 90010
coursolle@healthlaw.org
(310) 736-1652

Catherine McKee
1512 E. Franklin Street, Suite 110
Chapel Hill, NC 27514
mckee@healthlaw.org

**LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.**

Omar Gonzalez-Pagan
120 Wall Street, 19th Floor
New York, NY 10005
ogonzalez-pagan@lambdalegal.org
(212) 809-8585

Carl S. Charles
1 West Court Square, Suite 105
Decatur, GA 30030
ccharles@lambdalegal.org
(404) 897-1880

**SOUTHERN LEGAL COUNSEL, INC.**

Simone Chriss
Chelsea Dunn
1229 NW 12th Avenue
Gainesville, FL 32601
Simone.Chriss@southernlegal.org
Chelsea.Dunn@southernlegal.org
(352) 271-8890

**FLORIDA HEALTH JUSTICE PROJECT**

Katy DeBriere
3900 Richmond Street
Jacksonville, FL 32205
debriere@floridahealthjustice.org
(352) 278-6059


/s/ Gary V. Perko
Gary V. Perko

20

PLAINTIFFS002210