IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
Tallahassee Division

AUGUST DEKKER, et al.,

    *Plaintiffs*,

v.

SIMONE MARSTILLER, et al.,

    *Defendants.*

Case No. 4:22-cv-00325-RH-MAF

**PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANTS FLORIDA AGENCY FOR HEALTHCARE ADMINISTRATION AND SECRETARY SIMONE MARSTILLER**

Pursuant to Federal Rules of Civil Procedure 26 and 36, Plaintiffs propound this First Set of Requests for Admission to Defendants Florida Agency for Health Care Administration and Secretary Marstiller to be answered fully and within the timeframe required under the Federal Rules and the Local Rules of this Court.

**DEFINITIONS**

As used herein, the following terms shall have the meanings indicated below:

1. "Defendants," "you," and "your" mean both Defendant Simone Marstiller and the Florida Agency for Health Care Administration ("AHCA"), their agents, employees, administrators, attorneys, representatives, contractors,

1

Pl. Trial Ex. 004

PLAINTIFFS004943

consultants, investigators, and all other Persons and entities working or purporting to act on behalf of, or in concert with, or in participation with AHCA.

2. The "Challenged Exclusion" means Florida Administrative Code 59G-1.050(7), which was enacted on August 21, 2022, prohibiting coverage for "services for the treatment of gender dysphoria," including "puberty blockers," "hormones and hormone antagonists," "sex reassignment surgeries," and "any other procedures that alter primary or secondary sexual characteristics."

3. "Florida Medicaid" means the same as "Medicaid" defined at Fla. Stat. 409.901(14) & 409.962(11) and includes all contractors, including health insurance plans, engaged by Defendants for the administration of Florida's Medicaid program.

4. "Florida Medicaid program" means the same as "Medicaid program" defined at Fla. Stat. 409.901(16).

5. "GAPMS Memo" refers to Defendants' June 2022 publication titled "Florida Medicaid: Generally Accepted Professional Medical Standards Determination on the Treatment of Gender Dysphoria," including by reference all attachments and exhibits.

6. Unless otherwise specified, "gender-affirming care" means any health care, physical, mental, or otherwise, administered or prescribed for the treatment of Gender Dysphoria.

4880-8028-2946.v3

PLAINTIFFS004944

7. "Gender Dysphoria" refers to the clinically significant distress or impairment related to the incongruence between one's experienced/expressed gender and their assigned sex at birth, including their primary and/or secondary sex characteristics. For purposes of these Requests, "Gender Dysphoria" shall include: (a) the diagnoses for "Gender dysphoria in adolescents and adults" and "Gender dysphoria in children," as defined within *Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition* (DSM-5) and the *Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, Text Revision* (DSM-5-TR); (b) the diagnosis for "gender identity disorder," including any subcategories such as "Gender Identity Disorder in Adolescents and Adults," "Gender Identity Disorder in Children," and "Gender Identity Disorder Not Otherwise Specified," as defined within the *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition* (DSM-IV) and the *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision* (DSM-IV-TR); (c) the diagnosis for "gender identity disorder," including any subcategories such as "Gender Identity Disorder in Children," "Transsexualism," and "Gender Identity Disorder of Adolescence or Adulthood, Nontranssexual Type," and Gender Identity Disorder not Otherwise Specified," as defined within the *Diagnostic and Statistical Manual of Mental Disorders, Third Edition, Revision* (DSM-III-TR); (d) the diagnosis for "gender identity disorder," including any subcategories such as "Gender Identity Disorder

in Children," "Transsexualism," and "Atypical Gender Identity Disorder," as defined within the *Diagnostic and Statistical Manual of Mental Disorders, Third Edition* (DSM-III); and (e) the diagnoses for "gender incongruence of adolescence and adulthood" and "gender incongruence of childhood," as defined within the *International Classification of Diseases, Eleventh Revision* (ICD-11); and the diagnoses for "transsexualism" and "gender identity disorder," including any subcategories, as defined within the *International Classification of Diseases, Tenth Revision* (ICD-10) and *International Classification of Diseases, Ninth Revision* (ICD-9).

8. "July 8 Hearing" refers to the hearing that Defendants held on July 8, 2022 in Tallahassee, Florida regarding the Challenged Exclusion.

9. The term "major medical organization" shall mean the American Medical Association, the American Psychological Association, the American Psychiatric Association, Endocrine Society, the American College of Obstetricians and Gynecologists, the American Academy of Pediatrics, and the American Academy of Family Physicians.

10. "Medically necessary" shall have the same meaning as in 59G-1.010(166).

11. "Person" and "persons" mean any natural person, partnership, association, corporation, joint venture, trust, community group, government or

4880-8028-2946.v3

PLAINTIFFS004946

subdivision of any government (including any instrumentality, bureau, department, office, or agency of any government), not-for-profit enterprise, or other business entity, and all present and former officers, directors, agents, administrators, managers, representatives, contractors, consultants, employees, or other persons acting or purporting to act on behalf of such person.

12. "Plaintiffs" means the named plaintiffs in this action and any other plaintiff that is added in the future.

13. "Various Services" refers to the following procedures: penectomy, orchiectomy, vaginoplasty, feminizing genitoplasty, breast reconstruction, chondrolaryngoplasty, phalloplasty, metoidioplasty, masculinizing genitoplasty, single or double mastectomy, reduction mammoplasty, hysterectomy, oophorectomy, salpingo-oophorectomy, estradiol (in all forms, including oral/sublingual estradiol, transdermal estradiol, estradiol valerate IM, and estradiol cypionate IM), medroxyprogesterone acetate (Provera), micronized progesterone, spironolactone, finasteride, dutasteride, and testosterone (in all forms, including testosterone cypionate, testosterone enthanate, testosterone topical gel 1%, testosterone topical gel 1.62%, testosterone patches, testosterone cream, testosterone axillary gel 2%, testosterone undecanoate), and Gonadotropin-releasing hormone (GnRH) antagonists.

4880-8028-2946.v3

PLAINTIFFS004947

## INSTRUCTIONS

1. These Requests are issued to each of the Defendants. Defendants' responses to these Requests shall be made within thirty (30) days of service of these Requests.

2. All responses to these Requests should be directed to: Jennifer Altman, Pillsbury Winthrop Shaw Pittman LLP, 600 Brickell Avenue, Suite 3100, Miami, FL 33131, Email: jennifer.altman@pillsbury.com, cc: soraya.garcia@pillsburylaw.com.

3. Unless otherwise specified, the time period covered by these Requests is January 1, 2015 to the present. If it is necessary to refer to periods of time prior to January 1, 2015 to respond to a Request, please do so.

4. These Requests are continuing in nature, up to and during the course of trial. Defendants' responses to these Requests are to be promptly supplemented or amended if, after the time of their initial responses, Defendants learn that any response is or has become in some material respect incomplete or incorrect, to the full extent provided for by Federal Rule of Civil Procedure 26(e). Plaintiffs will object to any attempt to introduce evidence to the Court that should have been but was not disclosed in the responses or supplementation of the responses.

4880-8028-2946.v3

PLAINTIFFS004948

5. If a Request cannot be complied with in full, it shall be complied with to the extent possible, and accompanied by an explanation of your objection to the request or other reasons you are unable to fully comply.

6. As to each Request, Defendants shall specifically admit or deny the statement contained therein. If denied, the denial must fairly meet the substance of the requested admission. If Defendants qualify their answer or deny any part of the matter for which admission is requested, Defendants shall admit so much of the statement as is true and qualify or deny the remainder.

7. If Defendants object that a term or phrase is vague or ambiguous, Defendants shall respond with their understanding of the term or phrase and specifically admit or deny the statement.

8. If Defendants object to any part of a Request, Defendants shall specify each part of the Request to which Defendants object; set forth with specificity the grounds for objecting to each such part of the Request, including the reasons, and otherwise respond to all parts of the Request to which Defendants do not object.

11. Responses to these Requests shall include all information within the custody, possession, or control of you, your employees, partners, contractors, accountants, attorneys, or other agents, or which are otherwise available to you.

12. When, after a reasonable and thorough investigation using due diligence, you are unable to admit or deny a Request or any part thereof, specify in

4880-8028-2946.v3

PLAINTIFFS004949

full the reason that you are unable to admit or deny the Request and the steps you have taken to locate information that would allow you to admit or deny the Request. If you deny any part of a matter for which admission is requested, you shall admit so much of the statement as is true.

13. For purposes of interpreting or construing the scope of these Requests, all terms shall be given their most expansive and inclusive interpretation. This includes, without limitation, the following:

a. Construing "and" as well as "or" in the disjunctive or conjunctive, as necessary to make the Request more inclusive;

b. Construing the singular form of the word to include the plural, and the plural form to include the singular;

c. Construing the masculine to include the feminine, and vice versa;

d. Construing the term "including" to mean "including but not limited to" and construing the term "all" to mean "any and all," and vice versa;

e. Construing the term "each" to include "every," and construing "every" to include "each";

4880-8028-2946.v3

PLAINTIFFS004950

      f.      Construing the use of a verb in any tense as applying to the use of the verb in all other tenses as is necessary to make any paragraph more, rather than less, inclusive;

      g.      Construing and interpreting all spelling, syntax, grammar, abbreviations, idioms, and proper nouns to give proper meaning and consistency to their context.

## **REQUESTS FOR ADMISSION**

1.      Admit that gender-affirming care can be medically necessary.

2.      Admit that the Challenged Exclusion prohibits Florida Medicaid coverage of gender affirming care that can be medically necessary for the treatment of Gender Dysphoria.

3.      Admit that each of the Various Services can be medically necessary for the treatment of Gender Dysphoria.

4.      Admit that each Plaintiff identifies as transgender.

5.      Admit that each Plaintiff has been diagnosed with Gender Dysphoria.

6.      Admit that each Plaintiff receives health care coverage through Florida's Medicaid program.

7.      Admit that, prior to the enactment of the Challenged Exclusion, Florida Medicaid covered "services for the treatment of gender dysphoria," as that term is defined in the Challenged Exclusion, for each Plaintiff.

4880-8028-2946.v3

PLAINTIFFS004951

8. Admit that Florida Medicaid covers each of the Various Services when necessary to treat at least one condition other than Gender Dysphoria.

9. Admit that Florida Medicaid covers mastectomy, reduction mammoplasty, and breast reconstruction surgery when necessary to treat at least one condition other than Gender Dysphoria.

10. Admit that Florida Medicaid covers hysterectomy and oophorectomy procedures when necessary to treat at least one condition other than Gender Dysphoria.

11. Admit that Florida Medicaid covers vaginoplasty procedures when necessary to treat at least one condition other than Gender Dysphoria.

12. Admit that Florida Medicaid covers orchiectomy, penectomy, and/or phalloplasty procedures when medically necessary to treat at least one condition other than Gender Dysphoria.

13. Admit that, prior to the enactment of the Challenged Exclusion, Florida Medicaid did not exclude coverage of prescribed hormones for the treatment of Gender Dysphoria.

14. Admit that, prior to the enactment of the Challenged Exclusion, Plaintiff August Dekker received coverage under Florida Medicaid for hormone therapy as treatment for his Gender Dysphoria.

4880-8028-2946.v3

PLAINTIFFS004952

15. Admit that, prior to the enactment of the Challenged Exclusion, Plaintiff August Dekker received coverage under Florida Medicaid for a double mastectomy as treatment for his Gender Dysphoria.

16. Admit that, prior to the enactment of the Challenged Exclusion, Plaintiff Brit Rothstein received coverage under Florida Medicaid for hormone therapy as treatment for his Gender Dysphoria.

17. Admit that, prior to the enactment of the Challenged Exclusion, Plaintiff Susan Doe received coverage under Florida Medicaid for a GnRH antagonist as treatment for her Gender Dysphoria.

18. Admit that, prior to the enactment of the Challenged Exclusion, Plaintiff K.F. received coverage under Florida Medicaid for a GnRH antagonist as treatment for his Gender Dysphoria.

19. Admit that, prior to the enactment of the Challenged Exclusion, Florida Medicaid gave Plaintiff Brit Rothstein prior authorization for double mastectomy as treatment for his Gender Dysphoria.

20. Admit that, following the enactment of Challenged Exclusion, Plaintiffs have not received coverage under Florida Medicaid for the services described in Requests 14 to 19 above.

21. Admit that if Plaintiff August Dekker does not continue to receive hormone therapy, he may undergo physical changes.

4880-8028-2946.v3

PLAINTIFFS004953

22. Admit that if Plaintiff Brit Rothstein does not continue to receive hormone therapy, he may undergo physical changes.

23. Admit that if Plaintiff Brit Rothstein does not receive the double mastectomy previously authorized by Defendants, he may experience exacerbated distress and chest dysphoria.

24. Admit that if Plaintiff Susan Doe does not continue to receive a GnRH antagonist, she will undergo endogenous puberty.

25. Admit that if Plaintiff K.F. does not continue to receive a GnRH antagonist, he will undergo endogenous puberty.

26. Admit that undergoing endogenous puberty causes development of secondary sex characteristics.

27. Admit that undergoing endogenous puberty causes irreversible physical changes.

28. Admit that you did not prepare any criteria for determining whether to grant a variance under Florida Statutes § 120.542 to permit Florida Medicaid coverage of any of the Various Services when used to treat Gender Dysphoria.

29. Admit that you have no existing criteria for determining whether to grant a variance under Florida Statute § 120.542 to permit Florida Medicaid coverage of any of the services excluded by the Challenged Exclusion.

4880-8028-2946.v3

PLAINTIFFS004954

30. Admit that you are not currently preparing any criteria for determining whether to grant a variance under Florida Statute § 120.542 to permit Florida Medicaid coverage of any of the services excluded by the Challenged Exclusion.

31. Admit that none of the Various Services are experimental when used to treat Gender Dysphoria.

32. Admit that none of the Various Services are investigational when used to treat Gender Dysphoria.

33. Admit that licensed medical professionals with experience treating Gender Dysphoria are in the best position to make medical determinations regarding the diagnosis and treatment of patients with Gender Dysphoria.

34. Admit that, as recently as 2016, you did not consider puberty suppression therapy for the treatment of Gender Dysphoria to be experimental.

35. Admit that, as recently as 2016, you did not consider puberty suppression therapy for the treatment of Gender Dysphoria to be investigational.

36. Admit that the individuals involved in the process of creating and implementing the Challenged Exclusion were not the same individuals who are typically involved in this process on your behalf.

37. Admit that, as recently as 2016, you did not consider any of the Various Services to be experimental.

4880-8028-2946.v3

PLAINTIFFS004955

38. Admit that, as recently as 2016, you did not consider any of the Various Services to be investigational.

39. Admit that you have criteria for determining whether to grant a variance under Florida Statutes § 120.542 for any service used to treat a healthcare condition besides Gender Dysphoria.

40. Admit that the Challenged Exclusion restricts coverage for gender-affirming care that has been the subject of decades of scholarly research.

41. Admit that no major medical organization recommends or supports prohibiting coverage of the Various Services when used to treat Gender Dysphoria.

42. Admit that transgender people have historically been subject to discrimination.

43. Admit that, prior to the enactment of the Challenged Exclusion, you were aware that transgender people have historically been subject to discrimination.

44. Admit that being transgender is immutable.

45. Admit that being transgender bears no relation to one's ability to contribute to society.

46. Admit that you provide Florida Medicaid coverage for some health care services that have not been studied through randomized clinical trials.

4880-8028-2946.v3

PLAINTIFFS004956

47. Admit that you provide Florida Medicaid coverage for some health care services that have not been studied through long-term longitudinal studies.

48. Admit that you provide Florida Medicaid coverage for some health care services that have a risk of producing unintended, irreversible consequences.

49. Admit that the well-established medical consensus is that gender-affirming care should be provided to transgender people with Gender Dysphoria.

50. Admit that the WPATH Standards of Care are the most widely used standards in the United States for treating Gender Dysphoria.

51. Admit that the WPATH Standards of Care are the leading standards of care for the treatment of Gender Dysphoria.

52. Admit that the WPATH Standards of Care are authoritative standards of care for the treatment of Gender Dysphoria.

53. Admit that the WPATH Standards of Care are widely accepted as the leading standards of care for the treatment of Gender Dysphoria.

54. Admit that the WPATH Standards of Care are widely accepted as authoritative standards of care for the treatment of Gender Dysphoria.

55. Admit that the Endocrine Society's Clinical Practice Guidelines are widely accepted as authoritative standards of care for the treatment of Gender Dysphoria.

PLAINTIFFS004957

56. Admit that the Endocrine Society's Clinical Practice Guidelines are authoritative standards of care for the treatment of Gender Dysphoria.

57. Admit that Defendants are not aware of any other widely used standards of care to treat Gender Dysphoria other than the WPATH Standards of Care or the Endocrine Society's Clinical Practice Guidelines.

58. Admit that your coverage of medical care should be made pursuant to the standards of care for a particular condition.

59. Admit that the treatment of a medical condition should be made pursuant to the standards of care for a particular condition.

60. Admit that persons from the Office of the Governor Ronald DeSantis were involved in your decision to promulgate the Challenged Exclusion.

61. Admit that persons from the Florida Department of Health were involved in your decision to promulgate the Challenged Exclusion.

62. Admit that you caused Chloe Cole to be invited to the July 8 Hearing.

63. Admit that you caused Sophia Galvin to be invited to the July 8 Hearing.

64. Admit that you caused Anthony Verdugo to be invited to the July 8 Hearing.

65. Admit that you caused to be invited to the July 8 Hearing any persons affiliated with the Christian Family Coalition.

4880-8028-2946.v3

PLAINTIFFS004958

66. Admit that you caused to be invited to the July 8 Hearing any persons affiliated with the Florida Citizens Alliance.

67. Admit that you caused to be invited to the July 8 Hearing any persons affiliated with the Warriors of Faith.

68. Admit that you caused to be invited to the July 8 Hearing any persons affiliated with the Protect our Children Project.

69. Admit that, in promulgating the Challenged Exclusion, you did not consult "evidence-based clinical practice guidelines", as that term is used in 59G-1.035.

70. Admit that, in promulgating the Challenged Exclusion, you did not consult articles "published in peer-reviewed scientific literature generally recognized by the relevant medical community or practitioner specialty association", as that term is used in 59G-1.035.

71. Admit that, in promulgating the Challenged Exclusion, you did not consult "coverage policies by other creditable insurance payor sources", as that term is used in 59G-1.035.

72. Admit that only Dr. Andre Van Mol, Dr. Quentin Van Meter, and Dr. Miriam Grossman were included on the July 8 Hearing panel.

4880-8028-2946.v3

PLAINTIFFS004959

73. Admit that Dr. Andre Van Mol, Dr. Quentin Van Meter, and Dr. Miriam Grossman have all taken positions that support Defendants' promulgation of exclusions for coverage of treatment of Gender Dysphoria.

74. Admit that you did not include anyone on the July 8 Hearing panel who has taken a position that opposes Defendants' promulgation of exclusions for coverage of Gender Dysphoria.

75. Admit that you selected the authors of the GAPMS Memo reports because of their opposition to gender-affirming care.

76. Admit that each of the authors of the GAPMS Memo have publicly taken positions in opposition to gender-affirming care.

77. Admit that you selected the panel members for the July 8 Hearing because of their opposition to gender-affirming care.

78. Admit that, prior to the GAPMS Memo's drafting and promulgation, you determined that gender-affirming care was experimental or investigational.

79. Admit that, regardless of what information was available to you, you intended to reach the conclusion in the GAPMS Memo that gender-affirming care was experimental or investigational.

\* \* \*

Respectfully submitted this 12th day of December, 2022.

4880-8028-2946.v3

PLAINTIFFS004960

**PILLSBURY WINTHROP SHAW PITTMAN, LLP**

By: /s/ *Jennifer Altman*
**Jennifer Altman** (Fl. Bar No. 881384)
**Shani Rivaux**\*\* (Fl. Bar No. 42095)
600 Brickell Avenue, Suite 3100
Miami, FL 33131
(786) 913-4900
jennifer.altman@pillsburylaw.com
shani.rivaux@pillsburylaw.com

**William C. Miller**\*
**Gary J. Shaw**\*
1200 17th Street N.W.
Washington, D.C. 20036
(202) 663-8000
william.c.miller@pillsburylaw.com
gary.shaw@pillsburylaw.com

**Joe Little**\*
500 Capitol Mall, Suite 1800
Sacramento, CA 95814
(916) 329-4700
joe.little@pillsburylaw.com

**NATIONAL HEALTH LAW PROGRAM**

**Abigail Coursolle**\*
3701 Wilshire Boulevard, Suite 315
Los Angeles, CA 90010
(310) 736-1652
coursolle@healthlaw.org

**Catherine McKee**\*
1512 E. Franklin Street, Suite 110
Chapel Hill, NC 27514
(919) 968-6308
mckee@healthlaw.org

**LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.**

By: /s/ *Omar Gonzalez-Pagan*
**Omar Gonzalez-Pagan**\*
120 Wall Street, 19th Floor
New York, NY 10005
(212) 809-8585
ogonzalez-pagan@lambdalegal.org

**Carl S. Charles**\*
1 West Court Square, Suite 105
Decatur, GA 30030
(404) 897-1880
ccharles@lambdalegal.org

**SOUTHERN LEGAL COUNSEL, INC.**

**Simone Chriss** (Fl. Bar No. 124062)
**Chelsea Dunn** (Fl. Bar No. 1013541)
1229 NW 12th Avenue
Gainesville, FL 32601
(352) 271-8890
Simone.Chriss@southernlegal.org
Chelsea.Dunn@southernlegal.org

**FLORIDA HEALTH JUSTICE PROJECT**

**Katy DeBriere** (Fl. Bar No. 58506)
3900 Richmond Street
Jacksonville, FL 32205
(352) 278-6059
debriere@floridahealthjustice.org

\* *Admitted pro hac vice.*

4880-8028-2946.v3

PLAINTIFFS004961

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by email on December 12, 2022, on all counsel of record:

Mohammad O. Jazil (FBN 72556)
Gary V. Perko (FBN 855898)
Michael Beato (FBN 1017715)
HOLTZMAN VOGEL BARANTORCHINSKY & JOSEFIAK PLLC
119 S. Monroe St., Suite 500
Tallahassee, FL 32301
mjazil@holtzmanvogel.com
gperko@holtzmanvogel.com
mbeato@holtzmanvogel.com

COUNSEL FOR DEFENDANTS

                                        ___/s/ Joe Little___
                                        Counsel for Plaintiffs

4880-8028-2946.v3

PLAINTIFFS004962