RESEARCH THAT MATTERS

# MEDICAID COVERAGE FOR GENDER-AFFIRMING CARE

DECEMBER 2022

Christy Mallory
Will Tentindo

UCLA
School of Law
**Williams Institute**

Pl. Trial Ex. 079

PLAINTIFFS005990

# EXECUTIVE SUMMARY

Medicaid beneficiaries who are transgender face a patchwork of policies across the U.S. that leave many of them without access to coverage for gender-affirming care. Half of the states and D.C. specifically include coverage for gender-affirming care under their Medicaid programs or are in the process of extending coverage, while seven states expressly exclude coverage for such care. Coverage is unclear in 18 states. Gender-affirming care includes a range of services, such as hormone therapy, surgical procedures, and other forms of treatment related to gender transition.

The Williams Institute estimates that

- 1.3 million adults in the U.S. identify as transgender and approximately 276,000 of them are enrolled in Medicaid.
- Sixty percent (164,000) of transgender Medicaid beneficiaries have affirmative access to coverage for gender-affirming care under express policies in state law.
- For 27% (74,000) of transgender Medicaid beneficiaries, coverage is uncertain because they live in states where the laws are silent or unclear on coverage for gender-affirming care.
- Fourteen percent (38,000) of transgender Medicaid beneficiaries live in states with express bans that deny access to covered gender-affirming care.

Despite inconsistent coverage across the U.S., a number of federal and state laws and policies support access to gender-affirming care through Medicaid programs. At the federal level, these laws and policies include statutes, like the Affordable Care Act and the Medicaid Act, as well as the U.S. Constitution. In addition, a number of state-level non-discrimination statutes and constitutional provisions support access to care. Bans have been successfully challenged in court under these laws in several states, resulting in changes to Medicaid policies that have increased care and coverage for transgender beneficiaries.

Additional policy changes in states that still have bans or lack clear language addressing coverage would ensure that transgender Medicaid beneficiaries have access to coverage for gender-affirming medical care no matter where they live. In addition, more transgender people could benefit from Medicaid-covered services if all states adopted Medicaid expansion and if barriers to accessing public benefits, such as requirements pertaining to identity documents, were removed.

PLAINTIFFS005991

# COVERAGE FOR GENDER-AFFIRMING CARE IN STATE MEDICAID PROGRAMS

Medicaid is a federally mandated program, implemented by states, which ensures access to health care for adults and children living in low-income households who qualify.[1] The program is funded with a combination of federal and state funds.[2] States must implement their Medicaid programs consistent with federal law, though they retain some flexibility in the design and administration of their programs, including setting eligibility criteria.[3]

Federal law does not currently expressly direct states to either include or exclude coverage for gender-affirming care under their state Medicaid programs.[4] Some states have chosen to specifically include coverage for gender-affirming care under their Medicaid programs, while other states exclude such care or have not expressly addressed coverage, creating a patchwork of policies affecting transgender Medicaid beneficiaries across the U.S.

## STATES WITH AFFIRMATIVE COVERAGE FOR GENDER-AFFIRMING CARE

Twenty-five states and D.C. expressly include coverage for gender-affirming care under their Medicaid programs, either by statute or administrative policy, or are in the process of extending coverage. More specifically, 23 states already expressly include coverage for gender-affirming care: Alaska, California, Colorado, Connecticut, Delaware, Illinois, Maine, Maryland, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Hampshire, New Jersey, New York, North Dakota, Oregon, Pennsylvania, Rhode Island, Vermont, Washington, and Wisconsin. One additional state, Georgia, is obligated to extend coverage for gender-affirming care as a result of a settlement agreement reached in a court case and has removed exclusions on gender-affirming care from its state Medicaid Plan. Similarly, in Iowa, a court recently declared unconstitutional the state's exclusion of gender-affirming care in its Medicaid program, but the state has not yet issued an affirmative policy stating that that care is covered. All of these policies have been adopted within the past decade, with Vermont being the first state to issue this type of policy in 2008. The policies ensure that transgender Medicaid beneficiaries have access to a range of gender-affirming care, including gender-affirming surgery and hormone treatment, though there may be some forms of gender-affirming care that are not included in the policies. For further details on state policies, see Appendix A.

---

[1] Ctr. for Medicare & Medicaid Servs., U.S. Dep't. of Health & Human Servs., *Program History*, Medicaid.gov, https://www.medicaid.gov/about-us/program-history/index.html (last visited Oct. 21, 2022).

[2] Ctr. for Medicare & Medicaid Servs., U.S. Dep't. of Health & Human Servs., *Financial Management*, Medicaid.gov, https://www.medicaid.gov/medicaid/financial-management/index.html (last visited Oct. 21, 2022).

[3] *See, e.g.*, Ctr. for Medicare & Medicaid Servs., U.S. Dep't. of Health & Human Servs., *Eligibility*, Medicaid.gov, https://www.medicaid.gov/medicaid/eligibility/index.html (last visited Oct. 21, 2022).

[4] For benefits that states are required to provide under federal law, see Ctr. for Medicare & Medicaid Servs., U.S. Dep't. of Health & Human Servs., *Mandatory & Optional Medicaid Benefits*, Medicaid.gov, https://www.medicaid.gov/medicaid/benefits/list-of-benefits/index.html (last visited Aug. 15, 2019).

PLAINTIFFS005992

## STATES WHERE THE LAW IS SILENT OR UNCLEAR ON COVERAGE FOR GENDER-AFFIRMING CARE

In 18 states, it is unclear whether transgender Medicaid beneficiaries have access to gender-affirming care either because the law is silent on coverage or because the state maintains a ban, but enforcement of the ban is unclear. Fourteen states have no express statute or administrative policy addressing coverage for gender-affirming care under their Medicaid programs: Alabama, Arkansas,[5] Idaho,[6] Indiana, Kansas, Kentucky, Louisiana, Mississippi, New Mexico, North Carolina, Oklahoma, South Dakota, Utah, and Virginia. Three additional states, Hawaii,[7] Ohio,[8] and Wyoming,[9] maintain policies that explicitly exclude coverage for gender-affirming care under their state Medicaid programs, but recent actions by state legislatures or officials indicate that the states may not currently be enforcing these policies. As a result, coverage is uncertain in these three states. Similarly, it is unclear whether West Virginia's exclusion is currently being enforced. West Virginia's Medicaid Provider Manual, last issued by the West Virginia Bureau of Medical Services in 2005, expressly excludes "transsexual surgery" from Medicaid coverage.[10] In August 2022, a federal district court declared the exclusion unconstitutional and a violation of the Affordable Care Act and the Medicaid Act.[11] However, West Virginia filed an appeal in the Fourth Circuit on September 6, 2022.[12] Due to ongoing litigation in the state, coverage for gender-affirming care under the state's Medicaid program is uncertain.

---

[5] In 2021, the Arkansas legislature enacted a ban on Medicaid coverage for gender-affirming care for minors. Ark. Code § 20-9-1503 (2022). The law does not address Medicaid coverage for gender-affirming care for adults and no other laws or policies in the state either expressly provide or ban such coverage for adults.

[6] A lawsuit filed in Idaho in 2022 indicates that the state's Medicaid program considers surgery related to gender transition a cosmetic procedure excluded from coverage, though this policy is not clearly stated in any official policies or guidance implementing the state Medicaid program. Complaint, MH & TB v. Jeppesen et al., No. 1:22-CV-409 (D. Idaho Sept. 29, 2022).

[7] The Hawaii Department of Human Services maintains a policy that generally excludes gender-affirming care from coverage under the state Medicaid program, which includes medical treatments, surgical procedures, hormones, and other medications, though it does allow coverage specifically for medication related to gender transition if the beneficiary has a court order affirming his or her gender change. Haw. Admin. R. § 17-1737-84 (2022). However, in 2022, the state legislature passed a bill prohibiting categorical exclusions for gender-affirming care under any "individual or group accident and health or sickness policy, contract, plan, or agreement that provides health care coverage." Haw. Rev. Stat. §§ 431:10A-118.3, 432D-26.3, 432:1-607.3 (2022). Although the bill does not expressly address coverage under the state's Medicaid program, the law is broad in scope and may prohibit Medicaid from denying coverage for gender-affirming care.

[8] Ohio Admin. Code 5160-2-03(A)(2)(e) (2022); Michael Ollove, *States Diverge on Transgender Healthcare*, Stateline by Pew (July 19, 2019) https://www.pewtrusts.org/en/research-and-analysis/blogs/stateline/2019/07/17/states-diverge-on-transgender-health-care.

[9] 048-0037-26 Wyo. Code R. § 5(a)(xxiv) (2022); Ollove, *supra* note 8.

[10] *West Virginia Medicaid Provider Manual*, W. Va. Dep't. Health & Hum. Resources, at § 161 (Jan. 1, 2005), https://dhhr. wv.gov/bms/Provider/Documents/Manuals/bms_manuals_Chapter_100.pdf.

[11] Fain v. Crouch, _ F. Supp. 3d _, 2022 WL 3051015 (S.D. W. Va. 2022).

[12] Fain v. Crouch, No. 22-1927 (4th Cir.), Dkt. No. 2, https://files.eqcf.org/wp-content/uploads/2022/09/2-Fain-Docketing-Notice.pdf.

PLAINTIFFS005993

Although these 18 states lack policies clearly stating that gender-affirming care is covered, services may still be approved for coverage. Transgender people in a few of these states have reported being able to access Medicaid coverage for some types of gender-affirming care. But even in these states, transgender beneficiaries report experiencing significant barriers, such as being denied coverage for certain treatments or having different doctors provide different information pertaining to coverage, that likely would not be present if an express policy providing for coverage were in place.[13]

## STATES WITH EXPRESS BANS ON COVERAGE FOR GENDER-AFFIRMING CARE

Seven states have express bans that deny access to coverage for gender-affirming care under their Medicaid programs. These seven states are Arizona, Florida, Missouri, Nebraska, South Carolina, Tennessee, and Texas. Most of these policies specifically exclude coverage for transition-related surgeries. However, some policies are more broadly written and may also exclude hormone treatment and other types of gender-affirming care. For further details on state policies, see Appendix A.

---

[13] *See, e.g.*, Orion Rummler, *Health Care for Transgender Adults Remains Legal, but States are Quietly Trying to Limit Access*, 19th News (Oct. 3, 2022), https://19thnews.org/2022/10/transgender-healthcare-adults-limit-restrict/l. *See also* Leslie Newell Peacock, *The Real Transgender Crisis in Arkansas: Health Care*, ARK. TIMES (May 11, 2017), https://arktimes.com/news/cover-stories/2017/05/11/the-real-transgender-crisis-in-arkansas-health-care (narrative of difficulties obtaining care prior to Arkansas' gender-affirming care ban for minors).

PLAINTIFFS005994

# IMPACT OF LAWS ADDRESSING MEDICAID COVERAGE

## NUMBER OF TRANSGENDER ADULTS ENROLLED IN MEDICAID

Using the best available data, we estimate that 276,000 transgender adults in the U.S. are enrolled in Medicaid. Sixty percent (164,000) of transgender Medicaid beneficiaries have guaranteed access to coverage for gender-affirming care under express policies in state law. For around 27% (74,000) of transgender Medicaid beneficiaries, coverage is uncertain because they live in states where the laws addressing coverage are silent or unclear on Medicaid coverage for gender-affirming care. Fourteen percent (38,000) of transgender Medicaid beneficiaries live in states with express bans that deny access to covered gender-affirming care.

**Table 1. Medicaid enrollment of transgender adults, by state**

| STATE | NUMBER OF TRANSGENDER ADULTS | TRANSGENDER ADULTS ENROLLED IN MEDICAID BY COVERAGE FOR GENDER-AFFIRMING CARE | | |
|---|---|---|---|---|
| | | GENDER-AFFIRMING CARE COVERED | GENDER-AFFIRMING CARE NOT COVERED | SILENT OR UNCLEAR POLICY ON GENDER-AFFIRMING CARE |
| Alabama | 18,400 | | | 3,000 |
| Alaska | 3,900 | 1,000 | | |
| Arizona | 41,200 | | 7,000 | |
| Arkansas | 16,200 | | | 4,000 |
| California | 150,100 | 36,000 | | |
| Colorado | 27,000 | 6,000 | | |
| Connecticut | 15,300 | 4,000 | | |
| Delaware | 6,300 | 2,000 | | |
| DC | 5,300 | 1,000 | | |
| Florida | 94,900 | | 12,000 | |
| Georgia | 48,700 | 6,000 | | |
| Hawaii | 7,800 | | | 2,000 |
| Idaho | 7,000 | | | 1,000 |
| Illinois | 43,400 | 9,000 | | |
| Indiana | 25,800 | | | 6,000 |
| Iowa | 7,100 | 2,000 | | |
| Kansas | 12,400 | | | 2,000 |
| Kentucky | 17,700 | | | 6,000 |
| Louisiana | 15,700 | | | 5,000 |
| Maine | 5,900 | 1,000 | | |
| Maryland | 24,000 | 6,000 | | |
| Massachusetts | 37,100 | 7,000 | | |
| Michigan | 33,000 | 9,000 | | |
| Minnesota | 26,000 | 5,000 | | |
| Mississippi | 9,600 | | | 1,000 |

| STATE | NUMBER OF TRANSGENDER ADULTS | TRANSGENDER ADULTS ENROLLED IN MEDICAID BY COVERAGE FOR GENDER-AFFIRMING CARE | | |
|---|---|---|---|---|
| | | GENDER-AFFIRMING CARE COVERED | GENDER-AFFIRMING CARE NOT COVERED | SILENT OR UNCLEAR POLICY ON GENDER-AFFIRMING CARE |
| Missouri | 9,500 | | 1,000 | |
| Montana | 3,400 | 1,000 | | |
| Nebraska | 6,600 | | 1,000 | |
| Nevada | 8,100 | 2,000 | | |
| New Hampshire | 6,300 | 1,000 | | |
| New Jersey | 43,100 | 10,000 | | |
| New Mexico | 10,900 | | | 4,000 |
| New York | 81,800 | 24,000 | | |
| North Carolina | 71,300 | | | 13,000 |
| North Dakota | 2,500 | <1,000 | | |
| Ohio | 46,500 | | | 13,000 |
| Oklahoma | 18,900 | | | 4,000 |
| Oregon | 19,900 | 5,000 | | |
| Pennsylvania | 56,000 | 14,000 | | |
| Rhode Island | 5,700 | 1,000 | | |
| South Carolina | 19,000 | | 4,000 | |
| South Dakota | 2,900 | | | <1,000 |
| Tennessee | 27,700 | | 4,000 | |
| Texas | 92,900 | | 9,000 | |
| Utah | 13,700 | | | 1,000 |
| Vermont | 2,700 | 1,000 | | |
| Virginia | 31,400 | | | 6,000 |
| Washington | 33,000 | 7,000 | | |
| West Virginia | 5,700 | | | 2,000 |
| Wisconsin | 15,500 | 3,000 | | |
| Wyoming | 2,100 | | | <1,000 |
| TOTAL | 1,397,250 | 164,000 | 38,000 | 74,000 |

For information about the methodology used to calculate estimates and a supplemental data table, see page 17.

## LIMITATIONS

We used data collected through the Census Bureau's Household Pulse Survey to calculate state-specific percentages for Medicaid enrollment. We relied upon LGBT Medicaid percentages rather than Medicaid percentages for transgender adults alone because they were more stable (e.g., smaller standard errors and narrower confidence intervals due to larger group size) at the state level and were more consistent with estimates of trans-only Medicaid enrollment in other datasets. For example, across the 14 states that collected data on gender identity and Medicaid enrollment through their Behavioral Risk Factor Surveillance System surveys (BRFSS) between 2017 and 2020, average

PLAINTIFFS005996

Medicaid enrollment for transgender adults was 10% (ranging from 1% to 18%).[14] In addition, a recent analysis of data collected through the TransPop survey between 2016 and 2018 found that 22% of transgender adults in the U.S. were enrolled in Medicaid or Medicare.[15] These numbers are consistent with our state-level estimates of Medicaid enrollment for LGBT adults, which ranged from 9% to 37% across states with a national average of 21%.[16]

Our estimates of Medicaid enrollment among transgender adults may be somewhat conservative. It is possible that Medicaid coverage may be higher for transgender adults compared to LGB adults given higher rates of poverty and disability among transgender adults in the U.S.[17] Unfortunately, surveys with samples large enough to support state-level estimation and that collect information about insurance coverage and transgender status (or LGBT status) are rare, and, given these limitations, we used the best available data to produce our estimates.

Our calculations may also underestimate the number of transgender adults who could be impacted by state Medicaid policies because we are unable to calculate the number of transgender adults who are currently eligible for Medicaid but not enrolled or the number of transgender adults who would be newly eligible and enroll if their state adopted Medicaid expansion. Transgender adults who are currently eligible for Medicaid may not be enrolled for various reasons. For example, they may not enroll because gender-affirming services are not covered, because their identity documents do not accurately reflect their name and gender identity, or because of their immigration status, making it difficult to access public benefits.[18] At least some of these adults may be more likely to enroll if their state Medicaid programs reduce barriers to access and affirmatively offer coverage for a range of gender-affirming medical services.

Further adoption of Medicaid expansion by the states would also likely increase enrollment of transgender adults. To date, 38 states have adopted and implemented Medicaid expansion, providing coverage for most adults living at or below 138% of the federal poverty level, and 12 states have not.[19] Medicaid expansion is particularly important for low-income adults without children, who typically

---

[14] Analysis on file with authors. Average presented is a weighted average. In addition, analysis of data collected through the California Health Interview Survey between 2020 and 2021 found that 28% of transgender adults in the state were enrolled in Medicaid; similar to our estimate of 25% of LGBT people in California enrolled in Medicaid based on Pulse data.

[15] Ilan H. Meyer, Bianca D.M. Wilson & Kathryn O'Neill, Williams Inst., LGBTQ People in the U.S.: Select Findings from the Generations and TransPop Studies 28 (2021).

[16] The average presented is a weighted national average.

[17] Janelle M. Downing & Julia M. Przedworski, Health of Transgender Adults in the U.S., 2014–2016, 55 Am. J. Preventative Med. 336 (2018); M.V. Lee Badgett, Bianca D.M. Wilson & Soon Kyu Choi, Williams Institute, LGBT Poverty in the U.S. (2019).

[18] Kellan E. Baker et al., Ctr. for Am. Progress, The Medicaid Program and LGBT Communities: Overview and Policy Recommendations 10 (2016), https://cdn.americanprogress.org/wp-content/uploads/2016/08/08125221/2LGBTMedicaidExpansion-brief.pdf; Affordable Care Act Enrollment Assistance for LGBT Communities: A Resource for Behavioral Health Providers, Substance Abuse & Mental Health Servs. Admin., at 11 (2014), https://store.samhsa.gov/system/files/pep14-lgbtacaenrolla.pdf; Health Coverage for Immigrants, Henry J. Kaiser Fam. Found. (Apr. 6, 2022), https://www.kff.org/racial-equity-and-health-policy/fact-sheet/health-coverage-of-immigrants/.

[19] Status of State Medicaid Expansion Decisions: Interactive Map, Henry J. Kaiser Fam. Found. (Aug. 1, 2019), https://www.kff.org/medicaid/issue-brief/status-of-state-medicaid-expansion-decisions-interactive-map/.

PLAINTIFFS005997

are not eligible under traditional Medicaid rules.[20] It is likely that more transgender adults in the non-expansion states would enroll if these states adopted expansion.

Due to these limitations, our calculations likely underestimate the number of transgender adults who are currently or could be impacted by state Medicaid policies. The report also does not consider the number of transgender youth who are enrolled in Medicaid and are impacted by state Medicaid policies.

In addition, these estimates do not consider the number of transgender adults who may have difficulty finding providers who accept Medicaid and are able to provide competent gender-affirming care, even if their state's Medicaid program provides coverage for this care. Health care providers, in general, are less likely to accept Medicaid than other forms of insurance, which may make it difficult for all Medicaid beneficiaries, including transgender people, to find doctors.[21] Additionally, many transgender people report that they have experienced or fear discrimination and other barriers to receiving competent medical care related to their gender transition.[22] For example, the 2015 U.S. Transgender Survey found that 33% of respondents who had seen a health care provider in the past year reported that they had a negative experience with a provider.[23] The estimates consider only access to coverage for gender-affirming care under current state Medicaid policies, and not whether people are actually able to receive competent care.

Finally, the report provides estimates of transgender people who have access to coverage for gender-affirming care under their state Medicaid programs and those who are denied access to coverage under express bans. We are not able to estimate the number of transgender people who would seek such treatment, were coverage for it to be available.

---

[20] See, e.g., BAKER ET AL., *supra* note 18.

[21] MEDICAID AND CHIP PAYMENT AND ACCESS COMM., PHYSICIAN ACCEPTANCE OF NEW MEDICAID PATIENTS 6 (2019), http://www.macpac.gov/wp-content/uploads/2019/01/Physician-Acceptance-of-New-Medicaid-Patients.pdf.

[22] Jae A. Puckett et al., *Barriers to Gender Affirming Care for Transgender and Gender Nonconforming Individuals*, 15 SEX. RES. SOCIAL POLICY 48 (2018); Deirdre A. Shires et al., *Primary Care Providers' Willingness to Continue Gender-Affirming Hormone Therapy for Transgender Patients*, 35 FAM. PRACTICE 576 (2018); Gilbert Gonzalez & Carrie Henning-Smith, *Barriers to Care among Transgender and Gender Nonconforming Adults*, 95 MILBANK Q. 726 (2017); SANDY JAMES ET AL., THE REPORT OF THE 2015 U.S. TRANSGENDER SURVEY 94-95 (2016), https://transequality.org/sites/default/files/docs/usts/USTS-Full-Report-Dec17.pdf.

[23] JAMES ET AL., *supra* note 22 at 97.

PLAINTIFFS005998

# STATE AND FEDERAL LAWS THAT SUPPORT ACCESS TO COVERAGE FOR GENDER-AFFIRMING CARE

Medicaid exclusions for gender-affirming care have been challenged in court in several states. Plaintiffs in these cases have asserted that denial of coverage violates federal and state laws and constitutional provisions. In a number of these cases, courts have agreed with the plaintiffs, resulting in increased access to coverage for transgender beneficiaries. Several more cases that raise the same issues are currently being litigated. If these cases are decided in the beneficiaries' favor, more transgender people will have access to coverage for gender-affirming care through Medicaid.

## FEDERAL STATUTES

### Affordable Care Act

Section 1557 of the Affordable Care Act (ACA) prohibits discrimination in health programs and activities based on sex, among other personal characteristics.[24] The U.S. Department of Health and Human Services and several courts have interpreted the ACA's sex non-discrimination provision to prohibit discrimination based on gender identity in state Medicaid programs.

**Administrative Regulations Issued by HHS**

In 2016, the U.S. Department of Health and Human Services (HHS) issued a regulation interpreting Section 1557's sex non-discrimination provisions to prohibit discrimination based on gender identity and sex stereotypes and explicitly barring covered insurers from categorically excluding all types of gender-affirming care from coverage.[25] The 2016 Rule was written broadly to apply to all health programs and activities that receive federal financial assistance, including state Medicaid programs, and all health programs administered by an executive agency or any entity established under the ACA.[26]

In 2020, under a different administration, HHS issued a new rule that removed express protections from discrimination based on gender identity and sex stereotyping in health care and health coverage under Section 1557.[27] The 2020 Rule was met with several successful lawsuits, which resulted in a nationwide injunction preventing the federal government from implementing the 2020 Rule's exclusion of gender identity and sex stereotyping from the definition of sex discrimination.[28]

---

[24] 42 U.S.C. § 18116(a) (2018).

[25] Nondiscrimination in Health Programs and Activities, 81 Fed. Reg. 31,467 (May 18, 2016) (to be codified at 45 C.F.R. pt. 92) ("2016 Rule").

[26] *Id.*

[27] Nondiscrimination in Health and Health Education Programs or Activities, 85 Fed. Reg. 37160 (June 19, 2020) (to be codified at 45 C.F.R. pt. 92) ("2020 Rule").

[28] *See* Walker v. Azar, 480 F. Supp. 3d 417 (E.D.N.Y 2020); Whitman-Walker v. HHS, 485 F. Supp. 3d (D.C. 2020).

PLAINTIFFS005999

In 2022, HHS issued a proposed rule reinstating the gender identity non-discrimination protections put into place under the 2016 Rule.[29] The proposed rule is consistent with the U.S. Supreme Court's decision in *Bostock v. Clayton County*, holding that discrimination based on gender identity is a form of sex discrimination prohibited under Title VII of the Civil Rights Act of 1964.[30]

**Court Decisions**

Several courts have held that the statutory language of Section 1557 prohibits discrimination based on gender identity as a form of sex discrimination. In these cases, the courts have directly interpreted the statutory language and did not rely on any administrative rules or regulations interpreting the law. These decisions are consistent with the Supreme Court's decision in *Bostock* and other case law interpreting analogous sex non-discrimination provisions in other federal laws, as well as HHS' recently proposed rule interpreting Section 1557 to prohibit gender identitvvvvy discrimination.

Some courts have specifically held that Medicaid exclusions for gender-affirming care violate Section 1557. For example, in 2019, a federal district court in Wisconsin held that the state's ban on Medicaid coverage for gender-affirming care violated Section 1557, even before the Court's decision in *Bostock*.[31] The court held in favor of the Medicaid beneficiaries for several reasons. First, the court found that the state discriminated against Medicaid beneficiaries based on sex by covering certain procedures for people whose sex matched their gender identity, but not for those whose sex and gender identity did not match.[32] The court said that this treatment amounts to discrimination based on natal sex—"a straight forward case of sex discrimination."[33] Second, the court held that discrimination against transgender individuals is by its nature discrimination based on sex and sex stereotypes.[34] Similarly, in 2022, a federal district court in West Virginia held that the state's gender-affirming care ban violated the Affordable Care Act, following the reasoning of the Court's analysis in *Bostock*.[35]

In addition, courts have found that other forms of discrimination against transgender people (aside from denials of gender-affirming care under state Medicaid programs) violate Section 1557. For example, in 2018, a district court in Minnesota indicated that an exclusion of gender-affirming care from a private employer's health plan could violate Section 1557.[36] And, in 2017, a federal district court in California found that the parents of a transgender boy who died by suicide after his doctors misgendered him had established a valid claim of sex discrimination under Section 1557 on behalf of

---

[29] Nondiscrimination in Health Programs and Activities, 87 FR 47824 (proposed Aug. 4, 2022) (to be codified at 42 C.F.R. 438, 440, 457, 460 & 45 C.F.R. 80, 84, 86, 91, 92, 147, 155, 156). Available at: https://www.federalregister.gov/documents/2022/08/04/2022-16217/nondiscrimination-in-health-programs-and-activities.

[30] Bostock v. Clayton County, 140 S.Ct. 1731 (2020).

[31] Flack v. Wis. Dep't. of Health Servs., 328 F. Supp. 3d 931 (W.D. Wis. 2018).

[32] *Id.* at 947-48.

[33] *Id.* at 948.

[34] *Id.* at 948-51.

[35] Fain v. Crouch, _ F. Supp. 3d _, 2022 WL 3051015 (S.D. W. Va. 2022).

[36] Tovar v. Essentia Health, 342 F. Supp. 3d 947 (D. Minn. 2018).

PLAINTIFFS006000

their son.[37] In all of these cases, the courts were interpreting the statutory language and did not rely on any administrative rules or regulations interpreting the law.[38]

## Medicaid Act

The Medicaid Act, along with administrative regulations interpreting the statute, supports access to coverage for gender-affirming care. The Medicaid Act, part of the more comprehensive Social Security Act, outlines broad parameters for state Medicaid programs. Among these is the requirement that states provide medical assistance to all categorically needy individuals (referred to as the Availability Provision) and that assistance must be provided equally among individuals within beneficiary groups (referred to as the Comparability Provision).[39] The U.S. Supreme Court has implied that the Availability Provision requires state Medicaid programs to provide medically necessary care to all qualified beneficiaries.[40]

Some courts have interpreted these provisions and the Supreme Court precedent to require that states provide gender-affirming care to transgender Medicaid beneficiaries. For example, in 2016, a federal district court in New York held that the state's blanket ban on Medicaid coverage for some surgeries related to gender transition violated the Availability Provision by barring coverage for treatments that could be medically necessary for transgender beneficiaries, and also violated the Comparability Provision of the statute by providing coverage for such treatments for conditions unrelated to gender transition while denying coverage when sought for gender transition purposes.[41] Federal district courts in Wisconsin and West Virginia have also held that those states' bans on gender-affirming care violated the Availability and Comparability provisions for similar reasons.[42]

The federal government has also taken steps to further implement the Medicaid Act to protect transgender beneficiaries. The Medicaid Act authorizes the Secretary of HHS, among other officials, to further define and implement the elements of state Medicaid programs through regulations.[43] In 2016, HHS issued several regulatory provisions that expressly prohibited discrimination based on gender identity in state Medicaid programs pursuant to this grant of power. Two separate provisions require that state Medicaid plans and Managed Care Organizations participating in Medicaid programs "promote access and delivery" of services regardless of sexual orientation and gender identity.[44] A third provision prohibits Managed Care Organizations from using "any policy or practice"

---

[37] Prescott v. Rady Children's Hosp. San Diego, 265 F. Supp. 3d 1090 (S.D. Cal. 2017).

[38] However, some courts have held the opposite—that discrimination based on gender identity is not a form of sex discrimination prohibited by Section 1557 of the ACA. Franciscan Alliance, Inc. v. Burwell, 227 F. Supp. 3d 660 (N.D. Tex. 2016); Office for Civil Rights, *Fact Sheet: HHS Proposes to Revise ACA Section 1557 Rule*, U.S. DEP'T HEALTH & HUM. SERVS. (May 24, 2019), https://www.hhs.gov/sites/default/files/factsheet-section-1557.pdf (noting the District Court of North Dakota enjoined the application of the Final Rule to two plaintiffs because the court concluded *Franciscan Alliance* was persuasive).

[39] 42 U.S.C. §§ 1396a(a)(10)(A)–(B) (2018).

[40] *See* Cruz v. Zucker, 195 F. Supp. 3d 554, 570 (S.D.N.Y. 2016) (citing Beal v. Doe, 432 U.S. 438, 444 (1977)).

[41] *Id.* at 570, 576.

[42] Flack v. Wisc. Dept' of Health Servs., No. 18-cv-309-wmc (W.D. Wisc. Aug. 16, 2019); Fain v. Crouch, _ F. Supp. 3d _, 2022 WL 3051015 (S.D. W. Va. 2022).

[43] 42 U.S.C. § 1302(a) (2018).

[44] 42 C.F.R. §§ 440.262, 438.206(c)(2) (2018).

PLAINTIFFS006001

that discriminates based on sexual orientation or gender identity, among other characteristics.[45] Although these protections were removed from the regulations in 2020,[46] HHS's 2022 proposed rule implementing Section 1557 of the ACA reinstates the prohibitions on discrimination based on sexual orientation and gender identity in these provisions.[47]

## STATE STATUTES

Some states' non-discrimination statutes also support transgender Medicaid beneficiaries' access to coverage for gender-affirming care. Non-discrimination statutes in 21 states and D.C. expressly prohibit discrimination based on gender identity in public accommodations.[48] An additional seven states interpret existing sex non-discrimination laws to also prohibit gender identity discrimination consistent with the Supreme Court's decision in *Bostock*.[49] Although the definition of "public accommodation" differs by state, when the term is broadly defined it may include state government programs, such as Medicaid. If Medicaid is considered a public accommodation in states that include protections against gender identity discrimination, courts are likely to find that denial of coverage for gender-affirming care violates the law. Transgender Medicaid beneficiaries in states where Medicaid policies either bar coverage for gender-affirming care or are silent as to coverage can rely on these states' non-discrimination laws to independently support a claim for coverage.

The Iowa Supreme Court addressed this issue in March 2019. In *Good v. Iowa Department of Human Services*, the court held that Iowa's administrative policy barring Medicaid coverage for gender-affirming care violated state law prohibiting gender identity discrimination in public accommodations.[50] The state department had argued that Medicaid was not a public accommodation within the meaning of the statute.[51] The court disagreed, finding that the statute's broad definition of "public accommodation"—which includes "each state and local government unit or tax-supported district of whatever kind, nature, or class that offers services, facilities, benefits, grants, or goods to the public, gratuitously or otherwise"—encompassed the Medicaid program.[52]

State-level non-discrimination laws and policies in other states may be interpreted by courts to similarly prohibit state Medicaid programs from excluding coverage for gender-affirming care. Kansas, New Mexico, Hawaii, and Virginia, which do not address coverage for gender-affirming care under their Medicaid programs, have statutes that expressly prohibit, or have been interpreted to prohibit, discrimination based on gender identity in public accommodations.[53] In addition, Florida and Ohio,

---

[45] 42 C.F.R. § 438.3(d)(4) (2018).

[46] Nondiscrimination in Health and Health Education Programs or Activities, 85 Fed. Reg. 37160 (June 19, 2020).

[47] Nondiscrimination in Health Programs and Activities, 87 FR 47824 (proposed Aug. 4, 2022).

[48] *State Non-Discrimination Laws: Public Accommodations*, Movement Advancement Project, https://www.lgbtmap.org/img/maps/citations-nondisc-public-accom.pdf (last visited August 19, 2022).

[49] *Id.* We have included Michigan in this group of states because the state does not have a statutory law that prohibits discrimination based on gender identity. Rather, the state's highest court has interpreted the state's sex non-discrimination law to encompass gender identity discrimination consistent with *Bostock*. Rouch World v. Dep't of Civil Rights, No. 164482 (Mich. July 28, 2022).

[50] Good v. Iowa Dep't. of Human Servs., No. 18-1158, 2019 Iowa Sup. LEXIS 19 (Iowa Mar. 8, 2019).

[51] *Id.* at *14.

[52] *Id.* at *14–16.

[53] Del. Code Ann. tit 6, § 4501 (2018); N.H. Rev. Stat. Ann. § 354-A:1 (2018); N.M. Stat. Ann. § 28-1-7 (2019).

PLAINTIFFS006002

both states with express bans, have interpreted their state's public accommodations laws to prohibit gender identity discrimination. Three of these states' laws—Hawaii, New Mexico, and Virginia—define public accommodations broadly, and Hawaii's statute, like Iowa's law, specifically includes state entities and agencies.[54] If courts in these states interpret the non-discrimination statutes to apply to Medicaid programs, they will likely decide that denials of coverage for gender-affirming care violate the law.

## FEDERAL AND STATE CONSTITUTIONS

The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution also supports access to gender-affirming care under state Medicaid programs. The Equal Protection Clause requires state governments to provide equal treatment to similarly situated individuals.[55] In cases brought under the Equal Protection Clause, courts review the challenged state action under different standards, depending on the nature of the classification at issue. When a state action that classifies based on sex (a "quasi-suspect" characteristic) is at issue, courts apply a searching level of review, requiring the state action substantially further an important government interest in order to survive.[56] Courts have increasingly applied this heightened standard to laws that discriminate against transgender people and have found that the laws do not pass constitutional muster. Most of these cases have involved discrimination in employment or education, but some have also involved denials of access to gender-affirming care in state health programs.[57] This trend will likely continue following the Supreme Court's holding in *Bostock* that discrimination based on gender identity is a form of sex discrimination.

For example, one case, *Flack v. Wisconsin Dep't of Health Servs.*, specifically addressed a ban on Medicaid coverage for gender-affirming care and held that the policy violated the Equal Protection Clause.[58] The court found that classifications that discriminate against transgender people should be subjected to heightened scrutiny both because gender identity discrimination is a form of sex discrimination and because transgender people should be considered a "suspect" or "quasi-suspect" class independently. The court held that the ban did not pass constitutional muster under that standard.

---

[54] Haw. Rev. Stat. § 498-2(2022); N.M. Stat. Ann. § 28-1-2(H) (2022); Va. Code Ann. § 2.2-3904(A). Although the language of Kansas's statute is broad, the state supreme court has limited the term to include "those places of business held open to the general public and where members of the general public are invited to come for business purposes. *Seaborn v. Coronado Area Council*, 257 P.2d 385 (Kan. 1995). In addition, while Ohio's statutory definition of "public accommodations" is broad, it is narrowed to physical "places" through administrative regulations. Ohio Rev. Code § 4112.01(A)(1); Ohio Admin. Code rule No. 4112-5-02 (2022).

[55] U.S. Const. amend. XIV, § 1.

[56] *See* Craig v. Boren, 429 U.S. 190 (1976).

[57] *See e.g.*, Boyden v. Conlin, 341 F. Supp. 3d 979 (W.D. Wis. 2018); Flack v. Wis. Dep't. of Health Servs., 328 F. Supp. 3d 931 (W.D. Wis. 2018); Brown v. Dep't. of Health & Human Servs., No. 8:16CV569, 2017 U.S. Dist. LEXIS 84518 (D. Neb. June 2, 2017)).

[58] 328 F. Supp. 3d at 951.

PLAINTIFFS006603

Other cases currently in litigation have also raised equal protection challenges to state laws that limit access to gender-affirming care. For example, in 2022 transgender Medicaid beneficiaries in Idaho filed a lawsuit against the state Department of Health and Welfare alleging that denial of coverage for surgery related to gender transition violates the Equal Protection Clause.[59] Relatedly, in 2021, the State of Arkansas banned the provision of gender-affirming care to transgender adolescents, prompting a lawsuit challenging the ban. While the case is still working its way through the courts, a federal district court granted a preliminary injunction against the law, finding that the law likely violates the Equal Protection Clause.[60] Similarly, Alabama recently passed a felony ban on the prescription of puberty-blocking medication or hormone treatment for transgender youth, prompting another lawsuit. A federal judge has blocked Alabama's law, stating that there is a substantial likelihood that the law violates the Equal Protection Clause.[61]

Many state constitutions also have equal protection provisions that are interpreted to offer the same protections as the federal Equal Protection Clause.[62] Courts may also find that exclusions of gender-affirming care under state Medicaid programs are unconstitutional under these provisions. For example, a court in Iowa held that a law prohibiting the Medicaid program from covering gender-affirming care, specifically surgical intervention, violated the Iowa Constitution's equal protection clause.[63]

---

[59] Complaint, MH & TB v. Jeppesen et al., No. 1:22-CV-409 (D. Idaho Sept. 29, 2022).

[60] Brandt v. Rutledge, 551 F. Supp. 3d 882 (E.D. Ark. 2021).

[61] Eknes-Tucker et al. v. Marshall, 2022 WL 1521889 (M.D. Ala. May 13, 2022).

[62] Daniel Polonsky, *Equal Protection & State Constitutional Amendment*, 56 Harv. L. Rev. 414 (2021).

[63] Covington v. Reynolds ex rel. State, 949 N.W.2d 663 (Iowa Ct. App. 2020).

PLAINTIFFS006004

# CONCLUSION

An estimated 276,000 transgender adults are enrolled in Medicaid. Transgender Medicaid beneficiaries in the U.S. face a patchwork of policies that make coverage for gender-affirming care uncertain. More than half of transgender Medicaid beneficiaries (164,000) have guaranteed access to coverage for gender-affirming care under express policies in 25 states and D.C. An estimated 74,000 transgender Medicaid beneficiaries live in the 18 states that have not expressly addressed coverage for gender-affirming care in their Medicaid programs. An estimated 38,000 transgender Medicaid beneficiaries live in the seven states with express bans that deny access to covered gender-affirming care. Although many transgender Medicaid beneficiaries are still denied access to gender-affirming care, and many others face additional barriers to accessing such care, recent litigation and administrative policy changes have resulted in the extension of coverage in several states. Additional policy changes in states that still have bans or lack clear language addressing coverage would ensure that transgender Medicaid beneficiaries have access to coverage for gender-affirming medical care no matter where they live.

PLAINTIFFS006005

## AUTHORS

**Christy Mallory, J.D.,** is the Renberg Scholar of Law and Legal Director at the Williams Institute.

**Will Tentindo, J.D.,** is the Daniel H. Renberg Law Fellow at the Williams Institute.

## ACKNOWLEDGMENTS

The authors would like to thank Erica Browning, Lauren Bouton, Rubeen Guardado, and Kathryn O'Neill for providing data analysis for this report, and Kerith Conron, Elana Redfield, and Brad Sears for their reviews and feedback on earlier drafts of this report.

## ABOUT THE WILLIAMS INSTITUTE

The Williams Institute is dedicated to conducting rigorous, independent research on sexual orientation and gender identity law and public policy. A think tank at UCLA Law, the Williams Institute produces high-quality research with real-world relevance and disseminates it to judges, legislators, policymakers, media, and the public. These studies can be accessed at the Williams Institute website.

### FOR MORE INFORMATION
The Williams Institute, UCLA School of Law
Box 951476, Los Angeles, CA 90095-1476
williamsinstitute.law.ucla.edu

RESEARCH THAT MATTERS 

PLAINTIFFS006006

# APPENDIX

## METHODOLOGY

This study analyzed repeated cross-sectional data[64][1] collected between July 21, 2021 to August 8, 2022 by the U.S. Census Bureau on the Household Pulse Phase 3.5 Survey[65] (weeks 34-48). The Household Pulse Survey was developed to assess the impact of COVID-19 on employment, food and housing security, and the physical and mental well-being of the U.S. population. Households were enumerated via the Census Bureau's Master Address File (MAF); email addresses and cell phone numbers were appended to create a contact sampling frame for the survey.[66] Group quarters such as homeless shelters, nursing homes, and college dormitories were not sampled. Online surveys were conducted in English and Spanish with 971,836 U.S. adults ages 18 and up. The response rate for weeks 34-48 ranged from 4.4% to 7.9%.[67]

Questions about sex assigned at birth (What sex were you assigned at birth, on your original birth certificate?) and current gender identity (Do you currently describe yourself as male, female or transgender?) were added to the Household Pulse Survey starting in week 34 and were used to classify respondents as transgender and cisgender. Respondents who selected transgender as their gender identity were classified as transgender. In the remaining sample that selected male or female gender identity responses and whose sex was not imputed by the Census Bureau (e.g., AGENID_ BIRTH=2), those who selected a gender identity (male or female) that differed from their sex assigned at birth (male or female) were classified as transgender. Respondents who selected gender identity options (male or female) that were the same as their sex assigned at birth (male or female) were classified as cisgender. Those who selected "none of these" as their response to the gender identity question were excluded from classification.

Following the rationale and analyses reported *in Food Insufficiency Among Transgender Adults During the COVID-19 Pandemic*, imputed sex was not used to classify transgender and cisgender respondents given concerns about the validity of the imputed sex data. Descriptive analyses conducted by Dr. Bill Jesdale indicate that the demographic characteristics of those classified as transgender based on imputed sex look more similar to those of cisgender respondents than to those of transgender respondents who answered the sex assigned at birth question.[68] In addition, transgender respondents who reported living in households of 10+ members were excluded from the analytic sample for this study based on descriptive analyses conducted by the Williams Institute and reported previously.

---

[64] U.S. Census Bureau, *Household Pulse Survey Public Use File (PUF)*, https://www.census.gov/programs-surveys/ household-pulse-survey/datasets.html (last visited Oct. 24, 2022).

[65] U.S. Census Bureau, Household Pulse Survey Technical Documentation, https://www.census.gov/programs-surveys/ household-pulse-survey/technical-documentation.html#phase3.5 (last visited Oct. 24, 2022).

[66] U.S. Census Bureau, Source of the Data Accuracy or the Estimates for the Household Pulse Survey – Phase 3.5, https:// www2.census.gov/programs-surveys/demo/technical-documentation/hhp/Phase3-5_Source_and_Accuracy_Week48. pdf (last visited Oct. 24, 2022).

[67] *Id.*

[68] Bill M. Jesdale, Natn'l LGBT Cancer Network, Counting Gender Minority Populations in the Household Pulse Survey (The AGENID=2 Memo), https://cancer-network.org/wp-content/uploads/2021/10/Counting-GM-People-in-Pulse-Data.pdf (last visited Oct. 24, 2022).

PLAINTIFFS006007

A question about sexual orientation identity (Which of the following best represents how you think of yourself?) was added to the Household Pulse Survey starting in week 34 and was used to classify respondents as lesbian, gay, or bisexual (LGB) and straight based on their selection of these response options (gay or lesbian; straight, that is not gay or lesbian; bisexual). Respondents who selected "something else" as their identity were excluded from classification based on prior research indicating that this group is heterogeneous, and, without a follow-up write-in, cannot be classified as sexual minority or as straight.[69] Respondents who were transgender and/or LGB were classified as LGBT while respondents who were cisgender and straight were classified as non-LGBT—in total, 915,231 respondents were classified as LGBT or as non-LGBT.

Medicaid coverage was determined by response to the question, "Are you currently covered by any of the following types of health insurance or health coverage plans?" Respondents who selected yes for "Medicaid, Medical Assistance, or any kind of government-assistance plan for those with low incomes or a disability" were classified as having Medicaid while all others who responded to the health insurance question were classified as not having Medicaid. A fairly large number of the 915,231 LGBT or non-LGBT Pulse respondents had missing responses for all insurance options (n=113,419) and were excluded from the analytic sample. Similar numbers of individuals had missing responses for other survey questions near the health insurance question and were likely missing due to drop-off.

The final analytic sample was limited to 801,812 survey respondents who could be classified as LGBT or non-LGBT based on the criteria described above and who answered the question about insurance coverage. Prevalence proportions were generated using Stata v15.1 statistical software and weighted to represent adults ages 18 and up living in U.S. households using person-level weights provided by the Census Bureau. Confidence intervals (95% CI) were included to communicate the degree of uncertainty around an estimate due to sampling error and are presented in the table below.

To estimate the number of transgender adults enrolled in Medicaid, we multiplied the percentage of Medicaid-insured LGBT adults by estimates of the number of adults living in each state who are transgender, as reported in the Williams Institute's 2022 study, How Many Youth and Adults Identify as Transgender in the United States?, and rounded to the nearest 1,000. We opted to use state-specific LGBT percentages for Medicaid enrollment in calculating our estimates rather than percentages for transgender adults alone because the LGBT Medicaid percentages were more stable (e.g., smaller standard errors and narrower confidence intervals due to larger group size) at the state level. It is possible that Medicaid coverage could be somewhat higher for transgender adults given higher rates of poverty and disability among transgender adults in the U.S., and that our estimates may be somewhat conservative.

---

[69] U.S. Dep't of Health and Hum. Svcs, Ctrs for Disease Control & Prev., A Brief Quality Assessment of the NHIS Sexual Orientation Data (2014), https://www.cdc.gov/nchs/data/nhis/qualityso2013508.pdf; Michele J. Eliason et al., The "Something Else" of Sexual Orientation: Measuring Sexual Identities of Older Lesbian and Bisexual Women Using National Health Interview Survey Questions, 26 Women's Health Issues suppl. 1 S71 (2016).

PLAINTIFFS006008

**Supplemental Table 1. Medicaid enrollment of LGBT people by state, Household Pulse Survey, July 21, 2021 to August 8, 2022**

| STATE | % LGBT ENROLLED IN MEDICAID | 95% CONFIDENCE INTERVALS |
|---|---|---|
| Alabama | 17.6% | 12.6%, 24.1% |
| Alaska | 24.6% | 19.6%, 30.4% |
| Arizona | 18.1% | 14.9%, 22.0% |
| Arkansas | 26.1% | 21.3%, 31.7% |
| California | 24.0% | 21.4%, 26.8% |
| Colorado | 21.1% | 17.9%, 24.7% |
| Connecticut | 26.9% | 22.3%, 32.1% |
| Delaware | 24.3% | 18.9%, 30.6% |
| DC | 15.7% | 11.6%, 20.8% |
| Florida | 13.1% | 10.3%, 16.5% |
| Georgia | 12.8% | 10.1%, 16.1% |
| Hawaii | 25.3% | 19.9%, 31.5% |
| Idaho | 20.8% | 16.7%, 25.6% |
| Illinois | 21.1% | 17.4%, 25.4% |
| Indiana | 22.9% | 19.0%, 27.3% |
| Iowa | 31.8% | 27.0%, 37.1% |
| Kansas | 15.3% | 11.8%, 19.7% |
| Kentucky | 31.5% | 26.3%, 37.3% |
| Louisiana | 30.6% | 25.1%, 36.6% |
| Maine | 21.8% | 17.1%, 27.3% |
| Maryland | 26.6% | 21.8%, 32.0% |
| Massachusetts | 18.9% | 16.2%, 21.9% |
| Michigan | 28.1% | 24.2%, 32.4% |
| Minnesota | 20.0% | 16.9%, 23.7% |
| Mississippi | 13.5% | 9.0%, 19.8% |
| Missouri | 13.2% | 10.4%, 16.7% |
| Montana | 28.5% | 22.8%, 35.0% |
| Nebraska | 18.3% | 14.9%, 22.3% |
| Nevada | 20.9% | 17.2%, 25.1% |
| New Hampshire | 20.7% | 16.3%, 25.9% |
| New Jersey | 22.2% | 18.1%, 27.0% |
| New Mexico | 36.8% | 32.2%, 41.6% |
| New York | 29.4% | 25.4%, 33.9% |
| North Carolina | 18.6% | 14.7%, 23.2% |
| North Dakota | 15.0% | 9.5%, 22.9% |
| Ohio | 27.1% | 22.8%, 31.9% |
| Oklahoma | 20.7% | 16.7%, 25.3% |
| Oregon | 24.8% | 21.8%, 28.1% |

PLAINTIFFS006009

| STATE | % LGBT ENROLLED IN MEDICAID | 95% CONFIDENCE INTERVALS |
|---|---|---|
| Pennsylvania | 25.3% | 21.4%, 29.7% |
| Rhode Island | 23.0% | 18.5%, 28.3% |
| South Carolina | 21.0% | 16.3%, 26.8% |
| South Dakota | 11.3% | 6.7%, 18.6% |
| Tennessee | 15.9% | 12.5%, 20.0% |
| Texas | 9.3% | 7.1%, 12.0% |
| Utah | 9.9% | 7.9%, 12.3% |
| Vermont | 26.6% | 20.9%, 33.3% |
| Virginia | 18.2% | 14.7%, 22.4% |
| Washington | 20.7% | 18.0%, 23.7% |
| West Virginia | 28.6% | 23.0%, 34.8% |
| Wisconsin | 18.7% | 15.2%, 22.7% |
| Wyoming | 16.0% | 10.6%, 23.3% |

## STATE-LEVEL MEDICAID POLICIES

### State policies providing affirmative coverage for gender-affirming care

- **Alaska.** In 2010, the Alaska Department of Health and Human Services issued a regulation expressly excluding "transsexual surgical procedures or secondary consequences" from Medicaid coverage. In 2019, a transgender woman who had been denied care under Alaska's Medicaid program successfully won a settlement challenging the regulation. Alaska now expressly includes coverage for gender-affirming care under the state's Medicaid program.

- **California.** In 2013, the California Department of Health Care Services issued guidance expressly stating that Medicaid covers gender-affirming care.
  The agency re-issued guidance in 2016 reminding Medicaid health plans that they are required to cover gender-affirming care for beneficiaries and explaining that federal regulations implementing the Affordable Care Act prohibit discrimination based on gender identity in health care, including in state Medicaid programs.

- **Colorado.** In 2017, the Colorado Department of Health Care Policy and Financing issued regulations expressly stating that Medicaid covers gender-affirming care. The Department revised the rule twice, most notably in 2019 to reduce the burden placed on transgender beneficiaries seeking treatment for hair removal.

- **Connecticut.** In 2015, the Connecticut Department of Social Services issued guidance expressly stating that Medicaid covers gender-affirming care. The guidance has been updated and expanded several times to reduce barriers or burdens for transgender people seeking care. The guidance was updated most recently in August 2022 to reduce barriers to certain procedures and align the policy with current standards of care.

- **Delaware.** In 2018, the Delaware Department of Health and Social Services amended its state Medicaid plan to include coverage for gender-affirming care.

PLAINTIFFS006010

- **D.C.** In 2015, the D.C. Department of Health Care Finance issued a bulletin expressly stating that Medicaid covers gender-affirming care. The department later issued a policy in line with the bulletin.

- **Georgia.** In 1993, the Georgia Department of Community Health issued a policy expressly excluding "transsexual surgeries" from Medicaid coverage. This policy was challenged in court and in 2022 the Georgia Department of Community Health agreed to remove the exclusion and to adopt benefits and clinical guidelines for care as part of a settlement. Georgia's amendment removing gender-affirming care from the list of non-covered services in its state Medicaid Plan was approved on September 14, 2022, however, the state has not yet issued a policy confirming that care is covered.

- **Illinois.** In 2020, the Illinois Department of Healthcare and Family Services issued a regulation expressly stating that Medicaid covers gender-affirming care.

- **Iowa.** In 1994, the Iowa Department of Human Services issued a regulation expressly excluding gender-affirming care from Medicaid coverage. In 2019, the Iowa Supreme Court held that the exclusion violated the state's non-discrimination law, which prohibits discrimination based on gender identity in public accommodations, and as such, could not be enforced. The state responded by passing an appropriations bill that included a provision stating that Iowa's non-discrimination law does not require Medicaid to cover gender-affirming surgeries or procedures, which the governor signed into law in May 2019. In 2021, a state court in Iowa held that the exclusion of coverage for gender-affirming care under the state's Medicaid program violated the equal protection clause of the Iowa Constitution. The Department of Human Resources has not yet updated its manual or policies to reflect coverage for gender-affirming care.

- **Maine.** In 2019, the Maine Department of Health and Human Services issued a regulation expressly stating that Medicaid covers gender-affirming care.

- **Maryland.** In 2015, the Maryland Department of Health issued a regulation expressly stating that Medicaid covers gender-affirming care.

- **Massachusetts.** In 2015, MassHealth issued guidance expressly stating that Medicaid covers gender-affirming care. The policy was most recently updated in 2021.

- **Michigan.** In 2019, the Michigan Department of Health and Human Services issues a bulletin clarifying that gender-affirming care is covered under the state's Medicaid program. This change is also reflected in Michigan's Medicaid Provider Manual.

- **Minnesota.** In 2016, a state court in Minnesota held that the ban on coverage for gender-affirming surgical care under the state's Medicaid program violated Minnesota's constitution. A few months later, the Minnesota Department of Human Services implemented the court's decision by issuing guidance expressly stating that Medicaid covers gender-affirming care.

- **Montana.** In 2017, the Montana Department of Health and Human Services issued guidance expressly stating that Medicaid covers gender-affirming care. The agency explained that federal regulations implementing the Affordable Care Act prohibit discrimination based on gender identity in health care, including in state Medicaid programs. Although the guidance is no longer available on the website, a 2021 survey of state health departments conducted by Kaiser Family Foundation confirmed that coverage has not changed. In addition, the

PLAINTIFFS006011

Department of Health and Human Services recently issued a policy expressly stating that Medicaid covers mental health services for adults diagnosed with gender dysphoria.

- **Nevada.** In 2018, the Nevada Department of Health and Human Services announced that Medicaid covers gender-affirming care.

- **New Hampshire.** In 2017, New Hampshire removed an exclusion on coverage for gender-affirming care in the state's Medicaid program. New Hampshire's Member Handbook now expressly states that gender-affirming care is covered.

- **New Jersey.** In 2017, the legislature of New Jersey enacted a statute requiring Medicaid coverage for gender-affirming care.

- **New York.** In 2015, the New York State Department of Health issued regulations expressly stating that Medicaid covers gender-affirming care. Several transgender Medicaid beneficiaries challenged the rule in federal district court, arguing that its denial of coverage for minors and its exclusion for surgeries deemed "cosmetic" violated their rights under the federal Medicaid statute. The court agreed that the categorical ban on cosmetic surgeries violated federal Medicaid laws by foreclosing the availability of treatments that may be medically necessary for some individuals. The court declined to hold that the age restriction violated federal Medicaid laws. In response to the decision, the Department of Health amended its regulations to remove the exclusion for cosmetic surgery. Because many states exclude coverage for treatment deemed "cosmetic" even if they cover other aspects of gender-affirming care, New York's policy is among the most expansive.

- **North Dakota.** In 2022, the North Dakota Department of Human Services updated the state's Provider Manual to expressly include coverage for gender-affirming care.

- **Oregon.** In 2015, the Oregon Health Authority issued a policy expressly stating that Medicaid covers gender-affirming care.

- **Pennsylvania.** In 2016, the Pennsylvania Department of Human Services issued a bulletin expressly stating that Medicaid covers gender-affirming care. The agency explained that federal regulations implementing the Affordable Care Act prohibit discrimination based on gender identity in health care, including in state Medicaid programs. A policy addressing gender-affirming hormone treatments was updated in 2020.

- **Rhode Island.** In 2015, the Rhode Island Executive Office of Health and Human Services issued guidance expressly stating that Medicaid covers gender-affirming care.

- **Vermont.** In 2008, the Vermont Agency of Human Services issued guidance expressly stating that Medicaid covers gender-affirming care. The guidance has been updated and expanded several times to reduce barriers or burdens for transgender people seeking care. In November 2019, the agency adopted a new regulation addressing coverage for gender-affirming care. The rule further expands Medicaid coverage, including providing coverage for gender affirmation surgery to emancipated minors and other minors with parental consent.

- **Washington.** In 2015, the Washington State Health Care Authority issued a regulation expressly stating that Medicaid covers gender-affirming care.

PLAINTIFFS006012

- **Wisconsin.** In 1996, the Wisconsin Department of Health Services issued a regulation expressly excluding gender-affirming care from Medicaid coverage. In 2019, a federal district court in Wisconsin ruled that the ban violated the Affordable Care Act, the Medicaid provisions of the Medicaid Act, and the federal constitution. The Department has updated its policies to reflect that gender-affirming care is covered under the state's Medicaid program as a result of the decision.

## State policies that expressly exclude coverage for gender-affirming care

- **Arizona.** Since at least 2004, the Arizona Health Care Cost Containment System has had a policy expressly excluding "treatment of gender dysphoria including gender reassignment surgeries" from Medicaid coverage. A challenge to the exclusion is currently making its way through the courts. In March 2022, the Ninth Circuit affirmed a lower court's denial of an injunction against the policy, allowing for its continued enforcement as the case is litigated.

- **Florida.** In 2022, the Florida Agency for Health Care Administration issued a regulation expressly barring coverage for gender-affirming care under the state's Medicaid program

- **Missouri.** Missouri's Physician Manual for Medicaid providers expressly excludes "surgical procedures for gender change" from Medicaid coverage.

- **Nebraska.** In 1990, the Nebraska Department of Health and Human Services issued a regulation expressly excluding "sex change procedures" from Medicaid coverage.

- **South Carolina.** South Carolina's Physicians Services Provider Manual for Medicaid providers expressly excludes "services and procedures related to gender transition" from Medicaid coverage.

- **Tennessee.** In 2006, the Tennessee Department of Finance and Administration issued a regulation expressly excluding "transsexual surgery" from Medicaid coverage.

- **Texas.** Texas's Medicaid Providers Manual, last issued in 2019, expressly excludes "sex change operations" from Medicaid coverage.

PLAINTIFFS006013