```
                    REPORTER'S RECORD
                 VOLUME 2 OF 4 VOLUMES
            TRIAL COURT CAUSE NO. D-1-GN-22-002569


  PFLAG, INC., ET AL.,         )  IN THE DISTRICT COURT
       Plaintiffs,             )
                               )
  VS.                          )  TRAVIS COUNTY, TEXAS
                               )
  GREG ABBOTT, ET EL.,         )
       Defendants.             )  459TH JUDICIAL DISTRICT
```

---

**HEARING ON MOTION FOR TEMPORARY INJUNCTION**

---

On the 6th day of July, 2022, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Amy Clark Meachum, Judge Presiding, held in Austin, Travis County, Texas:

Proceedings reported by machine shorthand.

Pl. Trial Ex. 098

PLAINTIFFS004235

```
 1                        APPEARANCES

 2

 3   FOR THE PLAINTIFFS:

 4       PAUL D. CASTILLO
         SBOT NO. 24049461
 5       SHELLY L. SKEEN
         SBOT NO. 24010511
 6       NICHOLAS "GUILLY" GUILLORY
         SBOT NO. 24122392
 7       LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
         3500 Oak Lawn Avenue, Unit 500
 8       Dallas, Texas   75219
         Phone:  (214) 219-8585
 9
             - AND -
10
         OMAR GONZALEZ-PAGAN
11       PRO HAC VICE
         M. CURREY COOK
12       PRO HAC VICE
         LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
13       120 Wall Street, 19th Floor
         New York, New York   10005
14       Phone:  (212) 809-8585

15           - AND -

16       BRIAN KLOSTERBOER
         SBOT NO. 24107833
17       AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF TEXAS
         5225 Katy Freeway, Suite 350
18       Houston, Texas   77007
         Phone:  (713) 942-8146
19
             - AND -
20
         ANJANA SAMANT
21       PRO HAC VICE
         CHASE STRANGIO
22       PRO HAC VICE
         AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF TEXAS
23       125 Broad Street, 18th Floor
         New York, New York   10004
24       Phone:  (917) 345-1742

25
```

```
 1                  APPEARANCES CONTINUED

 2

 3   FOR THE PLAINTIFFS:

 4       MADDY R. DWERTMAN
         SBOT NO. 24092371
 5       BAKER BOTTS L.L.P.
         98 San Jacinto Boulevard, Suite 1500
 6       Austin, Texas  78701
         Phone:  (512) 322-2500
 7

 8
     FOR THE PLAINTIFFS ADAM & AMBER BRIGGLE AND WANDA ROE:
 9
         IAN PITTMAN
10       SBOT NO. 24064131
         SEAN PATRICK KING
11       SBOT NO. 24118432
         JORGESON PITTMAN LLP
12       11782 Jollyville Road
         Austin, Texas 78759
13       Phone:  (512) 320-0999

14

15   FOR THE DEFENDANTS:

16       COURTNEY CORBELLO
         SBOT NO. 24097533
17       JOHNATHAN STONE
         SBOT NO. 24071779
18       TEXAS ATTORNEY GENERAL
         P.O. Box 12548
19       Austin, Texas  78711
         Phone:  (512) 463-2120
20

21

22

23

24

25
```

PLAINTIFFS004237

```
 1                          INDEX
 2                        VOLUME 1
 3          HEARING ON MOTION FOR TEMPORARY INJUNCTION
 4
 5   JULY 7, 2021
 6                                                  Page    Vol.
 7   Announcements..............................     10      1
 8   Motion to Exclude Investigation Reports..       14      1
 9   Argument by Mr. Castillo..................      14      1
10   Argument by Ms. Corbello..................      17      1
11   Opening Statement by Mr. Castillo........       26      1
12   Opening Statement by Ms. Corbello........       28      1
13
14   PLAINTIFFS' WITNESSES
15                                 Direct    Cross         Vol.
16   MIRABEL VOE
         By Ms. Samant              32                       1
17       By Ms. Corbello                      54             1
18   BRIAN BOND
         By Mr. Cook                59                       1
19       By Ms. Corbello                      76             1
20   CASSANDRA BRADY, M.D.
         By Mr. Gonzalez-Pagan      82                       1
21       By Mr. Stone                         111            1
22   RANDA MULANAX
         By Mr. Klosterboer         131                      1
23       By Ms. Corbello                      141            1
24   WANDA ROE
         By Mr. Guillory            145                      1
25       By Ms. Corbello                      151            1
```

```
 1                      INDEX CONTINUED
 2
 3   DEFENDANTS' WITNESSES
 4                                   Direct    Cross        Vol.
 5   JAMES CANTOR, PH.D.
         By Mr. Stone                157                     1
 6       By Mr. Gonzalez-Pagan                  162          1
         By Mr. Stone                171                     1
 7       By Mr. Gonzalez-Pagan                  205          1
 8   MARTA TALBERT
         By Mr. Stone                215                     1
 9
10                                             Page        Vol.
11   Rule 76a Temporary Sealing Order Hearing.  239          1
12   COURT'S RULING ON RULE 76A
13       TEMPORARY SEALING ORDER HEARING......  251          1
14
15   DEFENDANTS' WITNESSES
16                                   Direct    Cross        Vol.
17   MARTA TALBERT
         By Mr. Stone                257                     1
18       By Mr. Cook                            263          1
19
20
21
22
23
24
25
```

```
 1  opinions on the science related to the treatment of
 2  gender dysphoria in minors to give in this case?
 3       A.   Yes, I do.
 4       Q.   Okay.
 5            MR. STONE:  At this time, Your Honor,
 6  defendants designate Dr. Cantor as an expert on the
 7  science relating to the treatment of gender dysphoria
 8  in minors.
 9            MR. GONZALEZ-PAGAN:  Objection,
10  Your Honor.  Pursuant to Rule 705(b) of the Rules of
11  Evidence, we're allowed to conduct a voir dire.  I
12  don't believe that enough has been presented.
13            THE COURT:  You can conduct a voir dire
14  at this moment, yes.
15            MR. GONZALEZ-PAGAN:  And, Counsel, have
16  you shared the exhibits with -- plaintiffs' exhibits
17  with Dr. Cantor?
18            MR. STONE:  We shared the exhibits that
19  you provided to us previously.
20                  VOIR DIRE EXAMINATION
21  BY MR. GONZALEZ-PAGAN:
22       Q.   Good afternoon, Dr. Cantor.
23       A.   Good afternoon.
24       Q.   You're not a physician, correct?
25       A.   Correct.
```

```
 1      Q.   You do not hold any medical degree; is that
 2  right?
 3      A.   Correct.
 4      Q.   You have only practiced clinical psychology in
 5  Canada; is that right?
 6      A.   Correct.
 7      Q.   Earlier you referenced that you provided
 8  testimony in a transgender rights -- in a case
 9  involving transgender youth.  Do you recall that?
10      A.   Yes.
11      Q.   Are you familiar with the *Eknes-Tucker v. Ivey*
12  case in Alabama?
13      A.   Yes.
14      Q.   You testified in a hearing in that case; is
15  that correct?
16      A.   Yes.
17      Q.   Dr. Cantor, if you can open what's been
18  designated as Plaintiffs' Exhibit 37.
19           MR. STONE:  Yeah.  Your Honor --
20           THE WITNESS:  37.
21           MR. STONE:  -- we don't have 37.  We've
22  never been provided a copy of 37.  This is one of --
23  this is one of the supplemental things that came in
24  this morning, and we -- we don't -- we don't even have
25  a copy of it.
```

```
 1                    THE COURT:  Let me see if I do.
 2                    MR. GONZALEZ-PAGAN:  Just to clarify,
 3      Your Honor, counsel has been provided a copy.  They
 4      were rebuttal exhibits that in the interest of Cantor
 5      were --
 6                    THE COURT:  Well, I don't think you can
 7      do rebuttal -- I also think it's not probably not
 8      proper on a voir dire to --
 9                    MR. GONZALEZ-PAGAN:  Well, it goes -- it
10      just goes to his qualifications, Your Honor.
11                    MR. STONE:  But --
12                    MR. GONZALEZ-PAGAN:  I can just -- I can
13      ask the direct question without relying on the exhibit.
14                    THE COURT:  Yeah.  Just -- let's not
15      admit an exhibit at this time.
16                    MR. GONZALEZ-PAGAN:  Yeah.  Your Honor --
17                    THE COURT:  Why don't you just ask
18      questions.
19         Q.   (BY MR. GONZALEZ-PAGAN)  Dr. Cantor, have you
20      reviewed the Court's decision in Eknes-Tucker?
21         A.   Portions of it.  Not in its entirety, no.
22         Q.   Did you review the portions relating to
23      yourself?
24         A.   Yes.
25         Q.   Okay.  In the Court decision in Eknes-Tucker,
```

1   the Court stated, Dr. Cantor admitted that his patients
2   are on average 30 years old.  He had never provided
3   care to trans- -- to a transgender minor under the age
4   of 16.  He had never diagnosed a child or adolescent
5   with gender dysphoria.  He had never treated a child or
6   adolescent with gender -- for gender dysphoria.  He had
7   no personal experience monitoring patients receiving
8   transitioning medications, and he had no personal
9   knowledge of the assessments or treatment methodologies
10  used at any Alabama gender clinic.
11              Do you recall that portion of the
12  *Eknes-Tucker* decision?
13      A.   Yes, roughly.
14      Q.   Do you dispute the Court's description of your
15  experience?
16      A.   I can't say that that's a complete --
17      Q.   Is anything in --
18      A.   I -- I -- the content of it is complete, but
19  removed from the context around it isn't exactly the
20  full story.
21      Q.   It is not an incorrect representation; is that
22  right?
23      A.   Of that content of the decision, yes.
24      Q.   Okay.  And to follow up, do you have any
25  personal knowledge of the assessments or treatment

```
 1  methodologies used in Texas gender clinics?
 2       A.   I don't believe any has made any official --
 3  oh.  Yes, there would -- no.  There was a
 4  recently-closed clinic in Texas which published a
 5  report of the methods that it used, and it said it
 6  used, I think it was, the Endocrine Society guidelines.
 7       Q.   But you don't have any personal knowledge.
 8  This is something you read in a study; is that correct?
 9       A.   Personal knowledge?  No.
10       Q.   And you have not con- -- conducted any
11  original scientific research on the efficacy or safety
12  of the medical treatment of gender dysphoria; is that
13  right?
14       A.   Not on that specific question for original
15  research, no.  I've conducted comprehensive reviews of
16  the research in order to make theoretical conclusions
17  about it.
18            MR. GONZALEZ-PAGAN:  Your Honor, at this
19  point in time, we would object to the qualification of
20  Dr. Cantor as an expert.  As the Court concluded in
21  Eknes-Tucker, which involved similar issues to the case
22  at hand, the Court gave very little weight to
23  Dr. Cantor's opinion regarding the treatment of gender
24  dysphoria.
25            THE COURT:  Well, but you just said
```

PLAINTIFFS004244

```
 1  going to take a ten-minute break, and I'll see
 2  everybody back at 3:10.
 3              MR. GONZALEZ-PAGAN:  Thank you,
 4  Your Honor.
 5              THE COURT:  Thanks.
 6              (Recess was taken.)
 7              THE COURT:  Dr. Cantor, if you're still
 8  with us, we're now going to have cross-examination.
 9              MR. GONZALEZ-PAGAN:  Thank you,
10  Your Honor.
```

11                    **CROSS-EXAMINATION**

```
12  BY MR. GONZALEZ-PAGAN:
13      Q.   Dr. Cantor, can you hear me?
14      A.   Yes, I can.
15      Q.   Thank you.  Earlier today you expressed some
16  opinions pertaining to when a child with gender
17  dysphoria will desist in their -- in their gender
18  identification; is that right?
19      A.   Yes, roughly.
20      Q.   No medical treatment is recommended under any
21  care model prior to Tanner Stage 2 of puberty; is that
22  correct?
23      A.   It depends on what you consider a medical
24  intervention.
25      Q.   No puberty blockers are recommended prior to
```

```
 1   Tanner Stage 2 of puberty; is that correct?
 2        A.   Correct.
 3        Q.   No hormone treatment is recommended prior to
 4   Tanner Stage 2 of -- of puberty; is that correct?
 5        A.   Correct.
 6        Q.   No surgery is recommended prior to Tanner --
 7   prior to puberty; is that correct?
 8        A.   Correct.
 9        Q.   Okay.  The desistance studies to which you
10   referred, and I believe there were 11, all pertained to
11   prepubescent children; is that right?
12        A.   Well, I wouldn't call them a desistance study.
13   There were follow-up studies no matter what happened.
14        Q.   Did they all pertain to prepubescent children?
15        A.   The first set of 11 cohorts studies, yes.
16        Q.   Okay.  Isn't it correct that these studies --
17   the -- the youth that were the subjects of these
18   studies were not diagnosed with gender dysphoria under
19   the DSM-V?
20        A.   That's kind of a misleading question.  The --
21   there were several DSMs under effect over the past
22   30 years, and the outcomes from the DSM-III, III-R, IV,
23   and IV-TR were the same.
24        Q.   It --
25        A.   It takes --
```

```
 1        Q.   All right.
 2        A.   -- 10 to 15 years to --
 3        Q.   Dr. Cantor, if you can --
 4             MR. GONZALEZ-PAGAN:  I'm going to object
 5   based on narrative.
 6        Q.   (BY MR. GONZALEZ-PAGAN)  Dr. Cantor, the
 7   question is --
 8             MR. STONE:  Your Honor --
 9             THE COURT:  I -- I mean, I think the
10   objection was nonresponsive, which I would sustain and
11   narrative, yes.
12             MR. GONZALEZ-PAGAN:  Thank you,
13   Your Honor.
14             THE COURT:  So the objection is
15   sustained.
16        Q.   (BY MR. GONZALEZ-PAGAN)  Dr. Cantor, I -- I
17   understand that there are various DSMs.  I'm asking a
18   very direct question.  The desistance stu- -- the
19   studies in which -- that follow prepubescent children
20   that you indicated in support of desistance rates, the
21   subject of those studies were not diagnosed with gender
22   dysphoria under the DSM-V, correct?
23        A.   That's correct.
24        Q.   They were diagnosed with gender identity
25   dis- -- disorder under prior DSM versions; is that
```

```
 1   correct?
 2        A.   Yes.
 3        Q.   And the diagnostic criteria of gender
 4   dysphoria under the DSM-V differs from the diagnostic
 5   criteria of gender identity disorder under those prior
 6   DSM versions; is that right?
 7        A.   Slightly, yes.
 8        Q.   Okay.  Dr. Cantor, do you agree that the
 9   number and percentage of adolescents with gender
10   dysphoria who do not go on to identify as transgender
11   is currently unknown?
12        A.   Yes.
13        Q.   Dr. Cantor, would you agree that under mo- --
14   any of the models of care, including the Dutch model,
15   puberty blockers and hormone treatments are not
16   recommended to be started until after the onset of --
17   of puberty; is that correct?
18        A.   Correct.
19        Q.   Dr. Cantor, sexual orientation and gender
20   identity are distinct concepts; is that correct?
21        A.   Yes.
22        Q.   And a transgender person may identify as gay
23   or lesbian; is that correct?
24        A.   Yes.
25        Q.   Dr. Cantor, you also made reference to a
```

```
 1  in the affirmative?
 2       A.   Again, I can't remember the exact question and
 3  answer then, but the context -- but the authors of that
 4  study themselves were -- noted that psychotherapy --
 5  that they themselves couldn't use their own data to
 6  suggest improvement because it was people who were
 7  already doing well -- continuing to do well rather than
 8  people who were doing poorly, then coming to do well.
 9       Q.   Okay.  Dr. Cantor, you cannot cite to any
10  study showing that psychotherapy alone can resolve an
11  adolescent's gender dysphoria; is that correct?
12       A.   That's correct.
13            MR. GONZALEZ-PAGAN:  That's it for
14  plaintiffs on cross, Your Honor.
15            THE COURT:  Anything further from you?
16            MR. STONE:  No, Your Honor.
17            THE COURT:  Okay.  Then, Doctor, you are
18  excused.  You are free to disconnect yourself and free
19  to go.  Thank you.
20            MR. STONE:  Thank you, Dr. Cantor.
21            THE WITNESS:  My pleasure.  Good luck,
22  everyone.
23            MR. STONE:  And, Your Honor, could I get
24  a time check before we call our -- this is our last
25  witness.
```