**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
TALLAHASSEE DIVISION

AUGUST DEKKER *et al.*,

*Plaintiffs*,

v.

JASON WEIDA, *et al.*,

*Defendants*.

Case No. 4:22-cv-00325-RH MAF

**PLAINTIFFS' MOTION *IN LIMINE* REGARDING PRONOUN USAGE AND MISGENDERING AND SUPPORTING MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 7(b), Plaintiffs by and through undersigned counsel, respectfully move this Court for an order regarding pronoun usage and misgendering at trial. Specifically, Plaintiffs request that the Court instruct all participants in this case, including litigants, witnesses, and lawyers, to use the pronouns and honorifics that conform with a person's identity when referring to that person, including transgender Plaintiffs.

A supporting memorandum of law is incorporated herewith.

Plaintiffs respectfully submit this memorandum of law in support of their motion *in limine* regarding pronoun usage and misgendering at trial.

**INTRODUCTION**

A bedrock principle of the United States justice system is that all people must receive fair and equal treatment under the law. This includes the fair treatment of litigants by maintaining an atmosphere of courtesy and civility in the courtroom. Courtesy and respect require the use of language that respects all people's gender identity, including transgender people.

Accordingly, Plaintiffs respectfully request that the Court instruct all participants in this case—including litigants, witnesses, and lawyers—to use the pronouns and honorifics that conform with a person's identity, including transgender Plaintiffs, during trial proceedings.

**FACTUAL BACKGROUND**

This case involves the denial of Medicaid coverage of gender affirming care to Florida beneficiaries who are transgender because of the exclusions contained within the General Medicaid Policy 59G-1.050.

Dr. Laidlaw, one of the individuals that Defendants have indicated they may call to testify at trial, opposes affirmation of a transgender person's identity in any circumstances (Dkt. No. 62, PI Hrg. Tr., at 87:15-87:21; *id.* at 39:22-40:19), and has used incorrect pronouns for transgender litigants in this and other cases. *See*, *e.g.*,

Dkt. No. 149 (Laidlaw Report at ¶ 294) (referring to Plaintiff August Dekker as "she" and "her"); *C.P. by & through Pritchard v. Blue Cross Blue Shield of Illinois*, No. 3:20-CV-06145-RJB (W.D. Wash.) (*C.P.* Dkt. No. 107 at 14) (noting that Dr. Laidlaw referred to a transgender young man with female pronouns and referred to the plaintiff in that case, a transgender young man, as a "girl").

Similarly, Dr. Patrick Lappert, another of the individuals that Defendants have indicated they may call to testify at trial, has in previous litigation repeatedly used incorrect pronouns for transgender litigants. In his expert report in *Kadel* v. *Folwell,* No. 1:19-cv-272-LCB (M.D.N.C.), Dr. Lappert referred to Plaintiff C.B., a transgender boy, with the female pronouns "her" and "she" (*Kadel* Dkt. No. 211-2 at 48); referred to Plaintiff Connor Thonen-Fleck, a transgender young man, with the female pronouns "her" and "she" and described him as a "psychologically disturbed 16-year-old girl" (*Kadel* Dkt. No. 211-2 at 51); and referred to Plaintiff Julia McKeown, a transgender woman, with the male pronoun "he" and described her as a "son" (*Kadel* Dkt. No. 211-2 at 53-54).

Indeed, other individuals that Defendants have indicated they will call at trial have described being transgender as a delusion or stated that social affirmation is wrong. *See e.g*. Dkt. No. 120-15 (Redacted Laidlaw Report at ¶¶ 33, 61-65); Dkt. No. 120-19 (Lappert Report at ¶¶ 15, 49, 73); Dkt. No. 120-13 (Hruz Report at ¶¶ 90-91).

Misgendering is the misclassification of someone's gender identity, which includes the use of a gendered pronoun that does not align with a person's gender identity.[1] Studies indicate that transgender people are "frequently misgendered by others" and that "these experiences le[a]d them to feel stigmatized."[2] Misgendering is perceived to be a "stigmatizing event because it is associated with psychological distress."[3] Intentionally misgendering transgender people is stigmatizing and causes psychological distress.

Plaintiffs' counsel conferred with Defendants' counsel about this motion and the relief sought in accordance with Local Rule 7.1(B) via email on April 24th and 25th. Defendants responded that they

> oppose this motion as being unnecessary.  As a matter of courtesy and respect, Defendants will make every effort to have their counsel and experts refer to all participants by their preferred pronouns or honorifics. But we'd rather not have a court order on the issue such that an inadvertent slip of the tongue could subject someone to contempt of court.

---

[1] Kevin A. McLemore, *A Minority Stress Perspective on Transgender Individuals' Experiences With Misgendering*, 3 Stigma & Health 53 (2016). To misgender is to "[r]efer to (someone, especially a transgender person) using a word, especially a pronoun or form of address, that does not correctly reflect the gender with which they identify." Misgender, Oxford University Press, www.lexico.com/en/definition/misgender (accessed June 9, 2022).

[2] McLemore, *supra* note 2, at 54 (citing Kevin A. McLemore, *Experiences of Misgendering: Identity Misclassification of Transgender Spectrum Individuals*, 14 Self & Identity 51 (2014)).

[3] *Id.* at 61.

While Plaintiffs understand Defendants' position, there is no harm or prejudice to either party by the Court issuing a prophylactic order to address *non-accidental* misgendering, not those instances which are "an inadvertent slip of the tongue." Indeed, nothing in Plaintiffs' motion attempts to change the Court's sufficiently broad discretion of whether and when to hold a party in contempt, nor are Plaintiffs suggesting such a specific remedy would be necessary. Instead, Plaintiffs seek to avoid at trial that which has already occurred in this litigation, namely, the use of incorrect pronouns by Defendants' expert witnesses. Dkt. No. 149, *supra* at ¶ 294 (referring to Plaintiff August Dekker as "she" and "her").

Thus, Plaintiffs believe it is necessary to move this Court to issue an order regarding pronoun usage and misgendering at trial.

**ARGUMENT**

"All persons involved in the judicial process—judges, litigants, witnesses, and court officers—owe a duty of courtesy to all other participants." *In re Snyder*, 472 U.S. 634, 647 (1985). And transgender people, like all people, must be able to access the courts free from concerns about bias, prejudice, and discrimination. To permit the misgendering of transgender litigants undermines judicial proceedings and risks sacrificing confidence in the fairness and impartiality of the proceedings.

The duty to use the pronouns and honorifics consistent with a litigant's identity is in keeping with the treatment of litigants required by canons of judicial

conduct and rules of professional responsibility. For example, federal courts "should require" "those subject to the judge's control" to "be patient, dignified, respectful, and courteous to litigants." Code of Conduct for U.S. Judges, Canon 3(A). And Canon 2 of the ABA's Model Code of Judicial Conduct specifies that judges "shall perform the duties of the judicial office impartially, competently, and diligently" including by "requir[ing] lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment . . . against parties, witnesses, lawyers, or others" based upon attributes including sex and gender under Rule 2.3(C). Similar duties apply to lawyers. The American Bar Association Model Rules of Conduct hold that "it is professional misconduct for a lawyer to… engage in conduct that the lawyer knows or reasonably should know is harassment or discrimination on the basis of… gender identity… in conduct related to the practice of law." Model Rules of Prof'l Conduct r.8.4(g) (Am. Bar Ass'n 2018). Such harassment and discrimination include "derogatory or demeaning verbal … conduct." *Id.*

As such, hundreds of state and federal courts have used pronouns consistent with a transgender litigant's gender identity. Indeed, every Circuit Court of Appeals in the country has issued at least one opinion in which the pronouns consistent with the gender identity of a transgender person were appropriately used. *See*, *e.g.*, *Kosilek v. Spencer*, 740 F.3d 733 (1st Cir.), *reh'g en banc granted, opinion*

*withdrawn* (Feb. 12, 2014), *on reh'g en banc*, 774 F.3d 63 (1st Cir. 2014); *Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 88 (2d Cir. 2012); *U.S. v. Newswanger*, 784 Fed. Appx. 96 (3d Cir. 2019); *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 596 (4th Cir. 2020), as amended (Aug. 28, 2020), *cert. denied*, 141 S. Ct. 2878 (2021); *Rush v. Parham*, 625 F.2d 1150 (5th Cir. 1980); *E.E.O.C. v. R.G. &. G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560 (6th Cir. 2018), *aff'd sub nom. Bostock v. Clayton Cnty., Georgia*, 140 S.Ct. 1731 (2020); *Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034 (7th Cir. 2017); *Smith v. Rasmussen*, 249 F.3d 755 (8th Cir. 2001); *Edmo v. Corizon, Inc.*, 935 F.3d 757, 767 (9th Cir. 2019), *reh'g en banc denied*, 949 F.3d 489 (9th Cir. 2020); Farmer v. Perrill, 275 F.3d 958 (10th Cir. 2001); *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257 (11th Cir. 2020), *cert. denied sub nom. Keohane v. Inch*, 142 S.Ct. 81 (2021); *Farmer v. Moritsugu*, 163 F.3d 610 (D.C. Cir. 1998). So does the Supreme Court, which in *Bostock v. Clayton County, Georgia*, referred to a transgender litigant, Aimee Stephens, by the name and pronouns consistent with her gender identity. *See*, *e.g.*, 140 S.Ct. at 1738 ("*Aimee Stephens* worked at R.G. & G.R. Harris Funeral Homes . . . . When *she* got the job, Ms. Stephens presented as a male.") (emphasis added). The Supreme Court did not see the need to explain why it was referring to Ms. Stephens as "Aimee Stephens" or "she"—it did so without giving the issue a second thought. This approach is consistent with basic notions of

common courtesy: Because Ms. Stephens referred to herself as "she," so did the Court.

It is of no consequence that a case may involve litigated issues about gender identity. Courts that have used and required other parties to use the pronouns consistent with a litigant's gender identity have easily distinguished between: (1) a substantive ruling on the merits or a legal or factual finding on a litigant's gender identity, and (2) the respect owed a litigant by using the litigant's correct pronouns. In *Lynch v. Lewis*, No. 7:14-CV-24 HL, 2014 WL 1813725 (M.D. Ga. May 7, 2014), the Court explained:

> The Court and Defendants will use feminine pronouns to refer to the Plaintiff in filings with the Court. Such use is not to be taken as a factual or legal finding. The Court will grant Plaintiff's request as a matter of courtesy, and because it is the Court's practice to refer to litigants in the manner they prefer to be addressed when possible.

*2 n.2. *See also*, *e.g.*, *DeGroat v. Townsend*, 495 F. Supp. 2d 845, 846 n.4 (S.D. Ohio 2007) ("The Court will use feminine pronouns to refer to the Plaintiff. Such use is not to be taken as a factual or legal finding. Rather, the Court considers it to be a matter of courtesy."); *Littleton v. Prange*, 9 S.W.3d 223, 224 (Tex. Ct. App. 1999) ("Throughout this opinion Christie will be referred to as 'She.' This is for grammatical simplicity's sake, and out of respect for the litigant, who wishes to be called 'Christie' and referred to as 'she.' It has no legal implications.").

The duty of courtesy regarding how litigants self-identify is not limited to transgender persons. Courts have for years deferred to litigants' preferences on other, and perhaps less consequential, issues of identity including the use of maiden names and nicknames. *See*, *e.g.*, *Herwig v. United States*, 105 F. Supp. 384, 385 (Ct. Cl. 1952) (because the plaintiff "designated herself by her maiden name . . . hereinafter she will be referred to by said maiden name"); *Trust Co. Bank of Nw. Ga., N.A. v. Manning*, 1993 WL 294184, at *2 n.1 (N.D. Ga. May 21, 1993); *White v. White*, 623 So. 2d 31, 33 (La. Ct. App. 1993); *In re Thorpe*, 2019 WL 3778359, at *1 (B.A.P. 9th Cir. Aug. 9, 2019) ("Douglas Thorpe ('Doug', as he prefers to be called)"); *In re Marriage of Whalen*, 2019 WL 1487637, at *1 n.1 (Iowa Ct. App. Apr. 3, 2019) (acquiescing to a litigant's preference to be called "D.J." instead of "Douglas").

This is neither novel, nor an area where the Supreme Court has been silent. In 1988, a federal judge apologized on the record to a married female lawyer for refusing to refer to her by her maiden name and the honorific "Ms." Associated Press, *Federal Judge Apologizes In Fight Over Use of 'Ms.'*, The New York Times (July 15, 1988), https://tinyurl.com/ra3u3z3. In doing so, the judge stated, "I recognize your right to be addressed in any manner in which you see fit, and I apologize for my comments and the resulting situation." *Id.* In 1964, the United States Supreme Court reversed an Alabama court's decision to hold in contempt

Mary Hamilton, a Black civil rights activist, after she refused to answer the prosecutor's questions in which she was addressed only by her first name rather than as 'Miss' and her last name, as white litigants were. *See Ex parte Hamilton*, 156 So. 2d 926 (Ala. 1963), *rev'd sub nom. Hamilton v. Alabama*, 376 U.S. 650 (1964); *see also* Camila Domonoske, *When 'Miss' Meant So Much More: How One Woman Fought Alabama — And Won*, NPR (Nov. 30, 2017), https://tinyurl.com/ubw8sls.

But requiring the usage of pronouns consistent with a litigant's gender identity is not just about respect and courtesy; it is also about ensuring an appearance of objectivity, impartiality, and fairness in judicial proceedings. For example, the New York State Advisory Committee on Judicial Ethics has advised that permitting the wrong use of pronouns with regards to transgender litigants "could not only make them feel unwelcome but also distract from the adjudicative process," noting that "a judge must be careful to avoid any appearance of hostility to an individual's gender identity or gender expression." N.Y. Adv. Comm. on Jud. Ethics, Op. 21-09 (Jan. 28, 2021), https://tinyurl.com/yckhtptu. And similarly, the Provincial Court of British Columbia has provided guidance noting that "[a]ccording people dignity and respect by using their correct titles and pronouns is one aspect of" "[p]roviding a forum of justice that is impartial, fair, consistent, and assures equal access for everyone." Provincial Court of British Columbia, *A change in how parties and lawyers should introduce themselves in court* (Dec. 16, 2020),

test

https://tinyurl.com/5aryj8a7.  The Court of Appeals of Indiana admonished a lower court along these lines when it stated,

> [W]e are obliged to address the fact that the trial court failed to treat R.E. with the respect R.E. deserves and that we expect from fellow judicial officers. Unfortunately, this is not the first such occasion we have had to publicly admonish one of our trial courts for such derision. In *In re M.E.B.*, we noted: "Throughout its order, the trial court fails or refuses to use [the petitioner's] preferred pronoun. The order is also permeated with derision for [the petitioner]. We would hope that the trial courts of this state would show far greater respect (as well as objectivity and impartiality) to all litigants appearing before them."

*Matter of R.E.*, No. 19A-MI-2562, 2020 WL 1173967, at *8 (Ind. Ct. App. Mar. 12, 2020) (citing *In Matter of M.E.B.*, 126 N.E.3d 932, 934, n.1 (Ind. Ct. App. 2019)); *cf. Middleton v. State*, 64 N.E.3d 895, 902 (Ind. Ct. App. 2016) (Plye, J., concurring) (finding counsel's use of racially-derogatory language impeded parties' rights "to the fair administration of justice"), *aff'd*, 72 N.E.3d 891 (Ind. 2017).

At the end of the day, one of the most basic forms of courtesy is to address others respectfully, and refrain from addressing others in ways that are disrespectful or demeaning.  "Considering how big of a social faux pas it is in our culture to misgender someone, and how apologetic people generally become upon finding out that they have made that mistake, it is difficult to view . . . the deliberate misgendering of [a transgender person]—as anything other than an arrogant attempt to belittle and humiliate."  Chan Tov McNamarah, *Misgendering as Misconduct*, 68 UCLA L. Rev. Disc. 40, 43 (2020) (quoting Julia Serano, Whipping Girl: A

Transsexual Woman on Sexism and The Scapegoating of Femininity 185 (2007)). Intentionally misgendering a transgender litigant is thus "pure meanness." *T.B., Jr. by & through T.B., Sr. v. Prince George's Cty. Bd. of Ed.*, 897 F.3d 566, 577 (4th Cir. 2018), *cert. denied*, 139 S. Ct. 1307 (2019). It is "not a light matter, but one which is laden with discriminatory intent." *Doe v. City of New York*, 976 N.Y.S.2d 360, 364 (N.Y. Sup. Ct. 2013).

The Court should instruct to instruct all participants in this case—litigants, witnesses, and lawyers—to use the pronouns and honorifics that conform with a person's identity, including transgender Plaintiffs. *See*, *e.g.*, Letter Order, *Eller v. Prince George's Cnty. Pub. Sch.*, No. CV TDC-18-3649 (D. Md. Oct. 18, 2019) (Dkt. No. 44) (attached as Exhibit A) (ordering that independent medical examination "be conducted in a 'trans-affirmative' manner and that [plaintiff's] gender identity be respected through the use of female pronouns"); *Canada v. Hall*, No. 18-CV-2121, 2019 WL 1294660, *1 n.1 (N.D. Ill. Mar. 21, 2019) (admonishing defendants' counsel for "careless disrespect for the plaintiff's transgender identity," in part through "consistent use of male pronouns to identify the plaintiff" when she did not identify as such); *United States v. Manning*, No. Army 20130739 Order (A. Ct. Crim. App. March 4, 2015) (attached as Exhibit B) (ordering the use of neutral or feminine pronouns in all legal papers and proceedings in case involving transgender female defendant) ; *Lynch*, No. 2014 WL 1813725 at *2 n.2 ("The Court

*and Defendants* will use feminine pronouns to refer to the Plaintiff in filings with the Court.") (emphasis added).

## CONCLUSION

For the foregoing reasons, the Court should grant the instant motion and instruct all participants in this case—litigants, witnesses, and lawyers—to use the pronouns and honorifics that conform with a person's identity, including transgender Plaintiffs.

Dated this 27th day of April, 2023.

Respectfully Submitted,

*/s/ Carl S. Charles*

**PILLSBURY WINTHROP SHAW PITTMAN, LLP**

**Jennifer Altman** (Fl. Bar No. 881384)
**Shani Rivaux** (Fl. Bar No. 42095)
600 Brickell Avenue, Suite 3100
Miami, FL 33131
(786) 913-4900
jennifer.altman@pillsbury.com
shani.rivaux@pillsbury.com

**William C. Miller***
**Gary J. Shaw***
1200 17th Street N.W.
Washington, D.C. 20036
(202) 663-8000
william.c.miller@pillsburylaw.com

**Joe Little***
500 Capitol Mall, Suite 1800

**LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.**

**Omar Gonzalez-Pagan***
120 Wall Street, 19th Floor
New York, NY 10005
(212) 809-8585
ogonzalez-pagan@lambdalegal.org

**Carl S. Charles***
1 West Court Square, Suite 105
Decatur, GA 30030
(404) 897-1880
ccharles@lambdalegal.org

**SOUTHERN LEGAL COUNSEL, INC.**
**Simone Chriss** (Fl. Bar No. 124062)
**Chelsea Dunn** (Fl. Bar No. 1013541)
1229 NW 12th Avenue
Gainesville, FL 32601

Sacramento, CA 95814
(916) 329-4700
joe.little@pillsburylaw.com

(352) 271-8890
Simone.Chriss@southernlegal.org
Chelsea.Dunn@southernlegal.org

**NATIONAL HEALTH LAW PROGRAM**
**Abigail Coursolle***
3701 Wilshire Boulevard, Suite 315
Los Angeles, CA 90010
(310) 736-1652
coursolle@healthlaw.org

**Catherine McKee***
1512 E. Franklin Street, Suite 110
Chapel Hill, NC 27541
(919) 968-6308
mckee@healthlaw.org

**FLORIDA HEALTH JUSTICE PROJECT**

**Katy DeBriere** (Fl. Bar No. 58506)
3900 Richmond Street
Jacksonville, FL 32205
(352) 278-6059
debriere@floridahealthjustice.org

* *Admitted pro hac vice*
*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of April 2023, a true copy of the foregoing has been filed with the Court utilizing its CM/ECF system, which will transmit a notice of electronic filing to counsel of record for all parties in this matter registered with the Court for this purpose.

*/s/ Carl S. Charles*
Carl S. Charles
*Counsel for Plaintiffs*

**CERTIFICATE OF WORD COUNT**

As required by Local Rule 7.1(F), I certify that this Motion and Incorporated Memorandum of Law contains 2,919 words.

*/s/ Carl S. Charles*
Carl S. Charles
*Counsel for Plaintiffs*

**CERTIFICATE OF CONFERRAL**

As required by Local Rule 7.1(B), I certify that I confered with Defendants through their counsel about the relief sought in this motion on April 24, 2023, and April 25, 2023, by email. Defendants oppose this motion and their counsel's response is quoted in full at page three.

*/s/ Carl S. Charles*
Carl S. Charles
*Counsel for Plaintiffs*