IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF FLORIDA

TALLAHASSEE DIVISION

**August Dekker, et al.,**

        Plaintiffs,  Case No. 4:22-cv-00325

  v.

**Jason Weida, et al.,**

        Defendants

**AMICUS BRIEF OF CALIFORNIA, DELAWARE, DISTRICT OF COLUMBIA, ILLINOIS, MARYLAND, MASSACHUSETTS, NEW YORK, OREGON, AND RHODE ISLAND AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

ROB BONTA
Attorney General of California
RENU R. GEORGE
Senior Assistant Attorney General
KATHLEEN BOERGERS
Supervising Deputy Attorney General
STEPHANIE YU
LILY WEAVER
Deputy Attorneys General
State Bar No. 213530
 1515 Clay Street, 20th Floor
 Oakland, CA  94612-0550
 Telephone: (510) 879-0011
 Fax: (510) 622-2270
 Email:
 Kathleen.Boergers@doj.ca.gov
*Attorneys for State of California*

# TABLE OF CONTENTS

**Page**

Interest of Amici ..................................................................................1

Argument ...............................................................................................2

    I.     Amici States Have Longstanding Anti-Discrimination
Laws Guaranteeing Access to Gender-Affirming Care
Under their Medicaid Programs and Private Insurance ............2

    II.    Ensuring Access to Gender-Affirming Medical Care Has
Improved Health Outcomes for Transgender People at
Little Cost to the Public Fisc ................................................10

Conclusion ..........................................................................................15

i

# TABLE OF AUTHORITIES

**Page**

**Statutes and Regulations**

Cal. Code Regs. tit. 10 § 2561.2, subd. (a)…………………………………5

Colo. Code Regs. § 4-2-62……………………………………………… 9

Conn. Gen. Stat. § 46a-71(a)………………………………………...6

Haw. Rev. Stat. § 431:10A-118.3(a)………………………………...6

Haw. Rev. Stat. § 432:1-607.3……………………………….............6

Haw. Rev. Stat. § 432D-26.3 ………………………………………….6

Ill. Adm. Code, tit. 50, § 2603.35…………………………………….6

N.J. Stat. Ann. § 26:2J-4.40 …………………………………………..6

N.J. Stat. Ann. § 17B:26-2.1ii……………………………….............6

N.J. Stat. Ann. § 17B:27-46.1oo…………………………………….6

N.J. Stat. Ann. § 52:14-17.29x……………………………….............6

N.Y. Comp. Codes R. & Regs. tit. 18 § 505.2(*l*)(3)–(4)…………………….4

Wash. Admin. Code § 182-531-1675………………………………….4

Wash. Rev. Code § 48.43.0128(3)(a)…………………………………….9

**Articles**

Ali Zaker-Shahrak et al., Cal. Dep't of Ins., Economic Impact Assessment: Gender Nondiscrimination in Health Insurance 9 (2012),

# TABLE OF AUTHORITIES
## (continued)

Page

https://transgenderlawcenter.org/wp-content/uploads/2013/04/Economic-Impact-Assessment-Gender-Nondiscrimination-In-Health-Insurance.pdf.
………………………………………………………………10, 14

Amy E. Green et al., *Association of Gender-Affirming Hormone Therapy With Depression, Thoughts of Suicide, and Attempted Suicide Among Transgender and Nonbinary Youth*, 70 J. of Adolescent Health 643 (2021), https://www.jahonline.org/article/S1054-139X(21)00568-1/fulltext;
……………………………………………………………………….12

Anna I. R. van der Miesen et al., *Psychological Functioning in Transgender Adolescents Before and After Gender-Affirmative Care Compared with Cisgender General Population Peers*, 66 J. Adolescent Health 699, 703 (2020)……………..…………………………………………….13

Annelou L.C. de Vries et al., *Young Adult Psychological Outcome After Puberty Suppression and Gender Reassignment*, 134 Pediatrics 696 (2014), https://doi.org/10.1542/peds.2013-2958..........................................12

Dana Ferguson et al., *Minnesota to Join at Least 4 Other States in Protecting Transgender Care This Year*, NPR, April 21, 2023, https://www.npr.org/2023/04/21/1171069066/states-protect-transgender-affirming-care-minnesota-colorado-maryland-illinois...........................................................................................5

Daphna Stroumsa, *The State of Transgender Health Care: Policy, Law, and Medical Frameworks*, 104 Am. J. Pub. Health e31 (2014), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3953767/ ………………..2

Jack L. Turban et al, *Access To Gender-Affirming Hormones During Adolescence and Mental Health Outcomes Among Transgender Adults* 17(1)

**TABLE OF AUTHORITIES**
**(continued)**

Page

PLOS One 1, 8 (2022),
https://journals.plos.org/plosone/article?id=10.1371/journal.pone.0261039
………………………………………………………………….12

    Jennifer Kates, et al., Kaiser Family Foundation, Health and Access to
Care and Coverage for Lesbian, Gay, Bisexual, and Transgender Individuals
in the U.S. (May 2018), https://files.kff.org/attachment/Issue-Brief-Health-
and-Access-to-Care-and-Coverage-for-LGBT-Individuals-in-the-
US..............................................................................................................2, 3

    Julia C. Sorbara et al., *Mental Health and Timing of Gender-Affirming
Care*, 146 Pediatrics 1, 5 (2020),
https://publications.aap.org/pediatrics/article/146/4/e20193600/79683/Menta
l-Health-and-Timing-of-Gender-Affirming-Care........................................13

    Ivette Gomez et al., Kaiser Family Foundation, Update on Medicaid
Coverage of Gender-Affirming Health Services (Oct. 11, 2022),
https://www.kff.org/womens-health-policy/issue-brief/update-on-medicaid-
coverage-of-gender-affirming-health-services/..............................................3

    Marijn Arnoldussen et al., *Self-Perception of Transgender
Adolescents After Gender-Affirming Treatment: A Follow-Up Study Into
Young Adulthood*, 9 LGBT Health 238 (2022),
https://www.liebertpub.com/doi/epdf/10.1089/lgbt.2020.0494....................12

    Meredithe McNamara et al, A Critical Review of the June 2022
Florida Medicaid Report on the Medical Treatment of Gender Dysphoria 6–
15 (2022) (explaining deficiencies in defendants' experts' testimony),
https://medicine.yale.edu/lgbtqi/research/gender-affirming-
care/florida%20report%20final%20july%208%202022%20accessible_4430
48_284_55174_v3.pdf..................................................................................14

iv

## TABLE OF AUTHORITIES
### (continued)

Page

Nat'l Women's Law Ctr., *Health Care Refusals Harm Patients: The Threat to LGBT People and Individuals Living with HIV/AIDS* (May 2014), https://nwlc.org/wp-content/uploads/2015/08/lgbt_refusals_factsheet_05-09-14.pdf ............................................................................................................ 2

UCLA Williams Institute, Medicaid Coverage for Gender-Affirming Care at 1 (December 2022), https://williamsinstitute.law.ucla.edu/publications/medicaid-trans-health-care/ ................................................................................................................. 3

William V. Padula et al., *Societal Implications of Health Insurance Coverage for Medically Necessary Services in the U.S. Transgender Population: A Cost-Effectiveness Analysis*, 31(4) J. Gen. Intern. Med. 394, 394 (2016), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4803686 ...………………………………………………………………………… 11, 14

Ximena Lopez et al., *Statement on Gender-Affirmative Approach to Care from the Pediatric Endocrine Society Special Interest Group on Transgender Health*, 29 Current Op. Pediatrics 475, 480 (2017), https://pubmed.ncbi.nlm.nih.gov/28562420 .................................................. 13

**Other Authorities**

Cal. Dep't of Health Care Serv., All Plan Letter 13-011, at 1 (Sept. 25, 2013) https://www.dhcs.ca.gov/formsandpubs/Documents/MMCDAPLsandPolicyLetters/APL2013/APL13-011.pdf ................................................................ 4

Chester A. McPherson, D.C. Dep't of Ins., Bulletin 13-IB-01-30/15, Prohibition of Discrimination in Health Insurance Based on Gender Identity and Expression 3–4 (2014), https://disb.dc.gov/sites/default/files/dc/sites/disb/publication/attachments/B

**TABLE OF AUTHORITIES**
**(continued)**

<b>Page</b>

ulletin-
ProhibitionDiscriminationBasedonGenderIdentityorExpressionv022714.pdf
……………………………………………………………………..8

Conn. Comm'n On Human Rights And Opportunities, Declaratory
Ruling on Petition Regarding Health Insurers' Categorization of Certain
Gender-Confirming Procedures as Cosmetic 9 (2020),
https://www.chlpi.org/wp-content/uploads/2013/12/Dec-Rule_04152020.pdf
……………………………………………………………………..9

Conn. Ins. Dep't, Bulletin IC-34, Gender Identity Nondiscrimination
Requirements (Dec. 19, 2013), https://portal.ct.gov/-
/media/CID/BulletinIC37GenderIdentityNondiscriminationRequirementspdf
.pdf..........................................................................................................6

Gary D. Anderson, Mass. Comm'r of Ins., Bulletin 2021-11,
Continuing Applicability of Guidance Regarding Prohibited Discrimination
on the Basis of Gender Identity or Gender Dysphoria Including Medically
Necessary Gender Affirming Care and Related Services at 2 (2021),
https://www.mass.gov/doc/bulletin-2021-11-prohibited-discrimination-on-
the-basis-of-gender-identity-or-gender-dysphoria-including-medically-
necessary-gender-affirming-care-and-related-services-issued-september-9-
2021/download. ……………………………………………………..9

Ill. Dep't of Human Rights, Ill. Dep't of Healthcare and Family
Servs., and the Ill. Dep't of Ins., Guidance Relating to Nondiscrimination in
Healthcare Services in Illinois (June 26, 2020),
https://idoi.illinois.gov/content/dam/soi/en/web/insurance/consumers/docum
ents/english-web-idhr-joint-nondiscrimination-guidance.pdf ……………....6

Ill. Dep't of Ins., Bulletin 2020-16, Health Insurance Coverage for
Transgender and Gender Nonconforming Individuals (June 15, 2020),
https://insurance2.illinois.gov/cb/2020/CB2020-16.pdf ……………....6

# TABLE OF AUTHORITIES
## (continued)

Page

Letter from Mike Kreidler, Office of the Ins. Comm'r of Wash. State to Health Ins. Carriers in Wash. State (June 25, 2014), https://www.insurance.wa.gov/sites/default/files/documents/gender-identity-discrimination-letter.pdf ……………………………………………………7

Letter from Ricardo Lara, Cal. Ins. Comm'r, Cal. Dep't of Ins., to Kathie Mohig, Exec. Dir., Trans Family Support Services at 3–4 (Dec. 30, 2020), https://www.insurance.ca.gov/0250-insurers/0300-insurers/0200-bulletins/bulletin-notices-commiss-opinion/upload/Gender-dysphoria-male-chest-surgery-CDI-GC-opinion-letter-12-30-20.pdf......................................8

Mass. Div. of Ins., Office of Consumer Affairs & Bus. Regulation, Bulletin 2014-03, Guidance Regarding Prohibited Discrimination on the basis of Gender Identity 1 (June 20, 2014), https://www.mass.gov/doc/bulletin-2014-03-guidance-regarding-prohibited-discrimination-on-the-basis-of-gender-identity/download …………………6

Minn. Dep't of Commerce, Admin. Bulletin 2015-5, Gender Identity Nondiscrimination Requirements (2015) http://transgenderlawcenter.org/wp-content/uploads/2016/05/2015-11-24-Minnesota-bulletin-insurance-2015-5.pdf …………………………………………………………………...9

Nondiscrimination in Health Programs and Activities, 81 Fed. Reg. 31375-01, 31,460–61 (May 18, 2016) ………………………………………2

N.Y. Dep't of Fin. Servs., Ins. Circular Letter No. 7 (2014), https://www.dfs.ny.gov/insurance/circltr/2014/cl2014_07.htm ………...6, 7

Or. Health Auth., Prioritized List: Guideline for Gender Dysphoria 1 (2019), https://www.oregon.gov/oha/HPA/DSIHERC/FactSheets/Gender-dysphoria.pdf ………………………………………………………………..7

vii

# TABLE OF AUTHORITIES
## (continued)

Page

Pa. Ins. Dep't., Notice Regarding Nondiscrimination, Notice 2016-05, 46 Pa.B. 2251 (2016), https://www.pacodeandbulletin.gov/Display/pabull?file=/secure/pabulletin/data/vol46/46-18/762.html ……………………………………………………...6

Pa. Dep't. of Human Servs., CHIP Transmittal 2016-5 (2016), https://transequality.org/sites/default/files/PA-CHIP-Transmittal.pdf …...7, 9

Press Release, Colo. Dep't of Regulatory Agencies, Division of Insurance Announces a New Resource for LGBTQ Coloradans (Jun. 1, 2020), https://doi.colorado.gov/press-release/division-of-insurance-announces-a-new-resource-for-lgbtq-coloradans..........................................9

Press Release, EqualityMaine, Maine Transgender Network, GLAD and Maine Women's Lobby Announce Health Coverage for Transgender Individuals Under MaineCare, LGBTQ Legal Advocates & Defs. (Oct. 3, 2019), https://www.glad.org/post/equalitymaine-maine-transgender-network-glad-and-maine-womens-lobby-announce-health-coverage-for-transgender-individuals-under-mainecare/ ………………………………....9

R.I. Health Ins. Comm'r, Health Ins. Bulletin 2015-3, Guidance Regarding Prohibited Discrimination on the Basis of Gender Identity or Expression 1 (2015), http://www.ohic.ri.gov/documents/Bulletin-2015-3-Guidance-Regarding-Prohibited-Discrimination.pdf ………………….....7

Vt. Dep't of Health Access, Medical Policy re: Gender Affirmation Surgery for the Treatment of Gender Dysphoria 2 (2019), http://vels.staging.vermont.gov/sites/dvha/files/documents/providers/Forms/1gender-affirmation-surgery-w-icd-10-coded-110119.pdf …………………4

Vt. Dep't of Fin. Reg., Div. of Ins., Ins. Bulletin No. 174, Guidance Regarding Prohibited Discrimination on the Basis of Gender Identity

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

including Medically Necessary Gender Dysphoria Surgery and Related
Health Care 1 (2013), https://dfr.vermont.gov/sites/finreg/files/regbul/dfr-
bulletin-insurance-174-gender-dysphoria-surgery.pdf ……………………...7

## INTEREST OF AMICI

Amici—the States of California, Delaware, Illinois, Maryland, Massachusetts, New York, Oregon, and Rhode Island, and the District of Columbia—submit this brief in support of Plaintiffs August Dekker, Brit Rothstein, Susan Doe, and K.F. Amici States strongly support transgender people's right to live with dignity, be free from discrimination, and have equal access to healthcare. The pervasive discrimination against transgender people within the healthcare system nationwide is well-documented, as are the tangible economic, emotional, and health consequences suffered as a result. Discrimination, exclusion, and denial of care on the basis of transgender status cause direct economic, emotional, and health harms including an increased risk of depression, anxiety, substance abuse, and suicide. To support the health and dignity of transgender people and prevent these injuries, amici States have adopted laws and policies, including through their Medicaid programs, to ensure access to gender-affirming healthcare and to combat discrimination. Contrary to Defendants' claims that they are protecting their citizens by excluding gender-affirming care, amici States' laws and policies—which are consistent with evidence-based, medically accepted standards of care—result in better health outcomes for our transgender residents, at little cost to the public fisc. Amici States have a

1

profound interest in protecting transgender individuals throughout our nation from unconstitutional discrimination and in mitigating the injuries from such discrimination that transgender individuals have suffered for too long.

## ARGUMENT

### I. AMICI STATES HAVE LONGSTANDING ANTI-DISCRIMINATION LAWS GUARANTEEING ACCESS TO GENDER-AFFIRMING CARE UNDER THEIR MEDICAID PROGRAMS AND PRIVATE INSURANCE

The systematic and widespread discrimination against transgender people is well-documented, as is the fact that discrimination "create[s] barriers to accessing timely, culturally competent, medically appropriate, and respectful care."[1] Indeed, in 2016, the U.S. Health and Human Services Agency recognized that transgender individuals experienced difficulties in "the process of obtaining health insurance coverage," which often led those individuals to postpone or avoid needed healthcare, thus "exacerbat[ing] health disparities experienced by the LGBT population."[2] These disparities

---

[1] Daphna Stroumsa, *The State of Transgender Health Care: Policy, Law, and Medical Frameworks*, 104 Am. J. Pub. Health e31 (2014), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3953767/; *see also*, Nat'l Women's Law Ctr., *Health Care Refusals Harm Patients: The Threat to LGBT People and Individuals Living with HIV/AIDS* (May 2014), https://nwlc.org/wp-content/uploads/2015/08/lgbt_refusals_factsheet_05-09-14.pdf.

[2] Nondiscrimination in Health Programs and Activities, 81 Fed. Reg. 31375-01, 31,460–61 (May 18, 2016); *see also* Jennifer Kates, et al., Kaiser

are especially heightened for transgender people, who are "more likely to live in poverty and less likely to have health insurance than the general population," and who face harassment and discrimination "when seeking routine health care."[3] For example, transgender adults are more likely than cisgender adults to be uninsured, report poor health, have lower household incomes, and face barriers to care due to cost.[4]

Given their lower incomes, many transgender people rely on Medicaid for health coverage.[5] A 2022 report estimated that among the 1.3 million transgender adults living in the United States, approximately 276,000 had Medicaid coverage.[6] Accordingly, amici States have sought to ensure

---

Family Foundation, Health and Access to Care and Coverage for Lesbian, Gay, Bisexual, and Transgender Individuals in the U.S. (May 2018), https://files.kff.org/attachment/Issue-Brief-Health-and-Access-to-Care-and-Coverage-for-LGBT-Individuals-in-the-US.

[3] Kates, *supra* note 2 at 14; *see also* 81 Fed. Reg. at 31,460 (citing studies showing that 26.7% of transgender people reported having been refused needed health care and 25% reported having been subject to harassment in medical settings, which "often led those individuals to postpone or avoid needed healthcare").

[4] Ivette Gomez et al., Kaiser Family Foundation, Update on Medicaid Coverage of Gender-Affirming Health Services (Oct. 11, 2022), https://www.kff.org/womens-health-policy/issue-brief/update-on-medicaid-coverage-of-gender-affirming-health-services/.

[5] *Id*.

[6] UCLA Williams Institute, Medicaid Coverage for Gender-Affirming Care at 1 (December 2022),

Medicaid coverage for their transgender residents.[7] As of July 1, 2021,

twenty-five states and D.C. expressly include coverage for gender-affirming

care under their Medicaid programs, either by statute or administrative

policy, or are in the process of extending coverage.[8] And amici States

continue to broaden coverage under their Medicaid programs. For example,

beginning January 1, 2024, the Maryland Trans Equity Act will increase the

---

https://williamsinstitute.law.ucla.edu/publications/medicaid-trans-health-care/.

[7] *Id*. at 20–23 (describing state-level Medicaid policies providing affirmative coverage for gender-affirming care in Alaska, California, Colorado, Connecticut, Delaware, D.C., Georgia, Illinois, Iowa, Maine, Maryland, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Hampshire, New Jersey, New York, North Dakota, Oregon, Pennsylvania, Rhode Island, Vermont, Washington, and Wisconsin).

[8] Gomez, *supra* note 4 (listing state Medicaid programs covering gender-affirming health services at Table 1); *see also, e.g.*, Cal. Dep't of Health Care Serv., All Plan Letter 13-011, at 1 (Sept. 25, 2013) https://www.dhcs.ca.gov/formsandpubs/Documents/MMCDAPLsandPolicyLetters/APL2013/APL13-011.pdf (stating transgender services have been available to Medi-Cal beneficiaries since 2001); N.Y. Comp. Codes R. & Regs. tit. 18 § 505.2(*l*)(3)–(4) (covering medically necessary gender affirming surgery under Medicaid); Vt. Dep't of Health Access, Medical Policy re: Gender Affirmation Surgery for the Treatment of Gender Dysphoria 2 (2019), http://vels.staging.vermont.gov/sites/dvha/files/documents/providers/Forms/1gender-affirmation-surgery-w-icd-10-coded-110119.pdf (covering gender affirming surgery if certain criteria are met under Medicaid); Wash. Admin. Code § 182-531-1675 (listing surgical and hormone therapy, puberty suppression therapy, behavioral therapy, and surgical and ancillary services as available under Apple Health's "gender dysphoria treatment program").

types of gender-affirming treatments covered under the State's Medicaid plan to include the ability for individuals to change their hair, make alterations to their face or neck and modify their voice through therapy.[9]

Outside of the Medicaid context, amici States and others are likewise committed to ensuring transgender people are treated with dignity and respect when accessing healthcare and that they are not denied the care they need. In California, for instance, longstanding laws and regulations ensure that transgender patients are not denied or limited coverage for care that is ordinarily available to cisgender patients.[10] Last year, California passed Senate Bill 107, calling itself a "refuge" state for transgender youth and their families.[11] As recently as this year, Illinois and Maryland have passed bills designed to shield transgender health care through legal protections, health care coverage and access.[12] Many of amici States' laws, regulations, and

---

[9] Dana Ferguson et al., *Minnesota to Join at Least 4 Other States in Protecting Transgender Care This Year*, NPR, April 21, 2023, https://www.npr.org/2023/04/21/1171069066/states-protect-transgender-affirming-care-minnesota-colorado-maryland-illinois.

[10] Cal. Code Regs. tit. 10 § 2561.2, subd. (a), **Error! Hyperlink reference not valid.**.

[11] *See* Ferguson, *supra* note 9.

[12] *Id.*

healthcare bulletins likewise prohibit insurers from discrimination in the

provision of healthcare.[13]

_____

[13] *See, e.g.*, **Illinois**: Ill. Adm. Code, tit. 50, § 2603.35 (health
insurance plans); Ill. Dep't of Human Rights, Ill. Dep't of Healthcare and
Family Servs., and the Ill. Dep't of Ins., Guidance Relating to
Nondiscrimination in Healthcare Services in Illinois (June 26, 2020),
https://idoi.illinois.gov/content/dam/soi/en/web/insurance/consumers/docum
ents/english-web-idhr-joint-nondiscrimination-guidance.pdf; Ill. Dep't of
Ins., Bulletin 2020-16, Health Insurance Coverage for Transgender and
Gender Nonconforming Individuals (June 15, 2020),
https://insurance2.illinois.gov/cb/2020/CB2020-16.pdf; **Massachusetts**:
Mass. Div. of Ins., Office of Consumer Affairs & Bus. Regulation, Bulletin
2014-03, Guidance Regarding Prohibited Discrimination on the basis of
Gender Identity 1 (June 20, 2014), https://www.mass.gov/doc/bulletin-2014-
03-guidance-regarding-prohibited-discrimination-on-the-basis-of-gender-
identity/download (prohibiting private insurers from denying coverage);
**New York**: N.Y. Dep't of Fin. Servs., Ins. Circular Letter No. 7 (2014),
https://www.dfs.ny.gov/insurance/circltr/2014/cl2014_07.htm (eliminating
exclusions). Other states around the nation have similar protections. *See also*
**Connecticut**: Conn. Gen. Stat. § 46a-71(a) (state agency services); Conn.
Ins. Dep't, Bulletin IC-34, Gender Identity Nondiscrimination Requirements
(Dec. 19, 2013), https://portal.ct.gov/-
/media/CID/BulletinIC37GenderIdentityNondiscriminationRequirementspdf
.pdf (private insurers); **Hawai'i**: Haw. Rev. Stat. § 431:10A-118.3(a)
(accident and health or sickness insurance); Haw. Rev. Stat. § 432:1-607.3
(hospital and medical service policies); Haw. Rev. Stat. § 432D-26.3 (health
maintenance organization policies); **New Jersey**: N.J. Stat. Ann. § 26:2J-
4.40 (health maintenance organizations); N.J. Stat. Ann. § 17B:26-2.1ii
(individual health insurance policies); N.J. Stat. Ann. § 17B:27-46.1oo
(group health insurance policies); N.J. Stat. Ann. § 52:14-17.29x (State
Health Benefits Commission contracts); **Pennsylvania**: Pa. Ins. Dep't.,
Notice Regarding Nondiscrimination, Notice 2016-05, 46 Pa.B. 2251
(2016),
https://www.pacodeandbulletin.gov/Display/pabull?file=/secure/pabulletin/d
ata/vol46/46-18/762.html (prohibiting discrimination and requiring

Amici's laws and policies are based on longstanding and well-accepted medical standards and recognize that providers' determinations regarding medical necessity must be grounded in evidence-based medicine. For example, New York, Oregon, and Rhode Island's insurance guidelines explicitly identify the importance of scientific evidence and professional standards.[14] The California Insurance Commissioner's opinion letter about

---

coverage); Pa. Dep't. of Human Servs., CHIP Transmittal 2016-5 (2016), https://transequality.org/sites/default/files/PA-CHIP-Transmittal.pdf (eliminating exclusions and requiring coverage); **Vermont**: Vt. Dep't of Fin. Reg., Div. of Ins., Ins. Bulletin No. 174, Guidance Regarding Prohibited Discrimination on the Basis of Gender Identity including Medically Necessary Gender Dysphoria Surgery and Related Health Care 1 (2013), https://dfr.vermont.gov/sites/finreg/files/regbul/dfr-bulletin-insurance-174-gender-dysphoria-surgery.pdf (eliminating exclusions); **Washington**: Letter from Mike Kreidler, Office of the Ins. Comm'r of Wash. State to Health Ins. Carriers in Wash. State (June 25, 2014), https://www.insurance.wa.gov/sites/default/files/documents/gender-identity-discrimination-letter.pdf.

[14] **New York:** N.Y. Dep't of Fin. Servs., Ins. Circular Letter No. 7 (2014), https://www.dfs.ny.gov/insurance/circltr/2014/cl2014_07.htm (citing the American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders' recognition of gender dysphoria); **Oregon:** Or. Health Auth., Prioritized List: Guideline for Gender Dysphoria 1 (2019), https://www.oregon.gov/oha/HPA/DSIHERC/FactSheets/Gender-dysphoria.pdf (approving youth puberty suppression coverage based on extensive testimony "from experts at various public meetings," "reviewing relevant evidence and literature," and citing WPATH standards); **Rhode Island:** R.I. Health Ins. Comm'r, Health Ins. Bulletin 2015-3, Guidance Regarding Prohibited Discrimination on the Basis of Gender Identity or Expression 1 (2015), http://www.ohic.ri.gov/documents/Bulletin-2015-3-

coverage for chest surgery for young transgender men expressly cites to the WPATH standards as well.[15] Massachusetts similarly recommends insurance carriers "consult the most up-to-date medical standards set forth by nationally recognized medical experts in the transgender health field, including but not limited to those issued by the [WPATH]."[16] The District of Columbia also requires a medical necessity determination to rely on professional standards, and cites to WPATH.[17] Many other States

Guidance-Regarding-Prohibited-Discrimination.pdf ("[A] growing body of scientific and clinical evidence regarding the potential harm to consumers arising from the denial or exclusion of services on the basis of gender identity" prompted reexamination of exclusions).

[15] Letter from Ricardo Lara, Cal. Ins. Comm'r, Cal. Dep't of Ins., to Kathie Mohig, Exec. Dir., Trans Family Support Services at 3–4 (Dec. 30, 2020), https://www.insurance.ca.gov/0250-insurers/0300-insurers/0200-bulletins/bulletin-notices-commiss-opinion/upload/Gender-dysphoria-male-chest-surgery-CDI-GC-opinion-letter-12-30-20.pdf.

[16] Gary D. Anderson, Mass. Comm'r of Ins., Bulletin 2021-11, Continuing Applicability of Guidance Regarding Prohibited Discrimination on the Basis of Gender Identity or Gender Dysphoria Including Medically Necessary Gender Affirming Care and Related Services at 2 (2021), https://www.mass.gov/doc/bulletin-2021-11-prohibited-discrimination-on-the-basis-of-gender-identity-or-gender-dysphoria-including-medically-necessary-gender-affirming-care-and-related-services-issued-september-9-2021/download.

[17] Chester A. McPherson, D.C. Dep't of Ins., Bulletin 13-IB-01-30/15, Prohibition of Discrimination in Health Insurance Based on Gender Identity and Expression 3–4 (2014), https://disb.dc.gov/sites/default/files/dc/sites/disb/publication/attachments/Bulletin-

throughout the country have relied on prevailing professional standards of

care set forth by nationally recognized medical experts in crafting laws and

guidance on coverage of gender-affirming medical care to treat gender

dysphoria.[18]

---

ProhibitionDiscriminationBasedonGenderIdentityorExpressionv022714.pdf
(medical necessity determination requires referring to "recognized
professional standard of medical care for transgender individuals" and citing
WPATH standards).

[18] *See, e.g.*, **Colorado**: Colo. Code Regs. § 4-2-62 (prohibiting
"[d]en[ial], exclu[sion], or otherwise limit[ing] coverage for medically
necessary services, in accordance with generally accepted professional
standards of care, based upon a person's . . . gender identity"); Press
Release, Colo. Dep't of Regulatory Agencies, Division of Insurance
Announces a New Resource for LGBTQ Coloradans (Jun. 1, 2020),
https://doi.colorado.gov/press-release/division-of-insurance-announces-a-
new-resource-for-lgbtq-coloradans; **Connecticut**: Conn. Comm'n On
Human Rights And Opportunities, Declaratory Ruling on Petition Regarding
Health Insurers' Categorization of Certain Gender-Confirming Procedures as
Cosmetic 9 (2020), https://www.chlpi.org/wp-content/uploads/2013/12/Dec-
Rule_04152020.pdf (insurers shall " pay 'covered expenses' for treatment
provided to individuals with gender dysphoria where the treatment is
deemed necessary under generally accepted medical standards"); **Maine**:
Press Release, EqualityMaine, Maine Transgender Network, GLAD and
Maine Women's Lobby Announce Health Coverage for Transgender
Individuals Under MaineCare, LGBTQ Legal Advocates & Defs. (Oct. 3,
2019), https://www.glad.org/post/equalitymaine-maine-transgender-
network-glad-and-maine-womens-lobby-announce-health-coverage-for-
transgender-individuals-under-mainecare/ (criteria for determining medical
necessity "will be based on consensus professional medical standards" and
citing to WPATH standards); **Minnesota**: Minn. Dep't of Commerce,
Admin. Bulletin 2015-5, Gender Identity Nondiscrimination Requirements
(2015) http://transgenderlawcenter.org/wp-content/uploads/2016/05/2015-
11-24-Minnesota-bulletin-insurance-2015-5.pdf (medical necessity "must be

These protections reflect our core commitment to safeguarding the equality of all people, regardless of their gender identity, and ensuring people with gender dysphoria are not denied access to necessary—and often lifesaving—care.

## II. ENSURING ACCESS TO GENDER-AFFIRMING MEDICAL CARE HAS IMPROVED HEALTH OUTCOMES FOR TRANSGENDER PEOPLE AT LITTLE COST TO THE PUBLIC FISC

Amici States' policies not only ensure that residents have access to these best practices, they have also improved health outcomes for transgender people at minimal cost to States. An economic impact analysis of California's removal of transgender exclusions found it had an "immaterial" effect on premium costs, leading the California Department of Insurance to conclude that "the benefits of eliminating discrimination far exceed the insignificant costs."[19] Those benefits include improved health

---

based on the most recent, published medical standards set forth by nationally recognized medical experts"); **Pennsylvania**: Pa. Dep't. of Human Servs., CHIP Transmittal 2016-5 (2016) ("In determining medical necessity for gender transition services, the Department and CHIP Contractors will utilize [WPATH] Standard of Care as guidelines."); **Washington**: Wash. Rev. Code § 48.43.0128(3)(a) (for health plans issued on or after January 1, 2022, Washington forbids insurers from "deny[ing] or limit[ing] coverage for gender-affirming treatment" when it is medically necessary and "prescribed in accordance with accepted standards of care").

[19] Ali Zaker-Shahrak et al., Cal. Dep't of Ins., Economic Impact Assessment: Gender Nondiscrimination in Health Insurance 9 (2012),

outcomes among transgender people, such as reduced suicide risk, lower rates of substance use, and increased adherence to HIV treatment.[20] California's analysis concluded that "[t]hese studies provide overwhelming evidence that removing discriminatory barriers to treatment results in significantly lower suicide rates" and that requiring coverage "will not only save insurers from the costs associated with suicide, but prevent significant numbers of transgender insureds from losing their lives."[21] Similarly, in 2013, the Commonwealth of Massachusetts Group Insurance Commission found that the benefits of gender-affirming medical treatment outweigh the costs, noting that "these additional expenses hold good value for reducing the risk of negative endpoints—HIV, depression, suicidality, and drug abuse."[22]

---

https://transgenderlawcenter.org/wp-content/uploads/2013/04/Economic-Impact-Assessment-Gender-Nondiscrimination-In-Health-Insurance.pdf.

[20] *Id.* at 10–11.

[21] *Id.*

[22] William V. Padula et al., *Societal Implications of Health Insurance Coverage for Medically Necessary Services in the U.S. Transgender Population: A Cost-Effectiveness Analysis*, 31(4) J. Gen. Intern. Med. 394, 394 (2016), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4803686.

Other studies have overwhelmingly shown that mental health for transgender minors drastically improves when they have access to healthcare. A longitudinal study that followed transgender adolescents from their intake at a gender clinic into young adulthood found that gender-affirming treatment resulted in significant improvement in global functioning and psychological wellbeing.[23] A 2021 survey of nearly 12,000 transgender and nonbinary youth found that, for youth under the age of 18, use of gender-affirming hormone therapy was associated with lower odds of recent depression and lower odds of attempting suicide in the past year compared to youth who wanted, but did not receive, such therapy.[24] Another

---

[23] Annelou L.C. de Vries et al., *Young Adult Psychological Outcome After Puberty Suppression and Gender Reassignment*, 134 Pediatrics 696 (2014), https://doi.org/10.1542/peds.2013-2958; *accord* Marijn Arnoldussen et al., *Self-Perception of Transgender Adolescents After Gender-Affirming Treatment: A Follow-Up Study Into Young Adulthood*, 9 LGBT Health 238 (2022), https://www.liebertpub.com/doi/epdf/10.1089/lgbt.2020.0494 (finding significant improvement in teens' self-worth after starting hormone replacement therapy).

[24] Amy E. Green et al., *Association of Gender-Affirming Hormone Therapy With Depression, Thoughts of Suicide, and Attempted Suicide Among Transgender and Nonbinary Youth*, 70 J. of Adolescent Health 643 (2021), https://www.jahonline.org/article/S1054-139X(21)00568-1/fulltext; *see also* Jack L. Turban et al, *Access To Gender-Affirming Hormones During Adolescence and Mental Health Outcomes Among Transgender Adults* 17(1) PLOS One 1, 8 (2022), https://journals.plos.org/plosone/article?id=10.1371/journal.pone.0261039.

2020 study found that transgender adolescents who receive gender-affirming care, including puberty blockers, have fewer emotional and behavioral problems than transgender adolescents who have not received treatment, and that transgender adolescents receiving gender-affirming medical care had similar rates of mental health problems, self-harm, and suicidality as their cisgender peers.[25] Conversely, undergoing puberty that does not align with one's gender identity and developing permanent undesired secondary sex characteristics is "often a source of significant distress" for transgender adolescents.[26] A 2020 study found that adolescents who begin gender-affirming treatment at later stages of puberty were over five times more likely to report depression and over four times more likely to have anxiety disorders than adolescents who seek treatment in early puberty.[27]

---

[25] Anna I. R. van der Miesen et al., *Psychological Functioning in Transgender Adolescents Before and After Gender-Affirmative Care Compared with Cisgender General Population Peers*, 66 J. Adolescent Health 699, 703 (2020).

[26] Ximena Lopez et al., *Statement on Gender-Affirmative Approach to Care from the Pediatric Endocrine Society Special Interest Group on Transgender Health*, 29 Current Op. Pediatrics 475, 480 (2017), https://pubmed.ncbi.nlm.nih.gov/28562420.

[27] Julia C. Sorbara et al., *Mental Health and Timing of Gender-Affirming Care*, 146 Pediatrics 1, 5 (2020), https://publications.aap.org/pediatrics/article/146/4/e20193600/79683/Mental-Health-and-Timing-of-Gender-Affirming-Care.

In spite of the weight of these findings by States and scientific researchers, Defendants contend that the Florida rule's distinction based on medical diagnosis "furthers the State's interest in protecting its citizens from unnecessary and experimental treatments that are grounded in low-quality evidence and that threaten to cause permanent harm like sterilization and infertility." Defendants' Motion for Summary Judgment at 31. But the bulk of Defendants' expert testimony is unreliable or irrelevant, and any remaining evidence is insufficient to meet their burden at summary judgment.[28] As explained above, amici States's overwhelming experience shows the opposite—that gender-affirming healthcare improves healthcare outcomes among transgender people and at minimal cost to the States. *See supra* at Section II.[29] Defendants' and Alabama amici's arguments to the contrary largely mischaracterize the scientific literature.[30]

---

[28] *See, e.g.*, Meredithe McNamara et al, A Critical Review of the June 2022 Florida Medicaid Report on the Medical Treatment of Gender Dysphoria 6–15 (2022) (explaining deficiencies in defendants' experts' testimony), https://medicine.yale.edu/lgbtqi/research/gender-affirming-care/florida%20report%20final%20july%208%202022%20accessible_443048_284_55174_v3.pdf.

[29] *See also* Padula et al., *supra* note 22, at 400; Zaker-Shahrak, *supra* note 19, at 10–11.

[30] *Compare* Defendants' Motion for Summary Judgment at 15–23 (dismissing expert medical organizations as "advocacy organization[s]" and

In short, removing discriminatory barriers to healthcare improves health outcomes for transgender residents, especially minors, and does so at little cost to States.

## CONCLUSION

The court should deny Defendants' motion for summary judgment.

---

promoting their own advocates) *and* Alabama Amicus at 4–15 (same) *with* McNamara, *supra* note 28, at 16–19 (rebutting critiques of positive studies); *id.* at 13–14 (explaining that observational studies are recognized as an appropriate basis for clinical recommendations under the GRADE analytical framework defendants' experts purport to use); *id.* at 14 (explaining that randomized clinical trials in which some transgender people would be denied gender-affirming care would violate medical ethics); *id.* at 14, 15–16 (explaining that many common medical procedures and treatments, including many surgeries and certain drugs to lower cholesterol, are not supported by randomized clinical trials either); *id.* at 19–21 (explaining that most pediatric medications are prescribed "off label"); *id.* at 21–23 (explaining deficiencies in "desistence" arguments), *id.* at 23 (discussing 2022 study that found regret rate less than 2.5% for gender-affirming care); *id.* at 23–25 (critiquing "social contagion" explanations for gender dysphoria as not credible); *id.* at 25–27 (explaining that claims comorbid mental health conditions cause gender dysphoria have "no foundation in science"); *id.* at 27–28 (explain that psychotherapy, alone, is generally an inadequate treatment for persistent gender dysphoria).

Dated:  April 28, 2023      Respectfully submitted,

ROB BONTA
Attorney General of California
RENU R. GEORGE
Senior Assistant Attorney General

*/S/ KATHLEEN BOERGERS*

KATHLEEN BOERGERS
Supervising Deputy Attorney General
LILY WEAVER
STEPHANIE YU
Deputy Attorneys General
*Attorneys for Amicus Curiae State of
California*

[*additional counsel listed on subsequent page*]

16

Additional Counsel

KATHLEEN JENNINGS
Attorney General
Delaware

BRIAN L. SCHWALB
Attorney General
District Of Columbia

KWAME RAOUL
Attorney General
Illinois

ANTHONY G. BROWN
Attorney General
Maryland

ANDREA JOY CAMPBELL
Attorney General
Commonwealth of Massachusetts

LETITIA JAMES
Attorney General
New York

ELLEN F. ROSENBLUM
Attorney General
Oregon

PETER F. NERONHA
Attorney General
Rhode Island

17

## CERTIFICATE OF WORD COUNT

According to the word processing system used to prepare this brief, Microsoft Word, there are 3,118 total words contained within the brief.

*/s/ Kathleen Boergers*
Kathleen Boergers

## CERTIFICATE OF SATISFACTION OF
## ATTORNEY-CONFERENCE REQUIREMENT

Pursuant to Local Rule 7.1(B), counsel for *amici* conferred with counsel for the parties on April 28, 2023. Plaintiffs and Defendants consented to the filing of *amici*'s brief.

*/s/ Kathleen Boergers*
Kathleen Boergers

## CERTIFICATE OF SERVICE

I hereby certify that, on April 28, 2023, this brief was filed through the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Kathleen Boergers*
Kathleen Boergers