IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

AUGUST DEKKER, *et al.,*

        *Plaintiffs*,

v.

JASON WEIDA, *et al.,*

        *Defendants*.

Case No. 4:22-cv-325-RH-MAF

**AMENDED JOINT PRETRIAL STIPULATIONS**

Plaintiffs August Dekker, Brit Rothstein, Susan Doe, Jane Doe, John Doe and K.F., by and through his parent and next friend, Jade Ladue, and Defendants Jason Weida and the Florida Agency for Health Care Administration ("AHCA"), jointly submit this Pretrial Stipulation pursuant to the Court's Scheduling Order dated November 15, 2022 [ECF No. 67].

## I.    Basis of Federal Jurisdiction

The parties agree this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action arises under the Constitution and the laws of the United States.

## II.   Brief General Statement of Each Party's Case

### A. Plaintiffs' Statement

Empirical evidence and decades of clinical experience demonstrate that medical care for the treatment of gender dysphoria, also known as gender-affirming care, is medically necessary, safe, and effective for both transgender adolescents and adults with gender dysphoria. Gender-affirming care is neither experimental nor investigational; it is the prevailing standard of care, accepted and supported by every major medical organization in the United States.

Until August 2022, AHCA provided Medicaid coverage for gender-affirming care, including puberty-delaying medications, hormone therapy, and gender-affirming surgeries, for adolescents and adults for whom it was medically necessary to treat gender dysphoria. Between 2017 and 2021 alone, AHCA covered over 6,000 prescriptions for hormone therapy; covered at least 67 surgeries to treat gender dysphoria during that time; and covered over 405 prescriptions for puberty-delaying medications.

In August 2022, amidst a wave of anti-LGBTQ laws supported by Governor DeSantis, including but not limited to the "Don't Say Gay or Trans" laws and policies restricting access to gender-affirming care, AHCA reversed its prior practice and promulgated a rule that categorically banned coverage for all medical treatments intended to treat gender dysphoria. The change in policy did

not stem from a concern over the efficacy or necessity of gender-affirming care. Indeed, AHCA had already determined that some this of care was effective and safe, and had covered it as necessary for thousands of transgender Medicaid beneficiaries. The change was fueled by animus against transgender people and political opportunism to wage a social issue war based on the Biden Administration's position in favor of gender-affirming care. The Office of Governor DeSantis instructed AHCA and the Florida Department of Health ("FDOH") to create a policy against this care.

In April 2022, the FDOH issued a set of guidelines titled "Treatment of Gender Dysphoria for Children and Adults." The FDOH Guidelines recommended against prescribing puberty-delaying medication and hormone treatments to children and adolescents, and even counseled against allowing minors to socially transition. Simultaneously, AHCA formally initiated a review of gender-affirming care called a GAPMS review that was already in the works after a directive from the Governor. Through this process AHCA determined that gender-affirming medical care does not conform to GAPMS ("generally accepted professional medical standards") and is experimental and investigational, notwithstanding a multitude of studies and decades of clinical experience documenting the necessity, safety, and efficacy of this care. Based on the review, and the GAPMS Report generated by the review, AHCA

proposed its categorical ban on gender-affirming care in June 2022, which was adopted verbatim in August 2022 ("Challenged Exclusion").

The evidence shows that the GAPMS process was a farce intended to further the Governor's political agenda against gender-affirming care and the transgender community. Indeed, the review was based on AHCA's unprecedented hiring of outside consultants to assist in the GAPMS process, and only considered the views of opponents of gender-affirming care, who represent extreme outliers within the overwhelming consensus of major medical organizations and health care professionals who actually treat and study gender dysphoria and transgender care. The findings in GAPMS Report are not reasonable based on current medical knowledge. See Rush v. Parham, 625 F.2d 1150 (5th Cir. 1980).

Separately, the Challenged Exclusion violates various provisions of the Medicaid Act and the U.S. Constitution. First, the Challenged Exclusion violates the Medicaid Act's EPSDT requirements because it denies coverage of medically necessary treatments for Medicaid beneficiaries under the age of 21. Second, the Challenged Exclusion violates the Medicaid Act's comparability requirements because it only denies coverage when the specific treatment is used to treat gender dysphoria. Coverage is still available when the treatment is used for other indications. Third, the Challenged Exclusion violates Section 1557 of

4

the Affordable Care Act because it discriminates against Plaintiffs based on their sex, including sex stereotypes and beneficiaries' transgender status. Fourth, the Challenged Exclusion violates the Equal Protection Clause of the U.S. Constitution because it facially discriminates based on sex and transgender status, was otherwise enacted for purposeful discrimination, and reflects a bare desire to harm transgender people.

<u>Defendants' Statement</u>

This case is about the State of Florida's policy choice, backed by evidence-based science, to deny Medicaid reimbursement for certain treatments for gender dysphoria. That choice was reasonable, constitutional, and statutorily permissible: the treatments are experimental. In making this decision, the State joins the ranks of countries—Sweden, Finland, Norway, the United Kingdom, France, Australia, and New Zealand—that urge caution when offering these treatments.

## III.   Witness List

Plaintiffs' amended witness list is attached to this Pretrial Stipulation as Appendix [1]. Defendants' amended witness list is attached to this Pretrial Stipulation as Appendix [2].

## IV.   Exhibit Lists

Plaintiffs' amended exhibit list is attached to this Pretrial Stipulation as

Appendix [3]. Defendants' amended exhibit list is attached to this Pretrial Stipulation as Appendix [4]. A joint stipulated exhibit list is being filed separately.

**V.     Stipulations of Fact and Agreement on Issues**

1.     Each Plaintiff received health coverage through Florida's Medicaid program as of October 2022.

2.     Prior to the enactment of the Challenged Exclusion, Florida Medicaid covered certain treatments of gender dysphoria.

A. <u>Florida Medicaid</u>

3.     The State of Florida participates in the federal Medicaid program. AHCA is the single state agency in Florida that is responsible for administering and implementing Florida's Medicaid program consistent with the requirements of federal law.

4.     AHCA receives federal financial assistance from the U.S. Department of Health and Human Services ("HHS"), including through the federal Medicaid program.

5.     To qualify as medically necessary, a service must meet all the conditions set out in section 2.83 of Fla. Admin. Code R. 59G-1.010.

6.     One of the conditions to be met under section 2.83 is that the service must be consistent with generally accepted professional medical standards and

not experimental or investigational.

7.     To determine whether a particular service is consistent with generally accepted professional medical standards, AHCA must consider: (a) Evidence-based clinical practice guidelines; (b) Published reports and articles in the authoritative medical and scientific literature related to the health service (published in peer-reviewed scientific literature generally recognized by the relevant medical community or practitioner specialty associations); (c) Effectiveness of the health service in improving the individual's prognosis or health outcomes; (d) Utilization trends; (e) Coverage policies by other creditable insurance payor sources; (f) Recommendations or assessments by clinical or technical experts on the subject or field.

8.     After considering those factors, AHCA must submit a report with recommendations to the Deputy Secretary for Medicaid for review.

9.     The Deputy Secretary makes a final determination as to whether the health service is consistent with generally accepted professional medical standards and not experimental or investigational.

    B. <u>Gender Dysphoria and the June 2022 GAPMS Report on the Treatment of Gender Dysphoria</u>

10.     Gender dysphoria is a diagnosis contained in the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental*

*Disorders, 5th Edition* ("DSM-5").

11.     On March 2, 2022, HHS issued guidance on gender-affirming care ("HHS Guidance").

12.     HHS issued an additional factsheet on gender-affirming care later that month ("HHS Factsheet").

13.     AHCA retained seven individuals to assist with its determination regarding coverage for gender-affirming care: Dr. Miriam Grossman, Dr. Andre Van Mol, Dr. Romina Brignardello-Petersen, Dr. James Cantor, Dr. Quentin Van Meter, Dr. Patrick Lappert, and Dr. G. Kevin Donovan.

14.     On April 20, 2022, the FDOH issued a set of guidelines titled "Treatment of Gender Dysphoria for Children and Adults" ("FDOH Guidelines").

15.     The FDOH issued the FDOH Guidelines in response to guidance issued by HHS.

16.     The FDOH Guidelines stated that:

    a.  Social gender transition should not be a treatment option for children or adolescents;

    b.  Anyone under 18 should not be prescribed puberty delaying medication or hormone therapy; and

    c.  Gender reassignment surgery should not be a treatment option

for children or adolescents.

17.    On April 20, 2022, then-Secretary Simone Marstiller sent a letter to Tom Wallace, AHCA's Deputy Secretary for Medicaid, requesting that AHCA determine if the treatments addressed in the FDOH Guidelines "are consistent with generally accepted professional medical standards and not experimental or investigational."

18.    When medically necessary to treat a condition other than gender dysphoria, Florida Medicaid covers puberty-delaying medication, hormone antagonists, mastectomies, reduction mammoplasties, and breast reduction surgeries; hysterectomies and oophorectomy procedures; vaginoplasty procedures; orchiectomy, penectomy, and phalloplasty.

19.    On or about April 20, 2022, AHCA formally tasked Matthew Brackett with conducting the GAPMS review of gender-affirming care, with assistance from two AHCA employees Devona Pickle and Nai Chen.

20.    At the time, Brackett, Pickle and Chen were part of the Canadian Prescription Drug Importation Plan team.

21.    AHCA retained Drs. Van Mol and Grossman as outside consultants to assist with the GAPMS process.

22.    While Brackett was conducting the GAPMS review, the five other consultants hired by AHCA— Dr. Romina Brignardello-Petersen, Dr. James

9

Cantor, Dr. Quentin Van Meter, Dr. Patrick Lappert, and Dr. G. Kevin Donovan—drafted their own reports.

23.    On June 2, 2022, Defendants published their report, "Florida Medicaid: Generally Accepted Professional Medical Standards Determination on the Treatment of Gender Dysphoria" (hereinafter "GAPMS Report").

24.    The GAPMS Report concluded that gender-affirming medical treatments, including puberty blockers, hormone therapy, and surgery "do not conform to GAPMS [("generally accepted professional medical standards")] and are experimental and investigational."

### C. The Challenged Exclusion

25.    On June 17, 2022, AHCA issued a Notice of Proposed Rule seeking to amend Florida Administrative Code 59G-1.050 to prohibit Florida Medicaid from covering "services for the treatment of gender dysphoria," including: "1. Puberty blockers; 2. Hormones and hormone antagonists; 3. Sex reassignment surgeries; and 4. Any other procedures that alter primary or secondary sexual characteristics."

26.    The Proposed Rule also stated that, "For the purpose of determining medical necessity, including Early and Periodic Screening, Diagnosis, and Treatment (EPSDT)," the aforementioned services "do not meet the definition of medical necessity in accordance with Rule 59G-1.010, F.A.C."

27.     On July 8, 2022, AHCA held a public hearing on the proposed rule.

28.     AHCA hired Dr. Andre Van Mol, Dr. Quentin Van Meter and Dr. Miriam Grossman to participate in the public hearing as panelists.

29.     The individuals who participated in the July 8 hearing included AHCA employees Jason Weida, Cole Gearing, Matt Brackett and Shena Grant.

30.     Defendants filed the Challenged Exclusion as a final rule for adoption on August 1, 2022.

31.     Notice of the Final Adopted Version of the Challenged Exclusion was published on FLRules.com on August 10, 2022 and stated that the Challenged Exclusion would become effective on August 21, 2022.

32.     The Challenged Exclusion, in its final adopted form within Florida Administrative Code 59G-1.050, states as follows:

> (7) Gender Dysphoria.
>
> (a) Florida Medicaid does not cover the following services for the treatment of gender dysphoria:
>
> 1. Puberty blockers;
>
> 2. Hormones and hormone antagonists;
>
> 3. Sex reassignment surgeries; and
>
> 4. Any other procedures that alter primary or secondary sexual characteristics.

33.     Coverage for each of the four services listed within the Challenged Exclusion is still available when those services are medically necessary for the treatment of a condition other than gender dysphoria.

## VI.   Statement of Factual Issues to be Litigated

### A. Plaintiffs' Statement of Factual Issues to be Litigated

1.     The Defendants' Challenged Exclusion targets transgender Medicaid beneficiaries, including Plaintiffs August Dekker, Brit Rothstein, Susan Doe, and K.F., by excluding from Medicaid coverage the medically necessary treatments for their gender dysphoria.

2.     At the request of the Governor and FDOH, AHCA initiated a biased GAPMS process to review treatments for gender-affirming care.

3.     The GAPMS process was a farse intended to further the Governor's political agenda against gender-affirming care and the transgender community.

4.     Defendants determined the outcome of the review process before it began.

5.     The GAPMS Process was a pretextual means by which to eliminate Medicaid coverage for care that only transgender people.

6.     Documents produced in discovery by the Office of the Surgeon General demonstrate the planned "pathway" laid out for the strategic exclusion of gender-affirming healthcare in Florida. One flow chart illustrated the steps

between step 1, "Surgeon General issues guidance on Gender Dysphoria" to step 6, "AHCA Contract Amendments/Care Effectively Banned." Another flow chart illustrated the strategic plan, beginning with the "Surgeon General Issues Guidance" in April, 2022, followed by the GAPMS process in April-early June 2022, followed by a "Legislative Proposal Announced Following AHCA Report" and "Rulemaking" by the Boards of Medicine, Osteopathic Medicine, Psychiatry, and Psychology, followed by rulemaking June-September 2022 concluding with "AHCA Contract Amendments/Care Effective Banned."

7.      Defendants instructed the drafter of the GAPMS Report, Matthew Brackett, to produce a report that would support a categorical ban on Medicaid coverage of treatments for gender dysphoria.

8.      The consultants hired by AHCA for purposes of the GAPMS process—namely, Dr. Grossman, Dr. Van Mol, Dr. Van Meter, Dr. Donovan, Dr. Cantor, Dr. Brignardello-Petersen and Dr. Lappert—were chosen because of their opposition to gender-affirming care.

9.      Defendants were connected with the consultants they hired through Michelle Cretella, the Executive Director of the American College of Pediatricians (ACPeds), an organization that has been designated as a hate group due to its anti-LGBTQ+ positions.

10.      Dr. Van Mol provided AHCA with a document that served as a first

13

draft of the GAPMS Report.

11.    In drafting the GAPMS Report, Defendants did not properly consider all the factors that it was required to consider under Fla. Admin. Code R. 59G-1.035.

12.    Once the report was written, it was not properly reviewed by Agency leadership but instead was quickly signed off on within 24 hours.

13.    The June 2022 GAPMS Report does not present an honest and accurate assessment of the status of the current evidence and practice guidelines.

14.    Empirical evidence and decades of clinical experience demonstrate that medical care for the treatment of gender dysphoria is medically necessary, safe, and effective for both transgender adolescents and adults with gender dysphoria.

15.    Medical treatment for gender dysphoria, including puberty-delaying medications, hormones, and surgery, is neither experimental nor investigational.

16.    Gender-affirming care is the prevailing standard of care, accepted and supported by every major medical organization in the United States.

17.    Medical treatment for gender dysphoria, including puberty-delaying medications, hormones, and surgery, is safe.

18.    Medical treatment for gender dysphoria, including puberty-

delaying medications, hormones, and surgery, is effective in treating a person's gender dysphoria.

19.    Gender-affirming care has been documented to improve the mental health, wellbeing, and overall quality of life of transgender people with gender dysphoria.

20.    By denying coverage for medical treatment for gender dysphoria, Defendants effectively categorically deny access to medically necessary care to thousands of Floridians who lack other means to pay for such care.

21.    Defendants' actions come within the context of a series of measures the State has adopted targeting transgender people for discrimination.

22.    Defendants' actions stand in sharp contrast not just to the well-established evidence and widely accepted view of the medical and scientific community in the United States, but also to the policies of the vast majority of states, which provide Medicaid coverage for gender-affirming care.

23.    If allowed to remain in effect, the Challenged Exclusion will have dire physical, emotional, and psychological consequences for transgender Medicaid beneficiaries.

24.    Defendants    purposefully    targeted    transgender    people    for discrimination.

25.    Defendants    provide    coverage    for    the    same    puberty-delaying

medications, hormones, and surgery when used to treat conditions other than gender dysphoria.

26. By enforcing the Challenged Exclusion, Defendants treat transgender Medicaid beneficiaries differently than other Medicaid beneficiaries.

27. The safety profile of puberty-medications, hormones, and surgery is the same regardless of whether it is used to treat gender dysphoria.

B. Defendants' Statement of Factual Issues to be Litigated

1. "[W]hether, based on current medical knowledge, the state's determination that" the excluded treatments "are experimental is reasonable." ECF No. 64 at 4.

**VII.  Statement of Legal Issues for Determination by the Court**

1. Whether, based on current medical knowledge, the Defendants' determination that certain gender-affirming medical treatments, including puberty-delaying medications, hormones, and surgery, are experimental is reasonable.

2. Whether Defendants, by promulgating the Challenged Exclusion, have discriminated against Plaintiffs on the basis of sex in violation of Section 1557.

3. Whether Defendants, by promulgating the Challenged Exclusion,

have discriminated against Plaintiffs in violation of the Fourteenth Amendment of the U.S. Constitution.

4.      Whether Defendants, by promulgating the Challenged Exclusion, have wrongfully denied necessary Medicaid services to Plaintiffs Brit Rothstein, Susan Doe and K.F. in violation of the EPSDT provisions of the Medicaid Act, 42 U.S.C. §§ 1396a(a)(10)(A), 1396a(a)(43)(C), 1396d(a)(4)(B), and 1396d(r).

5.      Whether Defendants, by promulgating the Challenged Exclusion, which denies coverage for services for the treatment of gender dysphoria while covering the same services to treat different diagnoses, violate the Medicaid Act's comparability requirements, 42 U.S.C. § 1396a(10)(B)(i).

### VIII. Statement of any Disagreement on Admissibility of Evidence and Application of Federal Rules of Procedure or Evidence

The parties' respective objections to certain exhibits are set forth on the amended exhibit lists attached to this Pretrial Stipulation. Other evidentiary issues may be presented in the parties' motion *in limine*. The parties have no other known disagreements regarding the admissibility of evidence or application of the Federal Rules of Procedure or Evidence.

### IX.    Motions that Remain Pending

No motions are pending as of May 8, 2023.

## X.     Estimated Length of Trial

The parties estimate that trial of this matter will require a total of ten (10) trial days.

Dated: May 8, 2023

Respectfully submitted for Plaintiffs,

/s/ Gary J. Shaw

**PILLSBURY WINTHROP SHAW PITTMAN, LLP**

**Jennifer Altman** (Fl. Bar No. 881384)
**Shani Rivaux** (Fl. Bar No. 42095)
600 Brickell Avenue, Suite 3100
Miami, FL 33131
(786) 913-4900
jennifer.altman@pillsbury.com
shani.rivaux@pillsbury.com

**William C. Miller***
**Gary J. Shaw***
1200 17th Street N.W.
Washington, D.C. 20036
(202) 663-8000
william.c.miller@pillsburylaw.com

**Joe Little***
500 Capitol Mall, Suite 1800
Sacramento, CA 95814
(916) 329-4700
joe.little@pillsburylaw.com

**LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.**

**Omar Gonzalez-Pagan***
120 Wall Street, 19th Floor
New York, NY 10005
(212) 809-8585
ogonzalez-pagan@lambdalegal.org

**Carl S. Charles***
1 West Court Square, Suite 105
Decatur, GA 30030
(404) 897-1880
ccharles@lambdalegal.org

**SOUTHERN LEGAL COUNSEL, INC.**

**Simone Chriss** (Fl. Bar No. 124062)
**Chelsea Dunn** (Fl. Bar No. 1013541)
1229 NW 12th Avenue
Gainesville, FL 32601
(352) 271-8890
Simone.Chriss@southernlegal.org
Chelsea.Dunn@southernlegal.org

**NATIONAL HEALTH LAW PROGRAM**

**Abigail Coursolle**\*
3701 Wilshire Boulevard, Suite 315
Los Angeles, CA 90010
(310) 736-1652
coursolle@healthlaw.org

**Catherine McKee**\*
1512 E. Franklin Street, Suite 110
Chapel Hill, NC 27541
(919) 968-6308
mckee@healthlaw.org

**FLORIDA        HEALTH        JUSTICE PROJECT**

**Katy DeBriere** (Fl. Bar No. 58506)
3900 Richmond Street
Jacksonville, FL 32205
(352) 278-6059
debriere@floridahealthjustice.org

\* *Admitted pro hac vice*
*Counsel for Plaintiffs*


Respectfully submitted for Defendants,

*/s/ Michael Beato*
Mohammad O. Jazil (FBN: 72556)
Gary V. Perko (FBN: 855898)
Michael Beato (FBN: 1017715)
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 S. Monroe St. Suite 500
Tallahassee, FL 32301
mjazil@holtzmanvogel.com
gperko@holtzmanvogel.com
mbeato@holtzmanvogel.com
Phone No.: (850) 274-1690
Fax No.: (540) 341-8809

*Counsel for Defendants Secretary Weida*
*and Florida Agency for Healthcare*
*Administration*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing and the documents referenced therein were served by email on May 8, 2023, on all counsel of record:

Mohammad O. Jazil (FBN 72556)
Gary V. Perko (FBN 855898)
Michael Beato (FBN 1017715)
mjazil@holtzmanvogel.com
gperko@holtzmanvogel.com
mbeato@holtzmanvogel.com
HOLTZMAN VOGEL BARANTORCHINSKY & JOSEFIAK PLLC
119 S. Monroe St., Suite 500
Tallahassee, FL 32301

**COUNSEL FOR DEFENDANTS**

*/s/ Gary J. Shaw*
**ATTORNEY FOR PLAINTIFFS**