IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

AUGUST DEKKER, *et al.*,

        *Plaintiffs*,

v.

JASON WEIDA, *et al.*,

        *Defendants*.

Case No. 4:22-cv-00325-RH-MAF

**PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT**

Pursuant to Fed. R. Civ. P. 15(a)(2), Plaintiffs August Dekker, Brit Rothstein, Susan Doe, and K.F. ("the Plaintiffs") move this Court for leave to file the First Amended Complaint ("FAC"), attached hereto as Exhibit 1, against Defendants Sec. Jason Weida and the Agency for Health Care Administration ("AHCA"). As grounds therefore, Plaintiffs state:

1. This lawsuit challenges Defendants' prohibition of Medicaid coverage for medically necessary treatments for gender dysphoria

2. Defendants' prohibition was first adopted under Fla. Admin. Code R. 59G-1.050(7) ("AHCA's Rule") in August 2022.

3. Plaintiffs are transgender Medicaid beneficiaries diagnosed with

1

gender dysphoria who are entitled to and have received Florida Medicaid coverage of medically necessary treatment for their respective gender dysphoria diagnoses. The AHCA Rule took away that coverage, resulting in the denial of access to necessary medical care, and causing significant harm to Plaintiffs and other transgender Medicaid beneficiaries across Florida.

4. Specifically, the AHCA Rule prohibits coverage for "the following services for the treatment of gender dysphoria: 1. Puberty blockers; 2. Hormones and hormone antagonists; 3. Sex reassignment surgeries; and 4. Any other procedures that alter primary or secondary sexual characteristics."

5. On May 4, 2023, the Florida legislature passed Florida Senate Bill 254, titled "An act relating to treatments for sex reassignment" ("SB 254"), which includes Section 3, "Prohibited use of state funds." Section 3 codifies the AHCA Rule into Florida law, prohibiting "a governmental entity . . . [or] a managed care plan providing services under part IV of chapter 409" from expending state funds on "sex-reassignment prescriptions or procedures" as defined in Section 4.

6. Similar to the AHCA Rule, Section 4 of SB 254 defines the prohibited care as: (1) the "prescription or administration of puberty blockers for the purpose of attempting to stop or delay normal puberty in order to affirm a person's perception of his or her sex if that perception is inconsistent with the person's sex" assigned at

2

birth; (2) the "prescription or administration of hormones or hormone antagonists to affirm a person's perception of his or her sex if that perception is inconsistent with the person's sex" assigned at birth; and (3) any "medical procedure, including a surgical procedure, to affirm a person's perception of his or her sex if that perception is inconsistent with the person's sex."

7. SB 254 contains additional provisions borne of discriminatory animus which Plaintiffs do not seek to challenge in the FAC.

8. SB 254 was enacted into law on May 17, 2023. Plaintiffs filed this Motion the very same day.

9. Even in the absence of AHCA's Rule, SB 254 would independently prevent Florida Medicaid from covering some of Plaintiffs' medically necessary gender-affirming care.

10. Amendment is both proper and necessary for Plaintiffs to secure complete prospective relief, i.e., coverage for gender affirming care through Florida Medicaid.

**WHEREFORE**, Plaintiffs request that the Court grant them leave to file the First Amended Complaint.

## **MEMORANDUM OF LAW**

### I.     **LEGAL STANDARD**

When a plaintiff seeks to amend its complaint after the defendant has answered, it may do so only by leave of court or by written consent of the adverse party; "the court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "[D]istrict courts should generally exercise their discretion in favor of allowing amendments to reach the merits of a dispute." *Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp.*, LLC, 7 F.4th 989, 1000 (11th Cir. 2021); *see also Shipner v. E. Air Lines, Inc.*, 868 F.2d 401, 407 (11th Cir. 1989) ("This policy of rule 15(a) in liberally permitting amendments to facilitate determination of claims on the merits circumscribes the exercise of the district court's discretion; thus, unless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial."). Thus, the Court should deny leave to amend only where: (1) there has been undue delay or bad faith; (2) allowing amendment would cause undue prejudice to the opposing party; or (3) amendment would be futile. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).[1] Additionally, when a party moves to amend their complaint after the

---

[1] While inapplicable here, courts also consider a party's repeated failure to cure deficiencies by amendments previously allowed. *See id.*

deadline for doing so set by the district court in its scheduling order, they must also "show good cause why leave to amend the complaint should be granted." *MidAmerica C2L Inc. v. Siemens Energy Inc.*, No. 20-11266, 2023 WL 2733512, at *13 (11th Cir. Mar. 31, 2023).

## II. GOOD CAUSE EXISTS FOR A POST-DEADLINE AMENDMENT.

The scheduling order in this case set a deadline of November 28, 2022 for amending the pleadings. (*See* ECF 66 at 2; ECF 67 at ¶¶ 17, 18.) While that deadline has passed, Plaintiffs have good cause to amend even at this hour. Fed. R. Civ. P. 16(b)(4). Good cause exists to modify a scheduling order when "the schedule cannot be met despite the diligence of the party seeking the extension." *See Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (cleaned up); *see also Romero v. Drummond Co.,* 552 F.3d 1303, 1319 (11th Cir. 2008) ("To establish good cause, the party seeking the extension must have been diligent."). Here, Plaintiffs have been diligent, and there is nothing that Plaintiffs could have done to meet the deadline. SB 254 was signed into law on the morning of May 17, 2023. (*See* https://www.flsenate.gov/Session/Bill/2023/254/.) As this Court recognized on the first day of trial, Plaintiffs could not have challenged SB 254 at an earlier time. (Trial Tr. May 9, 2023, at 244:12-13.) Courts in this Circuit recognize that a plaintiff has good cause to supersede a scheduling order and diligently amend a pleading

5

when the amendment is based on new information. *See, e.g., Cent. Yacht Agent, Inc. v. Virgin Island Charter Yachts*, No. 07-61448-CIV-MARRA/JOHNSON, 2008 WL 11333152, at *2 (S.D. Fla. Apr. 8, 2008) (finding Plaintiff established good cause where he sought to add counts to the complaint based on Defendants' conduct that occurred after the deadline to amend); *Berk v. Equifax, Inc.,* 1:20-CV-1279-TWT-CCB, 2021 WL 2391466 at *4 (N.D. Ga. 2021) (finding good cause where "Plaintiffs could not have, with due diligence, met the deadline. . . because Plaintiffs could not have known of their new factual allegations" until after the deadline). Here, because Plaintiffs diligently filed this Motion the very same day that the Governor signed SB 254, good cause exists for amendment notwithstanding the scheduling order.

### III. DEFENDANTS CANNOT SHOW BAD FAITH OR UNDUE DELAY, PREJUDICE, OR FUTILITY.

#### A. *Bad Faith or Undue Delay*

A plaintiff acts in bad faith in seeking to amend the pleadings at a late stage when it seeks to "smuggle in issues for the purpose of surprising the defense at the trial." *Wallin v. Fuller*, 476 F.2d 1204, 1211 (5th Cir. 1973). SB 254 became law just hours before this Motion's filing. As noted above, the passage of this legislation is well outside of Plaintiffs' control. Moreover, Plaintiffs filed the instant motion the very same day as its enactment. Thus, there has been no delay, let alone an undue

6

one. Plaintiffs' proposed FAC only seeks to obtain complete relief, which is suddenly no longer possible under the original Complaint.

### B. *Undue Prejudice*

"Absent [undue] prejudice to the opposing party, the mere fact that an amendment is offered late in the case is not enough to bar it." *Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*, 743 F.2d 1039, 1044–45 (4th Cir. 1984) (district court abused discretion in denying complaint amendment made on day of trial when defendant was previously on notice of the circumstances necessitating amendment). The "undue" distinction is important, as "all amendments present new facts, claims, or legal theories that are likely to prejudice the defendant in some way." *Meeks v. McClung*, No. 2:20-CV-00583, 2023 WL 424280, at *2 (S.D.W. Va. Jan. 26, 2023) (quotations omitted). To determine whether an amendment would be prejudicial, courts consider "the nature of the amendment, its purpose, and the time when the amendment was filed." *D.H. Pace Co., Inc. v. OGD Equip. Co., LLC*, 515 F. Supp. 3d 1316, 1322 (N.D. Ga. 2021), reconsideration denied, No. 1:20-CV-410-TCB, 2021 WL 2516224 (N.D. Ga. Mar. 16, 2021).

Moreover, undue prejudice is not an inherent result of late-stage amendments, including the proposed FAC here. Such amendments are judged by whether they would require a defendant "to engage in significant new preparation," *Dannebrog*

7

*Rederi AS v. M/Y True Dream*, 146 F. Supp. 2d 1307, 1316 (S.D. Fla. 2001), or if the amendments allege "materially new facts" or "materially different claims" of which the Defendant was not already aware. *See Chernys v. Standard Pac. of S. Fla., G.P. Inc.*, No. 07-21605-CIV, 2008 WL 11331711, at *1–2 (S.D. Fla. Feb. 13, 2008); *see also Nance v. Gulf Oil Corp.*, 817 F.2d 1176, 1179 (5th Cir. 1987) ("eleventh hour amendment" did not prejudice defendant when amendment would not require defendant to "adduce new defensive facts, to develop materially different defenses, to conduct more discovery, or call other witnesses").

Here, Defendants cannot show any undue prejudice resulting from Plaintiffs' proposed amendments.[2] In a trial regarding the lawfulness of both AHCA's rule and Section 3 of SB 254, the same parties already present here can be expected to make the exact same arguments, call the same experts, and rely on the same universe of evidence, bolstered only by judicially noticeable legislative facts from a limited legislative record. Defendants' arguments regarding the AHCA Rule's lawfulness will not differ largely from those they will make in defense of Section 3 of SB 254,

---

[2] The FAC also includes minimal and necessary updates to allegations regarding Plaintiffs' receipt of gender affirming care where the original Complaint's allegations are no longer accurate and complete. (*See, e.g.*, Ex. 1 at ¶¶ 181-82, 209, 244, (amending Complaint to reflect that Rothstein had surgery that was not covered by Medicaid and that Doe and K.F. are ready for hormone therapy.) Defendants have had ample opportunity to elicit these facts during discovery and thus cannot fairly be said to be prejudiced by these minimal changes.

8

which rests upon the same justifications as ACHA's rule.[3] Indeed, the parties appear to be largely in agreement that amendment here would be the most efficient way to deal with SB 254, particularly when the parties will be proceeding on the evidentiary record as developed to date. And to the extent that Defendants are affected by amendment, they have been aware of this law's imminent enactment for as long as Plaintiffs. (*See* ECF 153 at 26.)

In sum, whatever inconvenience Defendants experience cannot be described as undue prejudice, especially in light of the need for efficiency in adjudicating Plaintiffs' claims seeking access to medically necessary treatments for gender dysphoria.

### C. *Futility*

A proposed amendment is futile when the complaint as amended would not survive a Rule 12(b)(6) motion to dismiss. *Hoke v. Lyle*, 716 F. App'x 930, 931 (11th Cir. 2018). "To survive a motion to dismiss, a complaint must state on its face a plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[3] Indeed, ACHA's Rule was merely the first step in the State's planned "Gender Dysphoria/Transgender Health Care Policy Pathway," which began with the Surgeon General's Guidance on Gender Dysphoria and culminated with the legislative proposal that Plaintiffs seek to challenge in their FAC. (Ex. 296, ECF 182-36.)

9

defendant is liable for the misconduct alleged.'" *Est. of Hand by & through Hand v. Fla. Dep't of Corr.*, No. 21-11542, 2023 WL 119426, at *5 (11th Cir. Jan. 6, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs meet that pleading standard. Plaintiffs' original complaint went unchallenged under Rule 12(b)(6), and this Court's prior orders clearly indicate that Plaintiffs' claims have much more than the required facial plausibility. (See ECF 64; ECF 212 (denying defendants' motion for summary judgment.) *See also Estate of Hand*, 2023 WL 119426, at *7-8 (finding that detailed allegations that require some evaluation of the evidence are not futile). The enactment of SB 254 does nothing to change that analysis.

i. Access to Gender-Affirming Care for Adults under SB 254

SB 254 does not prohibit the provision of gender-affirming medical care to adults with gender dysphoria.  Indeed, SB 254 only affects the provision of gender-affirming medical care to adults to the extent that it requires specific informed consent procedures for individuals eighteen years of age or older. *See* SB 254, § 5, at § 456.52(2) (2023) (requiring informed consent be "voluntary, informed, and in writing on forms adopted by the Board of Medicine and the Board of Osteopathic Medicine" (the "Boards") for "sex reassignment prescriptions or procedures" provided to patients over the age of 18). Consent to these treatments is considered voluntary and informed if a physician has "[i]nformed the patient of the nature and

risks of the prescription or procedure"; provided the informed consent form adopted by the Boards; and "received the patient's written acknowledgement . . .that the information required to be provided under this subsection has been provided." *Id.* The penalties imposed for doctors who violate these limitations include disciplinary action by the Board of Medicine or the Board of Osteopathic Medicine and/or a misdemeanor of the first degree. SB 254, § 5, at § 456.52(5) (2023).

The informed consent provisions do not apply to renewals of prescriptions for puberty delaying medications or hormone therapies. *See* SB 254, § 4, at § 456.001(9)(a)(1)-(2); § 5, at § 456.52(4). Accordingly, they do not apply to adult Plaintiffs August Dekker and Brit Rothstein, who have already been prescribed hormones and require only renewals of their prescriptions. (Trial Tr. May 11, 2023, at 636:9-11, 643:3-4, 662:7-11, 666:10-12.)  In any event, even if Mr. Dekker and Mr. Rothstein required new or different prescriptions to treat their gender dysphoria, they would be able to access these prescriptions by providing informed consent as required under the law. *See id.* § 456.52(4). (*See* Trial Tr. May 11, 2023, at 643:3-4, 662:5-11, 666:10-12; *see also* Trial Tr. May 11, 2023, at 634:14-636:3 (Rothstein describes providing informed consent before starting testosterone); 662:20-663:19 (Dekker describing his provider advising him of the risks and benefits of hormone therapy prior to starting testosterone).)

11

### ii. Access to Gender-Affirming Care for Minors Already Receiving Treatment under SB 254

SB 254 imposes strict limitations on the provision of gender-affirming care to minors. *See* SB 254, § 5, at § 456.52(1) (prohibiting the provision of "sex reassignment prescriptions or procedures" to patients younger than 18 years of age, with certain exceptions). However, there is an exception to this prohibition for adolescent patients who were prescribed either puberty delaying medications or hormone therapies prior to the effective date of the law. *Id.* The Boards are required to develop rules pertaining to "standards of practice under which a patient younger than 18 years of age may continue to be treated with a prescription" if such treatment "was commenced before, and is still active on, the effective date of this act." *Id.* The Boards are also required to consider how to obtain informed consent for these adolescent patients continuing on care. *Id.* Because Plaintiffs Susan Doe and K.F. are already prescribed puberty delaying medications, they may continue to receive these medications under the language of SB 254. *See id.* (*See also* Trial Tr. 608:25-609:14, 611:7-9, 698:5-13, 702:25-703:3.)

### iii. Plaintiffs are Entitled to Medicaid Coverage for Out of State Care if Services Cannot be Adequately Provided by Providers in the State.

If Plaintiffs succeed on the merits of their claims in this case, but are unable to access certain gender-affirming medical care in Florida as a result of the

enactment of SB 254, the AHCA Rule at issue in this case is still implicated, as the Florida Medicaid program must nevertheless cover the cost of those services received out-of-state.

Under federal Medicaid law, a state must "pay for services furnished in another State to the same extent that it would pay for services furnished within its boundaries" in certain circumstances, including when "the State determines, on the basis of medical advice, that the needed medical services . . . are more readily available in the other State." 42 C.F.R. § 431.52(b)(3); *see also* 42 U.S.C. § 1396a(a)(16). Courts have recognized that the federal regulation requires a state Medicaid program to pay for beneficiaries to access medically necessary services from out-of-state providers when those services cannot be adequately provided by in-state providers. *See, e.g.*, *Lutheran Homes and Servs., Inc. v. Leean*, 122 F.3d 443, (7th Cir. 1997) (acknowledging that "if adequate treatment is unavailable in [a Medicaid beneficiary's] home state, the Medicaid regulations obligate that state to support the provision of treatment in another state"); *Pereira v. Kozlowski,* 805 F. Supp. 361, 364 (E.D. Va. 1992) (noting that federal regulations require states to pay for out-of-state services, "most commonly . . . when the state determines that the needed medical services are more readily available in another state"), *aff'd sub nom. Pereira by Pereira v. Kozlowski,* 996 F.2d 723 (4th Cir. 1993); *Malko v. Rhode*

*Island Dep't of Hum. Servs.*, No. P.C. 01-4218, 2003 WL 302350 (R.I. Super. Feb. 5, 2003).

CMS guidance underscores the point, in particular with respect to beneficiaries under the age of 21.[4] *See* Ex. 62, ECF 176-22 (CMS, *EPSDT: A Guide for States* 19 (2014)) (pointing to 42 C.F.R. § 431.52 for the proposition that states "may need to rely upon out-of-state services if necessary covered services are not available locally"); CMS, *Guidance on Coordinating Care Provided by Out-of-State Providers for Children with Medically Complex Conditions* 11 (2021), https://www.medicaid.gov/federal-policy-guidance/downloads/cib102021.pdf ("States might not be able to ensure that [children with medically complex conditions] receive the full scope of coverage to which they are entitled unless states improve access to certain care and services offered by out-of-state providers. For example, if providers in the home state do not offer innovative specialty services a

---

[4] The State's obligation to provide necessary services furnished by out-of-state providers when they are not available in-state is reinforced by the EPSDT provisions of the Medicaid Act. Specifically, 42 U.S.C. § 1396a(a)(43)(C) requires states to "arrang[e] for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment. . . ." That creates an additional, affirmative obligation on the part of states to ensure that medically necessary services are actually provided to beneficiaries under age 21. *See, e.g.*, *Katie A. ex rel. Ludin v. L.A. Cnty.*, 481 F.3d 1150, 1158-59 (9th Cir. 2007) (finding that states have an obligation not only to cover services allowable under 1396d(a), but also "to see that the services are provided when screening reveals that they are medically necessary for a child").

child needs, an out-of-state provider could provide those services, consistent with 42 CFR § 431.52. . . . And, if the state determines, based on medical advice, that a particular form of needed specialty care is more readily available in another state, the same regulation requires the state to cover the out-of-state care.").

Florida has incorporated the federal Medicaid requirement into state regulation. *See* Fla. Admin. Code R. 59G-1.050(8). As relevant here, the regulation directs AHCA to cover services provided out-of-state "in accordance with the service-specific coverage policy" so long as the beneficiary has received a referral for the services from their provider and AHCA has prior authorized coverage of the services. *Id*.

As a result, if this Court finds that Defendants must provide Medicaid coverage of gender-affirming care when medically necessary, but the care is not available from providers in Florida, Defendants have an obligation to cover the cost of the care received from providers out-of-state.

> iv. With the Proposed Amendment, Plaintiffs Can Obtain Complete Relief on their Claims.

Because none of Plaintiffs are barred from continuing their current treatments for gender dysphoria, the only provision of SB 254 that prevents their access to care is Section 3, prohibiting "any governmental entity," which, as relevant here, includes any executive branch agency or managed care plan providing services under

15

Florida's Medicaid Managed Care program from expending state funds on gender-affirming care. *See* SB 254, § 3 (2023). Plaintiffs all receive health care coverage through Florida's Medicaid Managed Care Plan. (Ex. 1, Defs.' Resp. to Pltfs.' Requests for Admissions, Response No. 6.) In light of SB 254's impact to their Medicaid coverage, Plaintiffs seek to amend their complaint to add a challenge to Section 3 of the new law. This amendment, then, is not futile, but instead necessary to afford Plaintiffs full relief on their claims.

### IV. JUSTICE REQUIRES AMENDMENT UNDER THESE CIRCUMSTANCES.

As this Court recognized on the first day of trial, Plaintiffs' case is heavily impacted by the enactment of SB 254 prior to this case's resolution. (Trial Tr. May 9, 2023, at 239:12-240:1.) *See also SmileDirectClub, LLC v. Battle*, No. 1:18-CV-02328-SDG, 2022 WL 2789495, at *6–7 (N.D. Ga. July 15, 2022) (plaintiff challenging state agency rule that prohibited remote dentistry was also required to challenge state statute also prohibiting remote dentistry).[5] The State should not be permitted to expend the Court and the Plaintiffs' resources while undermining

---

[5] As noted by Plaintiffs' counsel at trial, the enactment of SB 254 does not affect or moot Plaintiffs' discrimination claim against AHCA under Section 1557 of the Affordable Care Act, for which they request declaratory, equitable, and nominal monetary relief.

16

Plaintiffs' standing to bring some of their claims through political gamesmanship. As such, the proposed amendments here further the interests of justice.

## V. CONCLUSION

This Court should grant the Motion to allow the parties to correct the pleadings so that the parties can resolve the question of whether the Challenged Exclusions violates Equal Protection, Section 1557 of the Affordable Care Act, and the Medicaid Act requirements.

### Certificate of Conferral

Counsel for Plaintiffs conferred with Defendants' counsel on May 17, 2023. Defendants' counsel indicated that Plaintiffs should file the instant motion and that their position is forthcoming.

Respectfully submitted this 18th day of May 2023.

*/s/ Chelsea Dunn*

| | |
|---|---|
| **PILLSBURY WINTHROP SHAW PITTMAN, LLP** | **LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.** |
| **Jennifer Altman** (Fl. Bar No. 881384) <br> **Shani Rivaux** (Fl. Bar No. 42095) <br> 600 Brickell Avenue, Suite 3100 <br> Miami, FL 33131 <br> (786) 913-4900 <br> jennifer.altman@pillsburylaw.com <br> shani.rivaux@pillsburylaw.com | **Omar Gonzalez-Pagan*** <br> 120 Wall Street, 19th Floor <br> New York, NY 10005 <br> (212) 809-8585 <br> ogonzalez-pagan@lambdalegal.org |
| **William C. Miller*** | **Carl S. Charles*** <br> 1 West Court Square, Suite 105 |

17

**Gary J. Shaw**\*
1200 17th Street N.W.
Washington, D.C. 20036
(202) 663-8000
william.c.miller@pillsburylaw.com

**Joe Little**\*
500 Capitol Mall, Suite 1800
Sacramento, CA 95814
(916) 329-4700
joe.little@pillsburylaw.com

**NATIONAL HEALTH LAW PROGRAM**

**Abigail Coursolle**\*
3701 Wilshire Boulevard, Suite 315
Los Angeles, CA 90010
(310) 736-1652
coursolle@healthlaw.org

**Catherine McKee**\*
1512 E. Franklin Street, Suite 110
Chapel Hill, NC 27541
(919) 968-6308
mckee@healthlaw.org

Decatur, GA 30030
(404) 897-1880
ccharles@lambdalegal.org

**SOUTHERN LEGAL COUNSEL, INC.**

**Simone Chriss** (Fl. Bar No. 124062)
**Chelsea Dunn** (Fl. Bar No. 1013541)
1229 NW 12th Avenue
Gainesville, FL 32601
(352) 271-8890
Simone.Chriss@southernlegal.org
Chelsea.Dunn@southernlegal.org

**FLORIDA HEALTH JUSTICE PROJECT**

**Katy DeBriere** (Fl. Bar No. 58506)
3900 Richmond Street
Jacksonville, FL 32205
(352) 278-6059
debriere@floridahealthjustice.org

\* *Admitted pro hac vice*

***Counsel for Plaintiffs***

## CERTIFICATE OF WORD COUNT

As required by Local Rule 7.1(F), I certify that this Motion contains 3,368 words.

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of May, 2023, a true copy of the foregoing has been filed with the Court utilizing its CM/ECF system, which will transmit a notice of electronic filing to counsel of record for all parties in this matter registered with the Court for this purpose.

*/s/ Simone Chriss*
Simone Chriss
Counsel for Plaintiffs
