## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### Tallahassee Division

AUGUST DEKKER, et al.,

        *Plaintiffs*,

        v.

JASON WEIDA, et al.,

        *Defendants*.

No. 4:22-cv-00325-RH-MAF

## PLAINTIFFS' MOTION TO ENFORCE THE COURT'S JUDGMENT OR, ALTERNATIVELY, TO CLARIFY THE COURT'S JUDGMENT

Plaintiffs hereby respectfully move this Court to enforce its Judgment [Dkt. No. 247] that resulted from the Findings of Fact and Conclusions of Law [Dkt. No. 246] or, in the alternative, to clarify its Judgment. Defendants are defying the plain language of this Court's Judgment by continuing to categorically enforce Rule 59G-1.050(7) of the Florida Administrative Code (the "Rule" or the "Challenged Exclusion"). As such, and for the reasons stated in the memorandum that follows, Plaintiffs respectfully ask this Court to grant their motion and enforce the Judgment by instructing Defendants that the Court's declaratory relief prevents them from enforcing the Challenged Exclusion, and by issuing any other remedial relief it believes appropriate. In the alternative, Plaintiffs respectfully request that this Court clarify its Judgment to make clear that the Rule, as adopted, is unlawful, or grant

1

broader injunctive relief preventing Defendants from enforcing the Challenged Exclusion.

## MEMORANDUM OF LAW

### INTRODUCTION

One year after this case was filed and months after this Court declared that "Florida Statutes § 286.31(2) and Florida Administrative Code rule 59G-1.050(7) are invalid to the extent they categorically ban Medicaid payment for puberty blockers and cross-sex hormones for the treatment of gender dysphoria," Dkt. No. 246 at 53, Defendants continue to apply and enforce the Rule as if the proceedings, trial, and the Court's ruling in this case never happened.  But, as this Court emphasized in its June 21, 2023 decision, Florida state officials cannot categorically ban Medicaid coverage of puberty-delaying medications and gender-affirming hormones for the treatment of gender dysphoria, as doing so unlawfully discriminates against transgender Medicaid beneficiaries in violation of the Fourteenth Amendment's Equal Protection Clause and Section 1557 of the Affordable Care Act and also violates the Medicaid Act.

In complete defiance of the Judgment, Defendants continue to enforce and apply the Rule this Court declared invalid.  They have done so by (i) categorically denying coverage to transgender Medicaid beneficiaries for gender-affirming hormones, (ii) instructing managed care organizations (MCOs) to deny coverage *and*

*fining them* for not abiding by the Challenged Exclusion's categorical exclusions of gender-affirming medical treatment, and (iii) seeking recoupment from providers for funds paid by MCOs for the provision of gender-affirming medical treatment to transgender Medicaid beneficiaries. This, despite that this Court declared the Challenged Exclusion "invalid to the extent [it] categorically ban[s] Medicaid payment for puberty blockers and cross-sex hormones for the treatment of gender dysphoria." Dkt. No. 246 at 53.

Defendants are not free to disregard this Court's decisions and orders even if they have taken an appeal. Neither this Court nor the Eleventh Circuit has issued a stay and this Court's Judgment remains in full effect. Having fulfilled its "province and duty … to say what the law is," *Marbury v. Madison*, 5 U.S. 137, 177 (1803), this Court should be able to "presume[] that officials of the Executive Branch will adhere to the law as declared by the court." *Comm. on Judiciary of U.S. House of Reps. v. Miers*, 542 F.3d 909, 911 (D.C. Cir. 2008).

Here, however, Defendants have put these basic and foundational legal principles to the test. Plaintiffs now are in the unfortunate position of having to come back before the Court to request that the Court enforce its Judgment or, in the alternative, provide clarification as to the scope of the relief granted.

## FACTUAL BACKGROUND

### A. Procedural History

This case was filed on September 7, 2022, alleging that the Rule unlawfully discriminated against Florida transgender Medicaid beneficiaries, like Plaintiffs, in violation of the Equal Protection Clause of the Fourteenth Amendment Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), and the Medicaid Act's EPSDT and Comparability Requirements.  Dkt. No. 1.

Following extensive discovery, the case proceeded to trial beginning on May 9, 2023.  Dkt. No. 241.  Over seven days, the Court heard testimony from Plaintiffs, experts, and fact witnesses.  *See* Dkt. Nos. 226-28, 238-40, 241, 242.  During the course of the bench trial, Florida Statutes § 286.31(2) was enacted on May 17, 2023; Plaintiffs moved to amend their Complaint on May 18, 2023, to include § 286.31(2) within their challenge.  Dkt. No. 231.  The Court granted such leave on May 20, 2023.  Dkt. No. 237.

Following the conclusion of the trial, the Court issued its Findings of Fact and Conclusions of Law on June 21, 2023, finding for Plaintiffs on each of their claims as they pertained to puberty-delaying medications and gender-affirming hormones and declaring that: "Florida Statutes § 286.31(2) **and** Florida Administrative Code rule 59G-1.050(7) are invalid to the extent they categorically ban Medicaid payment for puberty blockers and cross-sex hormones for the treatment of gender dysphoria."

Dkt. No. 246 (emphasis added).  The next day the Court entered its Judgment.  Dkt. No. 247.

### B. Defendants' Actions Defying the Court's Decision.

Since the decision and subsequent Judgment was issued, Defendants have continued to apply and enforce the Rule as if this Court never entered Judgment against them.  Specifically, Defendants have: (1) categorically denied coverage for medically necessary gender-affirming care for transgender Floridians; (2) ordered Florida MCO's to cease and desist providing coverage for medically necessary gender-affirming medical care; (3) publicly committed to enforcing the rule, even though this Court found it invalid; and (4) demanded at least one medical institution refund money to AHCA for services related to the provision of gender-affirming care (from August 21, 2022 to present).  This conduct is flatly contrary to this Court's decision and its Judgment.

### 1) *Denials of coverage following the Court's Decision.*

On August 18, 2023, AHCA, through one of the MCOs, Simply Healthcare, sent at least one transgender Medicaid beneficiary a Notice of Adverse Benefit Determination, denying coverage for a previously authorized and covered medication for the treatment of gender dysphoria.  *See* **Ex. A**, Declaration of Cece Suarez.  The Notice states that coverage for the prescription "DELESTROGEN 100MG/5 ML VIAL" has been reviewed and "this service has been TERMINATED

as of 8/18/23." The basis for the termination of benefits is stated as: "The requested **service is not a covered benefit.**  **Ex. A, Attachment 1** (Notice of Adverse Benefit Determination from Simply Healthcare) (emphasis in original).

Similarly, on September 30, 2023, a transgender Medicaid beneficiary was notified that his MCO, Sunshine Health, denied coverage for his previously authorized and covered medication for the treatment of gender dysphoria.  *See* **Ex. B**, Declaration of Kandle Starr.  The statement provided to Mr. Starr stated that the "Rejection Code/Reason" for the denial of coverage for his prescription of Norethindrone (a form of hormone treatment) was "THIS PRODUCT IS NOT COVERED FOR MEMBERS WITH A GENDER IDENTITY DIAGNOSIS OR RELATED DIAGNOSIS."  **Ex. B, Attachment 1** (Rejection Message from Sunshine Health Plan).  The statement also indicated that the pharmacy had attempted to adjudicate the claim for coverage seven (7) times.  *Id.*  Mr. Starr is 19 years old and cannot afford to pay the $203.99 out-of-pocket expense for the hormone medication prescribed by his treating physician as necessary treatment for his gender dysphoria.  *Id.*

### 2)  *Defendants sent cease-and-desist letters to MCOs ordering them to not cover any gender-affirming medical care.*

On August 17, 2023, Defendant AHCA sent "cease and desist" letters to five Florida MCOs assessing fines, liquidated damages, and monetary sanctions against the plans for violations of Rule 59G-1.050 and directing the MCOs to cease and

desist *further violations* of the Rule.  *See* **Composite Addendum 1** (Letters from AHCA to Simply Healthcare Plans, Sunshine State Health Plan, Humana Medical Plan, Molina Healthcare of Florida, and Children's Medical Services (CMS) Health Plan), **to Ex. C**, Declaration of Omar Gonzalez-Pagan.  Among other things, these letters include the following language:

> The Plan "**must immediately cease and desist from violating Rule 59G-1.050, F.A.C.** Further violations will be subjection to sanctions under the Contract and will be considered a knowing and willful violation pursuant to Section 409.912(4), Florida Statutes. **Please confirm in writing no later than five days following receipt of this letter that CMS Plan has ceased coverage of the services listed in Rule 59G-1.010, F.A.C., for the treatment of gender dysphoria.**"

*See* **Composite Addendum 1 (AHCA Letters to MCOs) to Ex. C**, each at p. 3 (emphasis in original).  These letters are in direct violation of the Court's rulings in this case, which declared that the Rule is unconstitutional and unlawful, and therefore invalid.  Plaintiffs ask this Court to make clear to Defendants that sending communications instructing MCOs to comply with the Rule is a violation of the Judgment, and is unlawful.

> **3)** ***Defendants publicly declare they will continue to enforce the Invalid Rule, despite the Court's Decision.***

On August 18, 2023, Defendant Secretary Jason Weida appeared as a guest on the Daily Wire Podcast to discuss AHCA's decision to fine healthcare providers for funding gender-affirming medical care, including warning that his office

"would consider more drastic penalties for any further violations."[1]   Defendant

Weida stated "[t]hese plans recklessly continued to cover these services with

permanent, harmful effects, after the rule was adopted. [They] will not stand in the

way of our fight to protect the innocence of Florida's kids." *Id.*

The article about the podcast interview with Defendant Weida goes on to

state:

> Simply Healthcare, the provider that covered the mastectomy, is facing
> a $30,000 penalty and will be sanctioned. The other providers face
> smaller, unspecified fines, but the non-willful sanction is the more
> serious penalty as it places a black mark on a provider's record that
> must be disclosed when it competes for contracts. Providers who have
> been sanctioned are much less likely to be awarded other state contracts
> for 10 years until the sanction expires. According to the Agency for
> Healthcare Administration, Simply Health has already replaced the
> team that approved the mastectomy coverage.

*Id.*   Defendant Weida told the Daily Wire that he is "grateful Governor Ron

DeSantis empowered his office to issue the rule blocking public money from going

to" gender-affirming medical care.  *Id.*

Defendant Weida likewise provided an interview to the Daily Signal, the

contents of which are captured in an article published on August 18, 2023 titled:

---

[1] *See* Podcast Episode: FL Trans Treatment Fines & Homelessness Rises 8.18.23,
MorningWire (August 18, 2023), https://www.dailywire.com/podcasts/morning-
wire/fl-trans-treatment-fines-homelessness-rises-8-18-23; *see also* Megan Basham,
"Exclusive: Florida Fines Medicaid Providers for Using Tax Dollars to Cover Trans
Treatments for Minors," DailyWire.com (August 18, 2023),
https://www.dailywire.com/news/exclusive-florida-fines-medicaid-providers-for-
using-tax-dollars-to-cover-trans-treatments-for-minors.

"Florida Becomes First State to Sanction Medicaid Providers for Covering Minor Transitions."[2]   Defendant Weida stated: "Given the notice that they are on now, with the rule being passed last year, and now that we have this audit and the letters and this discipline, any type of violation going forward would be deemed an Intentional violation and would be subject to very severe consequences." *Id.*

The article quotes Defendant Weida saying: "We are also issuing fines against four other Medicaid plans that used public dollars to support prescription drugs used for gender dysphoria." *Id.*  In his interview, Defendant Weida praised Governor Ron DeSantis for taking "concrete steps" within Florida to protect "the innocence of our children." *Id.*

An email from Defendant AHCA to a local reporter who inquired about these statements in light of the Court's Judgment stated that the Rule "continues being in effect within the parameters outlined by the District Court." *Id.*  The email further states that "the rule can't serve as a categorical ban because it isn't one." *Id.*  To be sure, that is false.  The Rule in fact does categorically bans coverage for puberty blockers and hormones as treatment for gender dysphoria, and Defendants' communications and warnings to MCOs clearly treat it as a

---

[2] Mary Margaret Olohan, "Florida Becomes First State to Sanction Medicaid Providers for Covering Minor Transitions," The Daily Signal (August 18, 2023), https://www.dailysignal.com/2023/08/18/florida-becomes-first-state-to-sanction-medicaid-providers-for-covering-minor-transitions/.

categorical ban.

In short, the denials of coverage and instructions to MCOs are categorical, and Defendants have announced their intent to continue to enforce this categorical ban on Medicaid coverage of puberty blockers and hormones as treatment for gender dysphoria despite this Court having deemed it unconstitutional and unlawful.

### 4) *Defendants demand refunds from providers who have provided gender-affirming medical services.*

On August 23, 2023, University of Miami physicians received an email that outlined actions taken by Defendant AHCA against the University of Miami related to alleged violations of the Challenged Exclusion.  *See* **Ex. D**, Declaration of Dr. Lydia Fein.  In the email, physicians are informed that AHCA amended the Gender Medicaid Policy rule to exclude treatments of gender dysphoria, and "as a result, our office has been compelled to refund any Medicaid and Medicaid Managed Care reimbursement for services related to the provision of gender affirming care as of the effective date of the regulation (August 21, 2022) to present."  **Ex. D, Attachment 1** (Email from University of Miami, subject line: "FW: Notice on Florida's Ban on Medicaid Coverage on Gender Affirming Care") (emphasis added). The email continues to state: "Consequently, for the foreseeable future, and until any further notice on the status/overturn of the current policy, we ask that you please abstain from billing Medicaid or any Medicaid Managed care plan for any implicated

services." *Id.* This has resulted in University of Miami providers canceling appointments for any transgender patient seeking gender-affirming medical care as treatment for gender dysphoria and who is covered by Florida Medicaid. *See* **Ex. D**, at ¶ 6.

## LEGAL STANDARD

"A district court has the power to issue an order requiring the parties to carry out the terms of an earlier order." *S.E.C. v. Hermil, Inc.*, 838 F.2d 1151, 1153 (11th Cir. 1988); *see also Flaherty v. Pritzker*, 17 F. Supp. 3d 52, 55 (D.D.C. 2014) ("District courts have the authority to enforce the terms of their mandates."). That authority is grounded in "the interest of the judicial branch in seeing that an unambiguous mandate is not blatantly disregarded by parties to a court proceeding." *Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984). "The usual method for having the court interpret its judgment is to file a motion to enforce the judgment." *Hermil*, 838 F.2d at 1153. "[A]n appeal does not automatically stay the enforcement of a judgment." *U.S. Commodity Futures Trading Comm'n v. Escobio*, 946 F.3d 1242, 1251 (11th Cir. 2020) (citing Wright & Miller, 16A Fed. Prac. & Proc. Juris. § 3954 (5th ed. 2019)). Rather, "[a]bsent entry of a stay, a district court retains jurisdiction to enforce its judgment—via contempt or other means—during the pendency of an appeal." *Escobio*, 946 F.3d at 1251.

The court should grant a motion to enforce if a "prevailing plaintiff demonstrates that a defendant has not complied with a judgment entered against it." *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C. 2004).  Included within "a court's power to administer its decrees is the power to construe and interpret the language of the judgment."  *Id.* at 11–12 (citing *Hermil*, 838 F.2d at 1153).

## ARGUMENT

### I.    Plaintiffs Have a Judicially Cognizable Interest in Ensuring Compliance with the Court's Decision and Judgment.

It is well settled that "[a] party that obtains a judgment in its favor acquires a 'judicially cognizable' interest in ensuring compliance with that judgment." *Salazar v. Buono*, 559 U.S. 700, 712 (2010).  Here, through the Court's Judgment, Plaintiffs acquired a right to have Defendants refrain from any enforcement of "Florida Statutes § 286.31(2) and Florida Administrative Code rule 59G-1.050(7) … to the extent they categorically ban Medicaid payment for puberty blockers and cross-sex hormones for the treatment of gender dysphoria," Dkt. No. 246 at 53. *See Allen v. Wright*, 468 U.S. 737, 763 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).  This acquired interest is "judicially cognizable because it was a personal interest, created by law, in having the State refrain from taking specific actions."  *Allen*, 468 U.S. at 763.

"Having obtained a final judgment granting relief on their claims," Plaintiffs have "standing to seek its vindication."  *Salazar*, 559 U.S. at 712.

12

## II.    Defendants are violating this Court's Judgment by enforcing the Rule's categorical ban on Medicaid coverage of gender-affirming medical care.

In its decision, the Court found that "Florida has adopted a rule and statute that prohibit Medicaid payment for these treatments even when medically appropriate," and held that "[t]he rule and statute violate the federal Medicaid statute, the Equal Protection Clause, and the Affordable Care Act's prohibition of sex discrimination."  Dkt. No. 246, at 52-53.  As such, among other things, the Court "declared that Florida Statutes § 286.31(2) and Florida Administrative Code rule 59G-1.050(7) are invalid to the extent they categorically ban Medicaid payment for puberty blockers and cross-sex hormones for the treatment of gender dysphoria."  *Id.*, at 53.

And, of course, "[a]n unconstitutional act [like the Rule] is not a law; it binds no one, and protects no one."  *Little Rock & Ft. S. Ry. v. Worthen*, 120 U.S. 97, 101–02 (1887); *see also Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1334 (11th Cir. 2004) ("There is no question that an unconstitutional statute is void under state law.").

Nonetheless, notwithstanding this Court's decision, Defendants have continued to enforce the Rule's categorical ban on Medicaid coverage of puberty delaying medications and gender-affirming hormones as treatment for gender dysphoria.

For example, citing to the Rule, Defendants told MCOs two months **after this Court's decision** was issued, in **categorical** terms, that "Florida Medicaid <u>does not cover the following services</u> for the treatment of gender dysphoria: puberty blockers, hormones and hormone antagonists … and any other procedures that alter primary or secondary sexual characteristics" and that "for the purpose of determining medical necessity, including Early and Periodic Screening, Diagnosis, and Treatment (EPSDT), these services <u>do not meet the definition of medical necessity</u> in accordance with Rule 59G-1.010, F.A.C." **Addendum 1 to Ex. C**, at 1 (emphasis added).

Similarly, Defendants also **categorically** denied transgender Medicaid beneficiaries like Ms. Suarez and Mr. Starr.  They denied Ms. Suarez Medicaid coverage for hormone treatment for her gender dysphoria on the basis that it is "not a covered benefit." **Ex. A, Attachment 1**.  Defendants similarly denied Mr. Starr Medicaid coverage for hormone treatment for her gender dysphoria on the basis that the medication "is not covered for members with a gender identity diagnosis or related diagnosis." **Ex. B, Attachment 1**.  These are not situations where Defendants' contractors, reviewed Ms. Suarez's and Mr. Starr's individual circumstances to determine whether hormone treatment was medically necessary for them and then found that Ms. Suarez and Mr. Starr, based on their individual medical needs, did not need the treatment requested.  *See Rush v. Parham*, 625 F.

2d 1150, 1155 (5th Cir. 1980).  Rather, Defendants have made clear that they will not cover the benefit of hormone treatment to treat gender dysphoria even when it is medically necessary.

Defendants have thus acted as if this Court's decision is a legal nullity that they can simply ignore on their whim.  That is not how our legal system works, however.  "It is simply an illegal act upon the part of a state official in attempting, by the use of the name of the state, to enforce a legislative enactment which is void because unconstitutional." *Ex parte Young*, 209 U.S. 123, 159 (1908).

Defendants may argue that because there is a variance and waiver process for administrative rules (*see* Fla. Stat. § 120.542; Fla. Admin. Rules 28-104.001 – 28-104.006), the Rule is not categorical and therefore they are not prohibited from enforcing it.  That is a red herring.  In over nine months of litigation, Defendants failed to develop that argument or present any supporting evidence; rather, they alluded to the supposed variance process as a throwaway point only twice over the course of the entire case: at the end of the hearing on Plaintiffs' Motion for a Preliminary Injunction, and at the very end of trial. Conspicuously absent from trial was any evidence that a single variance was approved for treatment that AHCA has (wrongly) determined is experimental and never medically necessary.

Moreover, Defendants own communications to MCOs and Notices of Adverse Benefit Determinations to transgender Medicaid beneficiaries also make

no reference to case-by-case determinations for coverage of gender-affirming medical care.  *See* **Exs. A, B, and C**.  To the contrary, these communications, based on and citing to the Rule, are ***categorical*** in nature and do not communicate the existence or availability of any exceptions or waivers.

What is more, Defendant Weida's own statements are similarly unequivocal, making clear that Defendants will not cover this medical care, period. *See* Section B(3), *supra*.

Finally, the term categorical is defined as "absolute, unqualified." *See* categorical, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/categorical (accessed Sept. 25, 2023).  The Rule, on its face, categorically excludes from Medicaid coverage all gender-affirming medical treatment, including puberty-delaying medications and hormones.  And, on its face, the Rule has no exceptions.[3]

---

[3] The existence of the waiver-and-variance process for administrative rules to which Defendants have alluded to in the past does not make the Rule at issue here non-categorical.  For one, there is no evidence, and after nine months of discovery, Defendants presented no argument that the waiver-and-variance process for administrative rules operates to make medical necessity determinations when the agency has determined that a particular medical treatment is never medically necessary.  Indeed, the process is meant to grant waivers that will *serve the purpose* of the underlying statute and rule.  For another, the Rule, at a minimum, categorically singles out gender-affirming medical care for denials in the first instance, notwithstanding medical necessity.

Taken to its logical conclusion, Defendants could evade any legal requirements set forth by federal law by adopting an unlawful rule and simply

Here, Plaintiffs facially challenged the Rule and the Court ruled in no uncertain terms that the Rule "violate[s] the federal Medicaid statute, the Equal Protection Clause, and the Affordable Care Act's prohibition of sex discrimination."   Dkt. No. 246, at 53.   That is enough to communicate to Defendants that they may not enforce the Rule in any way.   Indeed, the Court's decision "relates to conduct that the court concluded was unlawful" rather than merely to "particular statutory provisions."   *One Wisc. Inst. v. Thomsen*, 351 F. Supp. 3d 1160, 1162 (W.D. Wisc. 2019).

Accordingly, Plaintiffs respectfully ask this Court to grant the instant motion and enforce its Judgment by instructing Defendants that the Court's declaratory relief prevents them from enforcing the Challenged Exclusion, and by issuing any other remedial relief it believes appropriate.

## III.   In the Alternative, the Court Should Clarify that Its Decision Prevents Defendants from Enforcing the Rule Against Anyone.

While Plaintiffs believe the Findings of Fact and Conclusions of Law and resulting Judgment are clear, in the alternative, Plaintiffs request that this Court clarify its Judgment to make clear that Defendants cannot enforce the Challenged Exclusion against anyone.   The Court can do so by clarifying the scope of its declaratory relief, or by expanding the scope of its injunctive relief.

---

arguing that there is also a waiver-and-variance process.  Of course, that cannot be the law.

With regards to expanding the scope of injunctive relief, in civil rights cases "injunctive relief may benefit non-parties as well as parties." *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1136 (11th Cir. 1984); *see also Bresgal v. Brock*, 843 F.2d 1163, 1171 (9th Cir. 1987) ("Class-wide relief may be appropriate even in an individual action."); *Garcia v. Stillman*, No. 22-CV-24156, 2023 WL 5095540, at *20 (S.D. Fla. Aug. 9, 2023) (permanently enjoining Defendants from enforcing Article II, Section 8(f)(2) of the Florida Constitution, without limitation).

Indeed, in *Garrido*, a case brought by a single individual, the district court permanently enjoined AHCA "from enforcing Florida Behavioral Health Rule 2–1–4 as it relates to autism, Autism Spectrum Disorder, and Applied Behavioral Analysis treatment." *K.G. ex rel. Garrido v. Dudek*, 864 F. Supp. 2d 1314, 1327 (S.D. Fla. 2012), *aff'd in part, rev'd in part sub nom. Garrido v. Dudek*, 731 F.3d 1152 (11th Cir. 2013). The Eleventh Circuit spoke with approval of this aspect of the district court's permanent injunction when it held that "the district court did not abuse its discretion in issuing a permanent injunction that overrules AHCA's determination that ABA is experimental (and AHCA's larger determination that ABA is never medically necessary) and requires Medicaid coverage of this treatment." *Garrido*, 731 F.3d at 1160.

## CONCLUSION

Defendants have continued to enforce a Rule that the Court has determined "violate[s] the federal Medicaid statute, the Equal Protection Clause, and the Affordable Care Act's prohibition of sex discrimination" and is therefore "invalid." Dkt. No. 246, at 53. Accordingly, Plaintiffs respectfully request that the Court enforce its Judgment, as well as its Findings of Fact and Conclusions of Law, by instructing Defendants that the Court's declaratory relief prevents them from enforcing Rule 59G-1.050(7) of the Florida Administrative Code and issuing any other remedial relief it believes appropriate.

In the alternative, Plaintiffs respectfully request that the Court clarify its decision and order to make clear that the Rule, as adopted, is unlawful, or grant broader injunctive relief preventing Defendants from enforcing the Challenged Exclusion.

Dated this 4th day of October 2023.

Respectfully submitted,

/s/ Omar Gonzalez-Pagan
**LAMBDA LEGAL DEFENSE
AND EDUCATION FUND, INC.**

**Omar Gonzalez-Pagan**\*
120 Wall Street, 19th Floor
New York, NY 10005
(212) 809-8585
ogonzalez-pagan@lambdalegal.org

**PILLSBURY WINTHROP SHAW
PITTMAN, LLP**

**Jennifer Altman** (Fl. Bar No. 881384)
**Shani Rivaux** (Fl. Bar No. 42095)
600 Brickell Avenue, Suite 3100
Miami, FL 33131
(786) 913-4900
jennifer.altman@pillsbury.com
shani.rivaux@pillsbury.com

**William C. Miller**\*
**Gary J. Shaw**\*
1200 17th Street N.W.
Washington, D.C. 20036
(202) 663-8000
william.c.miller@pillsburylaw.com


\* *Admitted pro hac vice*

/s/ Simone Chriss
**SOUTHERN LEGAL COUNSEL, INC.**

**Simone Chriss** (Fl. Bar No. 124062)
**Chelsea Dunn** (Fl. Bar No. 1013541)
1229 NW 12th Avenue
Gainesville, FL 32601
(352) 271-8890
Simone.Chriss@southernlegal.org
Chelsea.Dunn@southernlegal.org

**FLORIDA HEALTH JUSTICE PROJECT**

**Katy DeBriere** (Fl. Bar No. 58506)
3900 Richmond Street
Jacksonville, FL 32205
(352) 278-6059
debriere@floridahealthjustice.org

**NATIONAL HEALTH LAW PROGRAM**

**Abigail Coursolle**\*
3701 Wilshire Boulevard, Suite 315
Los Angeles, CA 90010
(310) 736-1652
coursolle@healthlaw.org

**Catherine McKee**\*
1512 E. Franklin Street, Suite 110
Chapel Hill, NC 27514
(919) 968-6308
mckee@healthlaw.org

*Counsel for Plaintiffs*

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7.1(D), Counsel for Plaintiffs certifies they conferred with Defendants' counsel via email, including communications on September 25, 26, 27, and October 2, 2023. Defendants have not indicated their position on Plaintiffs' motion.

## CERTIFICATE OF WORD COUNT

As required by Local Rules 7.1(F), I certify that this Motion and Memorandum of Law contains 4,168 words.

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of October 2023, a true copy of the foregoing has been filed with the Court utilizing its CM/ECF system, which will transmit a notice of electronic filing to counsel of record for all parties in this matter registered with the Court for this purpose.

*/s/ Omar Gonzalez-Pagan*
Counsel for Plaintiffs