## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### Tallahassee Division

AUGUST DEKKER, et al.,

       *Plaintiffs*,

       v.

JASON WEIDA, et al.,

       *Defendants*.

No. 4:22-cv-00325-RH-MAF

## PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE OR, IN THE ALTERNATIVE, TO CLARIFY THE COURT'S JUDGMENT

Plaintiffs reply to Defendants' Response in Opposition ("Response") (ECF No. 259) to Plaintiffs' Motion to Enforce, or, Alternatively, to Clarify the Court's Judgment ("Motion") (ECF No. 258), and state as follows:

As explained below: (A) the Rule is a categorical ban on care, and Defendants are enforcing it as such, in violation of this Court's Final Order; (B) the variance and waiver process is inapplicable and unavailable, and cannot save the otherwise unlawful categorical Rule; and (C) Defendants seek application of the incorrect Federal Rule of Civil Procedure to justify their conclusion that Plaintiffs' requested relief should be denied.

1

**ARGUMENT**

**A.    The Rule Is a Categorical Ban, and Defendants Are Enforcing It as Such, in Violation of This Court's Final Order.**

Defendants predictably attempt to revive the unavailing argument that the variance and waiver process converts the plainly categorical ban into a non-categorical ban, an argument that not only fails as a matter of law, but that they also had ample opportunity to litigate and elected not to. The Response opens with a quote from the Final Judgment in this case, noting "this Court 'declared that Florida Statutes § 286.31(2) and Florida Administrative Code rule 59G-1.050(7) are invalid *to the extent they categorically ban* Medicaid payment for puberty blockers and cross-sex hormones for the treatment of gender dysphoria.'" ECF No. 259, at 1 (quoting ECF No. 247, at 1 (emphasis added by Defendants)). Defendants repeatedly justify their continued enforcement of the unconstitutional Rule by claiming they "are not *enforcing* Rule 59G-1.050(7) *as a categorical ban*" (*id.* at 5, 6, and 9) (emphasis added), but they make no attempt to argue that the Rule itself is not a categorical ban, nor could they do so. Regardless, this Court did not find that the Rule is invalid "to the extent the State *enforces it as a categorical ban*" on Medicaid payment for treatments of gender dysphoria - rather, this Court found that the Rule is invalid "to the extent *it categorically bans*" Medicaid payment for treatments of gender dysphoria.  *See* ECF No. 246, at 53; ECF No. 247, at 1.

Here, the Rule is a categorical ban, which Defendants do not dispute. Rather

they argue that "given the continued ability of Medicaid-eligible patients to petition for a variance or waiver on a case-by-case basis, Defendants are not *enforcing* Rule 59G-1.050(7) as a categorical ban[.]" ECF No. 259, at 6-7. This argument, however, fails to acknowledge that the variance and waiver process generally contained within the Florida rules does not change the fact that the Rule at issue here categorically bars coverage for gender-affirming medical care, nor does it acknowledge the fact that how Defendants have communicated and enforced the Rule is ***categorical*** in nature.  In other words, it carries no water.  *See*, *infra,* § B, Variance and Waiver.

Defendants do not dispute any of the facts raised by Plaintiffs in support of their Motion, including: **(a)** that the communications to Florida Medicaid beneficiaries regarding the denial or termination of benefits state that the gender dysphoria treatments sought are categorically "not covered," without exception, and without regard to medical necessity or documentation submitted by a treating provider or multi-disciplinary treatment team (ECF No. 258, at p. 5-6); **(b)** that the categorical denials and Notices of Adverse Benefit Determinations do not inform Florida Medicaid beneficiaries of any allegedly available option to utilize the variance and waiver process  (*id.* at Ex. A and Ex. B); **(c)** the cease and desist letters Defendants sent to MCOs imposing fines, sanctions, and other penalties, and directing them to categorically stop covering treatment for gender dysphoria to avoid *future violations* of the Rule (*id.* at p. 6-7, and Ex. C); and **(d)** the public statements

3

by Defendant Secretary Weida threatening "more drastic penalties" for violations of the Rule and making clear that the Rule categorically "block[s] public money from going to" gender-affirming medical care (*id.* at 7-10).

Defendants' Response cites to an email wherein Defendants agree not to enforce Florida Statute § 286.31(2)'s prohibition on coverage because, as they readily concede, "[t]he best and most obvious reading of this statutory provision is that it serves as a ***categorical ban*** on the use of puberty blockers and cross-sex hormones."  ECF No. 259, at 3 (emphasis added). It requires mental gymnastics to conceive of how the Statute is "obvious[ly]" a categorical ban, while the Rule, which is nearly identical in language, effect, and intent, is not.

In fact, both the Statute and the Rule prohibit Florida Medicaid coverage of gender-affirming medical care. The Statute articulates that Florida Medicaid "***may not expend state funds***" on medical treatments for gender dysphoria, and the Rule articulates that Florida Medicaid "***does not cover***" medical treatments for gender dysphoria. *Compare* Fla. Stat. § 286.311(2) *and* Fla. Stat. § 456.001(9)(a) *with* Fla. Admin. Code R. 59G-1.050(7)(a).

### B.   The Variance and Waiver Process is Inapplicable, Unavailable, and Cannot Save the Otherwise Unlawful Categorical Rule.

The sole argument that Defendants make in support of their position that the Rule is not a categorical ban, the enforcement of which would violate this Court's Order, is the existence of the variance and waiver process. But that process does not

change the categorical nature of the ban.

The variance and waiver process is set forth in state statute and regulations that provide an avenue by which a person can seek a variance and waiver from the "unreasonable, unfair, and ***unintended results***" of agency rule requirements. Fla. Stat. § 120.542 (2022); *see also* Fla. Admin. Code R. 28-104.001-28.104.006. (emphasis added). Here, the clear and unequivocal intention of the State in adopting the Rule was to ban coverage of treatments for gender dysphoria.

The plain language of the Rule itself forecloses any avenue for a transgender individual with gender dysphoria to successfully obtain coverage for their medically necessary gender-affirming medical care. Defendants themselves conceded as much, stating that regardless of whether the Rule was applied categorically or on a case-by-case basis, the outcome would be determined by the GAPMS Report, which deemed these treatments to be experimental and thus *never* medically necessary. *See* Prelim. Inj. Hr'g Tr. at 91:21-93, at 86:18-21 ("Whether that state policy is applied categorically or on an individual-by-individual basis, GAPMS itself would still be there. It would still be a guiding principle to these determinations, Your Honor.").[1] And the Court itself questioned the applicability of the alleged "exception" to the

---

[1] *See also* ECF No. 235-2 (Brackett Dep. Feb. 8, 2023, Vol. 2) at 237:8-15 ("Q ***So in what situation could AHCA grant a waiver or variance covering services that AHCA has found to be experimental?*** A Well, I mean, ***based on the rule we wouldn't. I mean, based on the rule, we would deny the variance***, but because each variance, it's individualized requests, we would have to go through and evaluate each one individually.") (emphasis added).

categorical Rule at issue. *See* Trial Tr. 5.22.23 at 1357:23-1358:1 (stating that the variance and waiver process creates an exception to the Rule "[o]nly if it was real. But I get it. And, frankly, other than you, I haven't heard from anybody suggesting that the exception, which applies to rules in general, ever had any chance at all to be applied here.").  In short, the waiver and variance process does not provide a way for people to get the coverage that the Rule purposely prohibits.

And indeed, no variance has ever been granted for services that Defendants have been deemed experimental and otherwise categorically excluded from coverage. *See* ECF No. 235-2 (Brackett Dep. Feb. 8, 2023, Vol. 2) at 240:1-241:18. Indeed, Defendants' 30(b)(6) witness, Mr. Brackett, also acknowledged that this complex process was practically unavailable for pro se individuals, noting that due to "the complexities of request and legalities of it" a person would need legal assistance or representation to complete the process. *Id.* at 241:19-242:13.

Moreover, although Defendants raised the existence of the variance and waiver process in the course of this litigation, Defendants never presented even a shred of evidence as to how it could apply to the excluded care at issue, and repeatedly conceded that the Rule was a categorical exclusion.[2] What is more, this

---

[2] *See*, *e.g.*, Prelim. Inj. Hr'g Tr. at 94:2-3 ("But that doesn't foreclose the State from having a *categorical* rule.") (emphasis added); *id.* at 99:12-15 ("The State gets to chose in that instance, I would submit, which way to pivot and which way to create the *categorical rule*, *which is what we're doing through the exclusion*."); *id.* at 99:17-19 ("That *categorical rule* is not inconsistent with the NIH acting director's statements saying that we have no long-term studies on this."); *id.* at 86:9-17 ("And my friend also brought up, I guess, a distinction between prohibitory and

Court declared the Rule to be invalid after and notwithstanding Defendants having raised the existence of the variance and waiver process. It takes a certain level of gall to now argue that an argument already presented and which did not inhibit the Court from declaring the Rule invalid, now permits Defendants to continue to enforce that very Rule.

Further, despite their insistence that this process renders the Rule something other than a categorical ban (and to be clear, it does not), Defendants' actions reveal otherwise.  If the variance and waiver process transformed the categorical Rule into a non-categorical ban (again, it does not), Defendants would have acted differently. Here, however, Defendants: (1) have not created any policy, rule, guidance, or notice informing people about the availability of the variance and waiver process; (2) have taken no action whatsoever to demonstrate how the variance and waiver process could or would be applied to medical care that has been categorically excluded as experimental and not medically necessary; (3) have not added any language regarding the existence of an exception nor the option to seek a waiver to the Notices of Adverse Benefit Determinations, where all appeal options are listed (ECF Nos.

---

mandatory injunctions, as I understood it, and I thought them to be seeking both prohibitory and mandatory relief where they're seeking to ***prohibit the State from implementing its categorical exclusions*** and mandating that the State approve these treatments, despite the fact that the State has now gone through the GAPMS process which lays out what state policy is on, you know, whether or not these treatments ought to be approved.").

258-1, 258-2)³; (4) have communicated to their contracted MCOs that "Florida Medicaid does not cover the following services" and demand that they "immediately cease and desist" covering this care (ECF No. 258-3), with no reference to any exception or waiver process; (5) have provided "Notice on Florida's Ban on Medicaid Coverage on Gender Affirming Care" to medical providers in Florida and demanded refunds for reimbursements for the medical care for which the Rule bars coverage (ECF No. 258-4), with no reference to any exception or waiver process; and (6) have publicly boasted about Florida's leadership as the "first state to sanction Medicaid providers" for covering this treatment, and with threats of fines, sanctions, discipline, and other "drastic penalties" and "very severe consequences" for MCOs in Florida, again omitting any mention of the existence of any waiver or exception by which the MCOs *could* provide coverage for this care (in accord with Defendants' response to the instant motion).  *See* ECF No. 258, at 7-9.

Finally, nowhere in the Court's Order (ECF No. 246), nor the Final Judgment (ECF No. 247), nor the trial transcripts in this case, does the Court suggest that, in order to receive needed medical care for the treatment of gender dysphoria, each Florida Medicaid beneficiary must complete the variance and waiver process. In fact, the Order contains not a single mention of, or reference to, the variance and

---

³ *See also* ECF No. 180-28 (template notice of adverse benefit determination providing no mention of the variance process).

waiver process. Rather, the Court concludes, without exception, that "there is no rational basis for a state to categorically ban these treatments or to exclude them from the state's Medicaid coverage." ECF No. 246, at 21.

Because there is no rational basis for a state to categorically ban gender-affirming medical treatments or to exclude them from the state's Medicaid coverage, the Rule, which unequivocally prohibits coverage for such treatments, is invalid and unlawful.

**C.    Defendants Resort to the Incorrect Federal Rules of Civil Procedure to Argue that Plaintiffs' Requested Relief for Enforcement or Clarification be Denied.**

Defendants misunderstand, or misrepresent, Plaintiffs' motion for alternative relief seeking clarification of the Court's judgment. Defendants argue that Plaintiffs' requested relief is time-barred based on Federal Rule of Civil Procedure 59(e), which involves motions to "alter or amend a judgment," and which is wholly irrelevant and inapplicable here. ECF No. 259, at 7-9.

Plaintiffs do not seek to "alter or amend" the judgment, rather they rightfully seek an order from the Court "requiring the parties to carry out the terms of [its] earlier order." *S.E.C. v. Hermil, Inc.*, 838 F.2d 1151, 1153 (11th Cir. 1988); *see also Flaherty v. Pritzker*, 17 F. Supp. 3d 52, 55 (D.D.C. 2014) ("District courts have the authority to enforce the terms of their mandates."). Plaintiffs do not dispute that a party seeking to alter or amend a judgement must do so within 28 days of the entry

9

of the order, but such relief is not mentioned within, nor contemplated by, Plaintiffs' Motion.  As demonstrated in Plaintiffs' Motion, and reinforced by Sections A and B herein, Defendants have flagrantly ignored the Court's determination that the categorical Rule they continue to enforce with fervor "violate[s] the federal Medicaid statute, the Equal Protection Clause, and the Affordable Care Act's prohibition of sex discrimination" and is therefore "invalid." ECF No. 246, at 53.

Defendants have, by their own actions, conferred authority upon this Court through their "blatant[] disregard" for this Court's "unambiguous mandate."  *Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984).

Defendants' arguments that the Court lacks jurisdiction fare no better, as Plaintiffs do not seek to "alter or amend" the Final Judgment. ECF No. 259, at 8. The cases that Defendants rely upon to support their Rule 59(e) argument are inapplicable given that Plaintiffs seek enforcement or clarification of the Court's Judgment, not modification.   In any event, the cases are legally and factually distinguishable.  Most notably, in *Stansell*, the Eleventh Circuit case relied upon by Defendants, the court found that, through their motion, the appellants/non-prevailing parties sought "to reopen litigation, an improper basis for moving under Rule 59(e)." *Stansell v. Revolutionary Armed Forces of Columbia*, 771 F.3d 713, 746 (11th Cir. 2014) (citing *Michael Linet, Inc. v. Vill. of Wellington, Fla.*, 408 F.3d 757, 762 (11th Cir. 2005), for the proposition that a party "cannot use a Rule 59(e) motion to

relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment"). Here, by contrast, Plaintiffs merely seek to enforce the Court's Judgment, or in the alternative, to clarify it, while in defending their actions *post*-Judgment, Defendants, who made no effort to litigate the variance and waiver process during trial, who now seek to "raise argument[s]" and "present evidence" that "could have been raised prior to the entry of judgment." *Id.*

Because Plaintiffs have not filed a Rule 59(e) motion, rather they have respectfully requested that the Court enforce its Judgment, based on its well-reasoned decision, or clarify said Judgment, Defendants' Rule 59(e) arguments are unavailing.

## CONCLUSION

In conclusion, Plaintiffs respectfully request that the Court enforce its Judgment, as well as its Findings of Fact and Conclusions of Law, by instructing Defendants that the Court's declaratory relief prevents them from enforcing Rule 59G-1.050(7) of the Florida Administrative Code, and issuing any other remedial relief it believes appropriate. In the alternative, Plaintiffs respectfully request that the Court clarify its decision and Order to make clear that the Rule, as adopted, is unlawful and thus cannot be enforced by Defendants to bar access to medically necessary treatments for gender dysphoria for transgender Florida Medicaid beneficiaries.

Dated this 6th day of November 2023.

Respectfully submitted,

/s/ Omar Gonzalez-Pagan

LAMBDA LEGAL DEFENSE
AND EDUCATION FUND, INC.

**Omar Gonzalez-Pagan***
120 Wall Street, 19th Floor
New York, NY 10005
(212) 809-8585
ogonzalez-pagan@lambdalegal.org

PILLSBURY WINTHROP SHAW
PITTMAN, LLP

**Jennifer Altman** (Fl. Bar No. 881384)
**Shani Rivaux** (Fl. Bar No. 42095)
600 Brickell Avenue, Suite 3100
Miami, FL 33131
(786) 913-4900
jennifer.altman@pillsbury.com
shani.rivaux@pillsbury.com

**William C. Miller***
**Gary J. Shaw***
1200 17th Street N.W.
Washington, D.C. 20036
(202) 663-8000
william.c.miller@pillsburylaw.com

* *Admitted pro hac vice*

*Counsel for Plaintiffs*

/s/ Simone Chriss

SOUTHERN LEGAL COUNSEL, INC.

**Simone Chriss** (Fl. Bar No. 124062)
**Chelsea Dunn** (Fl. Bar No. 1013541)
1229 NW 12th Avenue
Gainesville, FL 32601
(352) 271-8890
Simone.Chriss@southernlegal.org
Chelsea.Dunn@southernlegal.org

FLORIDA HEALTH JUSTICE PROJECT

**Katy DeBriere** (Fl. Bar No. 58506)
3900 Richmond Street
Jacksonville, FL 32205
(352) 278-6059
debriere@floridahealthjustice.org

NATIONAL HEALTH LAW PROGRAM

**Abigail Coursolle***
3701 Wilshire Boulevard, Suite 315
Los Angeles, CA 90010
(310) 736-1652
coursolle@healthlaw.org

**Catherine McKee***
1512 E. Franklin Street, Suite 110
Chapel Hill, NC 27514
(919) 968-6308
mckee@healthlaw.org

## <u>CERTIFICATE OF WORD COUNT</u>

As required by Local Rules 7.1(F), I certify that this Reply Brief contains 2,692 words.

<u>/s/ Simone Chriss</u><br>
Counsel for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 6th day of November 2023, a true copy of the foregoing has been filed with the Court utilizing its CM/ECF system, which will transmit a notice of electronic filing to counsel of record for all parties in this matter registered with the Court for this purpose.

<u>/s/ Simone Chriss</u><br>
Counsel for Plaintiffs